**Yitzchak Zelman, Esq.**
*Admitted Pro Hac Vice*
**MARCUS & ZELMAN, LLC**
**1500 Allaire Avenue, Suite 101**
**Ocean, New Jersey 07712**
**Tel: (732) 695-3282**
**Fax: (732) 298-6256**
**Email:** Yzelman@marcuszelman.com
*Attorneys for Plaintiff*
*N.L., an infant by his mother*
*and natural guardian SANDRA LEMOS*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| **N.L., an infant by his mother and natural guardian SANDRA LEMOS,**<br><br>                    Plaintiff,<br><br>-against-<br><br>**CREDIT ONE BANK, N.A., and JOHN DOES 1-25,**<br><br>                    Defendants. | **Civil Case No.: 2:17-cv-01512-JAM-DB**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>**Judge: Hon. John A. Mendez**<br>**Date: March 27, 2018**<br>**Time: 1:30 p.m.**<br>**Courtroom: 6** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..……………………………………………...…1

ARGUMENT……………………………………………………………………..3

    **A. Plaintiff Will Be Prejudiced By The Imposition Of A Lengthy, And Likely Indefinite, Stay**………………………………………………4

    **B. Denial Of The Stay Will Not Result In Any Hardship To Defendant**……….8

    **C. Defendant Has Not Established That The ACA Appeal Will Simplify Or Streamline The Issues In This Action**…………………………13

**CONCLUSION**………………………………………………………...………..15

# TABLE OF AUTHORITIES

*Adams v. Nationstar Mortg. LLC,*
  No. CV 15-9912-DMG, 2018 WL 702848 (C.D. Cal. Feb. 2, 2018)....................6

*Anderson v. Credit One Bank, Nat'l Ass'n*,
  No. 16CV3125-MMA, 2017 WL 4654646 (S.D. Cal. Oct. 17, 2017)………....12

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*,
  490 F.3d 718 (9th Cir. 2007)……………………………………………………….6

*Brandt v. Ocwen Loan Servicing, LLC,*
  No. 117CV00643DAD, 2017 WL 5878581 (E.D. Cal. Nov. 29, 2017)..3, 6, 8, 11

*Brickman v. Facebook, Inc.,*
  No. 16-CV-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017)……….11

*Cabiness v. Educ. Fin. Sols., LLC,*
  No. 16-CV-01109-JST, 2017 WL 167678 (N.D. Cal. Jan. 17, 2017)……......5, 11

*Clinton v. Jones*,
  520 U.S. 681 (1997)……………………………………………………………14

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962)…………………………………………………...3

*DeClue v. United Consumer Fin. Servs. Co.*,
  No. 16CV2833 JM (JMA), 2017 WL 4541668 (S.D. Cal. Oct. 11, 2017)…...…12

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007)…………………………………………………..9

*Garmendiz v. Capio Partners, LLC*,
  No. 817CV00987EAKAAS, 2017 WL 3208621 (M.D. Fla. July 26, 2017)…….6

*Glick v. Performant Fin. Corp.*,
  No. 16-CV-05461-JST, 2017 WL 786293 (N.D. Cal. Feb. 27, 2017)……....7, 11

*Gold v. Johns-Manville Sales Corp.*,
  723 F.2d 1068 (3d Cir. 1983)……………………………………………….....9

*Hiemstra v. Credit One Bank,*
    No. 216CV02437JAM, 2017 WL 4124233 (E.D. Cal. Sept. 15, 2017)...2, 7, 9, 12

*Klein v. Hyundai Capital Am.,*
    No. 816CV01469JLSJCGX, 2016 WL 10519281 (C.D. Cal. Dec. 6, 2016)…....9

*Konopca v. Ctr. for Excellence in Higher Educ., Inc.,*
    No. CV155340FLWDEA, 2016 WL 4644461 (D.N.J. Sept. 6, 2016)…………12

*Konopca v. Comcast Corp.,*
    No. CV156044FLWDEA, 2016 WL 1645157 (D.N.J. Apr. 26, 2016)…….....14

*Landis v. North American Co.,*
    299 U.S. 248 (1936)………………………………………………..…....5, 8, 9

*Larson v. Harman Mgmt. Corp.,*
    No. 116CV00219DADSKO, 2017 WL 3172979 (E.D. Cal. July 26, 2017)…….9

*Lathrop v. Uber Techs., Inc.,*
    No. 14-CV-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016)………......8, 11

