David J. Kaminski (SBN 128509)
kaminskid@cmtlaw.com
Alex Wade (SBN 304022)
Wadea@cmtlaw.com
**CARLSON & MESSER LLP**
5901 West Century Boulevard, Suite 1200
Los Angeles, California 90045
Telephone: (310) 242-2200
Facsimile: (310) 242-2222

Attorneys for Defendant,
CREDIT ONE BANK, N.A.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.L. an infant by his mother and natural guardian SANDRA LEMOS, <br><br>Plaintiff, <br><br>vs. <br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC, <br><br>Defendants. | Case No. 2:17-cv-01512-JAM-DB <br><br>**NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br>**Judge: Hon. John A. Mendez** <br>**Date:   May 8, 2018** <br>**Time:   1:30 p.m.** <br>**Courtroom: 6** |

TO THE HONORABLE COURT AND PLAINTIFF AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 8, 2018, at 1:30 p.m., in Courtroom 6, 501 I Street Sacramento, CA 95814 Defendant Credit One Bank, N.A., ("Defendant") will, and hereby does, move this Court for an order staying this case

{00083674;1}

pending the D.C. Circuit's decision in *ACA Int'l v. Fed. Commc'ns Comm'n*, Appeal No. 15-1211 (D.C. Circuit), which oral argument occurred on October 19, 2016.

This Motion to Stay is based upon this Notice of Motion and Motion to Stay, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings and papers on file with the Court in this action, and upon such oral and written evidence as may be presented at the hearing of this Motion, if any.

This Motion is made following the conference of counsel pursuant to the Court's standing order which took place on March 13, 2018.

**CARLSON & MESSER LLP**

Dated:  March 14, 2018            s/David J. Kaminski
                                  David J. Kaminski
                                  Alex A. Wade
                                  Attorneys for Defendant,
                                  CREDIT ONE BANK, N.A.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Credit One Bank, N.A. ("Defendant") moves to temporarily stay this matter pending the outcome of an important appellate court decision, *ACA International v. Federal Communications Commission*, Case No. 15-1211 (D.C. Cir.) ("*ACA International*").

In *ACA International*, the U.S. Court of Appeals for the D.C. Circuit is hearing a consolidated series of appeals which challenge the Federal Communications Commission's (FCC) July 2015 declaratory ruling regarding the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.[1] In particular, the D.C. Circuit will address the definition of an "automatic telephone dialing system" (ATDS) under the TCPA, which will be a central issue in this case. Further, the D.C. Circuit will also determine whether a consumer is able to revoke consent to be called with an ATDS on a cellular telephone and, if so, what means of revocation are permissible.

As a result, the D.C. Circuit's ruling should significantly alter the landscape of TCPA litigation. Thus, the decision will not only impact the merits of Plaintiff's individual TCPA claim, it will also provide needed guidance for the parties' discovery efforts.

Courts across the nation have stayed all proceedings in similar cases, pending the outcome of this critical ruling in *ACA International*. This Court should follow the collective wisdom of courts nationwide and stay this matter because the *ACA International* ruling may dispose of this matter. Moreover, a stay would allow the parties to avoid further unnecessary litigation fees and expenses

---

[1] *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (concluding that under the Hobbs Act, challenges to the validity of FCC orders cannot be raised in district court; jurisdiction is instead vested in courts of appeals).

{00083674;1}

and prevent a ruling by this Court that may later be inconsistent with the outcome in *ACA International*.

Further, there is no prejudice to Plaintiff from the stay. All telephone calls to the phone number at issue have ceased, so there is no concern of any continuing harm. However, Defendant would be severely prejudiced if no stay is granted. The legal questions of what constitutes an "automatic telephone dialing system" and what constitutes valid revocation under the TCPA must be resolved first before Defendant can have a fair and adequate opportunity to defend itself against Plaintiff's claims, wherein Plaintiff is currently seeking thousands of dollars because of Defendant's alleged calls to his cell phone. Considering the amount in controversy, the fundamental principles of fairness dictate that this matter should not be rushed through discovery and to a conclusion before the D.C. Circuit issues its ruling, as Plaintiff would prefer. The *ACA International* appeal is fully briefed and oral arguments were concluded on October 19, 2016. The D.C. Circuit decides most cases within three months of oral argument, but well over a year has elapsed since the oral argument in *ACA International*. A ruling should be rendered shortly, and accordingly, Defendant respectfully requests a temporary stay.

