Atkinson-Baker Court Reporters
www.depo.com

1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                      *   *   *   *   *

4     N.L., AN INFANT BY HIS MOTHER)
      AND NATURAL GUARDIAN          )
5     SANDRA LEMOS,                 )
                                    )
6                                   )
               PLAINTIFF,           ) Case No.:
7                                   )2:17-CV-01512-JAM-DB
      VS.                           )
8                                   )
      CREDIT ONE BANK, N.A.,        )
9     GC SERVICES LIMITED           )
      PARTNERSHIP, IENERGIZER       )
10    HOLDINGS, LIMITED, AND        )
      FIRST CONTACT, LLC. A/K/A     )
11    IQOR HOLDINGS, INC.,          )
                                    )
12             DEFENDANTS.          )

13                        CONFIDENTIAL

14    DEPOSITION OF 30(b)(6) JEFFREY MEEK FOR CREDIT ONE BANK

15               Taken at ViewPointe Executive Suites
                           10:23 a.m.
16                  On Friday, June 15, 2018

17                  8275 South Eastern Avenue
                           Suite 200
18                    Las Vegas, Nevada

19

20    Job File No.: AC0484B

21
      ATKINSON-BAKER, INC.
22    COURT REPORTERS
      (800) 288-3376
23    www.depo.com

24
      REPORTED BY:  Julie M. Lever,
25                  RPR, CCR No.: 582

Atkinson-Baker Court Reporters
www.depo.com

```
 1
 2          A P P E A R A N C E S :
 3
 4   FOR PLAINTIFF:
     MARCUS & ZELMAN, LLC.
     BY: YITZCHAK ZELMAN, PHV (Via phone)
 5   701 Cookman Avenue, Suite 300
     Asbury Park, New Jersey 07712
 6   yzelman@marcuszelman.com
 7   FOR THE DEFENDANT: (CREDIT ONE BANK)
     CARLSON & MESSER, LLP.
 8   BY: DAVID J. KAMINSKI, ESQ.
     5901 West Century Boulevard
 9   Suite 1200
     Los Angeles, California   90045
10
11   FOR THE DEFENDANT:
     BASSI EDLIN HUIE & BLUM
12   BY: FARHEENA A. HABIB, ESQ. (Via phone)
     515 South Flower Street
13   Suite 1020
     Los Angeles, California  90071
14   Fhabib@behblaw.com
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1                  JEFFREY MEEK,
 2          having been first duly sworn,
 3          testified as follows:
 4                  EXAMINATION
 5   BY MR. ZELMAN:
 6       Q.   Good morning. Can you please state your
 7   name for the record?
 8       A.  Jeffrey Meek.
 9       Q.   And are you testifying here today on
10   the behalf of Credit One?
11       A.  I am.
12       Q.   What is your role at Credit One?
13       A.  Assistant vice-present portfolio
14   services.
15       Q.   How long have you been in that role
16   for?
17       A.  Almost five years.
18       Q.   As the assistant vice-president?
19       A.  Yes.
20       Q.   Has your role -- well, let me back up
21   for a second.  What are your duties and
22   responsibilities in that role?
23       A.   My duties and responsibilities are the
24   day-to-day operation of the vendors under my span
25   of control.
```

Page 4

```
 1                  I N D E X
 2
     WITNESS:  JEFFREY MEEK
 3
     EXAMINATION                        PAGE
 4
       By Mr. Zelman                      4
 5
 6   EXHIBITS         DESCRIPTION         PAGE
 7
 8   Exhibit A:  Call Logs           17
 9   Exhibit B:  Call Logs           19
10   Exhibit C:  Call Logs           19
11   Exhibit D:  Supplemental Responses to   63
12               Second Set of Interrogatories
13
14   Exhibit E: Responses to Requests for    82
15               Admissions, Set One
16
17   Exhibit F: Declaration of Don Hudecek    86
18
19
20
21
22
23
24
25
```

Page 3

```
 1           MR. KAMINSKI: Farheena, so sorry.  We
 2   started with you on mute, but we only got to the
 3   second question about Mr. Meek being the
 4   assistant vice-president of portfolio services
 5   for five years and he was talking about his
 6   day-to-day operations.
 7           MS. HABIB: Can I get the witness' full
 8   name, please?
 9           THE WITNESS: Jeffrey Meek.  M-E-E-K.
10           MR. KAMINSKI: Okay.  And assistant
11   vice-president of portfolio, okay.
12   BY MR. ZELMAN:
13       Q.   All right. You've been the assistant
14   vice-president for the past five years.  Has your
15   role changed in the past five years?
16       A.  Only materially in the last six months.
17       Q.   How so?
18       A.  Because now I also support the legal
19   department and litigation services in appearing
20   as a witness.
21       Q.   For six months before, you did not
22   appear as a witness?
23       A.  Not for this bank, No.
24       Q.   You mean not for Credit One Bank?
25       A.  Not for Credit One Bank.
```

Page 5

2 (Pages 2 to 5)

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 3 of 31
Atkinson-Baker Court Reporters
www.depo.com

**Page 6**

1  Q.  So who would appear as a witness for
2  Credit One Bank?
3  A.  Prior to that?
4  Q.  Yes.
5  A.  Predominately, Gary Harwood.
6  Q.  Why did you guys switch?
7  A.  We didn't really switch.  It was more
8  of an add, not a subtract.
9  Q.  So you said that you managed it under
10  your span?  I believe that is the word you used.
11  A.  Yes, under my span of control.
12  Q.  And which vendors are that?
13  A.  That would be GC Services,
14  Convergent Outsourcing and part of Alorica.
15  Q.  And these are different vendors that
16  Credit One uses to make calls on its behalf?
17  A.  Yes.
18  Q.  How many vendors are there?
19  A.  Now I believe there are six.
20  Q.  You mentioned three that you oversee,
21  right?
22  A.  Yes.
23  Q.  Okay.
24  A.  Actually, I think there is seven.
25  Q.  All right.  Well, iEnergizer, right?

**Page 7**

1  A.  Right.
2  Q.  And there is First Contact, Iqor?
3  A.  Yes.
4  Q.  There is Sutherland?
5  A.  Sutherland.
6  Q.  Who is the seventh?
7  A.  I guess that is it.  That's it.
8  Q.  Okay. So you said you manage GC,
9  Convergent, part of Alorica.  You do not manage
10  iEnergizer, one of the vendors in this case,
11  correct?
12  A.  Correct.
13  Q.  Is that because you only manage call
14  centers with operations in the U.S.?
15  A.  Call centers with operations in
16  North America.
17  Q.  Okay.  So if they are in North America,
18  you manage it. If they are not in
19  North America, someone else manages it?
20  A.  Correct.
21  Q.  Who is that?
22  A.  That would be Adele Burton.
23  Q.  Does she still work with the company?
24  A.  Yes.
25  Q.  So if Credit One had an issue or a

**Page 8**

1  question with iEnergizer, who would pose that to
2  iEnergizer? Would that be you or Adele Burton?
3  A.  It would typically be Adele or somebody
4  that works for her.
5  Q.  Now, have you spoken with -- for
6  example, GC Services is a defendant in this
7  action.  Have you spoken with them about the
8  claims in this action?
9  A.  I have not.
10  Q.  Do you know if Adele has spoken to
11  iEnergizer about the claims in this action?
12  A.  Not to my knowledge.
13  Q.  Did you guys pull together information
14  once you received this lawsuit?
15  MR. KAMINSKI: Vague and ambiguous with
16  respect to "you guys."
17  BY MR. ZELMAN:
18  Q.  When I say you guys, I mean Credit One.
19  Did Credit One go to the vendors when
20  this lawsuit was brought and ask them for
21  information about these calls?
22  A.  I'm going to say "yes" in the sense
23  that I have seen call logs and material of that
24  nature that would have had to be provided by
25  them.

**Page 9**

1  Q.  So the call logs and material, that
2  wouldn't normally be provided to Credit One if a
3  specific request was made for it?
4  A.  Call logs are generally provided as
5  part of the nightly download, but it's not
6  something that we use in any kind of day-to-day
7  operation.
8  Q.  So call logs and account notes produced
9  in this case.  Are you saying those came from the
10  vendors?
11  A.  They originally came from the vendors.
12  I don't know if they have some warehouse where
13  they keep that stuff or whether they just go back
14  and ask for it.  I think our support group just
15  goes back and asks for the relevant calls for
16  whatever period.
17  Q.  And you say "they ask."  Who are they
18  asking?
19  A.  Somebody at the vendor.
20  Q.  So in this case there was -- we allege
21  that calls were made to my client's phone number.
22  In response to our interrogatories, Credit One
23  identified that calls were made by First Contact,
24  iEnergizer, and GC Services.
25  How did you go about getting that

3 (Pages 6 to 9)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

Page 10

1  answer?  That's what I'm trying to figure out.
2      A.  Oh, I see.  So they would start, of
3  course, with the account number.  So then they
4  would simply look at the account and see who the
5  account had been assigned to during whatever
6  period is under discussion and then request any
7  call log information that those vendors might
8  have for that period.
9      Q.  Well, do you believe that my client had
10  an account with Credit One Bank?
11      A.  If I understand the intricacies of this
12  case, I think she does but it's not the matter at
13  hand.
14      Q.  When you say "she," just to clarify,
15  there are two people listed as plaintiffs in the
16  complaint.  There is N.L. , who is, I think, an
17  infant by his mother and natural guardian,
18  Sandra Lemos.
19          Are you referring to Sandra Lemos?
20      A.  Sandra, I believe, is the one.
21      Q.  So you think Sandra has a Credit One
22  account?
23      A.  I think that she does.
24      Q.  You don't believe that N.L. has a
25  Credit One account, right?

Page 11

1      A.  No.
2      Q.  And are there phone numbers associated
3  with the Sandra Lemos' Credit One account?
4      A.  Are there phone numbers associated with
5  it?
6      Q.  Yes.
7      A.  I imagine that there are.  I don't know
8  what they are.
9      Q.  Do you believe that the phone number in
10  this case is associated with that account?
11          Do you believe that the phone number at
12  issue in this case is associated with that
13  account?
14          MR. KAMINSKI: Objection.  Calls for
15  speculation.
16          THE WITNESS:  Not to my knowledge.
17  BY MR. ZELMAN:
18      Q.  And when you say to your knowledge,
19  what are you basing that on?
20      A.  Well, I base it on I haven't looked at
21  her account, so I really don't know what is on
22  her account or what is associated with her
23  account.
24      Q.  Okay. So to answer that question, you
25  would have to look at the account notes

Page 12

1  associated with Sandra Lemos' account?
2      A.  I would.
3      Q.  Do you know if that's have been
4  produced in this action?
5      A.  Not to my knowledge.
6      Q.  Well, did you review the discovery
7  production, your discovery responses in this
8  case?
9      A.  I did.
10      Q.  When was that?
11      A.  Oh, well, probably over the course of
12  the last week.
13      Q.  So what did you review?
14      A.  So I reviewed all the call recordings,
15  at least the ones that I could get to play.  The
16  account notes, the call logs, the responses, the
17  notice.
18      Q.  All right.  So let's unpack that a
19  little bit.  You said you played all recordings
20  you can get to play?
21      A.  Yes.
22      Q.  I think I know what issue you're
23  referring to.  There has been about fifteen
24  recordings produced in this action by
25  Credit One Bank; is that your recollection?

Page 13

1      A.  That sounds about right.
2      Q.  Of those fifteen recordings, some of
3  them are in MP3 and some are in WAV format?
4      A.  I think that is right, yes.
5      Q.  I was able to play the MP3 files.  Were
6  you --
7      A.  I think those are the ones I was able
8  to play.
9      Q.  And the WAV files you were not able to
10  play?
11      A.  I got an error.
12      Q.  Me too.  Do you know why?
13      A.  I have no idea why.
14      Q.  Do you know why some are recorded in
15  MP3 and some are recorded in WAV?
16      A.  I don't know.  I don't know if it has
17  to do with the vendor that produced them or not
18  because I don't know which ones came from where.
19      Q.  Well, do you believe that vendors
20  switched how they record or do you think some
21  record in MP3 and some record in WAV?
22          MR. KAMINSKI: Objection.  Calls for
23  speculation.  Lacks foundation.
24          THE WITNESS: I really don't know the
25  answer to that.

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

BY MR. ZELMAN:

Q.  I'm looking at the recordings produced in this action.  You have two recordings on the exact same day, February 8, 2017.  These are Bates stamped Credit One Bank 34 and Credit One Bank 35.

If we look at the new account notes that were produced this morning -- actually, not those accounts. I'm sorry.  If we look at the call logs produced this morning -- well, no.  I'm sorry.

If we look at the call logs produced in this action for particularly Bates stamped 25, it appears that those calls on February 8, 2017, were made by First Contact.

Is that the time period that First Contact was assigned to this account?

A.  Most likely.  I'm not as familiar with that most recent stuff, but.

Q.  Okay.  So it appears that First Contact made five calls on February -- on April 8, 2017, pursuant to Credit One Bank 25, and there are two recordings from that date.

A.  Okay.

Q.  One of the recordings is in MP3.  One

Page 14

of those is in WAV. Do you have any idea why?

A.  I have no idea why.

Q.  Did you try to reach out to someone at First Contact and say, hey, I can't play theses recordings.  Can you help us?

A.  No --

MR. KAMINSKI: Objection.  You can answer.

THE WITNESS: That would be someone at the legal department would do that.

BY MR. ZELMAN:

Q.  Did you ask someone in the legal department to do it?

A.  No.

Q.  Did you say, hey, I can't listen to these recordings? Can you reach out to First Contact and get some clarification?

A.  Well, they had the same problem that I do, so.

Q.  Do you know if anyone from the legal department asked at First Contact?

MR. KAMINSKI: Objection to the extent it deals with any attorney-client privilege issues.

THE WITNESS: I don't know.

Page 15

BY MR. ZELMAN:

Q.  If you want to listen to that recording and you can't listen to it at the moment, how would you go about trying to fix that?

A.  Probably the first thing would be to contact the IT department.

Q.  Who at the IT department would you contact?

A.  Just the help desk.

Q.  Would it be Mr. Vanderbeek?

A.  About that?

Q.  Yes.

A.  Probably not.

Q.  Mr. Vanderbeek is the vice-president of IT?

A.  Is he? Okay.  Then that must be what he is.

MR. KAMINSKI: Objection.  Calls for speculation.  Lacks foundation.

BY MR. ZELMAN:

Q.  So, who would you speak to at the IT department? Just the regular help desk?

A.  Just the help desk.

Q.  And you haven't done that yet, right?

A.  I have not.

Page 16

Q.  The demand in discovery made to produce this recording in useable form, is that the way you would go about trying to obtain that?

A.  That's how I do it, yes.

Q.  Okay.  Going back to what we were talking about earlier, which was what did you do to prepare for today's deposition?  You said you reviewed account notes and call logs, correct?

A.  Correct.

Q.  There are several call logs in this case.  Iqor produced a call log in this case.  GC Services produced a call log in this case.  Credit One Bank produced account notes and call logs in this case.

What did you review?

A.  The Credit One account notes and call logs.

Q.  Anything produced or provided by the vendors?

A.  Not that I'm aware of.

MR. ZELMAN: So let's mark this as Exhibit A.

(Exhibit "A" was marked for identification.)

BY MR. ZELMAN:

Page 17

5 (Pages 14 to 17)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

Page 18

```
1        Q.  I am handing to the witness what is
2   marked as Exhibit A.  And this is
3   GC Services production and it is Bates stamped
4   one.
5        MS. HABIB: I'm sorry. Is that
6   GC Services' call log, Exhibit A?
7        MR. ZELMAN: Precisely.  One page.
8   BY MR. ZELMAN:
9        Q.  Let me know when you're ready.
10       A.  I am ready whenever you are.
11       Q.  Okay.  Have you seen this document
12  before?
13       A.  It does not look familiar.
14       Q.  This is the call log produced by
15  GC Services in this case reflecting the calls
16  that they made to my client's phone number.
17          You're saying you've never seen this
18  document before?
19       A.  I don't believe I've seen this document
20  before.
21       Q.  When you reviewed this case to prepare
22  for today's deposition, you reviewed the account
23  notes and call logs maintained by
24  Credit One, right?
25       A.  Correct.
```

Page 19

```
1        MR. ZELMAN: Credit One Bank, Bates
2   stamped 1 through 11, let's mark that as
3   Exhibit B.
4        Credit One Bank 12 through 26, that
5   will be Exhibit C.
6        (Exhibits "B and "C" were
7        marked for identification.)
8   BY MR. ZELMAN:
9        Q.  All right. Take a look at these
10  documents.  Let me know when you're ready.
11       A.  All right.
12       Q.  So are these the documents you reviewed
13  in preparation for today's deposition?
14       A.  Yes, these look familiar.
15       Q.  There are two sets of documents.  The
16  first one is Credit One Bank 1 through 11.  What
17  is this document?
18       A.  This appear to be the account notes.
19       Q.  Who maintains the account notes?
20       A.  Credit One.
21       Q.  Are these all the account notes
22  pertaining to this account?
23       A.  Are these the only account notes
24  pertaining --
25       Q.  Are these all the account notes that
```

Page 20

```
1   Credit One has related to this account?
2        A.  I think there are additional account
3   notes that were provided this morning, so.
4        Q.  Okay.  That's my question.  In
5   discovery, requests were made for account notes
6   and this is what was provided.  This morning
7   about six more pages of account notes were
8   produced.
9          Why would that be?
10       MR. KAMINSKI: Objection.
11  Attorney-client privilege.
12  BY MR. ZELMAN:
13       Q.  Okay. Well, when Credit One wants to
14  pull up account notes, how would they go about
15  doing that?
16       A.  They would go to the CAS system and the
17  account number and pull up the notes.
18       Q.  That's C-A-S?
19       A.  C-A-S.
20       Q.  All right. So would it then pull up all
21  of the notes on the account or only within a
22  specified date range?
23       MR. KAMINSKI: Objection.  Calls for
24  speculation.
25       THE WITNESS: In my experience it will
```

Page 21

```
1   give you all of the notes that we have on the
2   account.
3   BY MR. ZELMAN:
4        Q.  All right.  And so back in December of
5   2017, we received Credit One Bank 1 through 11.
6   So I assume that around that time someone pulled
7   up the account notes and said these are the
8   account notes for the account?
9        A.  Yes.  Somebody in support would have
10  done that.
11       Q.  And you have no idea why another six
12  pages of account notes were produced this
13  morning?
14       MR. KAMINSKI: Objection to the extent
15  it calls for any discussions that you had with
16  attorneys and I object on the grounds of the
17  attorney-client privilege.
18  BY MR. ZELMAN:
19       Q.  Sure.  When you answer this question,
20  you should not provide any information that you
21  spoke to with counsel.
22       A.  Umm --
23       MR. KAMINSKI: And he doesn't want you
24  to guess or speculate.
25       THE WITNESS: I don't know.
```

6 (Pages 18 to 21)

Atkinson-Baker Court Reporters
www.depo.com

BY MR. ZELMAN:

Q.  All right.  Well, let's back up for a second.  Did Credit One directly call my client?  And just -- I can see where your attorney is getting ready to object on that.  The phone number that my client has is 916-308-9847.