*Lee v. LoanDepot.com, LLC,*
    No. 14-1084-MLB, 2015 WL 5032175 (D. Kan. Aug. 25, 2015)…………….....5

*Lockyer v. Mirant Corp.,*
    398 F.3d 1098 (9th Cir. 2005)………………………………...…………8, 9

*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740, 745 (U.S. 2012)……………………………………………1

*Montegna v. Ocwen Loan Servicing, LLC,*
    No. 17-CV-00939-AJB, 2017 WL 4680168 (S.D. Cal. Oct. 18, 2017)…...4, 9, 11

*O'Hanlon v. 24 Hour Fitness USA, Inc.,*
    No. 15-CV-01821-BLF, 2016 WL 815357 (N.D. Cal. Mar. 2, 2016)……......4

*Quinones v. Ocwen Loan Servicing, LLC,*
    No. 17-03526 DDP, 2017 WL 4641078 (C.D. Cal. Oct. 16, 2017)……………6

*Rivera v. Exeter Fin. Corp.,*
    No. 15-CV-01057-PAB-MEH, 2016 WL 374523 (D. Colo. Feb. 1, 2016)…......5

Case 2:17-cv-01512-JAM-DB   Document 21   Filed 02/08/18   Page 5 of 20

*Salehi v. Bluestem Brands, Inc.*
    No. 16CV0924 DMS, 2018 WL 703015 (S.D. Cal. Feb. 2, 2018)........................6
*Sliwa v. Bright House Networks, LLC,*
    No. 216CV235FTM29, 2016 WL 3901378 (M.D. Fla. July 19, 2016)……....8, 10
*Toldi v. Hyundai Capital Am.,*
    No. 216CV01877APGGWF, 2017 WL 736882 (D. Nev. Feb. 23, 2017).......5, 14
*Valladares v. Blackboard, Inc.*,
    No. 14 C 10272, 2015 WL 4466839 (N.D. Ill. July 21, 2015)…………………15
*Williams v. Ocwen Loan Servicing, LLC,*
    8:16-cv-01223-RAL-MAP (M.D. Fla., Feb. 21, 2017)…………………….…...14

Statutes

    47 USC § 227(b)(1)……………………………………….……………….....3, 12

# PRELIMINARY STATEMENT

*These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.*

- *Federal Rule of Civil Procedure 1, entitled "Scope and Purpose."*

Congress enacted the Telephone Consumer Protection Act (the TCPA) because consumers were outraged over the proliferation of automated telephone calls that are a nuisance, intrusive, and found to be an invasion of privacy. *See, Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff, N.L., is an eleven year old child, who has inexplicably become the target of incessant and relentless autodialed collection calls and pre-recorded voice messages placed by Credit One Bank and the dialing vendors it employs. These calls continued long after the Plaintiff advised Credit One and its vendors that he was just a kid, that they had the wrong person, and that they should stop calling him. Plaintiff accordingly brought this action asserting claims for invasion of privacy[1], along with violations of the Rosenthal Fair Debt Collection Practices Act, against both Credit One and several of the dialer vendors hired by Credit One to make these calls.[2] The Plaintiff further alleged that some – but not all – of the Defendants

---

[1] Plaintiff's Amended Complaint specifically highlights the level of harassment to which he was subjected. *See e.g.,* Docket 16-5, ¶140 (alleging as against new party iEnergizer Holdings that "the Defendant harassed a young child on his cellular phone daily with up to nine calls per day, and over 114 calls in less than a one-month period – all after the Plaintiff advised the Defendant that he was just a kid, that Defendant was calling the wrong person, and to stop calling him"); *See id.*, ¶133 (alleging that GC Services called the minor plaintiff on his cellular phone day after day, with up to seven calls per day, and over 40 calls in an eight day period).

[2] Contrary to Defendant's assertions that the invasion of privacy claims and RFDCPA claims are insignificant compared to the TCPA claims, the exact opposite is true. Plaintiff's maximum recovery for his TCPA claims are capped at $1,500.00 per call, while there is no such cap for the invasion of privacy claims, which are only limited by the jury's determination. *See e.g., Fausto v. Credigy Servs. Corp.,* 5:07-cv-05658-JW [Docket 408] (N.D. Cal. 2009) (jury award of $450,000 for invasion of privacy claims premised on the receipt of ninety-two debt collection calls). Similarly, the RFDCPA claim carries with it a fee-shifting provision that can require the Defendants to pay Plaintiff's attorney's fees and costs, which is likely to be far from 'insignificant' given the amount of motion

1

violated the TCPA, in using an automatic telephone dialing system and prerecorded voice messages to repeatedly call the Plaintiff solely in order to collect a credit card debt from an unrelated party.