## II.     NATURE OF DISPUTE - CLAIMS AND RELIEF SOUGHT

Plaintiff asserts causes of action for (1) alleged violation of the TCPA; (2) alleged violations of the Rosenthal Fair Debt Collection Practices Act, §1788 *et seq*. ("RFDCPA"); and (3) invasion pf privacy by intrusion upon seclusion. These claims are based on Defendant's alleged telephone calls, and the TCPA claim is *by far* Plaintiff's main cause of action. In this regard, Plaintiff seeks $500 per call for negligent violations of the TCPA and $1,500 per call for intentional violations of the TCPA, and he alleges that he received numerous calls. In contrast, the RFDCPA allows for statutory damages up to $1,000 and there are no statutory damages available for any purported invasion of privacy; these claims are

insignificant in comparison with the TCPA claim. It should also be noted that Plaintiff does not allege that he currently receives any more calls from Defendant.

### III. ARGUMENT

#### A. This Matter Should Be Stayed Pending the Ruling in *ACA International* Regarding the Definition and Scope of What Constitutes an "Automatic Telephone Dialing System" Under the TCPA

Directly at issue in this case is whether Defendant used an "automatic telephone dialing system" ("ATDS") as defined by the TCPA and by the Federal Communications Commission.

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [ATDS]; (3) without the recipient's prior express consent")." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The FCC's interpretation of the term "automatic telephone dialing system" in its July 10, 2015 Order has been challenged on appeal before the D.C. Circuit in *ACA International v. Federal Communications Commission*, Case No. 15-1211. See Ex. 1 to Defendant's Request for Judicial Notice ("RJN") (*ACA International Amended Petition for Review*). Once the D.C. Circuit rules upon this issue, either Plaintiff's TCPA claim will be extinguished, or the ruling will dictate the scope of the issues in this case because any revised FCC order on the definition of an ATDS has "the force of law" and abrogates prior FCC orders and case law on point. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) (noting that "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA."). Although Courts are split as to whether the *ACA International* decision would be strictly binding, "district courts would be more likely to follow the D.C. Circuit's decision than an

invalidated FCC order." *Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165W, 2017 WL 362025, fn. 1 (W.D.N.Y. Jan. 25, 2017).

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1) (emphasis added). Most modern dialers, including Defendant's, are not designed to generate and dial numbers using a "random or sequential number generator." Therefore, a number of businesses and industry groups filed petitions with the FCC asking whether the word "capacity" meant the "present capacity" of the equipment at the time the calls were made – which would absolve Credit One from TCPA liability—or whether it meant "future capacity" to generate and dial random or sequential numbers through changes in hardware or software. See Ex. 2 to RJN (*July 10, 2015 FCC Ruling at ¶ 11*).

In its July 10, 2015 Ruling, the FCC responded that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* at ¶ 16. In other words, any computerized equipment, including an iPhone, can be an ATDS under the FCC's expansive definition because all it requires is the ability to download software or install hardware that allows for random or sequential number generation. While the FCC admitted that there must be some limit to determining what equipment constituted an ATDS, the only example it could give was that a "rotary-dial phone" could not be converted into an autodialer. *Id.* at ¶ 18. Beyond that, the FCC refused to give any specific guidance as to what did or did not constitute an ATDS. *Id.*

In fact, the majority's ruling was countered by strong dissents from FCC Commissioners Pai and O'Reilly, who opined that the FCC's broadened definition of autodialer would transform nearly all devices, including smartphones, into autodialers. On the specific issue of what constitutes an autodialer, Commissioner Pai (now Chairman Pai) stated:

> The Order dramatically expands the TCPA's reach. The TCPA prohibits a person from making "any call" to a mobile phone "using any automatic telephone dialing system," except in certain defined circumstances. The statute defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." As three separate petitions explain, trial lawyers have sought to apply this prohibition to equipment that cannot store or produce telephone numbers to be called using a random or sequential number generator and that cannot dial such numbers. That position is flatly inconsistent with the TCPA. The statute lays out two things that an automatic telephone dialing system must be able to do or, to use the statutory term, must have the "capacity" to do. If a piece of equipment cannot do those two things—if it cannot store or produce telephone numbers to be called using a random or sequential number generator and if it cannot dial such numbers—then how can it possibly meet the statutory definition? It cannot. To use an analogy, does a one-gallon bucket have the capacity to hold two gallons of water? Of course not.