Do you know that's the phone number that is at issue in this case?

A.  I do.

Q.  For the purposes of today's deposition, I will call it the 9847 number; is that all right?

A.  That is fine.

Q.  Great. Did Credit One directly call the 9847 number?

A.  Yes.

MR. KAMINSKI: Listen to his question again.

THE WITNESS: Our vendors called that number.

BY MR. ZELMAN:

Q.  Okay. Right.  So Credit One itself did not directly use its own call center to call this phone number?

A.  Not to my knowledge, no.

Page 22

Q.  Okay.  Did you guys hire vendors to make calls to the 9847 number?

MR. KAMINSKI: Objection.  Calls for a legal conclusion.

THE WITNESS: We have vendors who make calls on our behalf.

BY MR. ZELMAN:

Q.  Do they do that out of the goodness of their hearts?

A.  No.

Q.  Do they get paid for their efforts?

A.  They do.

Q.  Who pays that?

A.  Credit One Bank.

Q.  Is there a contract between Credit One Bank and these vendors?

A.  Yes.

Q.  Is that the master services agreement?

A.  Yes.

Q.  Each vendor has their own agreement?

A.  Yes.

Q.  So when calls are made by the vendor --

I believe there was a fair number of vendors identified in this action identified in the call logs that only they were sued in this

Page 24

Q.  Credit One does have its own call center, right?

A.  Yes.

Q.  But they didn't make calls in this specific case?

A.  No.

Q.  So the vendors hired by Credit One made these calls?

MR. KAMINSKI: Objection.  Vague and ambiguous with regard to hire.  You can answer.

THE WITNESS: Yes, our vendors made these calls.

BY MR. ZELMAN:

Q.  I know there was an objection as to being vague and ambiguous.  When you answered the question, did you find anything vague or ambiguous about the question?

MR. KAMINSKI: I want to --

MR. ZELMAN: I'm clarifying so there is no confusion.  That's all.

MR. KAMINSKI: I think it was just vague and ambiguous and possibly calls for a legal conclusion with respect to the use of the word "hire."

BY MR. ZELMAN:

Page 23

action because Credit One predated my client's phone number.

We're only going to talk about First Contact, iEnergizer, and GC Services because all the ones made to my client during that time period.

For example, when calls are made by iEnergizer to the 9847 number, how did Credit One get a record of those calls being made or what transpired on those calls?

A.  We would have asked those vendors to search their records for the 9847 number and produce call logs and recordings relevant to that number.

Q.  Are you saying that before that request to the vendors were made, you have no record of calls or activity on the account?

A.  No, that's --

Q.  My question was, how does Credit One get advised or informed about, you know, calls made on the account by the vendors or activity that took place on the account by the vendors?

A.  I'm trying to  -- activity on the account that is substantive where something happened on the account will be reflected in the

Page 25

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

| | |
|---|---|
| 1　account notes. | 1　　　　Q.　Elaborate. |
| 2　　　Q.　Okay. So if a call was made by a vendor | 2　　　　MR. KAMINSKI:　Vague and ambiguous with |
| 3　and no answer received, for example, no message | 3　respect to the word "elaborate." Could you ask |
| 4　is left, that would be reflected in the account | 4　him a specific question? |
| 5　notes? | 5　BY MR. ZELMAN: |
| 6　　　A.　It might be reflected in the account | 6　　　　Q.　Sure. What does it mean that CASH is a |
| 7　notes. | 7　collection front end? |
| 8　　　Q.　And the account notes are separate from | 8　　　　A.　Okay. So the CASH system is where only |
| 9　the call logs, you're saying? | 9　accounts that are in a delinquent status, they |
| 10　　A.　Yes. | 10　can be viewed through that system by our |
| 11　　Q.　On a daily basis does Credit One get | 11　collection representatives. |
| 12　account notes from the vendors? | 12　　　　The CAS system being the system record |
| 13　　A.　Well, the account notes are updated at | 13　is the system where all activity on the account |
| 14　that time. So whatever activity happens on the | 14　is maintained. |
| 15　account is updated either simultaneously or | 15　　　　MR. KAMINSKI:　Excuse me for one |
| 16　immediately after that action happens. The call | 16　second. I apologize. I should have said this at |
| 17　logs are simply updated when a call is made. | 17　the outset. I would like to have the entire |
| 18　　Q.　Okay. But does Credit One get the call | 18　deposition marked confidential proprietary and |
| 19　logs and the account notes from the vendor on a | 19　subject to the protective order. |
| 20　real time basis or are those two separate things? | 20　　　　MR. ZELMAN: Okay. We can address that |
| 21　　A.　Well, they are two separate things. | 21　afterwards. |
| 22　The account notes are real time or near real | 22　　　　MR. KAMINSKI:　Sure. Of course. |
| 23　time. The call logs, that would be uploaded | 23　BY MR. ZELMAN: |
| 24　nightly in the nightly file. | 24　　　　Q.　Okay. So when you say that accounts |
| 25　　Q.　So let's go back for a moment. You | 25　that are in a delinquent status can be viewed |
| Page 26 | Page 28 |

| | |
|---|---|
| 1　said the account notes are maintained in real | 1　through the system by collection representatives, |
| 2　time or almost real time. How does that work? | 2　are you talking about Credit One representatives |
| 3　　A.　So the collection front end is CASH. | 3　or by the vendors? |
| 4　　Q.　Spell that. | 4　　　　A.　By anybody. |
| 5　　A.　C-A-S-H. | 5　　　　Q.　Okay. So if an account is not in a |
| 6　　Q.　What does that mean the collection, | 6　delinquent status, the vendor wouldn't be able to |
| 7　CASH? | 7　see that account in the CASH system? |
| 8　　A.　That's the collection system. So that | 8　　　　A.　Correct. |
| 9　is the system that a representative, that a | 9　　　　Q.　And would Credit One's own |
| 10　vendor would see. The system of record is the | 10　representatives be able to see it in the CASH |
| 11　CAS system, C-A-S. So the CASH system feeds the | 11　system? |
| 12　CAS system. | 12　　　　A.　No. |
| 13　　Q.　You used a lot of words there. I'm not | 13　　　　Q.　They would have to go to the CAS system |
| 14　getting what you're trying to say. | 14　to see that, right? |
| 15　　A.　So -- | 15　　　　A.　Correct. |
| 16　　　　MR. KAMINSKI:　Well, counsel, he | 16　　　　Q.　Can the vendors see the CAS system? |
| 17　answered your question. If you have a specific | 17　　　　A.　It depends on the vendor and it depends |
| 18　question, ask him. | 18　on the project. |
| 19　BY MR. ZELMAN: | 19　　　　Q.　Can iEnergizer see the CAS system? |
| 20　　Q.　Sure. My summary what of you just said | 20　　　　MR. KAMINSKI:　Objection. Vague and |
| 21　is that CASH is the collection front end. It's a | 21　ambiguous as to time. |
| 22　collection system. That's what vendors would | 22　　　　THE WITNESS: The collectors at |
| 23　see. And the feed is a CAS system which is a | 23　iEnergizer -- let me think about this for just a |
| 24　system of record? | 24　second. |
| 25　　A.　Yes. | 25　　　　MR. KAMINSKI:　Don't guess. |
| Page 27 | Page 29 |

8 (Pages 26 to 29)

Atkinson-Baker Court Reporters
www.depo.com

Page 30

1  THE WITNESS: Some collectors at
2  iEnergizer do have the capability to see the CAS
3  system. You know, I'm not certain of that
4  answer. So I don't know. I know -- yeah, I don't
5  know.
6  BY MR. ZELMAN:
7  Q. All right. So you have got account
8  notes in front of you, right?
9  A. Yes.
10  Q. What do they say there on the first
11  page?
12  A. One.
13  Q. So it's one through eleven. Those are
14  the account notes. Is that a printout of the CAS
15  system?
16  A. Yes.
17  Q. Is there a separate printout of the
18  CASH system?
19  A. No.
20  Q. Why not?
21  A. I don't know why other than they would
22  be the same.
23  Q. Okay. So when a vendor makes a call to
24  a customer on behalf of Credit One Bank and then
25  they want to notate the result of that call, are

Page 31

1  they noting that in CASH or CAS?
2  A. They would be notating that in CASH
3  which then updates CAS.
4  Q. Do the vendors maintain records in
5  their own collection system and then transfer
6  that information over at a later time to CASH?
7  MR. KAMINSKI: Objection. Calls for
8  speculation. Lacks foundation.
9  THE WITNESS: Not to my knowledge.
10  BY MR. ZELMAN:
11  Q. So when a call, for example, at
12  iEnergizer is made to the 9847 number and a
13  message was left in the third party, that would
14  be reflected -- that would be maintained in the
15  CASH system?
16  MR. KAMINSKI: Objection. Vague and
17  ambiguous.
18  THE WITNESS: Could you restate that a
19  little more clearly?
20  BY MR. ZELMAN:
21  Q. Sure. Do you know how iEnergizer
22  customer service representatives go about
23  inputting account activity into the CASH system?
24  A. Customer service or collections?
25  Q. Collections.

Page 32

1  MR. KAMINSKI: I will just object on
2  the grounds of vague and ambiguous with respect
3  to collection activity.
4  THE WITNESS: A collector can make a
5  free form note on an account that reflects
6  whatever material activity happened during that
7  particular call.
8  BY MR. ZELMAN:
9  Q. Do they have the same access to CASH
10  system that Credit One's own collection agents
11  have?
12  MR. KAMINSKI: Asked and answered.
13  THE WITNESS: In general, yes.
14  BY MR. ZELMAN:
15  Q. So a Credit One customer service
16  representative, a vendor customer service
17  representative would just fill in the disposition
18  of a call directly into the CASH system at the
19  time the call is completed or being made?
20  A. Customer service rep, or?
21  Q. Collection. I'm sorry.
22  A. So, yes, they would, both, just they
23  would do it the same way. As the call is either
24  transpiring or immediately after, they would
25  enter whatever note needed to be added to the

Page 33

1  account.
2  Q. So there shouldn't be a discrepancy
3  between the records the vendors have and the
4  records that Credit One has, right?
5  MR. KAMINSKI: Objection. Vague and
6  ambiguous. Lacks foundation. Calls for
7  speculation.
8  THE WITNESS: Well, I don't really know
9  how to answer that. I'm not familiar with any
10  records that the vendors would have other than
11  what we have.
12  BY MR. ZELMAN:
13  Q. To the best of your knowledge, the
14  information you have -- I'm sorry. Strike that.
15  To the best of your knowledge, you have
16  all of the information that the vendors have,
17  right, as regards to the collection activity
18  being made on the account?
19  A. Correct. The status of the account
20  would be in our records.
21  Q. So if they made a call and their
22  records reflect that, your records should reflect
23  that, too, right?
24  MR. KAMINSKI: Objection. Calls for
25  speculation.

9 (Pages 30 to 33)

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 10 of 31
Atkinson-Baker Court Reporters
www.depo.com

THE WITNESS: Well, if you're talking about the call logs, then I would say, yes, they should be the same.

BY MR. ZELMAN:

Q. So if a vendor says we made 100 calls, your call logs for that vendor should say 100 calls, right?

A. Yes.

Q. And if a vendor says spoke with a third party on this and this date, your account records should say the same thing, right?

A. Yes.

Q. If there was a conflict between the call logs maintained by the vendors and the call logs that you have in Credit One software, which one would you believe?

MR. KAMINSKI: Wait. I'm sorry. Could you hold that question a second? Could you give me one second? Can we go off the record for one second?

MR. ZELMAN: Sure.

MR. KAMINSKI: Thank you, so much.

(Off the record.)

MR. ZELMAN: Back on the record.

MR. KAMINSKI: Could I have the last

Page 34

question read back?

(Question read by the court reporter.)

MR. KAMINSKI: Vague and ambiguous. Calls for speculation. Incomplete hypothetical. Did you mean to -- do you want to clarify that with regard to CASH versus CAS?

BY MR. ZELMAN:

Q. Do you understand the question as it's asked right now?

A. I think I do.

MR. KAMINSKI: But don't guess. If you don't, he will clarify.

BY MR. ZELMAN:

Q. Okay. If there is a discrepancy between the call log maintained by the vendor and the record maintained from the CASH system, which would you believe?

MR. KAMINSKI: Objection. Vague and ambiguous. Could you break it down when you talk about with respect to a particular disposition that a vendor would make on a particular account?

BY MR. ZELMAN:

Q. If a vendors says we made 100 calls on this account?

Page 35

A. Right.

Q. But when you look at the CASH system, you only see 90 calls made by that vendor. Which record would you believe?

A. I think I understand now. The two things don't necessarily link up. Call logs -- calls that are made by any vendor, not all of the calls will necessarily show up in the account notes. So they won't be in CASH or CAS because if nothing material happened on a call, it is unlikely for it to be there.

Now, there are instances where a call will get transferred to an agent or an agent is making a call directly and that will appear in the notes because they are on the account. They're physically looking at the account on the screen. So if there is a discrepancy between the call logs, then I would contact the vendor and ask them why we only got what we got.

Q. Let me ask you this. You also have in front of you Exhibit C.

A. I do.

Q. Which is Bates stamped 12 through 26.

A. Yes.

Q. What is this call log? Where did it

Page 36

come from?

A. Well, this would have come from originally the vendors.

Q. That entire thing came from the vendors?

A. Yes.

Q. In that form?

A. No, not in this format.

Q. It looks like, almost like a printout of an Excel spreadsheet with about five or six rows.

A. That I don't know. I don't know what the original format of the document was, but it's compiled from the various call logs.

Q. Who compiled it?

A. Somebody in litigation support.

Q. At Credit One?

A. Yes.

Q. That's my point. In Exhibit A, we have a call log from GC Services. That's their call log?

A. Yes.

Q. And GC Services maintains a number of calls but then there is a bunch of other vendors as well, right?

Page 37

10 (Pages 34 to 37)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

A.  Yes.
Q.  This call log is a composite of all the calls made by all the vendors on this account?
A.  As far as I know.
Q.  You don't know who created this call log?
A.  I don't know who created it.  Somebody in the legal department.
Q.  Does this call log look accurate?
MR. KAMINSKI:  Objection.  Calls for speculation.
THE WITNESS: I believe there was an additional set of calls that were sent over this morning.
BY MR. ZELMAN:
Q.  No, those were account notes that were sent over this morning.
A.  Oh, account notes. I'm sorry.
As far as I know, it's complete.
Q.  So as far as you know, this is an accurate call log, right?
A.  Yes.
Q.  Does it accurately reflect all of the calls made by Credit One on the 9847 number?
A.  Well, made by our vendors, yes.

Page 38

Q.  But, again, those calls were made by Credit One, right?
A.  Correct.
Q.  So these calls -- all the calls made on behalf of Credit One Bank to the 9847 number?
A.  Yes.
Q.  All right. So to clarify an earlier question now, if there was a discrepancy between this call log and the call logs maintained by the vendors, which would you believe?
A.  Well, since the vendor is the source of the call log, they're the source, so I would.
Q.  You would go with their version?
A.  I would go with their version.
Q.  Okay. And if there was a discrepancy between the account notes, which you have in front of you Bates stamped 1 through 11, and this call log in terms of dispositions, which one would you believe?
A.  The call notes -- the account notes.
Q.  Just to clarify.  When I say disposition, that's the result of the call, right?
A.  Correct.
Q.  So if there was a result of a call and

Page 39

the account notes and different result on this call log compiled by Credit One, you would go with the account notes?
A.  I would go with the account notes.
Q.  Is there any reason why there would be a discrepancy?
MR. KAMINSKI:  Objection.  Calls for speculation.  Vague and ambiguous.  Lacks foundation.
BY MR. ZELMAN:
Q.  The answer was no?
A.  Not to my knowledge.
Q.  Let's go through it. If you take a moment and look at Exhibit A.  Exhibit A, again, is a call log produced by GC Services in this action.
A.  Okay.
Q.  It's one page.  So if you count to fifty, then I would ask you to count the calls on that page.
MR. KAMINSKI:  Counsel, why are we having the witness do this?  The documents speak for themselves.  It says how many calls there are, so.
BY MR. ZELMAN:

Page 40

Q.  I will clarify in very short order. This won't be a very long deposition.
A.  I counted forty-nine.
Q.  That's what I counted.  That's why there was only requirement that you count to fifty.
A.  Okay.
Q.  Do you know how many calls are reflected in the Credit One Bank call log that was complied by Credit One Bank for GC Services?
A.  I do not.
Q.  Well, you have those calls in front of you, right?
A.  I do.
Q.  There should only be forty-nine, right?
MR. KAMINSKI:  Calls for speculation.
THE WITNESS: Did you want me to count them?
BY MR. ZELMAN:
Q.  Sure.  Well, I'm going to ask for you to count the calls reflected in the Credit One call log as it pertains to calls made by GC Services.
A.  Fifty-two.
Q.  You counted fifty-two calls from

Page 41

11 (Pages 38 to 41)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

GC Services?