On July 10, 2015 – well over two years ago - the FCC issued a 138-page Omnibus Declaratory Ruling and Order that addressed 21 Petitions seeking clarification of a large range of issues arising under the TCPA. On the same day, ACA International filed a Hobbs Act Petition in the D.C. Circuit, seeking a review of the FCC's Omnibus Order. The majority of the issues and petitions resolved in the FCC's July 10th Order have zero impact or relevance to this action. The <u>only</u> issue discussed in the Order that has any potential relevance to the instant action is the meaning of the term "automatic telephone dialing system". Defendant now moves to Stay this action, claiming that the meaning of this term must first be settled by the D.C. Circuit before this action can proceed. However, Defendant does <u>not</u> explain <u>why</u> the D.C. Circuit's resolution of this issue is necessary in this action, or how it would affect the dialing system actually utilized to make the calls received by the Plaintiff in this action.

As explained below, Defendant's Motion for a Stay should be denied, where Defendant failed to establish any of the elements required to warrant such relief. Specifically, Defendant attempts to interminably delay this action, but not once establishes or shows that the ACA Appeal will have <u>any</u> impact on the disposition of this action. Instead, it is readily apparent that this case will proceed, and discovery will be needed, <u>regardless</u> of the result in the D.C. Circuit. <u>Indeed, it was for this very reason that this Court denied the identical Motion by this same Defendant five months ago, in Hiemstra v. Credit One Bank, No. 216CV02437JAMEFB, 2017 WL 4124233 (E.D. Cal. Sept. 15, 2017)</u>. For the reasons that follow, it is respectfully submitted that Defendant's Motion should be denied in its entirety.

---

practice necessitated thus far in this action.

# ARGUMENT

Defendant urges a stay of this action so that the D.C. Circuit can determine whether the FCC arbitrarily decided the meaning and extent of the basic term "automatic telephone dialing system" as that term is used by the TCPA. In relevant part, the TCPA provides that

> **It shall be unlawful for any person within the United States**, or any person outside the United States if the recipient is within the United States—(A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the **called party**) **using any automatic telephone dialing system** or an artificial or prerecorded voice ... (iii) **to any telephone number assigned to a** paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the **called party** is charged for the call[.]

*See,* 47 USC § 227(b)(1).

Credit One Bank has made zero mention of the dialing system it used to make the calls to the Plaintiff, and nobody involved in this action therefore has any way of knowing whether the D.C. Appeal would impact any of the issues raised in the instant action. A stay should not be issued in this action, where Defendant has abjectly failed to meet any of the elements it is required to show in order to obtain such relief. The Ninth Circuit has articulated a simple three-part formula for determining when to stay a proceeding pending appeal. Determining whether to stay an action requires the court to balance competing interests, including

> "(1) the possible damages which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

*Brandt v. Ocwen Loan Servicing, LLC,* No. 117CV00643DADEPG, 2017 WL 5878581, at *2 (E.D. Cal. Nov. 29, 2017), citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

As set forth below, each of the *CMAX* elements weigh against granting a stay in this action. Each of those elements are addressed, in turn, below.

### A. Plaintiff Will Be Prejudiced By The Imposition Of A Lengthy, And Likely Indefinite, Stay.

The first factor is the possible damage that may result from a stay. Here, if a stay is granted, there is the potential for a lengthy delay spanning years, as it is uncertain when the D.C. Circuit will issue a ruling. Numerous district courts have found that the extensive delay that will result from the D.C. Circuit's consideration of this specific appeal would prejudice litigants, who now may have to wait years for their day in court. As one California court has presciently noted nearly two years ago, waiting for the D.C. Circuit to resolve the FCC Appeal will lead to a delay in litigation that could be "significant" and "substantial". *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357 (N.D. Cal. Mar. 2, 2016). The *O'Hanlon* court highlighted the extensive delay that would be occasioned by waiting for the D.C. Circuit to issue its decision on the FCC Appeal:

> "Unlike a stay pending *Tyson Foods* and *Spokeo*, here, the possible damage and prejudice to Plaintiff that may result from staying the case pending the resolution of the FCC appeals is significant. There, the multidistrict litigation involves eleven appeals from as many parties, now consolidated for resolution before the D.C. Circuit. The parties' appeals of the FCC Omnibus Ruling present a broad-based challenge to the FCC's 138-page Declaratory Ruling and Order, and sweeps in issues not pertinent to this case. Awaiting a ruling by the D.C. Circuit would likely involve a substantial delay of this matter. A stay pending that litigation would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court."