*Id.* at p. 8074.

The FCC's incredibly overbroad and vague definition of what constitutes an ATDS led to the D.C. Circuit appeal in *ACA International*. *ACA International*'s amended petition for review challenges the FCC's Ruling as arbitrary and capricious, an abuse of discretion, and as inconsistent with various constitutional provisions. See Ex. 1 to RJN (*ACA Amended Petition at p.* 3). The ACA amended petition further challenges the FCC's definition of an ATDS to include "predictive dialers" as exceeding the FCC's statutory authority and going beyond Congress's intent under the TCPA. *Id.* Various other petitioners and intervenors from a number of organizations and industry groups and companies, from the U.S. Chamber of Commerce to Sirius XM Radio, also filed briefs in the case arguing that the FCC's definition of an ATDS is inconsistent with the TCPA's text, history and purpose as well as being arbitrary and capricious. Thus, the outcome of these petitions for review will have a direct and substantial impact on Plaintiff's TCPA claim in this case.

{00083674;1}

5

## B. Courts Across the Nation Have Stayed Proceedings Pending the Ruling in *ACA International* Because the Ruling Is Central To Any TCPA Claim

The very definition of an ATDS—which is a central element of Plaintiff's TCPA claim here—will be decided by the D.C. Circuit appeal. Therefore, "courts in the Ninth Circuit—and around the country—have granted stays of cases involving the TCPA pending the decision in ACA International and resolution of the definition of the word 'capacity.'" *Lily v. Synchrony Financial, et. al.*, No. 2:16-CV-2687-JCM-VCF), 2017 WL 1370698, at *1 (D. Nev., Apr. 7, 2017).[2] The reasoning is sound, "the D.C. Circuit's decision in *ACA International* will