A. I believe so.

Q. Can you double check that? I counted forty-two.

A. Forty-two.

Q. Okay. That's the number I got. Is there any reason why the Credit One call log would be missing roughly fifteen percent of the calls made by GC Services?

MR. KAMINSKI: Objection. Calls for speculation. Lacks foundation.

THE WITNESS: I don't know why.

BY MR. ZELMAN:

Q. Okay. Have you ever seen before a discrepancy between the call logs maintained by the vendor and the call logs provided by Credit One?

A. Not that I can --

MR. KAMINSKI: Wait. Objection. Calls for speculation. Lacks foundation. Incomplete hypothetical. Vague and ambiguous.

THE WITNESS: Not that I can recall.

BY MR. ZELMAN:

Q. Such a situation doesn't sound familiar to you?

Page 42

A. It's not something that comes up normally, no.

Q. Okay. I have seen this in every single one of my Credit One cases, which is why I'm asking. You are telling me you have never seen a number of call logs by Credit One not matching up to the number of calls by the vendors?

A. I don't recall that coming up, which is not to say that it never has. I just don't remember it.

Q. So we don't know who created this, which actual person created this call log?

A. I have no idea.

MR. KAMINSKI: Are you referring to the GC?

MR. ZELMAN: No. I'm referring to the Credit One call log.

MR. KAMINSKI: Okay.

BY MR. ZELMAN:

Q. You have no idea who prepared it?

A. Somebody in the legal department.

Q. Do you have any idea what they looked at when they put this together?

MR. KAMINSKI: Objection. Calls for speculation. Lacks foundation.

Page 43

THE WITNESS: Actually, I don't.

BY MR. ZELMAN:

Q. Do you know if anyone checks over that person's work?

MR. KAMINSKI: Objection. Calls for speculation. Lacks foundation. He already testified that he didn't know who it was, so he would have no idea who is checking over whose work.

THE WITNESS: I don't know.

BY MR. ZELMAN:

Q. All right. Do you know who you were trying to reach when you were calling this phone number?

A. I believe it was Derrick Vincent.

Q. Did you ever make contact with Derrick Vincent at this phone number?

A. I think on one call that was him, but other than that I don't remember any other.

Q. Do you know who that was?

A. I do not. I think -- no, I don't want to say because I'm just guessing.

Q. Well, you have the account notes in front of you, right?

A. Yes.

Page 44

Q. We're hoping that they are accurate, right?

A. We are.

Q. Would it be somewhere in there?

A. It should be. It looks like he got a new card at one point, called in a lost and stolen.

Q. What are you looking at?

A. The account notes.

Q. What page, Bates stamp?

A. I'm sorry. Ten.

Q. Okay. I see what you're referring to. It looks like back in July of 2014?

A. Yes.

Q. Do you know if that involved the 9847 number, that call?

A. I cannot tell based on this.

Q. So, again, based on this, do you see last time contact made with Derrick Vincent at the 9847 number?

MR. KAMINSKI: Could you repeat the question?

BY MR. ZELMAN:

Q. Based on the information in front of you, is there anything that looks like the last

Page 45

12 (Pages 42 to 45)

1  day you made contact with Derrick Vincent at the
2  9847 number?
3      A.  Yes.  I'm looking through it now to see
4  if there is anything else.
5      Q.  Sure.
6          MR. KAMINSKI:  Take your time.
7          THE WITNESS: It looks like the last
8  contact was January of 2017.
9  BY MR. ZELMAN:
10      Q.  What page are you looking at?
11      A.  Bates 3.
12      Q.  All right.  What date did you say?
13      A.  January 12, 2017.
14      Q.  You're looking -- I see the entries for
15  January 12.  What tells you that Derrick Vincent
16  was reached it the 9847 number on that date?
17      A.  The designation that it was an inbound
18  from the home number, customer called in and
19  spoke with primary, promised to pay direct check,
20  1/12/17.
21      Q.  So you are assuming that the inbound
22  home number was the 9847 number?
23      A.  I am making that conclusion because on
24  February 20, we show an outbound call to the home
25  number and the 9847 is listed as the phone number

Page 46

1  and there is no indication of any phone number
2  change prior to that date.
3      Q.  Well, how did you get a hold of his
4  phone number?
5      A.  The card member, I believe, called in
6  at some point on this number.
7      Q.  Do you know when?
8      A.  I believe it was back in 2014.
9      Q.  All right.  Do you see anything in the
10  account number in spite of that?
11      A.  Well, let's see.
12          MR. KAMINSKI:  I apologize.  Could I
13  have that last question read back?
14          (Question read by the
15          court reporter.)
16  BY MR. ZELMAN:
17      Q.  Do you see anything in the account
18  notes that would tell you when you got a hold of
19  his phone number or how you got a hold of this
20  phone number?
21          MR. KAMINSKI:  A hold of the person's
22  actual phone number?
23  BY MR. ZELMAN:
24      Q.  No. How did you get this phone number?
25      A.  I don't see that reflected in these

Page 47

1  notes.
2      Q.  In response to Interrogatory No. 5
3  served in this action, we asked:
4          "State how the did -- obtained or was
5  provided a phone number (916) 308-9847, and
6  identify whether that number was obtained by a
7  skip trace, by a caller ID capture, or some other
8  method."
9          The answer was:  "The defendant
10  obtained the 9847 phone number when it was used
11  to call defendant on March 26, 2014."
12          Does that date sound familiar to you?
13      A.  It does.
14      Q.  So do you see an entry here on
15  March 26, 2014?
16      A.  I do not.
17      Q.  Should something like that be reflected
18  in this?
19      A.  Are you talking about the adding of the
20  phone number?
21      Q.  Yes.
22      A.  I would think so.
23      Q.  But you don't see it, right?
24      A.  I do not.
25      Q.  In fact, I don't see any account

Page 48

1  activity on March 26, 2014, do you?
2      A.  I do not.
3      Q.  Do you have any idea why that would be?
4      A.  I do not know.
5      Q.  Not looking through your records, is
6  there?
7          MR. KAMINSKI:  Objection.  Harassing the
8  witness.  Argumentative.
9  BY MR. ZELMAN:
10      Q.  Okay.  Well, in discovery response,
11  someone on behalf of Credit One Bank said that
12  this phone number was obtained when it was used
13  to call in to Credit One Bank on March 26, 2014.
14          So with that answer, do you take it
15  that that phone number was provided by the
16  cardholder or was it captured by Credit One Bank?
17          MR. KAMINSKI:  Objection.  Vague and
18  ambiguous.  Lacks foundation.
19          THE WITNESS: Well, pursuant to our
20  terms and conditions, if they contacted us on
21  that number, then we have consent.  So I'm sure
22  we captured that number and --
23  BY MR. ZELMAN:
24      Q.  So the number was called in on that
25  date -- I'm sorry.  If someone called in to

Page 49

13 (Pages 46 to 49)

Atkinson-Baker Court Reporters
www.depo.com

1   Credit One Bank from that phone number, and
2   according to your discovery response you would
3   assume that the number was captured out of the
4   system?
5       A.  Yes.
6       Q.  Okay.  And then when the account was
7   delinquent, calls were made to that phone number,
8   correct?
9       A.  Correct.
10      Q.  Were calls made to that phone number
11  via like manual calling methods or were they made
12  by a dialing system?
13      A.  I don't know.  I can't tell from these.
14      Q.  Do you know what dialing systems were
15  used to make the calls in this case?
16      A.  I believe that over this period there
17  were several, and they're detailed in the
18  responses.
19      Q.  Certainly.  And it's relevant here,
20  we're talking about GC Services and iEnergizer
21  because First Contact is not a part of the case
22  anymore.  And both of those vendors were
23  identified as having used the Aspect dialing
24  system.
25      A.  That sounds right.

Page 50

1       Q.  So to the best of your knowledge, after
2   this phone number was captured in March of 2014
3   and the account went delinquent, calls were then
4   made on behalf of Credit One Bank by the Aspect
5   dialing system?
6       A.  It would seem so, yes.
7       Q.  Do you know if you ever made contact
8   with my client at the 9847 number?
9           MR. KAMINSKI:  Objection.  Vague and
10  ambiguous as to my "client."
11  BY MR. ZELMAN:
12      Q.  My client in this case, I referred to
13  in the caption, is N.L., which is the initials of
14  the minor plaintiff represented by his mother,
15  Sandra Lemos. So that's who I refer to by my
16  client.
17          Do you know if Credit One Bank made
18  contact with either N.L. or Sandra Lemos at that
19  home?
20      A.  I think at some point I did hear a
21  recording that I think was contact with your
22  client.
23      Q.  Do you know what Bates stamp that
24  recording was?
25      A.  I don't remember.

Page 51

1       Q.  Do you know what happened on that
2   conversation?
3       A.  If it's the one I'm thinking of, there
4   wasn't much of a conversation.  We identified
5   ourselves, or the vendor identified themselves as
6   Credit One Bank, and there was a question, Who is
7   this? or something to that effect.  Then that was
8   it.
9       Q.  And that's it?  Nothing else?
10      A.  Not that I recall, no.
11      Q.  And you're basing this off of the
12  recordings?
13      A.  Yes.
14      Q.  Let me ask you about that.  Do you know
15  how many calls were made to the 9847 number?
16      A.  How many calls in total?
17      Q.  Yes.
18      A.  I want to say just under 200.
19      Q.  Do you know how many recordings were
20  produced in this action?
21      A.  Ten or twelve.
22      Q.  I believe it was fifteen.
23      A.  Okay.  Fifteen.
24      Q.  So why do we only have fifteen
25  recordings for close to 200 calls?

Page 52

1       A.  Well, I can think of several reasons.
2   Number one, if there is no payment on the call,
3   the retention policy that we have is only ninety
4   days.  So that would be certainly one reason.
5           The other reason is perhaps nothing
6   material happened on the call.  It was just an
7   answering machine and there were several calls
8   where they were just answering machines.
9       Q.  So let's talk about that retention
10  period for a second.
11      A.  Okay.
12      Q.  What is the retention period for
13  recordings of calls?
14      A.  If the call results in a payment, the
15  retention period is two years.  All other calls
16  are ninety days.
17      Q.  Has that policy been changed recently?
18      A.  It is in the process of being changed.
19      Q.  What is it being changed to?
20      A.  Two years for all calls.
21      Q.  Has it been changed yet?
22      A.  No.  It's in the process of.
23      Q.  I'm just clarifying that.  Do you know
24  if the vendors are already doing that or they are
25  not doing that yet?

Page 53

14 (Pages 50 to 53)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

1    A.  Some of them may be doing it.  We are
2    in the process of drafting new contractual
3    language, and I know that not all of the vendors
4    have received that.  Now, they may be voluntarily
5    doing that.  I don't know.
6        Q.  Do you know if iEnergizer is doing it?
7        MR. KAMINSKI:  Objection.  Calls for
8    speculation.
9        THE WITNESS: I don't know.
10   BY MR. ZELMAN:
11       Q.  Okay. So if a call does not result in a
12   payment or a promise to pay, you're not going to
13   save that call for more than ninety days, that
14   recording?
15       A.  Correct.
16       Q.  If contact is made by someone and they
17   saying you're calling the wrong person and
18   obviously because it's the wrong person they
19   don't promise to pay or make a payment, you're
20   not going to save that recording for more than
21   ninety days, right?
22       MR. KAMINSKI:  Objection.  Calls for
23   speculation.
24       THE WITNESS: Correct.
25   BY MR. ZELMAN:

Page 54

1        Q.  So other than that one recording you
2    referred to where you said there was a question,
3    Who is this? and then no more contact, do you
4    know if any other contact was made with my
5    client?
6        A.  Not to my knowledge.
7        Q.  What are you basing that off of?
8        A.  The call recordings and the account
9    notes.
10       Q.  Which account notes?
11       A.  The only account notes I'm aware of
12   which are Credit One's account notes.
13       Q.  Okay. Have you reviewed plaintiff's
14   discovery responses in this action?
15       A.  Not in detail.
16       MR. KAMINSKI:  Do you know what you --
17   could you rephrase the question?
18   BY MR. ZELMAN:
19       Q.  Sure.  Have you reviewed plaintiff's
20   discovery responses in this action including
21   plaintiff's response to defendant's
22   interrogatories?
23       MR. KAMINSKI:  He's talking about
24   plaintiff's responses to discovery served by
25   Credit One Bank.

Page 55

1        THE WITNESS: No, I don't think so.
2    BY MR. ZELMAN:
3        Q.  Do you know if any contact was made
4    with my client in February of 2017?
5        A.  Unless that's the date of that
6    recording, I don't know of any other.
7        Q.  What recording?
8        A.  What we just discussed.
9        Q.  Now, let me ask you this.  Do you have
10   the recording produced by Credit One in this
11   action?
12       A.  Say again.  I'm sorry.
13       Q.  Here with you right now, do you have
14   the recordings produced by Credit One in this
15   action?
16       A.  I don't.
17       Q.  I'm going to show you what is on my
18   screen which has the recordings produced by
19   Credit One in this action.
20       A.  Okay.
21       Q.  Let me know if these look familiar to
22   you.
23       A.  Yes, those do look familiar.
24       Q.  There are titles next to each of the
25   recordings, right?

Page 56

1        A.  There are.
2        Q.  The first one, look at the Bates stamp
3    COB and then there are sequential numbers.
4        A.  Yes.
5        Q.  Just for purposes of this record, the
6    recordings are Bates stamped COB-NL-027 all the
7    way down to 041.
8        Do you see that?
9        A.  Yes.
10       Q.  After the Bates stamp numbers of each
11   one, there is a series of numbers.  Do you see
12   those?
13       A.  I do.
14       Q.  What are those numbers?
15       A.  They look like dates.
16       Q.  Those appear to be dates and the day?
17       A.  Yes.
18       Q.  Do you see any recordings in that list,
19   which I will represent are all of the recordings
20   produced by Credit One in this action in
21   February of 2017?
22       A.  No, I do not.
23       Q.  Okay.
24       MR. KAMINSKI:  When you say February,
25   could you say that date again?  February what?

Page 57

15 (Pages 54 to 57)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

---

**Page 58**

1        MR. ZELMAN: February 2017.
2        MR. KAMINSKI: Do you have a specific
3  day?
4        MR. ZELMAN: Anything in February 2017.
5        MR. KAMINSKI: Okay.
6        MR. ZELMAN: I don't see anything. I
7  wanted to clarify that I'm not misreading this.
8  BY MR. ZELMAN:
9        Q.  So to the best of your knowledge,
10  Credit One did not make contact with my client in
11  February of 2017?
12        A.  To the best of my knowledge.
13        Q.  Now, in response to interrogatories, my
14  client responded that about February 21, 2017, he
15  spoke with Credit One's representatives and
16  advised them they had the wrong phone number and
17  to stop calling them.
18        Did you review that response to
19  defendant's interrogatories?
20        A.  I do think like I saw that, yes.
21        Q.  So that's my client's recollection of
22  what happened in February of 2017.  Now, there
23  are no recordings of that call, correct?
24        A.  Not that I know of, no.
25        Q.  Do you know if one ever existed but it

---

**Page 59**

1  was just not retained?
2        A.  Not that I know of.
3        Q.  You wouldn't know because if it was not
4  retained, it's gone, right?
5        A.  It could be.
6        Q.  Well, is that yes or no?
7        A.  I don't know.
8        Q.  After the ninety days, does someone
9  still keep the recording somewhere?
10        MR. KAMINSKI:  Objection.  Calls for
11  speculation.
12        THE WITNESS: I don't know.
13  BY MR. ZELMAN:
14        Q.  Credit One doesn't keep them, right?
15        A.  No.
16        Q.  What if you go to your account notes
17  for February 21, 2017, do you see anything
18  related to this cause of action with my client?
19        A.  No.
20        Q.  How about February 22, 2017?
21        A.  I see an entry here, spoke with third
22  party.  No message left.
23        Q.  Okay.  So it looks like calls were made
24  to the third party, and to the best of your
25  knowledge that would mean a party other than

---

**Page 60**

1  Derrick Vincent, right?
2        A.  Correct.
3        Q.  And it says no message left. On what
4  page are you on in the Bates stamp?
5        A.  Two.
6        Q.  One moment. I'm there.  And you're
7  looking at the very last line on this page?
8        A.  Yes.
9        Q.  All right. Credit One account notes
10  reflect that a conversation was held by a third
11  party on February 22, 2017, at 2:30 p.m. where it
12  says, spoke with third party, no message left,
13  correct?
14        A.  Correct.
15        Q.  What about on the call log maintained
16  by Credit One, the other Bates stamped document
17  you have in front of you?  Do you see anything
18  there for that date?
19        MR. KAMINSKI:  On which date are you
20  referring to?
21        MR. ZELMAN: The date we just referred
22  to, February 22, 2017. It's about 2:30 in the
23  afternoon.
24        THE WITNESS: All right.  I'm sorry.
25  What was your question?