*O'Hanlon v. 24 Hour Fitness USA, Inc.*, 2016 WL 815357, at *5. *See also, Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *4 (S.D. Cal. Oct. 18, 2017)("while oral arguments in the D.C. Circuit have been completed, and the parties postulate a ruling is forthcoming, a stay may result in

uncertainty for an indefinite period if the matter is appealed to the Supreme Court"); *Toldi v. Hyundai Capital Am.,* No. 216CV01877APGGWF, 2017 WL 736882 (D. Nev. Feb. 23, 2017)(declining to stay TCPA case in favor of the ACA Appeal, finding that "a stay would prejudice Toldi by delaying this case indefinitely while that other case winds its way through the appellate process including, potentially, to the Supreme Court"); *Rivera v. Exeter Fin. Corp.*, No. 15-CV-01057-PAB-MEH, 2016 WL 374523 (D. Colo. Feb. 1, 2016)(denying ACA stay because "staying the case in this manner could substantially delay the ultimate resolution of the case, with adverse consequences such as a decrease in evidentiary quality and party/witness availability. The case is already over eight months old, and no party disputes that only minimal discovery has taken place thus far").

Even when a stay is arguably warranted, it must be reasonably limited in scope. The Supreme Court instructed that "the stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis v. North American Co.*, 299 U.S. 248, 257 (1936). Waiting for the D.C. Circuit to render a decision in the *ACA International* appeal has the potential to be such of such unlimited duration as to prejudice the Plaintiff. *See also, Cabiness v. Educ. Fin. Sols., LLC,* No. 16-CV-01109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017)(denying identical motion to stay because "although the D.C. Circuit's decision in ACA International will likely be issued soon, the losing party will probably appeal that decision to the Supreme Court, which would further delay this case").

Even more telling is the fact that courts that did issues stays pending the FCC's Order have thereafter <u>declined</u> to continue those stays pending the D.C. Circuit's consideration of the resultant appeal. *See e.g., Lee v. LoanDepot.com, LLC*, 2015 WL 5032175, at *3 (D. Kan. Aug. 25, 2015)(lifting the ACA stay finding that "because the FCC has now ruled on the specific issue of 'capacity,' the first purpose of the stay has

been satisfied. Fed.R.Civ.P. 1 directs the court to ensure the just and speedy determination of this case; therefore, this case can proceed through the discovery process while the FCC appeal is being considered by the D.C. Circuit"). Indeed, this appears to be a growing trend in California. *See e.g., Salehi v. Bluestem Brands, Inc.* No. 16CV0924 DMS, 2018 WL 703015, at *2 (S.D. Cal. Feb. 2, 2018) (lifting ACA stay and finding that "seventeen months have now passed since the stay was imposed, and it is unclear when the D.C. Circuit will issue its decision in ACA. This lengthy delay is not what the Court anticipated when it entered the stay"); *Adams v. Nationstar Mortg. LLC,* No. CV 15-9912-DMG, 2018 WL 702848, at *2 (C.D. Cal. Feb. 2, 2018) (similarly lifting ACA stay, because "given the lengthy period of time in which the stay has been pending, this uncertainty regarding the timing of a final decision significantly alters the balance against maintenance of the stay").

It is respectfully submitted that the Plaintiff would be substantially prejudiced by the imposition of an undisputedly lengthy, and likely indefinite, stay in this action. "Inherent in a delay is the risk of prejudice to a party's ability to obtain documentary and testimonial evidence, as memories fade and witnesses are less likely to recall specific facts." *Quinones v. Ocwen Loan Servicing, LLC*, No. 17-03526 DDP-PLAX, 2017 WL 4641078, at *2–3 (C.D. Cal. Oct. 16, 2017). "Because companies naturally experience turnover in workforces during a stay, they may lose their ability to compel deposition and trial testimony from employees who leave the companies." *Id.*; *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007)("Delay inherently increases the risk that witnesses' memories will fade and evidence will become stale"); *Garmendiz v. Capio Partners, LLC*, No. 817CV00987EAKAAS, 2017 WL 3208621, at *2 (M.D. Fla. July 26, 2017)("the risk of evidence being lost or destroyed and the potential for witnesses' memories to fade further demonstrates the potential for prejudice to the Plaintiff").