---

[2] A sample of other matters nationwide that have been stayed pending the ruling in *ACA International* include the following: *Rosales v. Heath*, No. 8:17CV87, 2017 WL 2533365, at *2 (D. Neb. June 9, 2017); *Ricketts v. Consumers Energy Co.*, No. 16-CV-13208, 2017 WL 2351731 (E.D. Mich. May 31, 2017); *Kennoy v. Synchrony Bank*, No. 3:16-CV-2034, 2017 WL 2215279, at *3 (M.D. Pa. May 19, 2017); *Coulter v. Ascent Mortg. Res. Grp. LLC*, No. 2:16-CV-02237-SB, 2017 U.S. Dist. LEXIS 76012 (E.D. Cal. May 18, 2017); *Dimarco v. Nationstar Mortg., LLC*, No. 16-CV-6588, 2017 WL 1855197 (W.D.N.Y. May 5, 2017); *Gage v. Cox Communications, Inc.*, No. 216CV02708KJDGWF, 2017 WL 1536220, at *2 (D. Nev., Apr. 27, 2017); *Brickman v. Facebook, Inc.*, No. 16-CV-00751-THE, 2017 WL 1508719, at *4 (N.D. Cal., Apr. 27, 2017); *Tilley v. Ally Financial, Inc.*, No. 16-CV-14056, 2017 WL 1732021 (E.D. Mich. Apr. 26, 2017); *Jacobs v. Ocwen Loan Servicing, LLC*, No. 16-62318-Civ-Scola, 2017 U.S. Dist. LEXIS 57500 (S.D. Fla. Apr. 13, 2017); *Bowden v. Contract Callers, Inc.*, No. 16-CV-06171-MMC) 2017 WL 1732017, at *2 (N.D. Cal., Apr. 5, 2017); *Ankcorn v. Kohl's Corp.*, No. 15-CV-1303, 2017 WL 395707 (N.D. Ill. Jan. 30, 2017); *Washington v. Six Continents Hotels, Inc.*, No. 216CV03719ODWJEMX, 2017 WL 111913, at *2 (C.D. Cal., Jan. 9, 2017); *Joseph v. Barclays Bank Del.*, No. 1:16-CV-00029-AT-RGV, 2017 WL 8202737 (N.D. Ga. Dec. 12, 2016); *Clayton v. Synchrony Bank*, No. 1:16-CV-01241-JLT, 2016 WL 7106018, at *4 (E.D. Cal., Nov. 7, 2016); *Jones v. Credit Acceptance Corp.*, No. 15-13165, 2016 WL 7320919, at *3 (E.D. Mich. Oct. 31, 2016); *Delozier v. Nationstar Mortg.*, No. 3-16-1433, 2016 WL 8201929 (M.D. Tenn. Oct. 27, 2016); *Coatney v. Synchrony Bank*, No. 6:16-CV-389-ORL-22TBS (M.D. Fla. Aug. 2, 2016); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Small v. GE Capital, Inc.*, Case No. 5:15-cv-02479-JGB-DTB, 2016 WL 4502460 (E.D. Cal. June 9, 2016); *Errington v. Time Warner Cable*, Case No. 2:15-cv-02196, 2016 WL 2930696 (C.D. Cal. May 18, 2016); *Chattanond v. Discover Fin. Servs., LLC*, 2016 BL 59996, at *3 (C.D. Cal. Feb. 26, 2016); *Fontes v. Time Warner Cable, Inc.*, Case No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015); *Shahin v. Synchrony Financial, et al.*, Case No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. April 12, 2016); *Abplanalp v. United Collection Bureau, Inc.*, Case No. 3:15-CV-203-RJC-DCK, 2016 WL 81498, at *2-3 (W.D.N.C. Jan. 7, 2016); *Acton v. Intellectual Capital Mgmt.*, Case No. 15-CV-4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015); *Gensel v. Performant Techs., Inc.*, Case No. 13-cv-1196, 2015 WL 6158072 (E.D. Wis. Oct. 21, 2015); *Coatney v. Synchrony Bank, et al.*, Case No. 6:16-cv-00389-ACC-TBS, slip op. (M.D. Fla. Aug. 2, 2016); *Rose v. Wells Fargo Advisors, LLC*, Case No. 1:16-CV-562-CAP, 2016 WL 3369283, at *2 (N.D. Ga. June 14, 2016); *Falack v. Synchrony Financial, Inc.*, Case No. 3:16-cv-01782-MAS-TJB (D.N.J. July 6, 2016); *Rajput v. Synchrony Bank*, 221 F. Supp. 3d 607, 613 (M.D. Pa. 2016); *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818 (D. Minn. 2016).

{00083674;1}

define what devices qualify as automatic dialers for the purposes of the TCPA." *Id.* This Court should follow the collective wisdom of courts across the nation and stay this matter.

Indeed, Plaintiff simply cannot prove his TCPA claim given the uncertainty of what constitutes an ATDS under the TCPA. *Doerken v. USAA Savings Bank*, 2017 WL 1534186, at *3 (C.D. Cal., Apr. 26, 2017) ("Because Plaintiff must prove that Defendant called him using an ATDS to establish a TCPA claim, the definition of an ATDS is indispensable in this litigation."); *Adams v. Nationstar Mortgage, LLC*, Case No. CV 15-9912-DMG (KSx) (C.D. Cal. June 14, 2016) ("Because a successful TCPA claim requires [plaintiff] to prove that [defendant] contacted him using an ATDS, that term's definition directly implicates this action.").

Moreover, this Court should not rule on the TCPA claim now given the current legal uncertainty as to what actually constitutes an ATDS under the TCPA to avoid a ruling that may be inconsistent with the impending holding in *ACA International*. *See Mackiewicz v. Nationstar Mortg.*, Case No. 6:15-CV-00465, slip op. at 2 (M.D. Fla. Nov. 10, 2015) (finding that "a stay would reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment"); *Doerken*, 2017 WL 1534186 at *3 ("A stay will serve the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law") (citations omitted); *Pichardo v. Amerigroup Corp.*, No. 2:17-CV-0276-RFB-CWH, 2017 U.S. Dist. LEXIS 88691, at *1 (D. Nev. June 8, 2017) (granting stay in order to prevent parties from litigating issues that may later become moot). Thus, this matter should be temporarily stayed.