---

**Page 61**

1  BY MR. ZELMAN:
2        Q.  Do you see anything in these call logs
3  about that date on that call?
4        A.  I see a call at 2:29.
5        Q.  Okay. And the one on the account notes
6  says 2:30, right?
7        A.  Yes.
8        Q.  Can we assume it's the same one?
9        A.  We can.
10        Q.  What is the disposition of this call,
11  in the call log?
12        A.  In the call log it says left message,
13  machine, answering machine, detect ID.
14        Q.  Here it says left message, machine,
15  AMDID. Does that meaning that that answering
16  message was active?
17        A.  Yes.
18        Q.  Did you assume that a voicemail was
19  reached on this date?
20        A.  Yes.
21        Q.  And it says Allied machine.  So you
22  left a message on the machine?
23        A.  That is what it says.
24        Q.  Here it says, left message on an
25  answering machine.  And in the account notes it

---

16 (Pages 58 to 61)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Case 2:17-cv-01512-JAM-DB  Document 50-8  Filed 09/21/18  Page 17 of 31
Atkinson-Baker Court Reporters
www.depo.com

1  says spoke with a third party, correct?
2      A.  Correct.
3      Q.  Can you explain that?
4      A.  Oh, absolutely not.
5      Q.  Me neither. Just to clarify, you don't
6  have a recording of this call?
7      A.  Not that I'm aware of, no.
8      Q.  Between the two, the call log compiled
9  based from someone in the legal department or the
10  account note, which one would you go with?
11      A.  The account notes are the official
12  record of what happened on the call. I have no
13  idea what these messages over here.
14      Q.  When you say these messages over here,
15  what are you talking about?
16      A.  On the call log.
17      Q.  So between the Bates stamp 19 and
18  Bates stamp 2, you would go with Bate stamp 19?
19      MR. KAMINSKI:  Objection. Vague and
20  ambiguous when you keep on saying go with. So
21  could you just be clear?
22  BY MR. ZELMAN:
23      Q.  If you are trying to form an accurate
24  comprehension of what occurred on February 22,
25  2017, would you go with what was reflected on

Page 62

1      A.  I've seen it briefly.
2      Q.  And in that document we basically are
3  asking, we want to know the name, make, and model
4  and particularly the mode in which the calls were
5  made on behalf of Credit One Bank.
6      Do you see that?
7      MR. KAMINSKI:  Which question are you
8  referring to?
9  BY MR. ZELMAN:
10      Q.  The one interrogatory in the document.
11  Take your time.
12      A.  So what is your question?
13      Q.  My question is, there is no mode
14  identified in response to this interrogatory,
15  simply the name of the dialing system and that's
16  it. So I'm asking, do you know why not, why
17  there is no mode in this call?
18      MR. KAMINSKI:  Objection. Vague and
19  ambiguous as to time.
20      THE WITNESS: I don't know why.
21  BY MR. ZELMAN:
22      Q.  Well, you don't handle the relationship
23  of iEnergizer, right?
24      A.  Correct.
25      Q.  But you handle it, for example, with

Page 64

1  Bates stamp 19 or would you go with what was
2  reflected in Bates stamp 2?
3      A.  What is reflected in the call notes,
4  Bates stamp 2.
5      Q.  The call --
6      A.  The account notes, I'm sorry.
7      MR. ZELMAN: Okay. If it is all right
8  with everyone, I would like to just take a really
9  short break. We have been going over an hour.
10      (Off the record.)
11      MR. ZELMAN: Back on the record.
12  BY MR. ZELMAN:
13      Q.  Did you speak to Adele Burton to
14  prepare for today's deposition?
15      A.  I did not.
16      Q.  Do you know if she ever spoke to
17  iEnergizer about being a part of this case?
18      A.  Not to my knowledge.
19      MR. ZELMAN: This is going to be marked
20  as Exhibit D, Credit One's supplemental responses
21  to the second set of interrogatories.
22      (Exhibit "D" was
23      marked for identification.)
24  BY MR. ZELMAN:
25      Q.  Have you seen this document before?

Page 63

1  GC Services, correct?
2      A.  Correct.
3      Q.  So if I wanted to know the mode that
4  GC Services used to make these calls -- do you
5  understand when I say the word "mode"?
6      A.  I know that the dialers have various
7  modes.
8      Q.  Do you know what modes the Aspect
9  system has?
10      A.  I have no idea.
11      Q.  I believe it has something called
12  blaster, something called predictive, something
13  called manual. Do these sound familiar?
14      A.  They do.
15      Q.  So if you want to know what mode
16  GC Services was using to make calls on behalf of
17  Credit One Bank, how would you go about finding
18  that out?
19      A.  I would call our accounting there and I
20  guess they would contact their dialer people.
21      Q.  You would call your accounting at
22  GC Services?
23      A.  Yes.
24      Q.  You would call the vendor and ask them
25  this information?

Page 65

17 (Pages 62 to 65)

Atkinson-Baker Court Reporters
www.depo.com

1    A.  Yes.
2    Q.  And you would hope that they would be
3  able to provide it to you?
4    A.  Yes.
5    Q.  If they had that information, would you
6  expect them to give it to you?
7    A.  Yes.
8    Q.  And as to Credit One Bank, do you feel
9  like Credit One Bank is entitled to that
10  information if they request it?
11        MR. KAMINSKI:  Objection.  Calls for
12  speculation.  Lacks foundation.  Argumentative.
13        THE WITNESS: As far as I know, yes.
14  BY MR. ZELMAN:
15    Q.  I don't want to argue. My question is,
16  is Credit One entitled to receive this type of
17  information from its vendor?
18        MR. KAMINSKI:  Objection.  Vague and
19  ambiguous with respect to entitled.
20        THE WITNESS: I believe so.
21  BY MR. ZELMAN:
22    Q.  And you don't know if such a request
23  was made by Adele Burton?
24    A.  I do not.
25    Q.  Adele Burton would?

Page 66

1        MR. KAMINSKI:  Objection.  Calls for
2  speculation.  Lacks foundation.
3        THE WITNESS: I doubt it.
4  BY MR. ZELMAN:
5    Q.  Why do you doubt it?
6    A.  Because I think that these questions
7  would have gone through our legal department.
8    Q.  Well, that's what I'm asking.  Does the
9  legal department pose those questions to the
10  vendors or would either you or Adele do it?
11        MR. KAMINSKI: Objection. Calls for
12  speculation.
13        THE WITNESS: Typically, I have not been
14  asked and I don't believe Adele has been asked to
15  provide information of this type.
16  BY MR. ZELMAN:
17    Q.  If you were asked, if this
18  interrogatory would have been the exact same
19  interrogatory but instead of asking about
20  iEnergizer it would have asked about
21  GC Services, do you believe that question would
22  come to your office or do you think it would
23  never come through your office at all or it would
24  go to the legal department and then to the
25  vendor?

Page 67

1        MR. KAMINSKI: Objection.  Vague and
2  ambiguous.  Lacks foundation and incomplete
3  hypothetical.
4        THE WITNESS:  I don't know about in the
5  future.  I just know in the past, they would
6  handle it.  I wouldn't even be aware of it,
7  necessarily.
8  BY MR. ZELMAN:
9    Q.  Did you speak to anyone in the legal
10  department about this case before coming here
11  today?
12        MR. KAMINSKI:  Objection to the extent
13  that constitutes discussions that are
14  attorney-client privileged.  I object to the
15  question.
16        THE WITNESS: Yes.
17  BY MR. ZELMAN:
18    Q.  Okay.  Who did you speak with?
19        MR. KAMINSKI:  Objection.  Calls for
20  attorney-client privilege.
21  BY MR. ZELMAN:
22    Q.  Do you have the identity of the person
23  you spoke to?
24    A.  Narine Yenovkian.
25    Q.  Can you spell that?

Page 68

1    A.  N-A-R-I-N-E -- Y-E-N-O-V-K-I-A-N.
2    Q.  What is her role?
3    A.  She's an associate counsel.
4    Q.  She's an attorney?
5    A.  Yes.
6    Q.  All right.  Let's talk quickly about
7  the relationship between Credit One Bank and its
8  vendors.  What is the relationship between
9  Credit One Bank and its vendors?  How is it
10  structured?
11        MR. KAMINSKI:  Objection.  Vague and
12  ambiguous.  Lacks foundation.  Calls for
13  speculation.  Please restate your question and
14  make it more specific.
15  BY MR. ZELMAN:
16    Q.  Sure.  Credit One Bank works with, I
17  believe, you identified six different vendors?
18    A.  Yes.
19    Q.  To contact its customers?
20    A.  Yes.
21    Q.  And is there a separate contractor
22  agreement with each vendor?
23    A.  Yes.
24    Q.  Does Credit One Bank hire these vendors
25  directly?

Page 69

18 (Pages 66 to 69)

Case 2:17-cv-01512-JAM-DB  Document 50-8  Filed 09/21/18  Page 19 of 31
Atkinson-Baker Court Reporters
www.depo.com

1    MR. KAMINSKI: Objection. To the use
2  of the word "hire." Calls for a legal conclusion.
3    THE WITNESS: What do you mean by
4  directly?
5  BY MR. ZELMAN:
6    Q.  Meaning is there a middle man hired by
7  Credit One Bank who then goes out and hires
8  different vendors to complete jobs or does
9  Credit One hire these vendors directly?
10   A.  In that context we hire them directly.
11   Q.  Okay. So let's talk about the vendor,
12  for example, in this case, iEnergizer.
13   Do you know when Credit One first
14  started working with iEnergizer?
15   A.  I think it was about ten years ago, but
16  I'm not certain of the exact dates.
17   Q.  You're the manager for GC Services,
18  right?
19   A.  Yes.
20   Q.  So about how long did you start working
21  with them?
22   A.  Sixteen years ago, something like that,
23  fifteen.
24   Q.  Ten to fifteen years for each of those
25  vendors for iEnergizer and GC Services?

Page 70

1    A.  Yes, somewhere in that range.
2    Q.  And when it comes to assign to a vendor
3  such as iEnergizer to GC Services, is anybody
4  else collecting on that account during that time?
5    A.  No.
6    Q.  Is Credit One itself attempting
7  collection on an account during the times it's
8  assigned a specific vendor?
9    A.  No.
10   Q.  Does the vendor tell Credit One Bank
11  which dialing equipment they're going to use to
12  make calls on behalf of Credit One Bank?
13   A.  No.
14   Q.  They never tell Credit One Bank what
15  dialing equipment they're going to use?
16   A.  You mean the vendor tell us?
17   Q.  Yes.
18   A.  The vendor tell the bank?
19   Q.  Yes.
20   A.  The vendor does tell us. I thought you
21  meant does the bank tell the vendor.
22   Q.  The bank does not tell the vendor which
23  equipment to use?
24   A.  They do not.
25   Q.  The vendor tells Credit One Bank which

Page 71

1  equipment they're going to use, right?
2    A.  Yes.
3    Q.  And when do they tell them that?
4    MR. KAMINSKI: Objection. Vague and
5  ambiguous. Calls for speculation.
6    THE WITNESS: Typically, when they're
7  brought onboard, they are onboard.
8  BY MR. ZELMAN:
9    Q.  They are onboard and they say, all
10  right. We're going to use this specific
11  iteration, for example, of the Aspect system?
12    MR. KAMINSKI: Objection. Calls for
13  speculation.
14    THE WITNESS: They follow something
15  like, yes, we use the Aspect system.
16  BY MR. ZELMAN:
17    Q.  Will they tell you which version they
18  use?
19    A.  If we ask.
20    Q.  Do you ask? Is it that something
21  Credit One Bank typically wants to know?
22    A.  Not particularly, no.
23    Q.  If the vendor is upgrading from one
24  version of the Aspect system to another, do they
25  tell Credit One Bank that?

Page 72

1    MR. KAMINSKI: Objection. Calls for
2  speculation.
3    THE WITNESS: They might tell us if they
4  are doing a system upgrade.
5  BY MR. ZELMAN:
6    Q.  If there are certain dialers, they will
7  tell you that?
8    A.  They will tell us that, yes.
9    Q.  Do they have to tell you that?
10   A.  I don't know if it is specifically
11  spelled out in the contract or not, but they do
12  tell us.
13   Q.  And they would tell you at or about the
14  time that they switched the systems over?
15    MR. KAMINSKI: Objection. Calls for
16  speculation.
17    THE WITNESS: Generally, yes.
18  BY MR. ZELMAN:
19   Q.  And as far as like if they were
20  upgrading from one version of the system like the
21  Aspect system to another version of the Aspect
22  system, they would tell you that when they are
23  upgrading?
24    MR. KAMINSKI: Objection. Calls for
25  speculation.

Page 73

19 (Pages 70 to 73)

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 20 of 31
Atkinson-Baker Court Reporters
www.depo.com

1      THE WITNESS: They might tell somebody
2  that. It's not something we particularly care
3  about.
4  BY MR. ZELMAN:
5      **Q.   Okay.  GC Services in this case, they**
6  **testified that during the time period that these**
7  **calls were made, which was only about a month**
8  **period, that for GC Services they used two**
9  **different versions of the Aspect system.  They**
10 **upgraded during that one-month period.**
11     **Did they ever tell you that they're**
12 **changing versions?**
13     A.   Not that I recall but they probably
14 did.
15     MR. KAMINSKI:  Don't guess.
16 BY MR. ZELMAN:
17     **Q.   When you say they probably did, is that**
18 **something they typically do?**
19     A.   They will typically send us a note.  By
20 the note, I mean the bank and the IT people and
21 whatnot.
22     **Q.   That we are going to change from one**
23 **version to another?**
24     A.   That we're doing a system upgrade.
25     **Q.   Do you know if you have a copy of that**

Page 74

1      A.   I don't know.  I have to think about it
2  for a minute.  I guess system upgrade or system
3  maintenance.
4      **Q.   Anyone else that you know or just**
5  **yours?**
6      A.   Oh, it goes to numerous people.  I
7  don't know who all gets it.
8      **Q.   But if you are the vendor manager for**
9  **that vendor, it would go to you as well, right?**
10     A.   I'm typically included on things like
11 that, yes.
12     **Q.   So for GC Services, you would be**
13 **included?**
14     MR. KAMINSKI:  Objection.  Calls for
15 speculation.
16     THE WITNESS: Generally, I would be
17 included.
18 BY MR. ZELMAN:
19     **Q.   For iEnergizer, you generally would not**
20 **be included?**
21     A.   No.
22     **Q.   For example, the calls made by**
23 **GC Services, do you know where those calls were**
24 **made out of?**
25     A.   I would be able to tell -- I don't know

Page 76

1  note?
2      MR. KAMINSKI:  Objection.  Vague and
3  ambiguous.
4      THE WITNESS: I have no idea.
5      MR. KAMINSKI:  Calls for speculation.
6  BY MR. ZELMAN:
7      **Q.   How would you go about getting that?**
8      A.   Getting what?
9      **Q.   Whatever you were referring to, the**
10 **note, the email, whatever it is.**
11     MR. KAMINSKI:  Objection.  Misstates
12 the witness's testimony.  He said that it could
13 happen in that regard.  He didn't say that it
14 did.
15     THE WITNESS: I don't know if I have it.
16 BY MR. ZELMAN:
17     **Q.   But you said it is something they**
18 **typically do, right?**
19     A.   Typically.
20     **Q.   So if that's something they typically**
21 **do and you wanted to find out, do you have any**
22 **record of that actually happening?  How would you**
23 **go about doing that?**
24     A.   I guess I would search my email.
25     **Q.   What would you search for?**

Page 75

1  if I can tell from this or not. I'm not certain
2  which of the sites that it came from.
3      **Q.   Okay.  Do you know how many sites they**
4  **use?**
5      A.   We have two sites.
6      **Q.   One in Tennessee and one in Houston?**
7      A.   One in Tennessee and one in Texas.
8      **Q.   One in Texas and one in Tennessee?**
9      A.   Correct.
10     **Q.   And have you been out to those sites?**
11     A.   I have.
12     **Q.   How often do you go there?**
13     A.   Typically, twice a year.
14     **Q.   Is it something that you're doing**
15 **pursuant to agreement between Credit One Bank and**
16 **GC Services?**
17     A.   Uh --
18     MR. KAMINSKI:  You can answer.
19     THE WITNESS: Are you saying I am doing
20 that because it's in the contract?
21 BY MR. ZELMAN:
22     **Q.   Yes.**
23     A.   Actually, I don't remember if it's in
24 the contract or not, but we do that anyway.
25     **Q.   It's in the contract. The question is,**

Page 77

20 (Pages 74 to 77)

Atkinson-Baker Court Reporters
www.depo.com

1 why are you doing it?
2          MR. KAMINSKI:  Objection.  Wait a
3 second.  The line of questioning is confusing.
4 Start again.
5 BY MR. ZELMAN:
6     Q.   Sure.  Why are you doing those site
7 visits?
8          MR. KAMINSKI:  What is the purpose of
9 the site visits?
10 BY MR. ZELMAN:
11     Q.   Yes, what is the purpose?  Sure.
12     A.   Multiple purposes.  One is to meet with
13 onsite management.  We meet with collectors.  We
14 observe coaching and development processes.  And
15 we will also do at least once a year a physical
16 audit.
17     Q.   What does that entail as a physical
18 audit?
19     A.   It entails, do they have a generator,
20 do they have locks on the doors, you know.  Do
21 employees have badges that restrict access to
22 sensitive areas, thing like that.
23     Q.   You said you meet with collectors and
24 onsite managers?
25     A.   We do.

Page 78

1     Q.   To make sure that collection work on
2 behalf of Credit One Bank is being done in a
3 certain way?
4     A.   Yes, you could describe it that way.
5     Q.   When you do these site visits, do you
6 have the opportunity to walk the floor or see how
7 calls are being handled by GC Services'
8 employees?
9          MR. KAMINSKI:  Calls on behalf of whom?
10 BY MR. ZELMAN:
11     Q.   Credit One Bank, obviously.
12     A.   Do we have the opportunity to do that?
13     Q.   Yes.
14     A.   Yes.
15     Q.   Do you do it?
16     A.   We do walk the floor.  We typically
17 don't do a lot of observation in terms of sitting
18 down with an employee and watch them do their
19 work.
20     Q.   But you can?
21     A.   We can.
22     Q.   If you saw something you didn't like,
23 you can point that out to management?
24          MR. KAMINSKI:  Objection.  Vague and
25 ambiguous as to saw something you didn't like.