In this action, the Plaintiff needs to gather information from both the Defendant

and non-party dialer-vendors regarding, *inter alia* (1) the dialers used to make the calls to Plaintiff, (2) the technical specifications and programming of those dialers, at the time they were used, and (3) the communications these non-party vendors had with the Plaintiff. These vendors still need to be (1) brought into this action, once leave of this Court is obtained to file the proposed Amended Complaint, (2) served with the pleadings – including iEnergizer, who may have to be served in India under the Hague Convention, a lengthy process – and then (3) served with written discovery demands followed by deposition notices.[3] Staying this case now only adds to the delay that this lawsuit will experience.

Just five months ago, this Court denied the identical Motion to Stay filed by this very same Defendant, citing to the lengthy delay that waiting for the ACA Appeal would entail. *See, Hiemstra v. Credit One Bank,* No. 216CV02437JAMEFB, 2017 WL 4124233, at *2 (E.D. Cal. Sept. 15, 2017). In *Hiemstra,* this Court concluded that "the losing party in *ACA International* may very well petition the U.S. Supreme Court for review, making it impossible to forecast if or when a decision in *ACA International* will become final." *Id.,* at *2. *See also, Glick v. Performant Fin. Corp.,* No. 16-CV-05461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017)("it is impossible to forecast when a decision in ACA International will be rendered. This is as true today as it was when the Court held so over one year ago; oral arguments were heard in ACA International on October 19, 2016, and the D.C. Circuit has not yet issued a decision").

The Honorable District Judge Dale Drozd subsequently agreed that the continued delay in waiting for the ACA Appeal warranted the denial of a stay. *See, Brandt v. Ocwen Loan Servicing, LLC,* No. 117CV00643DADEPG, 2017 WL 5878581, at *4 (E.D. Cal. Nov. 29, 2017). In doing so, Judge Drozd noted that "ACA

---

[3] These vendors could not be named in the original Complaint filed in this action, as the callers would always identify themselves as "Credit One Bank". Indeed, Plaintiff was only able to obtain their identities through written discovery served on Credit One Bank.

7

International was argued before the D.C. Circuit over a year ago and a decision has not yet been forthcoming. In addition, regardless of the outcome, it would seem that an appeal to the U.S. Supreme Court is likely." *Id.,* at *5; *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ("Even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to plaintiff"). Judge Drozd accordingly concluded that "given the significant passage of time and uncertainty regarding when a final decision will be rendered in the ACA International case, this court concludes that plaintiffs will likely be prejudiced by the granting of an indefinite stay." *Brandt,* 2017 WL 5878581, at *4.

It is respectfully submitted that the Defendant's Motion should be denied, where it is merely being deployed as a delaying tactic.  It is inevitable that additional stays will continue to be sought, *ad nauseum,* regardless of the outcome in the D.C. Circuit.[4] It is therefore submitted that this factor weighs against the granting of a stay.

**B. Denial Of The Stay Will Not Result In Any Hardship To Defendant.**

The complete lack of hardship to the Defendant in continuing to defend this case similarly dooms Defendant's request for a stay.  It is only "in rare circumstances will a litigant in one cause be compelled to stand aside" to await a ruling in another action. *Landis v. North American Co.*, 299 U.S. at 255.  The Court's inherent authority to stay pending litigation is not without limits.  *See, Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). It is well settled that before a stay may be issued, the party seeking a stay must demonstrate "a clear case of hardship or inequity," if there is "even a fair

---

[4] If the ACA Appeal is denied, Credit One will certainly argue that the stay should be continued while the Supreme Court weighs taking up the issue.  On the flip side, if the Appeal is granted, Credit One will inevitably argue that the stay should be continued while the matter is returned to the FCC for a new round of rule-making.  If that rule-making is appealed…. *See e.g., Sliwa v. Bright House Networks, LLC,* No. 216CV235FTM29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016)(Noting that after the D.C. Circuit decides the ACA Appeal,  "that decision will likely be appealed to the Supreme Court. If the Supreme Court agrees to hear the case, it will be at least another several months before it issues an opinion, which opinion could disagree with the Circuit Court's holding and either vacate or reinstate the FCC's conclusions").

possibility" that the stay would work damage on another party. *Landis v. North American Co.*, 299 U.S. at 255; *Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1075-76 (3d Cir. 1983). In *Gold*, supra, the Third Circuit found the Plaintiffs would suffer such damage from a stay by "the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard." *Id.* California courts have agreed. *See, e.g., Klein v. Hyundai Capital Am.*, No. 816CV01469JLSJCGX, 2016 WL 10519281, at *3 (C.D. Cal. Dec. 6, 2016)(since it is a reasonable assumption that a stay "inherently increases the risk that witnesses' memories will fade and evidence will become stale" the party seeking the stay "bears the burden of demonstrating that the other factors demonstrate a "clear case of hardship or inequity").