///

///

///

{00083674;1}

### C.  There Is No Prejudice to Plaintiff from the Stay, But Defendant Will Be Prejudiced If A Stay Is Not Granted

Because Defendant has ceased all telephone calls to phone number at issue (which may or may not belong to Plaintiff), Plaintiff will suffer no prejudice from the stay because he cannot show that he is or will suffer any continuing harm that would be exacerbated by a stay.  *Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 U.S. Dist. LEXIS 28867 (D. Or. Mar. 1, 2017) (granting stay in part because plaintiff alleged no further calls were made, rendering the risk of harm to the plaintiff from the stay minimal at best); *Gusman v. Comcast Corp.*, No. 13CV1049-GPC(DHB), 2014 WL 2115472, at *4 (S.D. Cal. May 21, 2014) ("Plaintiff will not be prejudiced since he stopped receiving calls[.]"); *Brickman v. Facebook, Inc.*, No. 16-CV-00751-THE, 2017 WL 1508719, at *4 (N.D. Cal., Apr. 27, 2017) (finding no prejudice because there were no "ongoing calls or text messages to himself, a fading memory[.]").  By contrast, Defendant would be unfairly prejudiced if it had to defend against legally uncertain claims under the TCPA.  Further, if the stay is denied and the parties "go forward with this action, they will be forced to spend time and money conducting discovery on a critical issue of liability without knowing what law will ultimately apply at summary judgment or at trial—a fool's errand, to say the least." *Washington v. Six Continents Hotels, Inc.*, No. 216CV03719ODWJEMX, 2017 WL 111913, at *2 (C.D. Cal. Jan. 9, 2017) (granting stay); *Ricketts v. Consumers Energy Co.*, No. 16-CV-13208, 2017 WL 2351731, at *2 (E.D. Mich. May 31, 2017) (granting stay and holding "Defendant has identified real administrative and economic hardships that would arise if the parties' engaged in extensive fact and expert discovery, only to have the D.C. Circuit overturn the 2015 FCC Order.")

Defendant should be given an opportunity to fairly and adequately defend this matter after the ruling in *ACA International*.

### D. The *ACA International* Appeal Has Been Fully Briefed and a Decision Should Be Rendered Shortly

Defendant is seeking only a temporary stay. As noted by many courts in granting the motion to stay, "the *ACA International* case has been fully briefed and was argued in October 2016; in other words, a stay would likely be short-lived and not result in prejudice to [plaintiff]." *Brickman*, 2017 WL 1508719, at *4 (N.D. Cal., Apr. 27, 2017). The *ACA International* appeal is fully briefed and oral arguments were concluded on October 19, 2016. Therefore, this matter should be stayed.

### E. Although There Are Additional Claims Aside From Plaintiff's TCPA Claim, This Whole Matter Should Be Stayed

There is no question that Plaintiff's TCPA claim comprises Plaintiff's main cause of action. Plaintiff's damages claims under the TCPA constitute 99% of the Plaintiff's total damages claim. Therefore, this Court should grant Defendant's motion to stay as to Plaintiff's TCPA claim and the remaining ancillary causes of action. See e.g. *Bowden v. Contract Callers, Inc.*, No. 16-CV-06171-MMC, 2017 WL 1732017, at *3 (N.D. Cal. Apr. 5, 2017) (staying both TCPA claims and ancillary claims under California's Fair Debt Collection Practices Act).

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this matter be temporarily stayed pending the ruling in *ACA International*.

**CARLSON & MESSER LLP**

Dated: March 14, 2018

s/David J. Kaminski
David J. Kaminski
Alex A. Wade
Attorneys for Defendant,
CREDIT ONE BANK, N.A.

{00083674;1}

## **CERTIFICATE OF SERVICE**

I, David J. Kaminski, hereby certify that on this 14th day of March, 2018, a true and accurate copy of the foregoing Notice of Motion and Motion to Stay; Memorandum of Points and Authorities were served via the District Court ECF System on the Following:

    Email: jonathan.a.stieglitz@gmail.com
           yzelman@marcuszelman.com
           paul.grammatico@kattenlaw.com
           cocarroll@behblaw.com

                                    /s/David J. Kaminski
                                    David J. Kaminski
                                    CARLSON & MESSER LLP