Page 79

1 Calls for speculation.  Lacks foundation.
2          THE WITNESS:  We could.
3 BY MR. ZELMAN:
4     Q.   When the vendors call Credit One
5 customers on behalf of Credit One Bank, how are
6 they identifying themselves in the call?
7          MR. KAMINSKI:  Objection.  Calls for
8 speculation.  Lacks foundation.
9          THE WITNESS:  How do the collectors
10 identify themselves?
11 BY MR. ZELMAN:
12     Q.   Meaning do they identify themselves as
13 representatives of, for example, GC Services or
14 as a representative of Credit One Bank?
15     A.   Credit One Bank.
16     Q.   So when someone answers the phone for
17 all intents and purposes, they think they're
18 calling to Credit One Bank?
19          MR. KAMINSKI:  Objection.  Vague and
20 ambiguous.  Calls for speculation as to what
21 someone else would be thinking.
22          THE WITNESS:  We would represent that
23 they were calling from Credit One Bank.
24 BY MR. ZELMAN:
25     Q.   Okay.  And is there any indication on

Page 80

1 the phone that the call is not from Credit One
2 Bank directly but that it's GC Services, for
3 example?
4          MR. KAMINSKI:  Objection.  Calls for
5 speculation.  Lacks foundation.
6          THE WITNESS:  In terms of their
7 talk-off?
8 BY MR. ZELMAN:
9     Q.   In terms of what they are saying to --
10     A.   No.
11     Q.   So they wouldn't -- the customer -- I'm
12 sorry.  The collection agent wouldn't, for
13 example, say, "Hi, I'm calling from GC Services
14 on behalf of Credit One Bank," right?
15     A.   No.
16     Q.   They would just say, "Hi, I'm calling
17 from Credit One Bank?
18     A.   Yes.
19     Q.   Someone would call back having missed a
20 call, would they be talking to a GC Services'
21 employee or would they be talking to a Credit One
22 Bank employee?
23     A.   They would be talking to a GC Services'
24 employee.
25     Q.   When a GC Services' employee would

Page 81

21 (Pages 78 to 81)

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 22 of 31
Atkinson-Baker Court Reporters
www.depo.com

1    answer the phone or when they would call that
2    number, would they hear GC Services be identified
3    or Credit One Bank being identified?
4        MR. KAMINSKI:  Objection.  Calls for
5    speculation.
6        THE WITNESS: They should hear
7    Credit One Bank.
8    BY MR. ZELMAN:
9        Q.  Why is that?
10       A.  Because they are collecting in the
11   bank's name.
12       Q.  Is that something that -- that
13   identification, is that something that the
14   vendors choose to do or is that something that is
15   required of them by Credit One Bank?
16       A.  That, I believe, is a contractual
17   requirement.
18       Q.  Let me hand you Defendant's Response to
19   our Request for Admissions.  We will mark that as
20   Exhibit E.
21       (Exhibit "E" was
22       marked for identification.)
23   BY MR. ZELMAN:
24       Q.  Tell me when you're ready.
25       A.  All right.

Page 82

1        Q.  Question number three, it's on page
2    three.  It asks, "Admit that the calls placed by
3    Defendant or its dialing vendors to the phone
4    number "(916) 308-9847" during the time period of
5    July 18, 2013, to the present, were an attempt to
6    reach a person other than the Plaintiff."
7        There are some objections.  And it
8    Says: "Defendant responds as follows:
9        The information Defendant currently
10   knows is insufficient to enable it to admit or
11   deny this Request at this time. Discovery is
12   continuing."
13       Sitting here today, do you believe that
14   the calls placed to the 9847 number were an
15   attempt to reach a person other than the
16   plaintiff?
17       A.  Yes.
18       Q.  Question number four asks:
19       "Admit the Defendant never had the
20   Plaintiff's consent to call his cellular phone
21   via any dialing system or via prerecorded voice
22   messages."
23       Same response as an objection as to the
24   last request.
25       MR. KAMINSKI:  Objection.  Calls for

Page 83

1    legal conclusion which is beyond the scope of the
2    deposition of a 30(b)6 witness.
3    BY MR. ZELMAN:
4        Q.  Sure.  The question I have for you
5    today is, do you believe that Credit One Bank had
6    the consent to call the 9847 number?
7        MR. KAMINSKI:  Objection.  Same
8    objection.
9        THE WITNESS: Well, I believe that they
10   had consent to call that number.
11   BY MR. ZELMAN:
12       Q.  Not from the plaintiff, correct?  Very
13   specific, the plaintiff's consent?
14       A.  No.
15       Q.  Did not have the plaintiff's consent,
16   correct?
17       A.  Right.
18       MR. KAMINSKI: Same objection.
19   BY MR. ZELMAN:
20       Q.  Request number five:  "Admit that those
21   outside vendors used a "predictive dialer" to
22   dial the phone number "(916) 308-9847" on behalf
23   of the Defendant, during the time period July 18,
24   2013, to the present."
25       Same answer and objections.

Page 84

1        Sitting here today, do you believe that
2    iEnergizer and GC Services used predictive
3    dialers to call the 9847 number?
4        MR. KAMINSKI:  Objection.  Calls for
5    speculation.  Lacks foundation.  The question
6    concerns issues within the scope of expert
7    testimony.  Question exceeds the scope of a
8    30(b)6 deposition.  The witness is not designated
9    as an expert here, so the question is, therefore,
10   irrelevant and I instruct him not to answer.
11       MR. ZELMAN: I'm sorry.  My
12   understanding of the only time you can instruct
13   the witness not to answer is either under
14   privilege or if you're meaning to limit or
15   terminate the deposition, which you have very
16   little grounds to do so.
17       Are you moving to limit or terminate
18   the deposition at this time?
19       MR. KAMINSKI:  Not at this time. I will
20   let the witness answer to the extent he knows.
21       THE WITNESS: I don't know.
22   BY MR. ZELMAN:
23       Q.  Well, you do know what GC Services was
24   using to call plaintiff? What dialing system?
25       A.  Yes.

Page 85

22 (Pages 82 to 85)

Atkinson-Baker Court Reporters
www.depo.com

1   Q.  And that was the Aspect, I believe,
2 6.7, and then another version of the Aspect
3 system, correct?
4   A.  Correct.
5   Q.  Do you believe those systems are
6 predictive dialers?
7   MR. KAMINSKI:  I will lodge the
8 previous objection, that long objection that I
9 previously articulated, let's call that my
10 running objection until I change that as
11 otherwise.  Let me assert the running objection
12 and add to that already asked and answered.
13   THE WITNESS: I don't know.
14 BY MR. ZELMAN:
15   Q.  Okay. Let me hand you what we will mark
16 as Plaintiff's Exhibit F.
17   (Exhibit "F" was
18   marked for identification.)
19   MR. KAMINSKI: Farheena, this is a
20 Declaration of Don Hudecek.  It came from Aspect
21 in this matter.
22   MS. HABIB: Thank you.
23 BY MR. ZELMAN:
24   Q.  Have you seen this document before?
25   A.  I don't recall seeing it.

Page 86

1   Q.  Take a moment to review it and let me
2 know when you're done.
3   A.  Okay.
4   Q.  Ready?
5   A.  Yes.
6   Q.  Have you seen this document before?
7   A.  This doesn't look familiar, no, but I
8 have read it now.
9   Q.  This is a declaration from an officer
10 over at Aspect talking about the Aspect dialing
11 system. In paragraph nine, the Aspect
12 representative refers to the unit, the
13 Aspect system 6.6, 6.7, and 7.3.
14   Do you see that?
15   A.  I do.
16   Q.  Then he writes, "These systems each
17 have predictive dialer capabilities and the
18 ability to automatically dial customer-provided
19 telephone numbers."
20   Do you see that?
21   A.  I do.
22   Q.  So sitting here today, does that tell
23 you whether or not GC Services used a predictive
24 dialer to call my client?
25   MR. KAMINSKI:  Objection. Calls for

Page 87

1 speculation.  Lacks foundation.  Same running
2 objection that I said before with respect to
3 expertise, beyond the scope of this deposition,
4 et cetera.  And the document speaks what it says,
5 not whether it is accurate, but merely what is
6 stated.
7   THE WITNESS: I know that this applies
8 to iEnergizer.  I don't know how this applies to
9 GC Services.
10 BY MR. ZELMAN:
11   Q.  Sure. So we know that iEnergizer was
12 using the same dialing systems at the same time
13 period, right?
14   MR. KAMINSKI: Farheena, can you hear?
15   MS. HABIB: Yes, I can.
16 BY MR. ZELMAN:
17   Q.  In response to Interrogatory No. 4,
18 Defendant identified that GC Services used the
19 6.7 system and that iEnergizer used a 6.7 system.
20   So my question is, you do now know that
21 they were using the exact same system, and that
22 is identified in the Hudecek declaration as
23 having predictive dialing capabilities.
24   Does that tell you whether or not a
25 predictive dialer was used to make these calls?

Page 88

1   MR. KAMINSKI:  Same running objections
2 including the most recently stated objection.
3   THE WITNESS: Based on this, I don't
4 know.  I guess.
5   MR. KAMINSKI: He doesn't want you to
6 guess.  If you don't know, just say so.
7   THE WITNESS: Well, he asked -- he said
8 that it was a 6.7 and exactly the same.  I don't
9 know that it's exactly the same or not.
10 BY MR. ZELMAN:
11   Q.  Right. So at least as to our
12 iEnergizer, which this is directly referring to,
13 you're saying that you believe iEnergizer did use
14 a predictive dialer to make the calls to my
15 client?
16   MR. KAMINSKI:  Objection, and further
17 objection to my most recent two or three running
18 objections. Also, calls for speculation.  Lacks
19 foundation.  It's not accounting for how the
20 particular vendors at issue may have reconfigured
21 or used these systems in any regard.
22   THE WITNESS: All can I say is that's
23 what this document says.
24 BY MR. ZELMAN:
25   Q.  So the answer would be "yes" based on

Page 89

23 (Pages 86 to 89)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

1    **the document?**
2         MR. KAMINSKI:  No, that's not what he
3    testified to.
4         THE WITNESS:  I'm saying that is what
5    it says in this document.
6    BY MR. ZELMAN:
7       **Q.   And based on this document, would you**
8    **answer that you believe iEnergizer did use a**
9    **predictive dialer to call the 9847 number?**
10     A.   Based on this --
11       MR. KAMINSKI:  Objection.  Again, the
12    witness doesn't know how iEnergizer, how
13    GC Services, et cetera, may have reconfigured the
14    Aspect systems in any regard regardless of quote
15    "what versions" they may be or how they were
16    using it in what mode, in what manner, et cetera.
17       So the witness couldn't possibly
18    respond to this question.
19       MR. ZELMAN: I understand that would be
20    a speaking objection.  If that's what the witness
21    wants to say, let him say it. You should not be
22    answering the question after any objection.
23        THE WITNESS: All I can say is that's
24    what this document says and that's all I know.
25    BY MR. ZELMAN:

Page 90

1    we were calling the wrong number.
2      **Q.   To answer this, you would have referred**
3    **to the call log compiled by Credit One Bank?**
4     A.   The call log would more appropriately,
5    than the account notes.
6      **Q.   But the account notes do reflect that**
7    **on February, 2017, in which Credit One Bank spoke**
8    **with a third party, correct?**
9     A.   That's what the account notes said,
10    yes.
11      **Q.   Do you know what was said on that**
12    **report or that conversation?**
13     A.   I do not.
14      **Q.   It's possible that on that date and**
15    **time, the plaintiff advised the defendant that it**
16    **was calling the wrong number?**
17       MR. KAMINSKI:  Objection.  Calls for
18    speculation.  Lacks foundation.  Misstates the
19    testimony of the witness.
20       THE WITNESS: That would be a complete
21    guess.  I have no idea what.
22       MR. ZELMAN:  It's not a guess.  Is it
23    possible or not?
24       MR. KAMINSKI:  Objection.  He's not
25    here to speculate. He already answered the

Page 92

1      **Q.   If you go to Request for**
2    **Admissions number twelve which states -- it's on**
3    **page six.**
4     A.   Page six of?
5      **Q.   Of the Request for Admissions.**
6     A.   I'm there.
7      **Q.   "Admit that Plaintiff advised the**
8    **Defendant that it was calling the wrong number."**
9    And there is an objection, and then:
10        "Not withstanding the objections, the
11    **Defendant responds as follows: denied."**
12      **Do you see that?**
13     A.   I see that.
14      **Q.   Do you know what this denial was based**
15    **on?**
16     A.   I understand that this is saying that
17    your client advised us that we were calling the
18    wrong number.
19       MR. KAMINSKI:  When you say "us"?
20       THE WITNESS: Advised the
21    representatives of the bank.
22    BY MR. ZELMAN:
23      **Q.   Right. Do you know why that would be**
24    **denied?**
25     A.   Because I have seen nothing that says

Page 91

1    question.  He said he didn't know.
2       MR. ZELMAN: All right.  Give me five
3    minutes just to wrap up.  I want make sure I
4    haven't forgot anything.
5       (Off the record.)
6       MR. ZELMAN: Back on the record.
7    Do you have any questions?
8       MR. KAMINSKI: No.  Farheena, do you
9    have any questions?
10       MS. HABIB: No questions.
11       MR. ZELMAN: We're done.
12       MR. KAMINSKI: I propose that according
13    to plaintiff's counsel that the deposition has
14    concluded; that the parties agree to relieve the
15    court reporter of her duties under the code; that
16    the original transcript of the deposition will be
17    sent to my office, David Kaminski, for review and
18    signature by the witness and that we will have
19    thirty days upon receipt from that transcript in
20    order to review the deposition transcript and
21    make any appropriate changes and notify all
22    parties hereto that if for some reason the
23    original deposition transcript is lost or
24    destroyed, then a certified copy may be used for
25    any and all proper purposes.

Page 93

24 (Pages 90 to 93)

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 25 of 31
Atkinson-Baker Court Reporters
www.depo.com

```
 1        So stipulated, counsel?
 2     MR. ZELMAN: So stipulated.
 3     MS. HABIB: So stipulated.
 4     MR. ZELMAN: Thank you for your time.
 5      (Whereupon, the deposition was
 6       concluded at 12:45 p.m.)
 7             -oOo-
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 94

```
 1           CERTIFICATE OF REPORTER
 2
 3        I, the undersigned, a Certified Court
 4   Reporter, of the State of Nevada, do hereby
 5   certify:
 6        That the foregoing proceedings were
 7   taken before me at the time and place herein set
 8   forth; that any witnesses in the foregoing
 9   proceedings prior to testifying were duly sworn;
10   that a record of the proceedings was made by me
11   using machine shorthand which was thereafter
12   transcribed under my direction; that the
13   foregoing transcript is a true record of the
14   testimony given.
15        Further, before completion of the
16   proceedings, review of the transcript {x  } was
17   { } was not requested.
18        I further certify I am neither
19   financially interested in the action nor a
20   relative or employee of any attorney or party to
21   this action.
22        IN WITNESS WHEREOF, I have this date
     subscribed my name.
23
     DATED: July 5, 2018.
24
25        JULIE M. LEVER, RPR, CCR No.: 582
```

Page 96