Defendant does not establish any hardship sufficient to warrant a stay. The only hardship claimed by Defendant is that "Defendant would be unfairly prejudiced if it had to defend against legally uncertain claims under the TCPA.." *Docket 19,* at 8. This is patently and legally insufficient to warrant a stay. "Being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' " justifying a stay. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007), citing *Lockyer v. Mirant Corp..* 398 F.3d at 1112. *See also, Larson v. Harman Mgmt. Corp.,* No. 116CV00219DADSKO, 2017 WL 3172979, at *3 (E.D. Cal. July 26, 2017)(declining to stay TCPA case based on ACA Appeal, where "defendant HMC principally argues that all parties will suffer some degree of economic hardship resulting from unnecessary litigation expenses and the uncertain scope of discovery"); *Hiemstra v. Credit One Bank*, 2017 WL 4124233, at *3 (also denying stay pending ACA Appeal for lack of hardship, because "Defendant cites 'costly discovery,' but this alone does not state a compelling need as to why this Court should impose a stay"); *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *4 (S.D. Cal. Oct. 18, 2017)("Defendant mounts the argument that granting

9

a stay will spare the parties from potentially 're-doing discovery already completed before the D.C. Circuit's decision.' This reason, standing alone, does not state an adequately compelling basis to justify a stay").

In this case, Defendant have neglected to demonstrate why a stay is needed, and nowhere states how going forward with this case would cause any hardship at all.[5] Defendant's claimed 'hardship' is particularly specious when considering that discovery and continued litigation will still be necessary in this action *regardless* of the outcome in the D.C. Circuit. As set forth below, Credit One has conspicuously neglected to explain whether the dialing systems used by its vendors would be an ATDS under one definition but not the other. However, even if *arguendo* Defendant had done so, discovery would still be necessary to determine if Defendant's position was accurate. *See e.g., Sliwa v. Bright House Networks, LLC,* No. 216CV235FTM29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) ("even if the D.C. Circuit's decision is favorable for Bright House and the conclusions reached therein are binding on this Court, Plaintiff's TCPA claim will proceed. Discovery will presumably be needed to determine, among other things, whether Bright House called Plaintiff using technology with the present ability to auto-dial numbers"). Even more importantly, the Plaintiff has alleged that he received pre-recorded voice messages from the Defendant, which are a violation of the TCPA, <u>irrespective of the involvement of an ATDS</u>. Accordingly, regardless of the D.C. Circuit's ultimate findings, the Plaintiff will still have an eminently viable claim against Defendant, requiring the continued litigation of this action. Staying this action when continued litigation is inevitable does not lessen the burden on this Court or the parties, it merely delays it.

Judge Drozd agreed with the *Sliwa* court's conclusion that this need for inevitable

---

[5] Indeed, the discovery largely necessary to still be taken in this action – to uncover the capabilities of these dialers - <u>is not even from Credit One, but from the third party dialing vendors who actually made the offending calls to the Plaintiff</u>. Plaintiff has sought to name these parties in this action via the filing of his Amended Complaint, and intends to obtain this discovery from those parties.

10

discovery weighed against the granting of a stay. *See, Brandt v. Ocwen Loan Servicing, LLC*, 2017 WL 5878581, at *3. The *Brandt* defendant argued that "with the benefit of the ACA ruling, the parties can engage in more focused litigation based on the insight provided by the D.C. Circuit, thus reducing the burden of litigation on the parties and on the Court." *See id.* Judge Drozd was "not persuaded by this argument" because "regardless of how the pending appeal in ACA International is decided, the parties here will be required to engage in discovery to determine the type of technology used to make the calls. Discovery will also be necessary with respect to plaintiffs' other causes of action". *Id. See also, Montegna v. Ocwen Loan Servicing, LLC,* No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *4 (S.D. Cal. Oct. 18, 2017)("Defendant will not be able to evade inevitable discovery and motion practice given that there will be unresolved issues in need of discovery regardless of the outcome of ACA International"); *Glick v. Performant Fin. Corp.,* No. 16-CV-05461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) ("First, Defendant's assertion that ACA International, Marks, and the Petition will entirely moot Plaintiff's claims and preclude the need for discovery is speculative. Defendant will still be required to produce discovery to settle the factual disputes regarding its autodialing technology no matter the results from the appeals or the Petition").