```
 1   STATE OF NEVADA )
 2   COUNTY OF CLARK )
 3
 4
 5
 6        I, the undersigned, declare under
 7   penalty of perjury that I have read the foregoing
 8   transcript, and I have made any corrections,
 9   additions of deletions that I was desirous of
10   making; that the foregoing is a true and correct
11   transcript of my testimony contained therein.
12
13
14     EXECUTED this        day of
15     at         ,            .
16        (City)        (State)
17
18
19        JEFFREY MEEK
20
21
22
23
24
25
```

Page 95

25 (Pages 94 to 96)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

Page 1

**A**

a.m 1:15
A/K/A 1:10
ability 87:18
able 13:5,7,9 29:6,10
66:3 76:25
absolutely 62:4
AC0484B 1:20
access 32:9 78:21
account 9:8 10:3,4,5,10
10:22,25 11:3,10,13,21
11:22,23,25 12:1,16
14:7,17 17:8,13,16
18:22 19:18,19,21,22
19:23,25 20:1,2,5,7,14
20:17,21 21:2,7,8,8,12
25:17,21,22,24,25 26:1
26:4,6,8,12,13,15,19
26:22 27:1 28:13 29:5
29:7 30:7,14 31:23
32:5 33:1,18,19 34:10
35:22,25 36:8,15,16
38:3,16,18 39:16,20
40:1,3,4 44:23 45:9
47:10,17 48:25 50:6
51:3 55:8,10,11,12
59:16 60:9 61:5,25
62:10,11 63:6 71:4,7
92:5,6,9
accounting 65:19,21
89:19
accounts 14:9 28:9,24
accurate 38:9,21 45:1
62:23 88:5
accurately 38:23
action 8:7,8,11 12:4,24
14:3,13 24:24 25:1
26:16 40:16 48:3 52:20
55:14,20 56:11,15,19
57:20 59:18 96:19,21
active 61:16
activity 25:17,21,23
26:14 28:13 31:23 32:3
32:6 33:17 49:1
actual 43:12 47:22
add 6:8 86:12
added 32:25
adding 48:19
additional 20:2 38:13
additions 95:9
address 28:20
Adele 7:22 8:2,3,10
63:13 66:23,25 67:10
67:14
Admissions 3:15 82:19
91:2,5
admit 83:2,10,19 84:20
91:7
advised 25:20 58:16
91:7,17,20 92:15
afternoon 60:23
agent 36:13,13 81:12
agents 32:10
ago 70:15,22
agree 93:14
agreement 24:18,20
69:22 77:15
allege 9:20

Allied 61:21
Alorica 6:14 7:9
ambiguous 8:15 23:10
23:15,17,22 28:2 29:21
31:17 32:2 33:6 35:4
35:20 40:8 42:21 49:18
51:10 62:20 64:19
66:19 68:2 69:12 72:5
75:3 79:25 80:20
AMDID 61:15
America 7:16,17,19
Angeles 2:9,13
answer 10:1 11:24 13:25
15:8 21:19 23:10 26:3
30:4 33:9 40:11 48:9
49:14 77:18 82:1 84:25
85:10,13,20 89:25 90:8
92:2
answered 23:15 27:17
32:12 86:12 92:25
answering 53:7,8 61:13
61:15,25 90:22
answers 80:16
anybody 29:4 71:3
anymore 50:22
anyway 77:24
apologize 28:16 47:12
appear 5:22 6:1 19:18
36:14 57:16
appearing 5:19
appears 14:14,20
applies 88:7,8
appropriate 93:21
appropriately 92:4
April 14:21
areas 78:22
argue 66:15
Argumentative 49:8
66:12
articulated 86:9
Asbury 2:5
asked 15:21 25:11 32:12
35:10 48:3 67:14,14,17
67:20 86:12 89:7
asking 9:18 43:5 64:3,16
67:8,19
asks 9:15 83:2,18
Aspect 50:23 51:4 65:8
72:11,15,24 73:21,21
74:9 86:1,2,20 87:10
87:10,11,13 90:14
assert 86:11
assign 71:2
assigned 10:5 14:17
71:8
assistant 4:13,18 5:4,10
5:13
associate 69:3
associated 11:2,4,10,12
11:22 12:1
assume 21:6 50:3 61:8
61:18
assuming 46:21
ATKINSON-BAKER 1:21
attempt 83:5,15
attempting 71:6
attorney 22:4 69:4 96:20
attorney-client 15:23
20:11 21:17 68:14,20

attorneys 21:16
audit 78:16,18
automatically 87:18
Avenue 1:17 2:5
aware 17:20 55:11 62:7
68:6

**B**

B 3:9 19:3,6
back 4:20 9:13,15 17:5
21:4 22:2 26:25 34:24
35:1 45:13 47:8,13
63:11 81:19 93:6
badges 78:21
bank 1:8,14 2:7 5:23,24
5:25 6:2 10:10 12:25
14:5,6,22 17:13 19:1,4
19:16 21:5 24:14,16
30:24 39:5 41:9,10
49:11,13,16 50:1 51:4
51:17 52:6 55:25 64:5
65:17 66:8,9 69:7,9,16
69:24 70:7 71:10,12,14
71:18,21,22,25 72:21
72:25 74:20 77:15 79:2
79:11 80:5,14,15,18,23
81:2,14,17,22 82:3,7
82:15 84:5 91:21 92:3
92:7
bank's 82:11
base 11:20
based 45:17,18,24 62:9
89:3,25 90:7,10 91:14
basically 64:2
basing 11:19 52:11 55:7
basis 26:11,20
BASSI 2:11
Bate 62:18
Bates 14:5,13 18:3 19:1
36:23 39:17 45:10
46:11 51:23 57:2,6,10
60:4,16 62:17,18 63:1
63:2,4
behalf 4:10 6:16 24:6
30:24 39:5 49:11 51:4
64:5 65:16 71:12 79:2
79:9 80:5 81:14 84:22
believe 6:10,19 10:9,20
10:24 11:9,11 13:19
18:19 24:23 34:16
35:18 36:4 38:12 39:10
39:19 42:2 44:15 47:5
47:8 50:16 52:22 65:11
66:20 67:14,21 69:17
82:16 83:13 84:5,9
85:1 86:1,5 89:13 90:8
best 33:13,15 51:1 58:9
58:12 59:24
beyond 84:1 88:3
bit 12:19
blaster 65:12
BLUM 2:11
Boulevard 2:8
break 35:20 63:9
briefly 64:1
brought 8:20 72:7
bunch 37:24
Burton 7:22 8:2 63:13

attorneys 21:16
66:23,25

**C**

C 2:2 3:10 19:5,6 36:21
C-A-S 20:18,19 27:11
C-A-S-H 27:5
California 1:2 2:9,13
call 3:8,9,10 7:13,15 8:23
9:1,4,8 10:7 12:14,16
14:10,12 17:8,10,11,12
17:13,16 18:6,14,23
22:3,11,14,23,23 23:1
24:25 25:13 26:2,9,16
26:17,18,23 30:23,25
31:11 32:7,18,19,23
33:21 34:2,6,14,14
35:16 36:6,10,12,14,18
36:25 37:14,20,20 38:2
38:5,9,21 39:9,9,12,18
39:20,22,25 40:2,15
41:9,22 42:7,15,16
43:6,12,17 44:18 45:16
46:24 48:11 49:13 53:2
53:6,14 54:11,13 55:8
58:23 60:15 61:2,3,4
61:10,11,12 62:6,8,12
62:16 63:3,5 64:17
65:19,21,24 80:4,6
81:1,19,20 82:1 83:20
84:6,10 85:3,24 86:9
87:24 90:9 92:3,4
called 22:19 45:6 46:18
47:5 49:24,25 65:11,12
65:13
caller 48:7
calling 44:13 50:11
54:17 58:17 80:18,23
81:13,16 91:8,17 92:1
92:16
calls 6:18 8:21 9:15,21
9:23 11:14 13:22 14:14
14:21 16:18 18:15
20:23 21:15 23:4,8,12
23:22 24:2,3,6,22 25:7
25:9,10,17,20 31:7
33:6,24 34:5,7 35:5,24
36:3,7,8 37:24 38:3,10
38:13,24 39:1,4,4 40:7
40:19,23 41:6,12,16,21
41:22,25 42:9,10,19
43:7,24 44:5 50:7,10
50:15 51:3 52:15,16,25
53:7,13,15,20 54:7,22
59:10,23 64:4 65:4,16
66:11 67:1,11 68:19
69:12 70:2 71:12 72:5
72:12 73:1,15,24 74:7
75:5 76:14,22,23 79:7
79:9 80:1,7,20 81:4
82:4 83:2,14,25 85:4
87:25 88:25 89:14,18
92:17
capabilities 87:17 88:23
capability 30:2
caption 51:13
capture 48:7
captured 49:16,22 50:3
51:2

card 45:6 47:5
cardholder 49:16
care 74:2
CARLSON 2:7
CAS 20:16 27:11,12,23
28:12 29:13,16,19 30:2
30:14 31:1,3 35:7 36:9
case 1:6 7:10 9:9,20
10:12 11:10,12 12:8
17:11,11,12,14 18:15
18:21 22:8 23:5 50:15
50:21 51:12 63:17
68:10 70:12 74:5
cases 43:4
CASH 27:3,7,11,21 28:6
28:8 29:7,10 30:18
31:1,2,6,15,23 32:9,18
35:7,17 36:2,9
cause 59:18
CCR 1:25 96:25
cellular 83:20
center 22:23 23:2
centers 7:14,15
Century 2:8
certain 3:30 70:16 73:6
77:1 79:3
certainly 50:19 53:4
CERTIFICATE 96:1
certified 93:24 96:3
certify 96:5,18
cetera 88:4 90:13,16
change 47:2 74:22 86:10
53:19,21
changes 93:21
changing 74:12
check 42:3 46:19
checking 44:8
checks 44:3
choose 82:14
City 95:16
claims 8:8,11
clarification 15:17
clarify 10:14 35:7,13
39:7,21 41:1 58:7 62:5
clarifying 23:19 53:23
CLARK 95:2
clear 62:21
clearly 31:19
client 10:9 22:3,6 25:5
51:8,10,12,16,22 55:5
56:4 58:10,14 59:18
87:24 89:15 91:17
client's 9:21 18:16 25:1
58:21
close 52:25
coaching 78:14
COB 57:3
COB-NL-027 57:6
code 93:15
collecting 71:4 82:10
collection 27:3,6,8,21,22
28:7,11 29:1 31:5 32:3
32:10,21 33:17 71:7
79:1 81:12
collections 31:24,25
collector 32:4
collectors 29:22 30:1
78:13,23 80:9

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 27 of 31
Atkinson-Baker Court Reporters
www.depo.com

Page 2

come 37:1,2 67:22,23
comes 43:1 71:2
coming 43:8 68:10
company 7:23
compiled 37:14,15 40:2
62:8 92:3
complaint 10:16
complete 38:19 70:8
92:20
completed 32:19
completion 96:15
complied 41:10
composite 38:2
comprehension 62:24
concerns 85:6
concluded 93:14 94:6
conclusion 23:23 24:4
46:23 70:2 84:1
conditions 49:20
confidential 1:13 28:18
conflict 34:13
confusing 78:3
confusion 23:20
consent 49:21 83:20
84:6,10,13,15
constitutes 68:13
contact 1:10 7:2 9:23
14:15,17,20 15:4,17,21
16:6,8 25:4 36:18
44:16 45:19 46:1,8
50:21 51:7,18,21 54:16
55:3,4 56:3 58:10
65:20 69:19
contacted 49:20
contained 95:11
context 70:10
continuing 83:12
contract 24:15 73:11
77:20,24,25
contractor 69:21
contractual 54:2 82:16
control 4:25 6:11
Convergent 6:14 7:9
conversation 52:2,4
60:10 92:12
Cookman 2:5
copy 74:25 93:24
correct 7:11,12,20 17:8,9
18:25 29:8,15 33:19
39:3,24 50:8,9 54:15
54:24 58:23 60:2,13,14
62:1,2 64:24 65:1,2
77:9 84:12,16 86:3,4
92:8 95:10
corrections 95:8
counsel 21:21 27:16
40:21 69:3 93:13 94:1
count 40:18,19 41:5,17
41:21
counted 41:3,4,25 42:3
COUNTY 95:2
course 10:3 12:11 28:22
court 1:1,22 35:3 47:15
93:15 96:3
created 38:5,7 43:11,12
Credit 1:8,14 2:7 4:10,12
5:24,25 6:2,16 7:25
8:18,19 9:2,22 10:10
10:21,25 11:3 12:25

14:5,6,22 17:13,16
18:24 19:1,4,16,20
20:1,13 21:5 22:3,14
22:22 23:1,7 24:14,15
25:1,8,19 26:11,18
29:2,9 30:24 32:10,15
33:4 34:15 37:17 38:24
39:2,5 40:2 41:9,10,21
42:7,17 43:4,6,17
49:11,13,16 50:1 51:4
51:17 52:6 55:12,25
56:10,14,19 57:20
58:10,15 59:14 60:9,16
63:20 64:5 65:17 66:8
66:9,16 69:7,9,16,24
70:7,9,13 71:6,10,12
71:14,25 72:21,25
77:15 79:2,11 80:4,5
80:14,15,18,23 81:1,14
81:17,21 82:3,7,15
84:5 92:3,7
currently 83:9
customer 30:24 31:22,24
32:15,16,20 46:18
81:11
customer-provided
87:18
customers 69:19 80:5

D
D 3:1,11 63:20,22
daily 26:11
date 14:23 20:22 34:10
46:12,16 47:2 48:12
49:25 56:5 57:25 60:18
60:19,21 61:3,19 92:14
96:22
DATED 96:23
dates 57:15,16 70:16
David 2:8 93:17
day 14:4 46:1 57:16 58:3
95:14
day-to-day 4:24 5:6 9:6
days 53:4,16 54:13,21
59:8 93:19
deals 15:23
December 21:4
declaration 3:17 86:20
87:9 88:22
declare 95:6
defendant 2:7,11 8:6
48:9,11 83:3,8,9,19
84:23 88:18 91:8,11
92:15
defendant's 55:21 58:19
82:18
DEFENDANTS 1:12
deletions 95:9
delinquent 28:9,25 29:6
50:7 51:3
demand 17:1
denial 91:14
denied 91:11,24
deny 83:11
department 5:19 15:10
15:13,21 16:6,7,22
38:8 43:21 62:9 67:7,9
67:24 68:10

depends 29:17,17
deposition 1:14 17:7
18:22 19:13 22:10
28:18 41:2 63:14 84:2
85:8,15,18 88:3 93:13
93:16,20,23 94:5
Derrick 44:15,17 45:19
46:1,15 60:1
describe 79:4
DESCRIPTION 3:6
designated 85:8
designation 46:17
desirous 95:9
desk 16:9,22,23
destroyed 93:24
detail 55:15
detailed 50:17
detect 61:13
development 78:14
dial 84:22 87:18
dialer 65:20 84:21 87:17
87:24 88:25 89:14 90:9
dialers 65:6 73:6 85:3
86:6
dialing 50:12,14,23 51:5
64:15 71:11,15 83:3,21
85:24 87:10 88:12
different 6:15 40:1 69:17
70:8 74:9
direct 46:19
direction 96:12
directly 22:3,14,23 32:18
36:14 69:25 70:4,9,10
81:2 89:12
discovery 12:6,7 17:1
20:5 49:10 50:2 55:14
55:20,24 83:11
discrepancy 33:2 35:15
36:17 39:8,15 40:6
42:15
discussed 56:8
discussion 10:6
discussions 21:15 68:13
disposition 32:17 35:21
39:22 61:10
dispositions 39:18
DISTRICT 1:1,2
document 18:11,18,19
19:17 37:13 60:16
63:25 64:2,10 86:24
87:6 88:4 89:23 90:1,5
90:7,24
documents 19:10,12,15
40:22
doing 20:15 53:24,25
54:1,5,6 73:4 74:24
75:23 77:14,19 78:1,6
Don 3:17 86:20
doors 78:20
double 42:3
doubt 67:3,5
download 9:5
drafting 54:2
duly 4:2 96:9
duties 4:21,23 93:15

E
E 2:2,2 3:1,14 82:20,21

earlier 17:6 39:7
Eastern 1:2,17
EDLIN 2:11
effect 52:7
efforts 24:11
either 26:15 32:23 51:18
67:10 85:13
elaborate 28:1,3
eleven 30:13
email 75:10,24
employee 79:18 81:21
81:22,24,25 96:20
employees 78:21 79:8
enable 83:10
entail 78:17
entails 78:19
enter 32:25
entire 28:17 37:4
entitled 86:6,16,19
entries 46:14
entry 48:14 59:21
equipment 71:11,15,23
72:1
error 13:11
ESQ 2:8,12
et 88:4 90:13,16
exact 14:4 67:18 70:16
88:21
exactly 89:8,9
EXAMINATION 3:3 4:4
example 8:6 25:7 26:3
31:11 64:25 70:12
72:11 76:22 80:13 81:3
81:13
exceeds 85:7
Excel 37:10
Excuse 28:15
EXECUTED 95:14
Executive 1:15
Exhibit 3:8,9,10,11,14,17
17:22,23 18:2,6 19:3,5
36:21 37:19 40:14,14
63:20,22 82:20,21
86:16,17
Exhibits 3:6 19:6
existed 58:25
expect 66:6
experience 20:25
expert 85:6,9
expertise 88:3
explain 62:3
extent 15:22 21:14 68:12
85:20

F
F 3:17 86:16,17
fact 48:25
fair 24:23
familiar 14:18 18:13
19:14 33:9 42:24 48:12
56:21,23 65:13 87:7
far 38:4,19,20 66:13
73:19
Farheena 2:12 5:1 86:19
88:14 93:8
February 14:4,14,21
46:24 56:4 57:21,24,25
58:1,4,11,14,22 59:17

59:20 60:11,22 62:24
92:7
feed 27:23
feeds 27:11
feel 66:8
Fhabib@behblaw.com
2:14
fifteen 12:23 13:2 42:8
52:22,23,24 70:23,24
fifty 40:19 41:6
fifty-two 41:24,25
figure 10:1
file 1:20 26:24
files 13:5,9
fill 32:17
financially 96:19
find 23:16 75:21
finding 65:17
fine 22:13
first 1:10 4:2 7:2 9:23
14:15,17,20 15:4,17,21
16:5 19:16 25:4 30:10
50:21 57:2 70:13
five 4:17 5:5,14,15 14:21
37:10 84:20 93:2
fix 16:4
floor 79:6,16
Flower 2:12