The district court in *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2017 WL 167678 (N.D. Cal. Jan. 17, 2017) declined to grant a stay for this same reason. In that action, the court noted that the defendant "does not explain how the ACA International decision might narrow the scope of discovery that would otherwise be necessary in this case." *Id.*, at *3. Instead, the *Cabiness* court concluded that "the parties are now engaged in discovery and, as this Court has previously noted, discovery in this case will be required regardless of the outcome in ACA International." *Id.,* citing *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ("Even if the D.C. Circuit were to modify or vacate the 2015 FCC Order,

11

factual disputes, such as whether an ATDS was used and whether text recipients provided their consent, will remain here."). *See also, Anderson v. Credit One Bank, Nat'l Ass'n,* No. 16CV3125-MMA (AGS), 2017 WL 4654646, at *3 (S.D. Cal. Oct. 17, 2017)("discovery regarding the type of calling system Defendant uses will be necessary to determine whether it fits any definition of ATDS, whether it will be that of the 2015 FCC Order or a new definition provided by the D.C. Circuit"); *DeClue v. United Consumer Fin. Servs. Co.*, No. 16CV2833 JM (JMA), 2017 WL 4541668, at *2 (S.D. Cal. Oct. 11, 2017)(same); *Konopca v. Ctr. for Excellence in Higher Educ., Inc.*, No. CV155340FLWDEA, 2016 WL 4644461, at *3 (D.N.J. Sept. 6, 2016)("At this stage of the litigation, the parties are presently engaged in discovery. Although the decision in ACA Int'l appeal could potentially clarify certain issues of law, factual issues will remain. Consequently, regardless of the D.C. Circuit's eventual ruling, it will still be necessary for the parties to obtain discovery on the facts of this case. Discovery should proceed, therefore, even in light of the pending appeal. Thus, the Court finds that this factor weighs against entering a stay").

Both the Complaint and proposed Amended Complaint filed in this action clearly details the placement of pre-recorded voice messages to the Plaintiff. *See e.g.,* Docket 16-5, ¶15, 16, 18, 20, 31, 67, 69, 70. These pre-recorded voice messages are violations of the TCPA, and have nothing to do with the term "automatic telephone dialing system." *See,* 47 USC § 227(b)(1)(prohibiting the use of "any automatic telephone dialing system **or** an artificial or prerecorded voice"). Accordingly, discovery and continued litigation would still be required in this action, regardless of the D.C. Circuit's ultimate resolution of the "automatic telephone dialing system" issue. *See e.g., Hiemstra v. Credit One Bank,* No. 216CV02437JAMEFB, 2017 WL 4124233, at *2 (E.D. Cal. Sept. 15, 2017)("No matter the results in these appeals, Defendant must still produce discovery to, at the very least, settle factual disputes regarding its prerecorded voice technology").

As alleged in the Complaint, the Plaintiff received pre-recorded voice messages from the Defendant, which is a theory of recovery under the TCPA entirely independent from the ATDS claims.  Coupled with the Plaintiff's RFDCPA and invasion of privacy claims, this means that the impact of the ACA Appeal on the instant litigation would therefore be close to nil, and do not justify the delay of this action.  It is therefore respectfully submitted that this factor therefore weighs against the issuance of a stay.

### C. Defendant Has Not Established That The ACA Appeal Will Simplify Or Streamline The Issues In This Action.

The third factor is whether a stay would simplify the issues and the trial of the case.  Defendant blankly argues that the resolution of *ACA International* will simplify the issues presented in the instant action, and would impact the specific dialing systems at issue in this action.  Defendant, however, submits <u>nothing</u> in support of this bald assertion, instead simply asking the Court to take its word for it.  Credit One's only reference to the dialer is that "Most modern dialers, including Defendant's, are not designed to generate and dial numbers using a 'random or sequential number generator'."  *See,* Defendant's Motion, at 19, page 4.  That is it.  Defendant gives this court nothing more in support of its position that the D.C. Circuit's decision may be dispositive of the specific dialing systems used in this action.  **Indeed, the Defendant has already stated in discovery that it did not place calls with <u>its</u> own dialer, which were instead placed by the dialers used by its dialer vendors.[6]  Defendant mentions <u>nothing</u> as to the capabilities of <u>these</u> dialers.**

What Defendant neglects to do is to describe *how* the determination of the ACA Appeal would impact this action.  There is no mention of the dialing system used by Defendant's dialer vendors, so that the Court can determine whether these systems would be an ATDS under the FCC's July 2015 Order, but would not be an ATDS if the D.C. Circuit vacates that Order.  For all we know, these dialing systems are each an

---

[6] *See,* Defendant's Response to Interrogatories 3 and 4, annexed hereto as Exhibit A.