follow 72:14
follows 4:3 83:8 91:11
foregoing 95:7,10 96:6,8
96:13
forgot 93:4
form 17:2 32:5 37:7
62:23
format 13:3 37:8,13
forth 96:8
forty-nine 41:3,15
forty-two 42:4,5
foundation 13:23 16:19
31:8 33:6 40:9 42:11
42:20 43:25 44:6 49:18
66:12 67:2 68:2 69:12
80:1,8 81:5 85:5 88:1
89:19 92:18
four 83:18
free 32:5
Friday 1:16
front 27:3,21 28:7 30:8
36:21 39:17 41:12
44:24 45:24 60:17
full 5:7
further 89:16 96:15,18
future 68:5

G
Gary 6:5
GC 1:9 6:13 7:8 8:6 9:24
17:12 18:3,6,15 25:4
37:20,23 40:15 41:10
41:23 42:1,9 43:15
50:20 65:1,4,16,22
67:21 70:17,25 71:3
74:5,8 76:12,23 77:16
79:7 80:13 81:2,13,20
81:23,25 82:2 85:2,23
87:23 88:9,18 90:13
general 32:13

Case 2:17-cv-01512-JAM-DB   Document 50-8   Filed 09/21/18   Page 28 of 31
Atkinson-Baker Court Reporters
www.depo.com

Page 3

**generally** 9:4 73:17 76:16,19
**generator** 78:19
**getting** 9:25 22:5 27:14 75:7,8
**give** 21:1 34:18 66:6 93:2
**given** 96:14
**go** 8:19 9:13,25 16:4 17:3 20:14,16 26:25 29:13 31:22 34:19 39:13,14 40:2,4,13 59:16 62:10,18,20,25 63:1 65:17 67:24 75:7 75:23 76:9 77:12 91:1
**goes** 9:15 70:7 76:6
**going** 8:22 17:5 25:3 41:20 54:12,20 56:17 63:9,19 71:11,15 72:1 72:10 74:22
**Good** 4:6
**goodness** 24:8
**Great** 22:14
**grounds** 21:16 32:2 85:16
**group** 9:14
**guardian** 1:4 10:17
**guess** 7:7 21:24 29:25 35:12 65:20 74:15 75:24 76:2 89:4,6 92:21,22
**guessing** 44:22
**guys** 6:6 8:13,16,18 24:1

**H**

**HABIB** 2:12 5:7 18:5 86:22 88:15 93:10 94:3
**hand** 10:13 82:18 86:15
**handing** 18:1
**handle** 64:22,25 68:6
**handled** 79:7
**happen** 75:13
**happened** 25:25 32:6 36:10 52:1 53:6 58:22 62:12
**happening** 75:22
**happens** 26:14,16
**Harassing** 49:7
**Harwood** 6:5
**hear** 51:20 82:2,6 88:14
**hearts** 24:9
**held** 60:10
**help** 15:5 16:9,22,23
**hereto** 93:22
**hey** 15:4,15
**Hi** 81:13,16
**hire** 23:10,24 24:1 69:24 70:2,9,10
**hired** 23:7 70:6
**hires** 70:7
**hold** 34:18 47:3,18,19,21
**HOLDINGS** 1:10,11
**home** 46:18,22,24 51:19
**hope** 66:2
**hoping** 45:1
**hour** 63:9
**Houston** 77:6
**Hudecek** 3:17 86:20 88:22

**HUIE** 2:11
**hypothetical** 35:5 42:21 68:3

**I**

**ID** 48:7 61:13
**idea** 13:13 15:1,2 21:11 43:13,20,22 44:8 49:3 62:13 65:10 75:4 92:21
**identification** 17:24 19:7 63:23 82:13,22 86:18
**identified** 9:23 24:24,24 50:23 52:4,5 64:14 69:17 82:2,3 88:18,22
**identify** 48:6 80:10,12
**identifying** 80:6
**identity** 68:22
**iEnergizer** 1:9 6:25 7:10 8:1,2,11 9:24 25:4,8 29:19,23 30:2 31:12,21 50:20 54:6 63:17 64:23 67:20 70:12,14,25 71:3 76:19 85:2 88:8,11,19 89:12,13 90:8,12
**imagine** 11:7
**immediately** 26:16 32:24
**inbound** 46:17,21
**included** 76:10,13,17,20
**including** 55:20 89:2
**incomplete** 35:5 42:20 68:2
**indication** 47:1 80:25
**infant** 1:4 10:17
**information** 8:13,21 10:7 21:20 31:6 33:14,16 45:24 65:25 66:5,10,17 67:15 83:9
**informed** 25:20
**initials** 51:13
**inputting** 31:23
**instances** 36:12
**instruct** 85:10,12
**insufficient** 83:10
**intents** 80:17
**interested** 96:19
**interrogatories** 3:12 9:22 55:22 58:13,19 63:21
**interrogatory** 48:2 64:10 64:14 67:18,19 88:17
**intricacies** 10:11
**involved** 45:15
**Iqor** 1:11 7:2 17:11
**irrelevant** 85:10
**issue** 7:25 11:12 12:22 22:8 89:20
**issues** 15:24 85:6
**iteration** 72:11

**J**

**J** 2:8
**January** 46:8,13,15
**Jeffrey** 1:14 3:2 4:1,8 5:9 95:19
**Jersey** 2:5
**Job** 1:20
**jobs** 70:8
**Julie** 1:24 96:25

**July** 45:13 83:5 84:23 96:23
**June** 1:16

**K**

**Kaminski** 2:8 5:1,10 8:15 11:14 13:22 15:7,22 16:18 20:10,23 21:14 21:23 22:17 23:9,18,21 24:3 27:16 28:2,15,22 29:20,25 31:7,16 32:1 32:12 33:5,24 34:17,22 34:25 35:4,12,19 38:10 40:7,21 41:16 42:10,19 43:14,18,24 44:5 45:21 46:6 47:12,21 49:7,17 51:9 54:7,22 55:16,23 57:24 58:2,5 59:10 60:19 62:19 64:7,18 66:11,18 67:1,11 68:1 68:12,19 69:11 70:1 72:4,12 73:1,15,24 74:15 75:2,5,11 76:14 77:18 78:2,8 79:9,24 80:7,19 81:4 82:4 83:25 84:7,18 85:4,19 86:7 87:25 88:14 89:1 89:5,16 90:2,11 91:19 92:17,24 93:8,12,17
**keep** 9:13 59:9,14 62:20
**kind** 9:6
**know** 8:10 9:12 11:7,21 12:3,22 13:12,14,16,16 13:18,24 15:20,25 18:9 19:10 21:25 22:7 23:14 25:20 30:3,4,4,5,21 31:21 33:8 37:12,12 38:4,5,7,19,20 41:8 42:12 43:11 44:3,7,10 44:12,20 45:15 47:7 49:4 50:13,14 51:7,17 51:23 52:1,14,19 53:23 54:3,5,6,9 55:4,16 56:3 56:6,21 58:24,25 59:2 59:3,7,12 63:16 64:3 64:16,20 65:3,6,8,15 66:13,22 68:4,5 70:13 72:21 73:10 74:25 75:15 76:1,4,7,23,25 77:3 78:20 85:21,23 86:13 87:2 88:7,8,11 88:20 89:4,6,9 90:12 90:24 91:14,23 92:11 93:1
**knowledge** 8:12 11:16 11:18 12:5 22:25 31:9 33:13,15 40:12 51:1 55:6 58:9,12 59:25 63:18
**knows** 83:10 85:20

**L**

**Lacks** 13:23 16:19 31:8 33:6 40:8 42:11,20 43:25 44:6 49:18 66:12 67:2 68:2 69:12 80:1,8 81:5 85:5 88:1 89:18 92:18

**language** 54:3
**Las** 1:18
**lawsuit** 8:14,20
**left** 26:4 31:13 59:22 60:3,12 61:12,14,22,24
**legal** 5:18 15:10,12,20 23:22 24:4 38:8 43:21 62:9 67:7,9,24 68:9 70:2 84:1
**Lemos** 1:5 10:18,19 51:15,18
**Lemos'** 11:3 12:1
**let's** 12:18 17:21 19:2 22:2 26:25 40:13 47:11 53:9 69:6 70:11 86:9
**Lever** 1:24 96:25
**limit** 85:14,17
**LIMITED** 1:9,10
**line** 60:7 78:3
**link** 36:6
**list** 57:18
**listed** 10:15 46:25
**listen** 15:15 16:2,3 22:17
**litigation** 5:19 37:16
**little** 12:19 31:19 85:16
**LLC** 1:10 2:4
**LLP** 2:7
**locks** 78:20
**lodge** 86:7
**log** 10:7 17:11,12 18:6 18:14 35:16 36:25 37:20,21 38:2,6,9,21 39:9,12,18 40:2,5,15 41:9,22 42:7 43:12,17 60:15 61:11,12 62:8,16 92:3,4
**logs** 3:8,9,10 8:23 9:1,4 9:8 12:16 14:10,12 17:8,10,14,17 18:23 24:25 25:13 26:9,17,19 26:23 34:2,6,14,15 36:6,18 37:14 39:9 42:15,16 43:6 61:2
**long** 4:15 41:2 70:20 86:8
**look** 10:4 11:25 14:7,9 14:12 18:13 19:9,14 36:2 38:9 40:14 56:21 56:23 57:2,15 87:7
**looked** 11:20 43:22
**looking** 14:2 36:16 45:8 46:3,10,14 49:5 60:7
**looks** 37:9 45:5,13,25 46:7 59:23
**Los** 2:9,13
**lost** 45:6 93:23
**lot** 27:13 79:17

**M**

**M** 1:24 96:25
**M-E-E-K** 5:9
**machine** 53:7 61:13,13 61:14,21,22,25 96:11
**machines** 53:8
**maintain** 31:4
**maintained** 18:23 27:1 28:14 31:14 34:14 35:16,17 39:9 42:15

60:15
**maintains** 19:19 37:23
**maintenance** 76:3
**making** 36:14 46:23 95:10
**man** 70:6
**manage** 7:8,9,13,18
**managed** 6:9
**management** 78:13 79:23
**manager** 70:17 76:8
**managers** 78:24
**manages** 7:19
**manner** 90:16
**manual** 50:11 65:13
**March** 48:11,15 49:1,13 51:2
**MARCUS** 2:4
**mark** 17:21 19:2 82:19 86:15
**marked** 17:24 18:2 19:7 28:18 63:19,23 82:22 86:18
**master** 24:18
**matching** 43:6
**material** 8:23 9:1 32:6 36:10 53:6
**materially** 5:16
**matter** 10:12 86:21
**mean** 5:24 8:18 27:6 28:6 35:6 59:25 70:3 71:16 74:20
**meaning** 61:15 70:6 80:12 85:14
**meant** 71:21
**Meek** 1:14 3:2 4:1,8 5:3,9 95:19
**meet** 78:12,13,23
**member** 47:5
**mentioned** 6:20
**merely** 88:5
**message** 26:3 31:13 59:22 60:3,12 61:12,14 61:16,22,24
**messages** 62:13,14 83:22
**MESSER** 2:7
**method** 48:8
**methods** 50:11
**middle** 70:6
**minor** 51:14
**minute** 76:2
**minutes** 93:3
**misreading** 58:7
**missed** 81:19
**missing** 42:8
**Misstates** 75:11 92:18
**mode** 64:4,13,17 65:3,5 65:15 90:16
**model** 64:3
**modes** 65:7,8
**moment** 16:3 26:25 40:14 60:6 87:1
**month** 74:7
**months** 5:16,21
**morning** 4:6 14:8,10 20:3,6 21:13 38:14,17
**mother** 1:4 10:17 51:14

moving 85:17
MP3 13:3,5,15,21 14:25
Multiple 78:12
mute 5:2

**N**

N 2:2 3:1
N-A-R-I-N-E 69:1
N.A 1:8
N.L 1:4 10:16,24 51:13
  51:18
name 4:7 5:8 64:3,15
  82:11 96:22
Narine 68:24
natural 1:4 10:17
nature 8:24
near 26:22
necessarily 36:6,8 68:7
needed 32:25
neither 62:5 96:18
Nevada 1:18 95:1 96:4
never 18:17 43:5,9 67:23
  71:14 83:19
new 2:5 14:7 45:6 54:2
nightly 9:5 26:24,24
nine 87:11
ninety 53:3,16 54:13,21
  59:8
normally 9:2 43:2
North 7:16,17,19
notate 30:25
notating 31:2
note 32:5,25 62:10 74:19
  74:20 75:1,10
notes 9:8 11:25 12:16
  14:7 17:8,13,16 18:23
  19:18,19,21,23,25 20:3
  20:5,7,14,17,21 21:1,7
  21:8,12 26:1,5,7,8,12
  26:13,19,22 27:1 30:8
  30:14 36:9,15 38:16,18
  39:16,20,20 40:1,3,4
  44:23 45:9 47:18 48:1
  55:9,10,11,12 59:16
  60:9 61:5,25 62:11
  63:3,6 92:5,6,9
notice 12:17
notify 93:21
noting 31:1
number 9:21 10:3 11:9
  11:11 18:16 20:17 22:6
  22:7,11,15,20,24 24:2
  24:23 25:2,8,12,14
  31:12 37:23 38:24 39:5
  42:6 43:6,7 44:14,17
  45:16,20 46:2,16,18,22
  46:22,25,25 47:1,4,6
  47:10,19,20,22,24 48:5
  48:6,10,20 49:11,12,15
  49:22,24 50:1,3,7,10
  51:2,8 52:15 53:2
  58:16 82:2 83:1,4,14
  83:18 84:6,10,20,22
  85:3 90:9 91:2,8,18
  92:1,16
numbers 11:2,4 57:3,10
  57:11,14 87:19
numerous 76:6

**O**

object 21:16 22:5 32:1
  68:14
objection 11:14 13:22
  15:7,22 16:18 20:10,23
  21:14 23:9,14 24:3
  29:20 31:7,16 33:5,24
  35:19 38:10 40:7 42:10
  42:19 43:24 44:5 49:7
  49:17 51:9 54:7,22
  59:10 62:19 64:18
  66:11,18 67:1,11 68:1
  68:12,19 69:11 70:1
  72:4,12 73:1,15,24
  75:2,11 76:14 78:2
  79:24 80:7,19 81:4
  82:4 83:23,25 84:7,8
  84:18 85:4 86:8,8,10
  86:11 87:25 88:2 89:2
  89:16,17 90:11,20,22
  91:9 92:17,24
objections 83:7 84:25
  89:1,18 91:10
observation 79:17
observe 78:14
obtain 17:3
obtained 48:4,6,10 49:12
obviously 54:18 79:11
occurred 62:24
office 67:22,23 93:17
officer 87:9
official 62:11
Oh 10:2 12:11 38:18 62:4
  76:6
okay 5:10,11 6:23 7:8,17
  11:24 14:20,24 16:16
  17:5 18:11 20:4,13
  22:22 24:1 26:2,18
  28:8,20,24 29:5 30:23
  35:15 39:15 40:17 41:7
  42:6,14 43:3,18 45:12
  49:10 50:6 52:23 53:11
  54:11 55:13 56:20
  57:23 58:5 59:23 61:5
  63:7 68:18 70:11 74:5
  77:3 80:25 86:15 87:3
onboard 72:7,7,9
once 8:14 78:15
One's 29:9 32:10 55:12
  58:15 63:20
one-month 74:10
ones 12:15 13:7,18 25:5
onsite 78:13,24
oOo- 94:7
operation 4:24 9:7
operations 5:6 7:14,15
opportunity 79:6,12
order 28:19 41:1 93:20
original 37:13 93:16,23
originally 9:11 37:3
outbound 46:24
outset 28:17
outside 84:21
Outsourcing 6:14
oversee 6:20

**P**

P 2:2,2

p.m 60:11 94:6
page 3:3,6 18:7 30:11
  40:18,20 45:10 46:10
  60:4,7 83:1 91:3,4
pages 20:7 21:12
paid 24:11
paragraph 87:11
Park 2:5
part 6:14 7:9 9:5 50:21
  63:17
particular 32:7 35:21,22
  89:20
particularly 14:13 64:4
  72:22 74:2
parties 93:14,22
PARTNERSHIP 1:9
party 31:13 34:10 59:22
  59:24,25 60:11,12 62:1
  92:8 96:20
payment 53:2,14 54:12
  54:12,19
pays 24:13
penalty 95:7
people 10:15 65:20
  74:20 76:6
percent 42:8
period 9:16 10:6,8 14:16
  25:6 50:16 53:10,12,15
  74:6,8,10 83:4 84:23
  88:13
perjury 95:7
person 43:12 54:17,18
  68:22 83:6,15
person's 44:4 47:21
pertaining 19:22,24
pertains 41:22
phone 2:4,12 9:21 11:2,4
  11:9,11 18:16 22:5,7
  22:24 25:2 44:13,17
  46:25 47:1,4,19,20,22
  47:24 48:5,10,20 49:12
  49:15 50:1,7,10 51:2
  58:16 80:16 81:1 82:1
  83:3,20 84:22
PHV 2:4
physical 78:15,17
physically 36:16
place 25:22 96:7
placed 83:2,14
plaintiff 1:6 2:3 51:14
  83:6,16 84:12 85:24
  91:7 92:15
plaintiff's 55:13,19,21,24
  83:20 84:13,15 86:16
  93:13
plaintiffs 10:15
play 12:15,20 13:5,8,10
  15:4
played 12:19
please 4:6 5:8 69:13
point 37:19 45:6 47:6
  51:20 79:23
policy 53:3,17
portfolio 4:13 5:4,11
pose 8:1 67:9
possible 92:14,23
possibly 23:22 90:17

Precisely 18:7
predated 25:1
predictive 65:12 84:21
  85:2 86:6 87:17,23
  88:23,25 89:14 90:9
Predominately 6:5
preparation 19:13
prepare 17:7 18:21 63:14
prepared 43:20
prerecorded 83:21
present 83:5 84:24
previous 86:8
previously 86:9
primary 86:9
printout 30:14,17 37:9
prior 6:3 47:2 96:9
privilege 15:23 20:11
  21:17 68:20 85:14
privileged 68:14
probably 12:11 16:5,13
  74:13,17
problem 15:18
proceedings 96:6,9,10
  96:16
process 53:18,22 54:2
processes 78:14
produce 17:1 25:13
produced 9:8 12:4,24
  13:17 14:2,8,10,12
  17:11,12,13,18 18:14
  20:8 21:12 40:15 52:20
  56:10,14,18 57:20
production 12:7 18:3
project 29:18
promise 54:12,19
promised 46:19
proper 93:25
propose 93:12
proprietary 28:18
protective 28:19
provide 21:20 66:3 67:15
provided 8:24 9:2,4
  17:18 20:3,6 42:16
  48:5 49:15
pull 8:13 20:14,17,20
pulled 21:6