ATDS *regardless* of the result in the D.C. Circuit. We cannot know for sure, however, because Credit One has failed to make that most basic showing. As such, the Defendant cannot possibly have met its burden on this second element, as required when seeking the imposition of a stay. *See, Clinton v. Jones*, 520 U.S. 681, 708 (1997) (The party requesting stay "bears the burden of establishing its need").

In *Konopca v. Comcast Corp.*, No. CV156044FLWDEA, 2016 WL 1645157 (D.N.J. Apr. 26, 2016), the district court denied a motion to stay for this same reason. In that action, "other than pointing baldly to the allegations in the Complaint, Defendant makes no showing that there are specific disputes in this case that turn on the FCC's ruling. For example, <u>there is no assertion that technology used to place the calls at issue would qualify as an "automatic telephone dialing system" under one interpretation of the term but not under another</u>." *Id.,* at *4. The *Konopca* court accordingly declined to issue a stay, finding that "absent such a showing, this Court cannot conclude that a stay of this case would further the interests of judicial economy." *Id.*

A stay was again denied for this reason in *Williams v. Ocwen Loan Servicing, LLC,* 8:16-cv-01223-RAL-MAP (M.D. Fla., Feb. 21, 2017). A copy of the *Williams* decision is annexed hereto as Exhibit B. In that action, the *Williams* court found that "Defendant has not demonstrated how a favorable ruling overturning the FCC's new interpretation of an automated telephone dialing system will benefit Defendant in this case in terms of affecting whether the automated telephone dialing system it allegedly used in this case would or would not fall within the statutory definition of an automated telephone dialing system." *See,* Exhibit B, at page 1. Similarly, in *Toldi v. Hyundai Capital Am.,* No. 216CV01877APGGWF, 2017 WL 736882 (D. Nev. Feb. 23, 2017), the district court found that a stay was not warranted: "Hyundai vaguely suggests that 'core issues in this case lie at the heart of ACA's petition for review.' But it does not explain precisely what those core issues are or how the D.C. Circuit's decision might specifically impact this case or Hyundai's defense strategy." *Id.,* at *3.

In sum, the entire crux of the Motion to Stay is that the D.C. Circuit may reverse the FCC's interpretation of the term "automatic telephone dialing system." However, Defendant makes no effort to demonstrate how such a reversal would impact any of the (thus-far undisclosed) dialing systems implicated in this action. Without such a showing, "judicial economy would not be served if this case is allowed to stagnate on the court's docket, waiting indefinitely for a decision by the FCC **which may or may not be relevant**." *Valladares v. Blackboard, Inc.*, , 2015 WL 4466839, at *2 (N.D. Ill. July 21, 2015)(emphasis added). It is respectfully submitted that this third element weighs against the granting of a stay, where Defendant entirely failed to establish how *ACA International* would ever impact the dialing systems at issue in this action.

### CONCLUSION

It is respectfully requested that Defendant's motion to stay this action be denied in its entirety. Defendant urges that a stay should be issued in this matter, claiming that the D.C. Circuit must first decide whether the FCC arbitrarily and capriciously decided the definition of the term 'automatic telephone dialing system'. As outlined above, Defendant has entirely failed to demonstrate how that Appeal would impact the dialing systems actually used to make the subject calls in the instant action. There is nothing before in the record that would establish as to whether any issues raised in this action would be simplified by the D.C. Circuit's resolution of the ACA Appeal. Furthermore, the Plaintiff undisputedly has claims against the Defendant that will continue regardless of the outcome in the D.C. Circuit. Applying a stay in this matter would therefore needlessly delay the resolution of this action for years, while waiting for a determination that would have no effect on this matter. It is therefore respectfully submitted that Defendant's motion for a stay should be denied.

Dated: February 8, 2018                                MARCUS & ZELMAN, LLC

                                                       _/s/ Yitzchak Zelman_____
                                                       Attorney for Plaintiff

15