purpose 78:8,11
purposes 22:10 57:5
  78:12 80:17 93:25
pursuant 14:22 49:19
  77:15
put 43:23

**Q**

question 5:3 8:1 11:24
  20:4 21:19 22:17 23:16
  23:17 25:19 27:17,18
  28:4 34:18 35:1,2,9
  39:8 45:22 47:13,14
  52:6 55:2,17 60:25
  64:7,12,13 66:15 67:21
  68:15 69:13 77:25 83:1
  83:18 84:4 85:5,7,9
  88:20 90:18,22 93:1
questioning 78:3
questions 67:6,9 93:7,9
  93:10
quickly 69:6

quote 90:14

**R**

R 2:2
range 20:22 71:1
reach 15:3,16 44:13 83:6
  83:15
reached 46:16 61:19
read 35:1,2 47:13,14
  87:8 95:7
ready 18:9,10 19:10 22:5
  82:24 87:4
real 26:20,22,22 27:1,2
really 6:7 11:21 13:24
  33:8 63:8
reason 40:5 42:7 53:4,5
  93:22
reasons 13:1
recall 42:22 43:8 52:10
  74:13 86:25
receipt 93:19
receive 66:16
received 8:14 21:5 26:3
  54:4
recollection 12:25 58:21
reconfigured 89:20
  90:13
record 4:7 13:20,21,21
  25:9,16 27:10,24 28:12
  34:19,23,24 35:17 36:4
  57:5 62:12 63:10,11
  75:22 93:5,6 96:10,13
recorded 13:14,15
recording 16:2 17:2
  51:21,24 54:14,20 55:1
  56:6,7,10 59:9 62:6
recordings 12:14,19,24
  13:2 14:2,3,23,25 15:5
  15:16 25:13 52:12,19
  52:25 53:13 55:8 56:14
  56:18,25 57:6,18,19
  58:23
records 25:12 31:4 33:3
  33:4,10,20,22,22 34:10
  49:5
refer 51:15
referred 51:12 55:2
  60:21 92:2
referring 10:19 12:23
  43:14,16 45:12 60:20
  64:8 75:9 89:12
refers 87:12
reflect 33:22,22 38:23
  60:10 92:6
reflected 25:25 26:4,6
  31:14 41:9,21 47:25
  48:17 62:25 63:2,3
reflecting 18:15
reflects 32:5
regard 23:10 35:7 75:13
  89:21 90:14
regardless 90:14
regards 33:17
regular 16:22
related 20:1 59:18
relationship 64:22 69:7
  69:8
relative 96:20

Atkinson-Baker Court Reporters
www.depo.com

relevant 9:15 25:13
50:19
relieve 93:14
remember 43:10 44:19
51:25 77:23
rep 32:20
repeat 45:21
rephrase 55:17
report 92:12
REPORTED 1:24
reporter 35:3 47:15
93:15 96:1,4
REPORTERS 1:22
represent 57:19 80:22
representative 27:9
32:16,17 80:14 87:12
representatives 28:11
29:1,2,10 31:22 58:15
80:13 91:21
represented 51:14
request 9:3 10:6 25:15
66:10,22 82:19 83:11
83:24 84:20 91:1,5
requested 96:17
requests 3:14 20:5
required 82:15
requirement 41:5 82:17
respect 8:16 23:23 28:3
32:2 35:21 66:19 88:2
respond 90:18
responded 58:14
responds 83:8 91:11
response 9:22 48:2
49:10 50:2 55:21 58:13
58:18 64:14 82:18
83:23 88:17
responses 3:11,14 12:7
12:16 50:18 55:14,20
55:24 63:20
responsibilities 4:22,23
restate 31:18 69:13
restrict 78:21
result 30:25 39:22,25
40:1 54:11
results 53:14
retained 59:1,4
retention 53:3,9,12,15
review 12:6,13 17:15
58:18 87:1 93:17,20
96:16
reviewed 12:14 17:8
18:21,22 19:12 55:13
55:19
right 5:13 6:21,25,25 7:1
10:25 12:18 13:1,4
16:24 18:24 19:9,11
20:20 21:4 22:2,12,22
23:2 29:14 30:7,8 33:4
33:17,23 34:7,11 35:10
36:1 37:25 38:21 39:2
39:7,23 41:13,15 44:12
44:24 45:2 46:12 47:9
48:23 50:25 54:21
56:13,25 59:4,14 60:1
60:9,24 61:6 63:7
64:23 69:6 70:18 72:1
72:10 75:18 76:9 81:14
82:25 84:17 88:13
89:11 91:23 93:2

role 4:12,15,20,22 5:15
69:2
roughly 42:8
rows 37:11
RPR 1:25 96:25
running 86:10,11 88:1
89:1,17

**S**

S 2:2
Sandra 1:5 10:18,19,20
10:21 11:3 12:1 51:15
51:18
save 54:13,20
saw 58:20 79:22,25
saying 9:9 18:17 25:15
26:9 54:17 62:20 77:19
81:9 89:13 90:4 91:16
says 34:5,9 35:24 40:23
60:3,12 61:6,12,14,21
61:23,24 62:1 83:8
88:4 89:23 90:5,24
91:25
scope 84:1 85:6,7 88:3
screen 36:17 56:18
search 25:12 75:24,25
second 3:12 4:21 5:3
22:3 28:16 29:24 34:18
34:19,20 53:10 63:21
78:3
see 10:2,4 22:4 27:10,23
29:7,10,14,16,19 30:2
36:3 45:12,18 46:3,14
47:9,11,17,25 48:14,23
48:25 57:8,11,18 58:6
59:17,21 60:17 61:2,4
64:6 79:6 87:14,20
91:12,13
seeing 86:25
seen 8:23 18:11,17,19
42:14 43:3,5 63:25
64:1 86:24 87:6 91:25
send 74:19
sense 8:22
sensitive 78:22
sent 38:13,17 93:17
separate 26:8,20,21
30:17 69:21
sequential 57:3
series 57:11
served 48:3 55:24
service 31:22,24 32:15
32:16,20
services 1:9 4:14 5:4,19
6:13 8:6 9:24 17:12
18:3,15 24:18 25:4
37:20,23 40:15 41:10
41:23 42:1,9 50:20
65:1,4,16,22 67:21
70:17,25 71:3 74:5,8
76:12,23 77:16 80:13
81:2,13 82:2 85:2,23
87:23 88:9,18 90:13
Services' 18:6 79:7
81:20,23,25
set 3:12,15 38:13 63:21
96:7
sets 19:15

seven 6:24
seventh 7:6
short 41:1 63:9
shorthand 96:11
show 36:8 46:24 56:17
signature 93:18
simply 10:4 26:17 64:15
simultaneously 26:15
single 43:3
site 78:6,9 79:5
sites 77:2,3,5,10
sitting 79:17 83:13 85:1
87:22
situation 42:24
six 5:16,21 6:19 20:7
21:11 37:10 69:17 91:3
91:4
Sixteen 70:22
skip 48:7
software 34:15
somebody 8:3 9:19 21:9
37:16 38:7 43:21 74:1
sorry 5:1 14:9,11 18:5
32:21 33:14 34:17
38:18 45:11 49:25
56:12 60:24 63:6 81:12
85:11
sound 42:24 48:12 65:13
sounds 13:1 50:25
source 39:11,12
South 1:17 2:12
span 4:24 6:10,11
speak 16:21 40:22 63:13
68:9,18
speaking 90:20
speaks 88:4
specific 9:3 23:5 27:17
28:4 58:2 69:14 71:8
72:10 84:13
specifically 73:10
specified 20:22
speculate 21:24 92:25
speculation 11:15 13:23
16:19 20:24 31:8 33:7
33:25 35:5 38:11 40:8
41:16 42:11,20 43:25
44:6 54:8,23 59:11
66:12 67:2,12 69:13
72:5,13 73:2,16,25
75:5 76:15 80:1,8,20
81:5 82:5 85:5 88:1
89:18 92:18
spell 27:4 68:25
spelled 73:11
spite 47:10
spoke 21:21 34:9 46:19
58:15 59:21 60:12 62:1
63:16 68:23 92:7
spoken 8:5,7,10
spreadsheet 37:10
stamp 45:10 51:23 57:2
57:10 60:4 62:17,18,18
63:1,2,4
stamped 14:5,13 18:3
19:2 36:23 39:17 57:6
60:16
start 10:2 70:20 78:4
started 5:2 70:14

state 4:6 48:4 95:1,16
96:4
stated 88:6 89:2
states 1:1 91:2
status 28:9,25 29:6
33:19
stipulated 94:1,2,3
stolen 45:7
stop 58:17
Street 2:12
Strike 33:14
structured 69:10
stuff 9:13 14:19
subject 28:19
subscribed 96:22
substantive 25:24
subtract 6:8
sued 24:25
Suite 1:17 2:5,9,13
Suits 1:15
summary 27:20
supplemental 3:11 63:20
support 5:18 9:14 21:9
37:16
sure 21:19 27:20 28:6,22
31:21 34:21 41:20 46:5
49:21 55:19 69:8 76:8
78:11 79:1 84:4 88:11
93:3
Sutherland 7:4,5
switch 6,6,7
switched 13:20 73:14
sworn 4:2 96:9
system 20:16 27:8,9,10
27:11,11,12,22,23,24
28:8,10,12,12,13 29:1
29:7,11,13,16,19 30:3
30:15,18 31:5,15,23
32:10,18 35:17 36:2
50:4,12,24 51:5 64:15
65:9 72:11,15,24 73:4
73:20,21,22 74:9,24
76:2,2 83:21 85:24
86:3 87:11,13 88:19,19
88:21
systems 50:14 73:14
86:5 87:16 88:12 89:21
90:14

**T**

take 19:9 40:13 46:6
49:14 63:8 64:11 87:1
taken 1:15 96:7
talk 25:3 35:20 53:9 69:6
70:11
talk-off 81:7
talking 5:5 17:6 29:2
34:1 48:19 50:20 55:23
62:15 81:20,21,23
87:10
telephone 87:19
tell 45:17 47:18 50:13
71:10,14,16,18,20,21
71:22 72:3,17,25 73:3
73:7,8,9,12,13,22 74:1
74:11 76:25 77:1 82:24
87:22 88:24
telling 43:5

tells 46:15 71:25
ten 45:11 52:21 70:15,24
Tennessee 77:6,7,8
terminate 85:15,17
terms 39:18 49:20 79:17
81:6,9
testified 4:3 44:7 74:6
90:3
testifying 4:9 96:9
testimony 75:12 85:7
92:19 95:11 96:14
Texas 77:7,8
Thank 34:22 86:22 94:4
theses 15:4
thing 16:5 34:11 37:4
78:22
things 26:20,21 36:6
76:10
think 6:24 9:14 10:12,16
10:21,23 12:22 13:4,7
13:20 20:2 23:21 29:23
35:11 36:5 44:18,21
48:22 51:20,21 53:1
56:1 58:20 67:6,22
70:15 76:1 80:17
thinking 52:3 80:21
third 31:13 34:9 59:21,24
60:10,12 62:1 92:8
thirty 93:19
thought 71:20
three 6:20 83:1,2 89:17
time 14:16 21:6 25:6
26:14,20,22,23 27:2,2
29:21 31:6 32:19 45:19
46:6 64:11,19 71:4
73:14 74:6 83:4,11
84:23 85:12,18,19
88:12 92:15 94:4 96:7
times 71:7
titles 56:24
today 4:9 68:11 83:13
84:5 85:1 87:22
today's 17:7 18:22 19:13
22:10 63:14
total 52:16
trace 48:7
transcribed 96:12
transcript 93:16,19,20
93:23 95:8,11 96:13,16
transfer 31:5
transferred 36:13
transpired 25:10
transpiring 32:24
true 95:10 96:13
try 15:3
trying 10:1 16:4 17:3
25:23 27:14 44:13
62:23
twelve 52:21 91:2
twice 77:13
two 10:15 14:3,22 19:15
26:20,21 36:5 53:15,20
60:5 62:8 74:8 77:5
89:17
type 66:16 67:15
typically 8:3 67:13 72:6
72:21 74:18,19 75:18
75:19,20 76:10 77:13
79:16

Atkinson-Baker Court Reporters
www.depo.com

Page 6

**U**

U.S 7:14
Uh 77:17
Umm 21:22
undersigned 95:6 96:3
understand 10:11 35:9
36:5 65:5 90:19 91:16
understanding 85:12
unit 87:12
UNITED 1:1
unpack 12:18
updated 26:13,15,17
updates 31:3
upgrade 73:4 74:24 76:2
upgraded 74:10
upgrading 72:23 73:20
73:23
uploaded 26:23
use 9:6 22:23 23:23 70:1
71:11,15,23 72:1,10,15
72:18 77:4 89:13 90:8
useable 17:2
uses 6:16

**V**

vague 8:15 23:9,15,16
23:21 28:2 29:20 31:16
32:2 33:5 35:4,19 40:8
42:21 49:17 51:9 62:19
64:18 66:18 68:1 69:11
72:4 75:2 79:24 80:19
Vanderbeek 16:10,14
various 37:14 65:6
Vegas 1:18
vendor 9:19 13:17 24:20
24:22 26:2,19 27:10
29:6,17 30:23 32:16
34:5,6,9 35:16,22 36:3
36:7,18 39:11 42:16
52:5 65:24 66:17 67:25
69:22 70:11 71:2,8,10
71:16,18,20,21,22,25
72:23 76:8,9
vendors 4:24 6:12,15,18
7:10 8:19 9:10,11 10:7
13:19 17:19 22:19 23:7
23:11 24:1,5,16,24
25:11,16,21,22 26:12
27:22 29:3,16 31:4
33:3,10,16 34:14 35:24
37:3,5,24 38:3,25
39:10 43:7 50:22 53:24
54:3 67:10 69:8,9,17
69:24 70:8,9,25 80:4
82:14 83:3 84:21 89:20
version 39:13,14 72:17
72:24 73:20,21 74:23
86:2
versions 74:9,12 90:15
versus 35:7
vice-present 4:13
vice-president 4:18 5:4
5:11,14 16:14
viewed 28:10,25
ViewPointe 1:15
Vincent 44:15,17 45:19
46:1,15 60:1
visits 78:7,9 79:5

**W**

voice 83:21
voicemail 61:18
voluntarily 54:4
VS 1:7

**W**

Wait 34:17 42:19 78:2
walk 79:6,16
want 16:2 21:23 23:18
30:25 35:6 41:17 44:21
52:18 64:3 65:15 66:15
89:5 93:3
wanted 58:7 65:3 75:21
wants 20:13 72:21 90:21
warehouse 9:12
wasn't 52:4
watch 79:18
WAV 13:3,9,15,21 15:1
way 17:2 32:23 57:7 79:3
79:4
we're 25:3 45:1 50:20
72:10 74:24 93:11
week 12:12
West 2:8
whatnot 74:21
WHEREOF 96:22
withstanding 91:10
witness 3:2 5:9,20,22 6:1
11:16 13:24 15:9,25
18:1 20:25 21:25 22:19
23:11 24:5 29:22 30:1
31:9,18 32:4,13 33:8
34:1 38:12 40:22 41:17
42:12,22 44:1,10 46:7
49:8,19 54:9,24 56:1
59:12 60:24 64:20
66:13,20 67:3,13 68:4
68:16 70:3 72:6,14
73:3,17 74:1 75:4,15
76:16 77:19 80:2,9,22
81:6 82:6 84:2,9 85:8
85:13,20,21 86:13 88:7
89:3,7,22 90:4,12,17
90:20,23 91:20 92:19
92:20 93:18 96:22
witness' 5:7
witness's 75:12
witnesses 96:8
word 6:10 23:23 28:3
65:5 70:2
words 27:13
work 7:23 27:2 44:4,9
79:1,19
working 70:14,20
works 8:4 69:16
wouldn't 9:2 29:6 59:3
68:6 81:11,12
wrap 93:3
writes 87:16
wrong 54:17,18 58:16
91:8,18 92:1,16
www.depo.com 1:23

**X**

x 3:1 96:16

**Y**

Y-E-N-O-V-K-I-A-N 69:1
yeah 30:4
year 77:13 78:15
years 4:17 5:5,14,15
53:15,20 70:15,22,24
Yenovkian 68:24
YITZCHAK 2:4
yzelman@marcuszel...
2:6

**Z**

Zelman 2:4,4 3:4 4:5
5:12 8:17 11:17 14:1
15:11 16:1,20 17:21,25
18:7,8 19:1,8 20:12
21:3,18 22:1,21 23:13
23:19,25 24:7 27:19
28:5,20,23 30:6 31:10
31:20 32:8,14 33:12
34:4,21,24 35:8,14,23
38:15 40:10,25 41:19
42:13,23 43:16,19 44:2
44:11 45:23 46:9 47:16
47:23 49:9,23 51:11
54:10,25 55:18 56:2
58:1,4,6,8 59:13 60:21
61:1 62:22 63:7,11,12
63:19,24 64:9,21 66:14
66:21 67:4,16 68:8,17
68:21 69:15 70:5 72:8
72:16 73:5,18 74:4,16
75:6,16 76:18 77:21
78:5,10 79:10 80:3,11
80:24 81:8 82:8,23
84:3,11,19 85:11,22
86:14,19,23 88:10,16
89:10,24 90:6,19,25
91:22 92:22 93:2,6,11
94:2,4

**0**

041 57:7
07712 2:5

**1**

1 19:2,16 21:5 39:17
1/12/17 46:20
10:23 1:15
100 34:5,6 35:24
1020 2:13
11 19:2,16 21:5 39:17
12 19:4 36:23 46:13,15
12:45 94:6
1200 2:9
15 1:16
17 3:8
18 83:5 84:23
19 3:9,10 62:17,18 63:1

**2**

2 62:18 63:2,4
2:17-CV-01512-JAM-DB
1:7
2:29 61:4
2:30 60:11,22 61:6
20 46:24
200 1:17 52:18,25

2013 83:5 84:24
2014 45:13 47:8 48:11,15
49:1,13 51:2
2017 14:4,14,21 21:5
46:8,13 56:4 57:21
58:1,4,11,14,22 59:17
59:20 60:11,22 62:25
92:7
2018 1:16 96:23
21 58:14 59:17
22 59:20 60:11,22 62:24
25 14:13,22
26 19:4 36:23 48:11,15
49:1,13
288-3376 1:22

**3**

3 46:11
30(b)(6) 1:14
30(b)6 84:2 85:8
300 2:5
308-9847 48:5 83:4
84:22
34 14:5
35 14:6

**4**

4 3:4 88:17

**5**

5 48:2 96:23
515 2:12
582 1:25 96:25
5901 2:8

**6**

6.6 87:13
6.7 86:2 87:13 88:19,19
89:8
63 3:11

**7**

7.3 87:13
701 2:5

**8**

8 14:4,14,21
800 1:22
82 3:14
8275 1:17
86 3:17

**9**

90 36:3
90045 2:9
90071 2:13
916 48:5 83:4 84:22
916-308-9847 22:6
9847 22:11,15 24:2 25:8
25:12 31:12 38:24 39:5
42:15,20 46:2,16,22,25
48:10 51:8 52:15 83:14
84:6 85:3 90:9

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018