Charles R. Messer (SBN 101094)
messerc@cmtlaw.com
David J. Kaminski (SBN 128509)
kaminskid@cmtlaw.com
Alex A. Wade (SBN 304022)
wadea@cmtlaw.com
**CARLSON & MESSER LLP**
5901 W. Century Boulevard, Suite 1200
Los Angeles, California 90045
(310) 242-2200 Telephone
(310) 242-2222 Facsimile
Attorneys for Defendant
CREDIT ONE BANK, N.A.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| N.L., an infant by his mother and natural guardian SANDRA LEMOS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC,<br><br>                    Defendants. | CASE NO. 2:17-cv-01512-JAM-DB<br>Assigned to: Hon. John A. Mendez<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CREDIT ONE BANK, N.A.'S CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Accompanying Documents**<br>1. Notice of Motion<br>2. Declaration of Gary Harwood<br>3. Declaration of Alex A. Wade<br>4. Statement of Undisputed Facts<br>5. Index of Exhibits<br>6. Response to Plaintiff's Statement of Undisputed Facts<br>7. [Proposed] Order<br><br>Date:         November 6, 2018<br>Time:        1:30 p.m.<br>Place:       U.S. District Court<br>                 501 I Street<br>                 Sacramento, CA  95814<br>Courtroom:  6, 14th Floor |

{00102452;1}

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 1

III.   STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT ............. 4

IV.   ARGUMENT ..................................................................................................... 5

    A.    Summary Judgment Should Be Granted To The Bank On Plaintiff's TCPA
          Claims .............................................................................................. 5

      1.    Plaintiff Cannot Meet His Burden Of Proving That An ATDS Was Used In
          The Calls He Received ..................................................................... 5

          i.    Plaintiff cannot establish actual agency ............................... 5

              a.    Applicable Law re: ATDS Systems ..................... 6

              b.    Snyder's "expert" opinion should be excluded and/or
                    disregarded ....................................................... 8

      2.    Plaintiff has not, and cannot, put on any evidence that the Bank's vendors used
          a prerecorded or an artificial voice ................................................. 11

      3.    The Bank itself never called Plaintiff, and the Bank would not be vicariously
          liable here for the calls made by its vendors .................................. 11

          a.    Plaintiff cannot establish actual agency ............................... 12

              i.    The Bank is not vicariously liable because it did not
                    actually authorize any unlawful call ..................... 12

              ii.    Plaintiff has not demonstrated sufficient control of the
                    vendors ........................................................... 13

          b.    Plaintiff cannot establish apparent authority ......................... 15

          c.    Plaintiff has no evidence of ratification ................................. 16

      4.    In any case, Plaintiff lacks standing to assert TCPA claims because he can
          allege no actual injury, and the Bank is not liable for calls to its customer's
          number made in good faith belief that the number was still the
          customer's ..................................................................................... 17

**B.** **Plaintiff's Rosenthal Act Claim Fails as a Matter of Law**.................................**21**

    **1.** **Plaintiff's Rosenthal Act claim fails because the Bank is not vicariously liable for calls made by the vendors**.......................................................**21**

    **2.** **Plaintiff's Rosenthal Act claim fails because the calls were not excessive or dialed with an intent to harass**............................................................**21**

    **3.** **Plaintiff's claims brought under 15 U.S.C. § 1692b(3) and 15 U.S.C. § 1692c of the FDCPA, which are incorporated into the Rosenthal Act, fail as a matter of law**............................................................................**23**

        **a.** **Plaintiff's 1692b(3) claim fails as a matter of law**.....................**23**

        **b.** **Plaintiff lacks standing to bring suit under § 1692c of the FDCPA, therefore his claim fails as a matter of law**.................**24**

**C.** **Plaintiff's Intrusion upon Seclusion Claim Lacks Merit**................................**25**

    **1.** **The Bank is not vicariously liable for its vendors**................................**25**

    **2.** **Plaintiff's claim for intrusion upon seclusion lacks merit**...................**25**

**D.** **Plaintiff Lacks Standing to Bring Suit**.............................................................**28**

**V.** **CONCLUSION** ............................................................................................................**29**

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.** **INTRODUCTION**.........................................................................................................**29**

**II.** **PLAINTIFF CANNOT MEET HIS BURDEN ON SUMMARY JUDGMENT**........**29**

**III.** **ARGUMENT** ...............................................................................................................**29**

**A.** **Plaintiff Is Not Entitled to Summary Judgment on His TCPA Claims Against Credit One Bank**.............................................................................................**29**

    **1.** **Calling a a customer-provided number that has been reassigned unbeknownst to the caller is not sufficient for TCPA liability**.............**29**

    **2.** **The Bank is not vicariously liable for the calls made by its vendors**....**30**

B.      Plaintiff cannot meet his burden of proving that an ATDS was used for the calls he received....................................................................................30

C.      Plaintiff Is Not Entitled To Any TCPA Damages against Credit One, Including Treble Damages...........................................................................................32

    1.      Plaintiff not entitled to any TCPA damages against Credit One..........32

    2.      Plaintiff is not entitled to treble damages because there was no willful conduct by Credit One or its vendors and the calls at issue were made in good faith.....................................................................................32

IV.     CONCLUSION.............................................................................................35

{00102446;1}            iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-cv-01512-JAM-DB

# TABLE OF AUTHORITIES

<u>Cases</u>

ACA Int'l v. FCC,
885 F.3d 687 (C.A.D.C., 2018)..................................................................... 5, 6

Anderson vs. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................... 4

Arteaga v. Asset Acceptance, LLC,
733 F.Supp.2d 1218 (E.D. Cal. 2010)......................................................... 22

Bank v. Pentagroup Financial, LLC,
2009 WL 1606420 (E.D. N.Y. 2009).......................................................... 24

Buslepp v. B&B Entertainment, LLC,
2012 WL 4761509 (S.D. Fla. Oct. 5, 2012)................................................. 6

Cabrera v. Cordis Corp.,
134 F.3d 1418 (9th Cir. 1998) .................................................................... 11

Calderone v. United States,
799 F.2d 254 (6th Cir. 1986) ...................................................................... 29

Camacho v. Jefferson Capital Sys., LLC,
No. 14-CV-02728-BLF, 2015 WL 5569082 (N.D. Cal. Sept. 21, 2015) .................................... 21

Campbell-Ewald Co. v. Gomez,
136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ................................................... 30

Carman v. CBE Group, Inc.,
782 F.Supp.2d 1223 (D. Kan. 2011)........................................................... 22

Celotex Corp. v. Catrett,
(1986) 477 U.S. 317................................................................................ 4, 11, 29

Chisholm v. AFNI, Inc.,
2016 WL 6901358 (D.N.J. Nov. 22, 2016) ................................................. 22

Chyba v. First Financial Asset Mgmt.,
2014 WL 1744136 .................................................................................. 18, 19

Clarke v. Sec. Indus. Ass'n,
479 U.S. 388 (1987) ................................................................................... 20

{00102446;1}                                  v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579 (1993) ................................................................................... 9, 10, 11

Davis v. Hollins Law,
25 F. Supp. 3d 1292 (E.D. Cal. 2014) ................................................................ 23

Declaratory Ruling,
30 FCC Rcd .................................................................................................... 18

Delalat v. Fountain Valley Reg'l Hosp. & Med. Ctr.,
No. 10CV01273-CAB (NLS), 2012 WL 12846090 (S.D. Cal. May 21, 2012) ........................... 21

Department of Commerce v. U.S. House of Representatives,
525 U.S. 316 (1999) .......................................................................................... 4

Deteresa v. Am. Broad. Cos., Inc.,
121 F.3d 460 (9th Cir.1997) ............................................................................... 25

Dominguez v. Yahoo, Inc.,
894 F.3d 116 (3d Cir. 2018) ................................................................................ 7

Fausto v. Credigy Servs. Corp.,
598 F. Supp. 2d 1049 (N.D. Cal. 2009) ............................................................ 27, 28

Gary v. TrueBlue, Inc.,
Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) ......................... 5

Gonzalez v. Ocwen Loan Servicing, LLC,
No. 5:18-CV-340-OC-30PRL, 2018 WL 4217065 (M.D. Fla. Sept. 5, 2018) ................... 6

Hill v. National Collegiate Athletic Ass'n,
7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994) ........................................... 25

Horowitz v. GC Servs. Ltd. P'ship,
No. 14CV2512-MMA RBB, 2016 WL 7188238 (S.D. Cal. Dec. 12, 2016) ...................... 23

In re Joint Petition Filed by Dish Network, LLC,
28 FCC Rcd. 6574 (2013) ................................................................................... 30

Jiminez v. Accounts Receivable Mgmt., Inc.,
No. CV 09-9070GWAJWX, 2010 WL 5829206 (C.D. Cal. Nov. 15, 2010) (summary judgment
granted .......................................................................................................... 22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

Jones v. Royal Admin. Servs., Inc.,
887 F.3d 443 (9th Cir. 2018) ........................................................................... 12

Keyes v. Ocwen Loan Servicing, LLC,
2018 WL 3914707 (S.D. Mich. August 16, 2018)...................................... 7, 9

Kimberly v. Great Lakes Collection Bureau, Inc.,
1996 WL 34445714 (D. Conn. 1996) ............................................................... 24

King v. Time Warner Cable Inc.,
894 F.3d 473 (2d Cir. 2018)............................................................................... 7

Kristensen v. Credit Payment Services Inc.,
16-15823, 2018 WL 343758 (9th Cir. Jan. 10, 2018)..................................... 16, 17, 30

Kristensen v. Credit Payment Servs. Inc.,
No. 2:12-CV-00528-APG, 2015 WL 4477425 & n.42 (D. Nev. July 20, 2015) ......................... 16

Lord v. Kisling, Nestico & Redick, LLC,
No. 1:17-CV-01739, 2018 WL 3391941 (N.D. Ohio July 12, 2018) ............................................. 5

Makaron v. GE Sec. Mfg., Inc.,
No. CV–14–1274–GW AGRX, 2015 WL 3526253 (C.D. Cal. May 18, 2015)........................... 16

Makreas v. Moore Law Grp., A.P.C.,
582 F. App'x 693 (9th Cir. 2014) ................................................................... 21

Marks v. Crunch San Diego, LLC,
2018 WL 4495553 ............................................................................................... 8

Marseglia v. JP Morgan Chase Bank,
750 F. Supp. 2d 1171 (S.D. Cal. 2010)............................................................. 26

Marshall v CBE Grp.,Inc., Case No.:2-16-cv-02406-GVIN⸺ NJK,
2018 WL 1567852 (D. Nev. Mar. 30, 2018) ................................................... 9

Meyer v. Portfolio Recovery Assocs., LLC,
707 F.3d 1036 (9th Cir. 2012) ........................................................................... 5

Mohamed v. American Motor Company, LLC,
2017 WL 4310757 (S.D. Fla., September 28, 2017) ....................................... 9

Nelson v. Pima Cmty. Coll.,
83 F.3d 1075 (9th Cir. 1996) ........................................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

NLRB v. Dist. Council of Iron Workers of the State of Cal. and Vicinity,
124 F.3d 1094 (9th Cir. 1997) ............................................................................ 12, 15

Pinkus v. Sirius XM Radio, Inc.,
2018 WL 3586186 (N.D. Ill. July 26, 2018)............................................................ 8

Pugliese v. Professional Recovery Service, Inc.,
2010 WL 2632562 (E.D. Mich. June 29, 2010)..................................................... 22

Rector v. Wells Fargo Dealer Servs.,
No. CV135288DSFMANX, 2014 WL 12603205 (C.D. Cal. May 12, 2014) ............................ 26

Reed v. I.C. System, Inc.,
2017 WL 89047 (W.D. Pa. Jan. 10, 2017)............................................................. 22

Salyers v. Metro. Life Ins. Co.,
871 F.3d 934 (9th Cir. 2017) ................................................................................ 12

Sessions v. Barclays Bank Delaware,
No. 1:17-CV-01600-LMM, 2018 WL 3134439 (N.D. Ga. June 25, 2018)................... 5

Smith v. Capital One Fin. Corp., No. C,
11–3425 PJH, 2012 WL 1669347 (N.D. Cal. May 11, 2012) .................................. 26

Soppet v. Enhanced Recovery Co.,
679 F.3d 637 (7th Cir. 2012) ................................................................................ 17

Spokeo, Inc. v. Robins,
2016 WL 2842447 (U.S. May 16, 2016) ........................................................... 28, 29

Stoops v. Wells Fargo Bank N.A.,
197 F.Supp.3d 782 (W.D. Pa. 2016)...................................................................... 20

Theos & Sons, Inc. v. Mack Trucks, Inc.,
431 Mass. 736, 729 N.E.2d 1113 (Mass. 2000)...................................................... 16

Thomas v. Taco Bell Corp.,
582 F. App'x 678 (9th Cir. 2014).................................................................... 12, 15

Tucker v. CBE Group, Inc.,
710 F.Supp.2d 1301 (M.D. Fla. 2010) .................................................................. 22

United States v. Bonds,
608 F.3d 495 (9th Cir. 2010) ................................................................................ 13

{00102446;1}                                    viii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

United States v. Melcher,
672 F. App'x 547 (6th Cir. 2016) .................................................................. 10

Van Patten v. Vertical Fitness Grp., LLC,
22 F.Supp.3d 1069 (S.D. Cal. 2014) ............................................................... 5

Voice Media Grp. Inc.,
No. 13-62044-CIV, 2014 WL 1767097 ............................................................. 9

West v. Costen,
558 F. Supp. 564 (W.D. Va. 1983) ................................................................ 24

## Statutes

15 U.S.C.  § 1692b and § 1692c ....................................................... 23, 24, 25

15 U.S.C. § 1692a(3) ................................................................................. 24

15 U.S.C. § 1692c(c) ................................................................................. 27

15 U.S.C. § 1692d(5) ........................................................................... 21, 22

15 U.S.C.A. § 1692c(b) .............................................................................. 24

15 U.S.C.A. § 1692d ................................................................................. 25

15 U.S.C.A. § 1692k(a) .............................................................................. 24

47 U.S.C. § 227 .................................................................................. 1, 10

47 U.S.C. § 227 (b)(3) ............................................................................... 32

47 U.S.C. § 227(a)(1) ............................................................................ 5, 31

47 U.S.C. § 227(b) .................................................................................... 5

47 U.S.C. § 227(b)(1)(A) ............................................................................ 18

*Cal. Civ. Code* § 1788 ................................................................................ 1

California *Civil Code* § 1788.11(d) ................................................................ 21

California Civil Code § 1788.17 ...................................................................... 21

## Rules

F.R.C.P. Rule 56(b) .................................................................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

## I.   INTRODUCTION

Plaintiff asserts claims against Defendant Credit One Bank, N.A. ("Credit One" and/or "the Bank") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code* § 1788 *et seq.* ("the "Rosenthal Act") and for Invasion of Privacy by Intrusion upon Seclusion.   Underlying all of Plaintiff's claims is his allegation that the Bank and its vendors attempted to contact him by calling his cell phone utilizing an Automatic Telephone Dialing System ("ATDS") without his prior consent.

It is undisputed that Plaintiff's telephone number had been provided to the Bank by one of its cardholders, and then years later that telephone number was acquired by Plaintiff, unbeknownst to the Bank.   It is also undisputed that Plaintiff's telephone had a built-in call-blocking application that fed information about the calls he was receiving to TCPA attorneys, who then contacted Plaintiff and planned this litigation, all while Plaintiff continued to receive call attempts without providing any notice to the callers that he was not the Bank's cardholder. The Bank and vendor records are clear that only one call was ever answered, and then quickly hung up, with no request for calls to stop.   Now, Plaintiff seeks hundreds of thousands of dollars in TCPA statutory damages for call attempts by the Bank's vendors—calls that were placed in good faith to a cardholder-provided number, and that were not in any case placed with random/sequential number generating equipment defined by the TCPA to be an ATDS system.

For the reasons detailed below, and given the undisputed material facts relevant here, the Bank is entitled to summary judgment as a matter of law.

## II.   STATEMENT OF FACTS

The Bank is a national, U.S. based bank specializing in credit cards and services for approximately nine million credit-card-holders across the United States.   The Bank hires independent vendors to call the Bank's customers at the telephone numbers the customers provide, to discuss issues related to their accounts.   *See* the Bank's Separate Statement of Undisputed Facts ("SSUF") ¶ 6.   The Bank's vendors attempt to reach customers, for example, when they are delinquent on payments.   The Bank's strategy of maintaining good communications with its cardholders is one reason that it is able to provide unsecured lines of

credit to sub-prime borrowers, when most lenders in the sub-prime marketplace require deposits or other sureties from persons who apply for credit-cards without a good credit history. The Bank requires robust contractual permission from its cardholders regarding the Bank's and its vendors' ability to call the telephone numbers the cardholders opt to provide.

This suit is based on calls by the Bank's vendors, who were attempting to reach the Bank's customer, D.V. (name redacted for privacy), at D.V.'s 916-XXX-9847 telephone number ("the -9847 number" or "phone number at issue"). D.V. is a longtime and still current customer of the Bank who applied for, and was issued, a VISA credit card from the Bank. *See* Harwood Decl. ¶ 7. During the application process and again upon opting to use his VISA credit card, D.V. accepted the terms of the Bank's Cardholder Agreement. *Id.* Those terms included an agreement between the Bank and D.V. authorizing calls to D.V. at any telephone number he provided, via technologies including automatic telephone dialing systems. *Id.* When D.V. breached the Cardholder Agreement and failed to make timely payments, the Bank's vendors called him to discuss his account. *See* Harwood Decl. ¶ 9.

D.V. first provided his -9847 number to the Bank on March 26, 2014, during a call he made to the Bank about his account. *See* Harwood Decl. ¶ 8. Unbeknownst to the Bank and its vendors, the -9847 phone number was subsequently relinquished by D.V. *See* Harwood Decl. ¶ 10. Subpoenaed phone records demonstrate that the -9847 number was reassigned to Plaintiff N.L.'s mother on December 19, 2016. *See* SSUF, ¶ 5. The Bank had no notice or any other reason to know that the -9847 phone number was reassigned to Plaintiff. *Id.*

The Bank's vendors made 189 calls to the -9847 phone number between February 20, 2017 and June 13, 2017: 115 call attempts were placed by Defendant, iEnergizer Holdings Ltd. ("iEnergizer") (2/20/17-3/16/17); 48 call attempts were placed by Defendant, GC Services LP ("GC Services") (3/18/17-3/26/17); and 26 call attempts were placed by Defendant, First Contact LLC ("First Contact")(4/8/17-6/13/17).[1] *See* SSUF, ¶ 9; *See also* Harwood Decl. ¶ 11, Exhs. 1 and 2. Only *one* of those calls was answered, and the Bank itself never made *any* calls to the

---

[1] Plaintiff reached a settlement regarding the calls made by First Contact, but has refused to provide any further information on this point. Plaintiff now apparently seeks double recovery against the Bank for First Contact's calls.

Plaintiff's -9847 phone number.  *See* Harwood Decl. ¶¶ 12 and 13; *See also* SSUF, ¶¶ 8 - 10.

Plaintiff alleges that he told the Bank to stop calling on February 21, 2017, the day after the Bank's vendors first started reaching out to his cellular number in attempts to contact D.V. *See* Plaintiff's Amended Complaint, Docket No. 24, ¶¶ 29-30; *see also* Ex. 5 to Wade Decl. (Plaintiff's call log); *see also* Ex. 6 to Wade Decl., pgs. 2 and 6 (Plaintiff's Responses to Credit One's Interrogatories); *see* also Ex. 7 to Wade Decl., 61:1-13 (Plaintiff's Deposition Transcript). However, only one call to -9847 was answered—on February 22, 2017.[2]  *See* Harwood Decl. ¶ 13; *See also* SSUF, ¶ 10.  The recording of that call to -9847 from one of the Bank's vendors, iEnergizer, is of a brief February 22, 2017 telephone conversation:

> Person who Answered:      "Hello who is this?"
> iEnergizer representative:  "Um please note ma'am, this call may be monitored or recorded for quality assurance.  Can I speak with D.V.?
> iEnergizer representative:  "Hello?"
> (End of call.  **Person who answered hangs up**.)

*See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording).

That was the extent of the call.  No one ever told the iEnergizer representative to stop calling -9847; further, the Bank received no record from iEnergizer that there was a Do Not Call request, or that the person who answered that call was a child (who was taken by the caller to be a woman, or "ma'am").  *See* Harwood Decl. ¶¶ 18-19; *See also* SSUF, ¶ 12.

Further, Plaintiff N.L. and his mother testified that shortly after he began receiving calls on February 20, 2017, they used an App native to Plaintiff's Metro PCS phone to report the calls and block them.  *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 52:9-12; and Ex. 8 to Wade Decl., Plaintiff's Mother's Deposition, 52:5-25.  Shortly thereafter, Plaintiff received a call from an attorney named Kevin Crick.  Plaintiff's mother confirmed that Plaintiff passed the phone to her and she questioned why Mr. Crick was calling her son (Plaintiff), wherein Kevin Crick responded: "I'm an attorney that represents harassment calls, particularly to minors and your son

---

[2] Plaintiff admits that he only had one conversation with the Bank or its vendors, *see* Plaintiff's Deposition testimony, 47:13-15, which corroborates the Bank's records since there exists only one recording related to the -9847 number during the time period in question.

reported harassing calls through the Metro PCS App." Ex. 8 to Wade Decl., Plaintiff's Mother's Deposition, 54:3-9.  After that, the Plaintiff, his mother, and his attorney allowed the calls to continue from when the calls began (in February of 2017), until June of 2017[3], without ever notifying the Bank or asking the Bank to stop calling—and it was only after the Bank stopped calling its cardholder (when that cardholder paid his balance) that Plaintiff filed his lawsuit.

The Bank's first notice that -9847 was a wrong number and that the Plaintiff wished calls to -9847 to cease was in the Plaintiff's Summons and Complaint which were served in this case in August 2017.  *See* Harwood Decl. ¶ 19; *See also* SSUF, ¶ 17.

## III.    STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment, is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as well as to all or any part thereof."  F.R.C.P. Rule 56(b).

Summary Judgment is to be rendered forthwith when one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial. *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999).  A genuine issue of fact exists when the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party.  There must be evidence upon which a jury could reasonably find in the non-moving party's favor.  *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "A complete failure of proof concerning an essential element of the nonmoving party s case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323.

Plaintiff cannot meet his burdens of proof in showing that the Bank would be liable in this action; on the other hand, wherever the Bank has the burden of proof, it can meet that burden.  Therefore, the Bank's motion for summary judgment should be granted.

///

///

---

[3] The Bank's vendors stopped the calls to the -9847 number on their own accord because there was a payment made on D.V.'s account that brought his account current. *See* Harwood Decl. ¶ 15; *See also* SSUF, ¶ 16.

## IV.    ARGUMENT

**A.    Summary Judgment Should Be Granted To The Bank On Plaintiff's TCPA Claims.**

The TCPA does not apply to just any call placed with any dialing system, and has nothing to do with the volume of calls.  Instead, TCPA liability for calls to cellular phones can only exist if calls are placed with prerecorded messaging or with an Automatic Telephone Dialing System, without the recipient's prior express consent.  *See* 47 U.S.C. § 227(b).  There are three elements to a TCPA claim: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  (*Van Patten v. Vertical Fitness Grp., LLC*, 22 F.Supp.3d 1069, 1073 (S.D. Cal. 2014) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).)  As discussed in detail below, Plaintiff cannot meet his burden of proving all three elements, therefore, summary judgment should be granted in favor of Credit One.

### 1.    Plaintiff Cannot Meet His Burden Of Proving That An ATDS Was Used In The Calls He Received

Plaintiff lacks sufficient evidence to establish his claims against the Bank under the TCPA, because he cannot meet his burden of proving that the Bank's vendors used an ATDS.  The TCPA defines an ATDS as: "equipment which has the capacity--(A) to store or produce telephone numbers to be called **using a random or sequential number generator**; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).  Plaintiff's "proof" of ATDS is the expert report he offers, but that report cannot prove that the telephony equipment used by Credit One's vendors meets the ATDS definition, now that the D.C. Circuit Court of Appeal has set aside the Federal Communications Commission's ("FCC") broadened definition of ATDS contained in the FCC's 2003, 2008, and 2015 Orders. *See ACA Int'l v. FCC*, 885 F.3d 687, 703 (C.A.D.C., 2018) (vacating FCC's over-expansive definition of ATDS).[4]

---

[4] Plaintiff asserts that the *ACA* decision set aside only the 2015 FCC regulations, leaving the 2003 and 2008 regulations defining an ATDS entirely intact. This is not true. *See Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (Because the *ACA* decision vacated the FCC's orders regarding the definition of an ATDS, the Court must examine the statutory language); *See also Sessions v. Barclays Bank Delaware*, No. 1:17-CV-01600-LMM, 2018 WL 3134439, at *4 (N.D. Ga. June 25, 2018) (FCC's prior orders with regard to interpretations of "capacity" were vacated in *ACA Int'l*); *See also Lord v. Kisling, Nestico & Redick, LLC*, No. 1:17-CV-01739, 2018 WL 3391941, at *2 (N.D. Ohio July 12, 2018) (same); *See also  Washington v. Six*

1    It is Plaintiff "who must show, as an element of [his] claim, that [Defendant] used an

2    ATDS." *Buslepp v. B&B Entertainment, LLC*, 2012 WL 4761509, *4 (S.D. Fla. Oct. 5, 2012).

3    As detailed below, Plaintiff cannot do so here, where he relies entirely on the testimony of an

4    "expert" whose flawed opinion is wholly reliant on FCC's rejected regulations and pre-*ACA* case

5    law.

6            (a)      **Applicable Law re: ATDS Systems**

7    On March 16, 2018, the D.C. Circuit found the FCC's then-current definition of an

8    ATDS constituted an "unreasonably expansive interpretation of the statute." *ACA Int'l v. Fed.*

9    *Commc'ns Comm'n*, 885 F.3d 687, 703 (D.C. Cir. 2018) ("*ACA Int'l*"). The D.C. Circuit found

10   the FCC had exceeded its authority in holding that an ATDS encompasses any system with the

11   "potential functionality" of an ATDS. *Id*. After noting various inconsistencies in the FCC's

12   treatment of the definition of an "ATDS," the D.C. Circuit Court explained:

13               In short, the Commission's ruling, in describing the functions a device must

14               perform to qualify as an autodialer, fails to satisfy the requirement of reasoned
                 decision making. The order's lack of clarity about which functions qualify a

15               device as an autodialer compounds the unreasonableness of the Commission's
                 expansive understanding of when a device has the "capacity" to perform the

16               necessary functions. ***We must therefore set aside the Commission's treatment of***

17               ***those matters***.

18   *ACA Int'l*, 885 F.3d at 703 (emphasis added). The D.C. Circuit also noted "at least some

19   predictive dialers, as explained, have no capacity to generate random or sequential numbers,"

20   and, therefore, do not fall under the statute's definition of ATDS. *Id*.

21   The D.C. Circuit's ruling in *ACA Int'l* vitiated the FCC's 2015 Ruling, as well as all prior

22   FCC rulings and orders expanding the statutory definition of an ATDS. *Id*. at 701 ("According

23

---

24   *Continents Hotels, Inc.*, No. 2:16-CV-03719-ODW-JEM, (C.D. Cal., 2018) (The court finds that the D.C. Circuit's
     decision reached all of the aspects of FCC rulings which allowed for "potential capacity" to generate random or

25   sequential numbers and which established a predictive dialer as an ATDS. Therefore, the D.C. Circuit significantly
     narrowed the definition of an ATDS); *Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-CV-340-OC-30PRL, 2018

26   WL 4217065, at *5 (M.D. Fla. Sept. 5, 2018) ("the D.C. Circuit necessarily vacated the definition in the prior FCC
     Orders that the 2015 Order merely reaffirmed. **To conclude otherwise would mean that courts are required to**

27   **apply the definition of an ATDS—from the 2003 and 2008 Orders—that the D.C. Circuit vacated when**
     **reviewing the 2015 Order**.") (emphasis added).

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

to the Commission, because there was no timely appeal from [the 2003 and 2008 orders], it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones.  We disagree."); *see also Keyes v. Ocwen Loan Servicing, LLC*, 2018 WL 3914707, *6 (S.D. Mich. August 16, 2018) (finding "because of *ACA International*, this Court need not defer to the Commissioner's understanding of the capacity and functions of an autodialer.").

Indeed, the Third Circuit recently confirmed, in light of the D.C. Circuit's ruling, an expert claiming that a system constitutes an ATDS must prove the dialing systems "had the ***present capacity to function*** as an autodialer ***by generating*** random or sequential telephone numbers ***and dialing*** those numbers."  *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) (emphasis added).  *See id.* at 121 (affirming exclusion of expert reports and grant of summary judgment for caller, noting, "Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the [system] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers.").

Further, the Second Circuit, too, recently has addressed the ATDS question in overturning a district court's pre-*ACA International* grant of summary judgment related to collections calls on a Time Warner account.  *See King v. Time Warner Cable Inc.,* 894 F.3d 473 (2d Cir. 2018).  In *King,* the Second Circuit found that the district court's reliance on FCC earlier guidance as to "ATDS" systems was misplaced, and that the text of the TCPA itself controls what equipment is subject to that statute's restrictions so that only equipment that could ***presently*** perform the defined ATDS functions (i.e., generating random/sequential numbers and dialing them) would be encompassed within the TCPA's restrictions.  *See id.* at 482.  As the court explained, the FCC's "administrative interpretation of the statute has now been invalidated" and that "without an administrative interpretation to defer to, the best interpretation of the statutory language is the one suggested by the D.C. Circuit's discussion in *ACA International*:  in the TCPA's definition of an autodialer, a device's 'capacity' refers to its current functions absent additional modifications, regardless of whether those functions were in use during the offending call.").  *Id.*  Indeed, a system that cannot generate random/sequential

numbers to dial (and instead dials from a provided list of numbers), is not an ATDS.  *See Pinkus v. Sirius XM Radio, Inc.*, 2018 WL 3586186, *8 (N.D. Ill. July 26, 2018) (looking to the statutory definition of ATDS and noting, "were the phrase "using a random or sequential number generator" understood to refer to how numbers are called rather than to how they are generated, it would be superfluous, as it would simply encompass the universe of possible orders in which numbers could be dialed.").[5]

### (b)   Snyder's "expert" opinion should be excluded and/or disregarded.

Here, vendors iEnergizer and GC Services, allegedly called Plaintiff via an Aspect system.  The references to calls made by "Credit One and/or its agents" in the June 7, 2018 Report of Randall Snyder ("Snyder Report"), Ex. 9 to Wade Decl. are actually calls made by those two vendors.

Plaintiff plans to rely on testimony of Randall Snyder to show that the telephone systems used to call him were ATDS systems restricted by the TCPA.  But Snyder is a professional witness who has never inspected or tested any of those telephone systems.  In five sparse paragraphs (Snyder Report, ¶ 39-43), Snyder attempts to establish that the systems used to call Plaintiff have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  In brief, he claims that Credit One's vendors can randomly or sequentially generate numbers in Microsoft Excel.  Then, he asserts that such a list can be "imported into the Aspect UIP dialing system" and "and converted readily into the database format required by the Aspect UIP dialing system." (Snyder Report, ¶ 42). Plaintiff asserts through his expert's report that the Aspect systems used by the Bank's vendors

---

[5] On September 20, 2018, the Ninth Circuit issued a decision holding that the TCPA's definition of an ATDS includes telephone equipment that can automatically dial phone numbers stored in a list, rather than just phone numbers that the equipment randomly or sequentially generates. *Marks v. Crunch San Diego, LLC*, 2018 WL 4495553, at *9 (C.A.9 (Cal.), 2018). This is an outlier decision in which the Ninth Circuit essentially re-wrote the statute to create a forced and incorrect interpretation of an ATDS. As a result of this extreme and overly broad definition, the FCC issued a Public Notice ("Notice") on October 3, 2018, requesting comment on what constitutes an ATDS under the TCPA. *See* Public Notice, p. 1. The Notice acknowledges the *Marks* court "interpreted the statutory language expansively." *Id.* at p. 2.  Furthermore, on October 5, 2018, the defendant in the Ninth Circuit decision filed a petition for an *en banc* rehearing, meaning that the *Marks* decision is not yet final.  The Arbitrator should ignore *Marks*, and follow the D.C. Circuit, Second Circuit and Third Circuits' correct interpretation and application of the statutory definition of an ATDS.

constitute an ATDS because they (1) have the capacity to dial lists of numbers without human intervention (i.e. constitute a predictive dialer); and (2) have capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. *See* Snyder Report, ¶¶ 9, 44, 45.

However, Snyder's Report never states that he actually performed the process described in his report, and it is therefore speculative. *Keyes v. Ocwen Loan Servicing, LLC*, No. 17-CV-11492, 2018 WL 3914707, at *4 (E.D. Mich. Aug. 16, 2018) (TCPA expert Jeffrey Hansen's report excluded because it lacked an adequate factual basis—"Hansen has not tested the relevant equipment.")  Further, Plaintiff's ATDS claim also fails because his expert did not examine the specific Aspect system used to call him.  *See Legg. Voice Media Grp. Inc.*, No. 13-62044-CIV, 2014 WL 1767097, at*4-5 (S.D. Fla. May 2, 2014) (excluding expert's ATDS testimony because he based his report on a handbook rather than his personal inspection of the defendant's systems). Even more relevant is the decision in *Keyes, supra.*  There, the court found that the expert's review of documents and manuals regarding ATDSs and the Aspect system generally did not provide an adequate factual basis on which to base his opinion.  2018 WL 3914707 at *5.  The court in *Keyes* was not persuaded by the plaintiff's argument that the expert analyzed an Aspect system in other litigation, finding that it did not establish testability [under *Daubert*] in the case at hand. *Id.* (citing *Marshall v CBE Grp.,Inc.*, Case No.:2-16-cv-02406-GVIN— NJK, 2018 WL 1567852, at *8 (D. Nev. Mar. 30, 2018)).

Mr. Snyder's opinions lack foundation and are unreliable, and should be excluded for the same reasons as in *Mohamed v. American Motor Company, LLC*, which found, "allowing Mr. Hansen's expert report or testimony before the jury would be contrary to the standards or reliability required under the Federal Rules of Evidence and the *Daubert* standard." *Mohamed v. American Motor Company, LLC*, 2017 WL 4310757, *4 (S.D. Fla., September 28, 2017).  Just as in *Keyes* and *Legg*, Snyder did not examine the specific Aspect telephone system that was used to call Plaintiff.   Snyder Report, ¶¶ 44-45.   Instead, Snyder merely examined the Bank's interrogatory responses, the call logs produced by the Bank, the Declaration of Don Hudecek,

Aspect's website, and an Aspect Unified IP manual.  Snyder Report, ¶ 8.  Just as Snyder's "expert" opinion was excluded in the cases detailed above, it should be excluded here as well.

**First**, since Snyder did not actually examine the specific Aspect telephone system that was used to call Plaintiff, he could not have tested his theory regarding how the calls were placed through Aspect, as required by *Daubert*.  The question of what constitutes an ATDS requires personal examination of the systems in question by an expert, and testimony/evidence from the vendors as to how their systems were being used.  Plaintiff has no such evidence regarding the systems used and thus cannot meet his burden of showing that an ATDS was used to auto-dial any of the calls made to his number by those vendors.[6]

**Second,** Snyder's statement of law are improper because expert witnesses are not permitted to make legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016).  An expert makes a legal conclusion when "he defines the governing legal standard or applies the standard to the facts of the case." *Id*.  Snyder has not only defined the governing legal standard by providing background and an explanation of what constitutes an ATDS under the TCPA and FCC guidance, but he has also impermissibly applied that standard to the facts of this case by concluding that the Bank's vendors' Aspect System "is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.  (Snyder Report, ¶ 44).  Snyder even states that he was retained for the sole purpose of describing the dialing technology **within the TCPA**, see Snyder Report, ¶ 2 (" I have been retained by Marcus & Zelman, LLC in the matter *Lemos v. Credit One Bank, N.A., et al.*, No. 2:17-cv-01512-JAM-DB (E.D. Cal.) to provide my opinions relating to dialing technology described within the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and utilized by Credit One Bank, N.A., et al.").

Without Snyder's Report as to these systems, Plaintiff's testimony that he has not even heard of an Aspect Unified System (Ex. 7 to Wade Decl., Plaintiff's Deposition, 65:16-18), is

---

[6] Plaintiff may attempt to use the deposition of GC Services' representative as evidence that GC Services, itself, used an ATDS in the 48 call attempts it placed.  However, GC Services' witness testimony regarding its phone system lacks foundation because the witness admitted that she, herself, never actually used the phone system. *See* Ex. 10 to Wade Decl., GC Services Deposition Transcript, 5:9-10.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

insufficient to create a factual dispute. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Given the technical nature of what constitutes an ATDS, the proper exclusion of Snyder's Report and insufficient testimony/evidence dooms Plaintiff's case. The Ninth Circuit has affirmed summary judgment in technical cases when expert testimony was not available to the plaintiff. *See, e.g, Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)) (summary judgment appropriate on plaintiff's claim that medical shunt was defective where plaintiff's experts were excluded, and without expert testimony, plaintiff could not prove causation or liability). Thus, summary judgment should be granted here and the Court need not go any further.

### 2. Plaintiff has not, and cannot, put on any evidence that the Bank's vendors used a prerecorded or an artificial voice

Any claim that calls were placed using a prerecorded voice lack merit. The Bank can meet its burden on summary judgment by pointing out that there is an absence of evidence that the Bank's vendors used an artificial/prerecorded voice to call Plaintiff, regardless of what was alleged in the Complaint. *Celotex Corp. v. Catrett (1986) 477 U.S. 317,* 324. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Allegation and speculation that Plaintiff was called via an artificial prerecorded voice is all Plaintiff has in this case, therefore, the Bank has met it burden on summary judgment.

### 3. The Bank itself never called Plaintiff, and the Bank would not be vicariously liable here for the calls made by its vendors.

Even if Plaintiff could show use of an ATDS or prerecorded messaging (which he cannot as detailed above), he would fail in showing that the Bank would be liable for any improper use of an ATDS or other system. There is no question that the Bank did not call Plaintiff directly—instead, three of its vendors, GC Services, iEnergizer and First Contact, called Plaintiff. *See* Harwood Decl. ¶¶ 11 and 12; *See also* SSUF, ¶¶ 8 and 9. Thus, the Bank cannot be found

**directly** liable for the calls, even if there was a TCPA violation or some other issue with the calls (which there is not).

The Ninth Circuit recognizes actual agency, apparent agency and ratification as grounds for TCPA vicarious liability. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679–80 (9th Cir. 2014). Plaintiff's TCPA claims—which are based entirely on call attempts placed by vendors, supposedly after a verbal "stop calling" request—fail under all three theories. More specifically, the Bank cannot be held **vicariously** liable for any of the calls made by its vendors if they were placed in violation of the Bank's policies and procedures ( i.e., continuing to call after a customer says to "stop calling me" (*see* Harwood Decl. ¶¶ 16 and 17)).

      (a)     **Plaintiff cannot establish actual agency**

            **i. The Bank is not vicariously liable because it did not actually authorize any unlawful call**

To hold the Bank liable for the independent contractor vendors' own calls under an actual agency theory, Plaintiff must establish that the Bank gave its vendors actual authority to make unlawful calls, which Plaintiff cannot do. See *Jones v. Royal Admin. Servs., Inc.,* 887 F.3d 443, 449 (9th Cir. 2018) ("But to reverse summary judgment as to actual authority, Jones and Watson must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls. They haven't."). Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." *Salyers v. Metro. Life Ins. Co.,* 871 F.3d 934, 940 (9th Cir. 2017) (quoting *NLRB v. Dist. Council of Iron Workers of the State of Cal. and Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997)). In the *Royal* case, the contract between Royal and AAAP expressly prohibited any act or omission that violated applicable state or Federal law, including but not limited to robo-calling. *Royal Admin. Servs. Inc*. at 449.

The undisputed evidence is that the Bank never gave its vendors the authority to make any calls that would be in violation of the TCPA. *See* Harwood Decl. ¶¶ 16 and 17. Just like in the *Royal* case, the Bank's contracts with its vendors require compliance by the vendors with

{00102452;1}               12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

state and federal laws.  *See* Harwood Decl. ¶ 16.  This language (identical to the language in the *Royal* case) is further proof that the Bank did not, and would never, authorize any unlawful calls.

Further, even if Plaintiff's oral testimony that he told iEnergizer to stop calling is believed, then iEnergizer failed to adhere to the Bank's policy of honoring oral requests for calls to stop.  *See* Harwood Decl. ¶¶ 16 and 17.  If the Bank's vendors did not adhere to Credit One's policy and/or violated the TCPA, they would have acted outside the scope of any agency.

Based on the foregoing, the Bank is not vicariously liable for the calls made by its vendors under an actual agency theory, as it did not authorize any unlawful calls.

### ii. Plaintiff has not demonstrated sufficient control of the vendors

Plaintiff lacks sufficient evidence to establish actual agency.  A key requirement of classic common law agency is that the principal is "in control" of the agent's actions.  *See United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010).  Accordingly, the Ninth Circuit adopted ten factors for determining whether a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee.  *Royal Admin. Servs., Inc.,* at 450.  The following analysis will analyze each factor and explain why the Bank did not have control.

First, the Bank did not control any part of the collection calls made by the vendors and left the substance of the calls to the expertise of the vendors.  *See* Harwood Decl. ¶ 20.  As previously stated, Credit One implemented some procedures <u>after</u> the call was made, such as coding an account as "DNC/Block", but these procedures were put in place for the sole purpose of ensuring that its vendors were complying with all applicable laws; not to exert control.  *See* Harwood Decl. ¶¶ 16, 17, 20 and 21.  Further, the Bank had no control over its vendors' day-to-day operations, nor has Plaintiff put forth any evidence of such control.  *See* Harwood Decl. ¶ 21. Also, the vendor agreements even included an "Independent Contractor" provision, which specifically stated that the vendors were independent contractors, which is further evidence that the Bank did not, and could not, exert the requisite control over the vendors.  *See* Harwood Decl. ¶ 22.  This factor favors the Bank.

Second, the Bank's vendors that made the calls to Plaintiff were all independent businesses, separate and apart from the Bank, with their own business addresses. Credit One provides credit and bank services, while its vendors specialize in collections. This is similar to the *Royal* case where the court found this second factor favored Royal (principal), because AAAP (agent) was an independent business, separate and apart from Royal. *Royal Admin. Servs., Inc.,* at 452. This factor favors the Bank.

Third, the calls made by the vendors were not supervised by the Bank. *See* Harwood Decl. ¶ 23. The Bank would occasionally visit the vendors' sites to audit and ensure compliance with their vendor agreement, s*ee id.*; however, this is not evidence of the requisite level of control, see *Royal Admin. Servs., Inc., at 452.* This factor favors the Bank.

Fourth, there is minimal skill involved in the collection calls at issue. The calls were made solely for the purpose of collecting a past due debt of the Bank's customer D.V. *See* Harwood Decl. ¶ 9. All but one of the vendors' calls went unanswered by Plaintiff, and no substantive conversation occurred during the call that was answered. *See* Harwood Decl. ¶ 13. That one call required minimal skills, because the person who answered (presumably the Plaintiff) did not convey any information. *See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording). This factor favors the Bank.

Fifth, aside from allowing the vendors to access its system to input notes made during the calls, the Bank did not supply any tools and instrumentalities. *See* Harwood Decl. ¶ 24. The vendors supplied their own phone equipment, computers, and office space, *see Royal Admin. Servs., Inc.,* at 452. This factor favors the Bank and is further evidence that the vendors were not controlled to the same degree as an employee.

Sixth, the Bank's relationships with the vendors were not permanent and all included a termination provision, allowing the parties to terminate the agreement at any time, s*ee* Harwood Decl. ¶ 25. *See Royal Admin. Servs., Inc.,* at 452.

Seventh, the vendors were paid a flat fee per collection account assigned by the Bank or were paid a percentage based on the amount collected. *See* Harwood Decl. ¶ 26. The Bank did

{00102452;1}                                    14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

not pay its vendors based on the time they spent collecting on the assigned account. *Id.   See Royal Admin. Servs., Inc., at 452*.

Eighth, although the Bank, itself, collects on past due accounts, collections is not its primary business.  Collections makes up a very small percentage of the Bank's business.  *See* Harwood Decl. ¶ 27.  The Bank is a federally-regulated bank that specializes in credit cards. *Id.* Since collections is not in the regular work of the Bank, this factor suggests the vendors were not subject to the requisite control.

Ninth, it was the subjective intent of the parties that the vendors would act as independent contractors and not employees.  As proof of the parties' subjective intent, the Bank and its vendors signed service agreements, which stated that the vendors were independent contractors. *See* Harwood Decl. ¶ 28.  This factor favors the Bank as well.

Tenth and finally, the Bank and its vendors are all independent businesses, and so the argument that the Bank controls its vendors is entirely speculative.  But the other nine (9) factors support the Bank's contention that it lacked the requisite control over its vendors, and therefore, cannot be vicariously liable for their acts or omissions.

Based on the foregoing, there is no material disputed fact here that could establish actual agency.

### (b)    Plaintiff cannot establish apparent authority

Neither can Plaintiff establish vicarious liability under an apparent authority theory, as he has no evidence how the Bank acted towards him.  Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir.1997).  Rather, it is only established "by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." *Taco Bell,* 582 F. App'x at 679–80 (citing *NLRB*, 124 F.3d at 1099).

Plaintiff claims that the vendor, iEnergizer, made him believe that it was an agent of the Bank by using the Bank's name during the sole call which he answered.  This is insufficient to establish apparent authority.  "[T]he Restatement and case law repeatedly emphasize that the

principal must make some outward manifestation from which reasonable third parties could trace their belief that the agent has authority to act on the principal's behalf." *Kristensen v. Credit Payment Servs. Inc.,* No. 2:12-CV-00528-APG, 2015 WL 4477425, at *5 & n.42 (D. Nev. July 20, 2015), *aff'd,* 879 F.3d 1010 (9th Cir. 2018). Plaintiff's allegations that the vendors said they were calling from Credit One, or that he confirmed the number as belonging to Credit One by calling the numbers back and listening to an "automated voice say, 'thank you for calling Credit One Bank'" (see Amended Complaint, ¶4, line 23), are insufficient because these are representations by the vendors, not Credit One. *See Makaron v. GE Sec. Mfg., Inc.*, No. CV–14–1274–GW AGRX, 2015 WL 3526253, at *9 (C.D. Cal. May 18, 2015) (rejecting apparent authority argument despite purported authority to use principal's trade name); *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 729 N.E.2d 1113 (Mass. 2000) (same).

Plaintiff has not identified any representations of **Credit One** made directly to him so as to make him believe that collections vendors were cloaked with the Bank's apparent authority. Vicarious liability under this theory thus fails.

### (c)   Plaintiff has no evidence of ratification

Finally, the Ninth Circuit Court of Appeals has recently held that an entity cannot be liable for alleged violations of the TCPA unless the entity ratified its agent's acts and had actual knowledge that the agent was violating the TCPA. *Kristensen v. Credit Payment Services Inc.*, 16-15823, 2018 WL 343758 (9th Cir. Jan. 10, 2018). Here, Plaintiff can present no evidence that Credit One ratified any alleged unlawful actions, and as such, the Bank cannot be found liable for any alleged violations of the TCPA related to calls placed by its vendors.

A principal is not liable for all acts of an agent. When acts are outside the scope of allowed authority, then a plaintiff must show that the principal nonetheless ratified those actions so as to bring them within the scope of authority. The evidence here is undisputed that the Bank's agreements with its vendors require compliance by the vendors with state and federal laws, and that furthermore, the Bank's rules for vendors require that any oral revocation be annotated and enforced immediately as a courtesy to the customer, so that no further calls will be placed. *See* Harwood Decl. ¶¶ 16 and 17

Importantly, the evidence is plain that the Bank did not know of any wrongdoing by its vendors under the TCPA in relation to the calls they made to Plaintiff because no information of any "stop calling" request was ever passed along to the Bank. *See* Harwood Decl. ¶¶ 18 and 19. *See Kristensen*, 879 F.3d at 1015. Nor does Plaintiff have any evidence that the Bank had knowledge of facts that would have led a reasonable person to investigate further. In *Kristensen*, the plaintiff pointed to the fact that Click Media's contract with alleged agent AC Referral stated that AC Referral could use text message marketing and required AC Referral to comply with the TCPA. The Ninth Circuit rejected the argument that this this was sufficient to trigger Click Media's duty to investigate whether AC Referral was acting in compliance with law. *Id.*

Plaintiff's TCPA claims fail under any vicarious liability and as such, summary judgment should be granted on this claim.

**4. In any case, Plaintiff lacks standing to assert TCPA claims because he can allege no actual injury, and the Bank is not liable for calls to its customer's number made in a good faith belief that the number was still the customer's.**

On March 16, 2018, the D.C. Circuit's Ruling in *ACA International* changed the law governing who is a "called Party" as that term is used in the TCPA. *ACA International* supports the Bank's defense that there should be no TCPA liability for calls to numbers where the number was reassigned. The TCPA imposes liability for calls made without the prior express consent of the "called party." It is undisputed that the Bank's vendors called -9847 in attempts to contact the Bank's customer, D.V. D.V. expressly consented to be called at -9847 by any means, including by use of an auto-dialer.

Although the D.C. Circuit in *ACA International* acknowledged the Seventh Circuit's holding that "called party" means the subscriber at the time the call is made in *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012), the D.C. Circuit also expressed "substantial doubts" that the FCC intended a "pure, strict-liability regime" for calls to reassigned numbers. For that reason, the court set aside the FCC's entire strict-liability-treatment of calls to reassigned numbers. *ACA International*, at 708.

Here, the Bank's customer, D.V., provided the -9847 number to the Bank on March 26, 2014**,** during an inbound call from D.V. regarding his account – thus providing the Bank under

the terms of his Agreements with consent to call the -9847 number.  All of the calls by the Bank's vendors to -9847 were intended to contact the Bank's customer, D.V., not the Plaintiff N.L.  Under these circumstances, there should not be strict liability under the TCPA for those calls.  *See e.g., Chyba v. First Financial Asset Mgmt.*, 2014 WL 1744136 (S.D. Cal. 2014) (granting summary judgment on a TCPA claim based on a "good faith" reliance on records that there was consent to call the intended recipient).

Even if Plaintiff was on solid footing in establishing the use of an ATDS and vicarious liability, which he is not, earlier this year the D.C. Circuit Court held that the FCC failed to engage in reasoned decision-making in another respect:  by establishing an arbitrary, one-call safe harbor for calls made to a reassigned cell number, regardless of whether as a result of that single call the caller gained any actual knowledge of the reassignment.  *ACA Int'l*, 885 F.3d. at 706, quoting 2015 Declaratory Ruling, 30 FCC Rcd. at 8009 ¶ 90 n.312. As dissenting Commissioner O'Rielly noted,

> [T]he idea that, after one call, a caller would have "constructive knowledge" that a number has been reassigned — even if there was no response — is absolutely ludicrous. The FCC expects callers to divine from mere silence the current status of a telephone number. In doing so, it reads the statute to demand[] the impossible.

*Id.,* 30 F.C.C. Rcd. at 8090-8091.2 (internal quotations omitted); *see also id*. at 121 [Pai dissenting] (noting that perhaps the "most shocking" aspect of the 2015 Declaratory Ruling is the majority's claim "that the answer to wrong-number calls is for companies to turn the liability back on their own customers.").

The TCPA makes it unlawful to use an ATDS or an artificial or prerecorded voice to place a call to a cell number without "the prior express consent of the called party." *ACA Int'l*, 885 F.3d at 705 (quoting 47 U.S.C. § 227(b)(1)(A)). The D.C. Circuit Court upheld the FCC's interpretation of "called party" to mean the current subscriber, rather than the intended recipient of the call. *Id.* at 706. **However**, the court set aside the agency's one-call safe harbor as inconsistent with the agency's adoption of a reasonable reliance approach when interpreting "prior express consent," rejecting the FCC's treatment of reassigned numbers as a whole. *Id.* 706-09. As the D.C. Circuit Court recognized:

{00102452;1}                                    18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

> [M]illions of wireless numbers are reassigned each year. In the event of a reassignment, the caller might initiate a phone call . . . based on the mistaken belief that the owner of the receiving number has given consent, when in fact the number has been reassigned to someone else . . ..”

ACA Int'l, 885 F.3d at 705. “[W]hy does a caller's reasonable reliance on a previous subscriber's consent necessarily cease to be reasonable once there has been a single, post-reassignment of the call?” *Id.* at 706-07. In fact, there is “no cognizable conception of ‘reasonable reliance’” that supports the agency's “blanket, one-call only allowance.” *Id.* at 707.

Here, as discussed in the Facts section above, the Bank's customer D.V. provided express contractual consent for the Bank or its agents to contact him about his account by calling his -9847 number. *See* Harwood Decl. ¶¶ 7 and 8. The Bank's vendors called -9847 for the sole purpose of contacting D.V. (the intended recipient) regarding his past due Credit One credit card account. *See id.* ¶¶ 8-10. Therefore, the Bank's vendors had consent to call the intended recipient, and the recording of the Plaintiff's sole conversation on February 22, 2017 demonstrates he did not tell anyone to stop calling (*see* Ex. 3 to Harwood Decl.). As such, the Bank and its vendors should not be held strictly-liable under the TCPA. Indeed, courts have found that a good-faith belief that consent exists to call a telephone number requires summary judgment to be granted in favor of the caller. *See, e.g., Chyba,* 2014 WL 1744136, at *12 (granting summary judgment on TCPA claims because “although Plaintiff did not give consent directly to Defendant to call her cell phone number, it is sufficient that Defendant had a good-faith basis to believe that Plaintiff had provided consent to the creditor on whose behalf Defendant sought to collect a debt.”).

As further evidence against imposing strict liability here, Plaintiff and his mother testified that shortly after he began receiving calls in February of 2017, they used an App native to Plaintiff's Metro PCS phone to report the calls when the calls first started. *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 52:9-12; and Ex. 8 to Wade Decl., Plaintiff's Mother's Deposition, 52:5-25. Shortly thereafter, Plaintiff received a call from an attorney named Kevin Crick. *See* Ex. 8 to Wade Decl., Plaintiff's Mother's Deposition, 54:3-9. After that, the Plaintiff, his

1    mother, and his attorney allowed the calls to continue from when the calls began (in late
2    February of 2017), until June of 2017, without ever notifying the Bank or asking the Bank to
3    stop calling.  Instead, the first notification that Credit One or its vendors received any indication
4    that Plaintiff wished calls to stop—and that the -9847 number no longer belonged to its
5    cardholder—came in the form of communications from his attorneys in this matter, after this
6    lawsuit was filed.

7         There should be no strict liability under the TCPA under these circumstances.  Plaintiff
8    lacks evidence of the Bank's culpability for its vendors' calls to -9847 to contact Bank customer
9    D.V., and the Plaintiff lacks standing to sue for TCPA violations for calls he received, none of
10   which he answered, and which he purposefully accumulated after he consulted with TCPA legal
11   counsel.  *See, e.g., Stoops v. Wells Fargo Bank N.A*., 197 F.Supp.3d 782, 805 (W.D. Pa. 2016)
12   (on summary judgment, considering the plaintiff's admissions about her plans for a TCPA
13   business, finding that there was no standing and noting:  "Indeed, it is unfathomable that
14   Congress considered a consumer who files TCPA actions as a business when it enacted the
15   TCPA as a result of its 'outrage over the proliferation of prerecorded telemarketing calls to
16   private residences, which consumers regarded as an intrusive invasion of privacy and a
17   nuisance.'") (citations omitted).   As the *Stoops* court concluded, plaintiffs purposefully
18   accumulating calls are not within the zone of interest of the TCPA:  "[T]he test denies a right of
19   review if the plaintiff's interests are so marginally related to or inconsistent with the purposes
20   implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the
21   suit."  *Id*. at 804 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987)).

22        For those same reasons, the Bank is entitled to summary judgment on the TCPA claim.
23   Credit One had D.V.'s prior express consent to place the calls at issue, and neither Credit One
24   nor its vendors had any reason to believe otherwise.  The calls were placed in good faith.
25   Plainttiff could have alerted Credit One to the issue at any time, including when he answered the
26   phone the day after the calls began.  Instead, Plaintiff's inaction perpetuated Credit One's belief
27   that the number at issue still belonged to D.V.  Plaintiff should not be permitted to use the TCPA

28

in such a fashion, when he asserts no actual damages tied to the alleged use of an ATDS in the calls he received (versus calls that would have been placed by a different kind of system).

**B.   Plaintiff's Rosenthal Act Claim Fails as a Matter of Law**

**1.   Plaintiff's Rosenthal Act claim fails because the Bank is not vicariously liable for calls made by the vendors**

As already detailed above, the vendors were not the Bank's agents, and therefore, the Rosenthal Act does not apply.  *See Makreas v. Moore Law Grp., A.P.C.*, 582 F. App'x 693, 694 (9th Cir. 2014).  In *Makreas*, the Ninth Circuit held that the district court properly dismissed the plaintiff's Rosenthal claim against defendant Citibank because plaintiff failed to alleged facts sufficient to show that "Citibank itself engaged in debt collection activities, or that the Moore Law Group acted as Citibank's agent when it engaged in debt collection activities, thereby making Citibank vicariously liable for its acts."  The Bank did not call Plaintiff directly, so the Bank did not engage in debt collection activities.  Nor were the vendors the Bank's agents.  *See also Delalat v. Fountain Valley Reg'l Hosp. & Med. Ctr.*, No. 10CV01273-CAB (NLS), 2012 WL 12846090, at *2 (S.D. Cal. May 21, 2012) (granting summary judgment where "there is no evidence to hold FVRH vicariously liable for the FDCPA, RFDCPA, invasion of privacy, and emotional distress claims.").

**2.   Plaintiff's Rosenthal Act claim fails because the calls were not excessive or dialed with an intent to harass**

Independently, Plaintiff's Rosenthal Act claim fails because the Bank did not act willfully or knowingly.  *See, e.g., Camacho v. Jefferson Capital Sys., LLC*, No. 14-CV-02728-BLF, 2015 WL 5569082, at *4 (N.D. Cal. Sept. 21, 2015) (no right to damages under 1788.30(b) unless willful or knowing conduct).  Plaintiff alleges that Credit One violated the Rosenthal Act because the amount of calls Credit One placed to Plaintiff's phone number were allegedly excessive.  In this regard, the Rosenthal Act incorporates a provision of the federal Fair Debt Collection Practices Act ("FDCPA"), which prohibits phone calls from being placed "repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5), incorporated into the Rosenthal Act by California Civil Code § 1788.17; *see also* California *Civil Code* § 1788.11(d) which has similar language.)

However, Plaintiff must prove not only that the Bank placed telephone calls to his phone number repeatedly or continuously, but also that the Bank did so with an intent to annoy, abuse, or harass him.  He cannot.

"[T]he number of calls alone cannot violate the FDCPA."  *See e.g. Chisholm v. AFNI, Inc.*, 2016 WL 6901358 at *3 (D.N.J. Nov. 22, 2016); *Reed v. I.C. System, Inc.*, 2017 WL 89047 at *4 (W.D. Pa. Jan. 10, 2017); *Jiminez v. Accounts Receivable Mgmt., Inc.*, No. CV 09-9070GWAJWX, 2010 WL 5829206, at *3 (C.D. Cal. Nov. 15, 2010) (summary judgment granted as to 1692d(5) and 1788.11(d) claims).  A plaintiff must also show some other egregious or outrageous conduct in order for a high number of calls to be actionable.  *Id.*

On facts that involve similar or higher call volumes, and actual conduct indicative of harassment (of which there is no evidence in this matter), summary judgment is routinely granted in favor of the debt collector.  *See e.g. Tucker v. CBE Group, Inc.*, 710 F.Supp.2d 1301 (M.D. Fla. 2010) (granting summary judgment although the debt collector called seven times per day); *Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218 (E.D. Cal. 2010) (daily calls); *Carman v. CBE Group, Inc.*, 782 F.Supp.2d 1223 (D. Kan. 2011) (149 calls during two months); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 (E.D. Mich. June 29, 2010) (350 calls during eight months).

The Bank's vendor's calls to Plaintiff were not harassing.  The vendors made 189 call attempts over a four-month period, all but one of which went unanswered.  As noted by many Courts, the "significant disparity between the number of telephone calls placed by defendant and the number of actual successful conversations with plaintiff suggests a difficulty of reaching plaintiff, rather than an intent to harass."  *See e.g. Jiminez*, 2010 WL 5829206 at *4.  Since all but one call to the -9847 number went unanswered during the time period in question, this shows difficulty by the Bank's vendors in reaching the intended Bank customer, D.V.

Due to the fact that Plaintiff cannot produce any evidence of an intent of the Bank's vendors to harass him, his "excessive calls" claim fails as a matter of law.  *See e.g. Carman, supra,* at 1232 *and Arteaga*, *supra*, at 1229.  At a minimum, Plaintiff's claims for statutory damages under Section 1788.30(b) fail as he cannot show that the Bank acted "willfully or

knowingly" as required by the statute. "The Rosenthal Act, like the FDCPA, provides for both actual and statutory damages. But unlike the FDCPA, the Rosenthal Act premises any award of statutory damages on the defendant's state of mind." *Davis v. Hollins Law,* 25 F. Supp. 3d 1292, 1296 (E.D. Cal. 2014).

Because the Bank's vendors called the -9847 number in a good faith attempt to reach D.V. regarding his past due deb, there was no intent to harass Plaintiff.   Moreover, the Bank is not vicariously liable for its vendors' acts or omissions regarding calls to the -9847 number, and the Bank was never notified of any request that calls to -9847 should cease.   Based on the foregoing, summary judgment thus should be granted as to Plaintiff's Rosenthal Act claim.

### 3. Plaintiff's claims brought under 15 U.S.C.  § 1692b(3) and § 1692c of the FDCPA, which are incorporated into the Rosenthal Act, fail as a matter of law

Plaintiff alleges that the Bank violated 15 U.S.C. § 1692b(3) and § 1692c of the FDCPA, which are both incorporated through § 1788.17 of the Rosenthal Act[7].   As the following will show, these claims lack any merit and summary judgment should be granted to the Bank.

#### (a) Plaintiff's 1692b(3) claim fails as a matter of law

15 U.S.C. § 1692b(3) specifically states: "Any debt collector communicating with any person other than the consumer **for the purpose of acquiring location information about the consumer** shall-- **(3)** not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information."  (Emphasis added.)

As is evidenced by the February 22, 2017 recording (Ex. 3 to Harwood Decl.), and Plaintiff's own allegations that the Bank was attempting to reach an unrelated debtor (¶51 of Plaintiff's Amended Complaint, Docket No. 24), the Bank's vendors were not trying to reach Plaintiff for the purpose of acquiring location information about D.V., they were trying to reach D.V. himself.   *See Horowitz v. GC Servs. Ltd. P'ship,* No. 14CV2512-MMA RBB, 2016 WL 7188238, at *8 (S.D. Cal. Dec. 12, 2016) ("… section 1692b is not otherwise applicable to this

---

[7] The FDCPA does not apply to the Bank because it is a creditor, and creditors are not subject to the FDCPA.

{00102452;1}                        23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDIT ONE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
CASE NO. 2:17-cv-01512-JAM-DB

case because, as evidenced by the July 20 voicemail, GCS did not call the 9515 number and leave a message in order to reach a person "other than the consumer for the purpose of acquiring location information about the consumer."). Thus, Section 1682b does not provide Plaintiff with a remedy here.

### (b)   Plaintiff lacks standing to bring suit under § 1692c of the FDCPA, and therefore this claim also fails as a matter of law

In order to bring suit under section § 1692 of the FDCPA, a person must be a consumer. Under § 1692a(3) of the FDCPA, "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." See 15 U.S.C. § 1692a(3). Plaintiff is not a consumer for purposes of the FDCPA as he was not the person who was obligated or allegedly obligated to pay the debt at issue. D.V. was obligated to pay the debt and the Bank's vendors, in good faith, called the -9847 number, a number which D.V. provided consent to call, in order to reach D.V. regarding his past due debt. See *Kimberly v. Great Lakes Collection Bureau, Inc*., 1996 WL 34445714 (D. Conn. 1996)(the court held that the mother of a consumer did not have standing to bring an action under 15 U.S.C.A. § 1692c(b) inasmuch as that section was for the benefit of a "consumer" only, notwithstanding that the mother was the recipient of the allegedly prohibited communications with third parties under that provision; see also *Bank v. Pentagroup Financial, LLC,* 2009 WL 1606420 (E.D. N.Y. 2009) (held that the phone call recipient lacked standing to assert his Federal Fair Debt Collection Practices Act (FDCPA) § 1692c(b) claim against the debt collector, as the phone call recipient was not obligated or allegedly obligated to pay any debt, and he did not allege that he was a consumer's spouse, parent, guardian, executor, or administrator; *see also West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983) (the court held that a consumer's mother was not allowed to bring suit for calls to her concerning her son's alleged debt under 15 U.S.C.A. § 1692c(b), inasmuch as such provision protects only the "consumers," or alleged debtors, themselves. Although the remedies provision of the FDCPA, 15 U.S.C.A. § 1692k(a), applying to "persons," suggested that the mother was entitled to recover for a violation of 15 U.S.C.A. § 1692c(b), the court said, the language of 15 U.S.C.A. § 1692c applied to consumers only. By comparison, said the court, other sections of the FDCPA seemed to protect

all persons, even if they are not "consumers" within the meaning of Act, citing 15 U.S.C.A. § 1692d. Moreover, said the court, the primary purpose of 15 U.S.C.A. § 1692c is to protect the consumer's privacy and employment. So it would be incongruous to permit a person other than the consumer to recover for a violation of this section, the court said. Accordingly, summary judgment was granted in favor of the debt collector as to the mother's third-party contact claim.).

Further, the Plaintiff received the calls after he and his mother consulted with TCPA legal counsel and chose not to notify anyone that the calls were being made to a wrong number. There is no concrete or cognizable injury under these circumstances, and Plaintiff lacks standing to sue for TCPA violations under these circumstances. Plaintiff's claims brought under §1692c of the FDCPA and incorporated into the Rosenthal Act, fail as a matter of law.

**C.    Plaintiff's Intrusion upon Seclusion Claim Lacks Merit**

**1.    The Bank is not vicariously liable for its vendors**

Just as with Plaintiff's Rosenthal Act claims, the Bank cannot be vicariously liable for intrusion upon seclusion. *See Delalat, supra*. (granting summary judgment on invasion of privacy claim where no vicarious liability). None of the calls at issue were made by the Bank, and the Bank had no knowledge of any purported "stop calling" request or of the number's reassignment. Based on the foregoing, this claim fails as a matter of law.

**2.    Plaintiff's claim for intrusion upon seclusion lacks merit**

In California, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Deteresa v. Am. Broad. Cos., Inc.,* 121 F.3d 460, 465 (9th Cir.1997). To determine whether conduct is "offensive" within the meaning of the law, courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (quoting *Hill v. National Collegiate Athletic Ass'n,* 7 Cal.4th 1, 26, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994)).

Plaintiff's intrusion upon seclusion claim lacks merit.  Allegation of debt collection calls, without more, does not establish an invasion of privacy cause of action.  *See Rector v. Wells Fargo Dealer Servs*., No. CV135288DSFMANX, 2014 WL 12603205, at *2 (C.D. Cal. May 12, 2014), aff'd, 672 F. App'x 779 (9th Cir. 2017).  Judge Houston in *Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1177–78 (S.D. Cal. 2010) held that the number of calls in itself could not be considered highly offensive above a speculative level, and therefore dismissed that plaintiff's claim for invasion of privacy.  *See also Smith v. Capital One Fin. Corp*., No. C 11–3425 PJH, 2012 WL 1669347, at *4 (N.D. Cal. May 11, 2012) ("Allegations of a lender calling a debtor regarding payment…without more, have been found insufficient to state a claim for invasion of privacy…").

Other than the volume of calls, Plaintiff also alleges that "on February 21, 2017, the Plaintiff specifically advised the Defendant he was kid, they were calling the wrong party, that he had no account with Credit One Bank, and that Defendant should cease calling him." *See* Docket No. 24, Plaintiff's Amended Complaint, ¶ 30, pg. 8.  However, as the record reflects, no such conversation took place.  In fact, there were no calls, outbound or inbound, made to or from the Bank's vendors on February 21, 2017, so Plaintiff could not have had a conversation with the Bank's vendors that day.  The only conversation that took place during the time period in question, occurred on February 22, 2017, during a recorded call when a party, which Plaintiff admitted during his deposition sounded like him, simply answered the phone, said "who is this?" And then hung up. *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 74:2-14.

There is no evidence of a "stop calling" request, and Plaintiff never told the Bank's vendors that he was a kid and not the cardholder.  The Bank and its vendors had (and still does) robust procedures in place during the time the calls were made, in which they stopped all calls upon a "stop call" request, even if the request was oral.  *See* Harwood Decl. ¶¶ 16 and 17.  Being that such a request was never made in this current matter, the Banks' vendors continued to call in search of its account holder, D.V.

The facts in this matter do not support Plaintiff's invasion of privacy claim against the Bank.  First, all calls to the Plaintiff were made by the Bank's vendors, and none of those calls

were made by the Bank. *See* Harwood Decl. ¶¶ 11 and 12; *See also* SSUF, ¶¶ 8 – 10.  Secondly, the record reflects 189 call attempts placed over a four-month period and one answered call, where Plaintiff simply said "who is this?" and then hung up.  *See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording).  There was no egregious conduct; the Bank's vendors were simply trying to reach the account holder who initially provided consent to call the -9847 number, regarding his past due debt.  Lastly, the calls were evenly spread out over time and never immediately back-to-back, especially after an answered call.  *See* Exhs. 1 and 2 to Harwood Decl.  Such conduct is not enough to sustain a claim for invasion of privacy; therefore, this claim must fail as a matter of law.

While Plaintiff may try to rely on *Fausto v. Credigy Servs. Corp.,* 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009), this case is inapposite.  Unlike here, *Fausto* involves egregious intrusions of privacy that go beyond high call volume.  In *Fausto,* even after the plaintiffs sent a written cease-and-desist letter, after which by law, the defendants were required to stop calling (15 U.S.C. § 1692c(c)), the defendants continued sending bills and making threatening calls to plaintiffs' home (plaintiffs answered the calls and had substantive conversations with defendants).  Further, the *Fausto* defendants allowed the phone to ring repeatedly when calling, only to call back immediately after plaintiffs hung up the phone.  Also, the defendants made unconscionable threats, such as threating to take plaintiffs' home and savings, garnish their wages and ruin their credit report.  The plaintiffs even testified that the defendants' persistent calling and threats to take home created stress to the extreme and caused plaintiff to lose sleep, and as a result thereof, sought medical treatment as a consequence of the defendants' conduct.  No such behavior happened in our case, and no such injuries are claimed.

Plaintiff does not, and cannot, show that the Bank's vendors engaged in this type of egregious behavior.  Moreover, all but one of the calls went unanswered and the Bank's vendors, in good faith, thought they were calling a Bank customer regarding his past due debt.  Further, unlike the plaintiffs in the *Fausto* case, Plaintiff never sought medical treatment as a result of the Bank's vendor's calls.  *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 77:15-18.  In fact, when Plaintiff was asked if he suffered emotional distress as a result of the calls at issue, Plaintiff

testified "Well, was I freaking out, no, but it did kind of piss me off."  *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 75:23-25 and 76:1.  Being "pissed off" is nowhere close to the level of damages suffered by the plaintiffs in the *Fausto* case, and is insufficient to support Plaintiff's claim for invasion of privacy.

In sum, neither the Bank nor its vendors engaged in any conduct that would be highly offensive to a reasonable person and therefore, Plaintiff's invasion of privacy claim must fail.

**D.      Plaintiff Lacks Standing to Bring Suit**

On May 16, 2016, the Supreme Court issued its ruling in *Spokeo, Inc. v. Robins,* 2016 WL 2842447 (U.S. May 16, 2016).  In it, the Court explained "[i]njury in fact is a constitutional requirement" for standing under Article III of the United Sates Constitution, and that a consumer who sues under a federal law "must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  (*Spokeo*, *supra*, at *6.)

"For an injury to be 'particularized' it must affect the plaintiff in a personal and individual way."  *Id.*   "Particularization is necessary to establish injury in fact, but it is not sufficient.  An injury in fact must also be 'concrete.'  *Id.*  "A 'concrete' injury must be *'de facto'*; that is, it must actually exist."  *Id.* at *7.  Thus, a plaintiff does not satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate the right.  Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [a plaintiff cannot], for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.*

Here, Plaintiff cannot show that he has suffered any "injury in fact," and it is clear that he has impermissibly sued the Bank for purported procedural violations without having suffered any actual harm.  This is especially apparent because the Plaintiff and his mother consulted with TCPA legal counsel and then chose not to notify anyone that the calls were being made to a recycled number—calls that were being tracked and blocked by an application on Plaintiff's

phone.  Plaintiff's claims against the Bank therefore lack merit as a matter of law pursuant to the Supreme Court's ruling in *Spokeo.*

## V.   CONCLUSION

For the reasons detailed above, summary judgment should be granted in favor of the Bank on all claims brought against it in Plaintiff's Amended Complaint.

---

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiff brings his cross-motion for summary judgment against the Bank based on the Bank's alleged violations of the TCPA.  The Bank hereby opposes Plaintiff's motion.  For the reasons detailed below, Plaintiff has not met his burden on summary judgment and his motion should be denied in its entirety.

### II.   PLAINTIFF CANNOT MEET HIS BURDEN ON SUMMARY JUDGMENT

As the moving party, Plaintiff bears the burden of proof when seeking summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  Where the moving party has the burden on summary judgment, his showing must be sufficient for the court to hold that "no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  Plaintiff does not come close to meeting this standard.

### III.   ARGUMENT

**A.   Plaintiff Is Not Entitled to Summary Judgment on His TCPA Claims Against Credit One Bank**

    **1.   Calling a customer-provided number that has been reassigned unbeknownst to the caller is not sufficient for TCPA liability**

Plaintiff argues that the TCPA is essentially a strict liability; however, after the ruling in *ACA International*, the D.C. Circuit expressed "substantial doubts" that the FCC intended a "pure, strict-liability regime" for calls to reassigned numbers.  *ACA International*, at 708.  Please

see the Bank's argument related to strict liability and reassigned numbers in the Bank's Motion for Summary Judgment above, under section IV(A)(4), and incorporated herein.

### 2. The Bank is not vicariously liable for the calls made by its vendors

As shown above in the Bank's Motion for Summary Judgment (Section IV(A)(3)), the vendors were not the Bank's agents, and therefore, the Bank cannot be held vicariously liable for the calls made by its vendors.

Plaintiff relies on the *Campbell-Ewald* case, which simply agreed with the FCC and reasoned that according to federal common-law principles of agency, there can be vicarious liability for TCPA violations. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016), citing *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574 (2013). *Campbell-Ewald* did not actually apply the common-law principles of agency to the facts in that case, but merely acknowledged that vicarious liability can exist under the TCPA.

Having said that, the controlling Ninth Circuit decision that actually applied the common-law principles of agency to vicarious liability under the TCPA is *Kristensen*. Thus, if someone acting as an agent of Credit One conducted itself in an unauthorized manner (i.e., not recording a DNC request or otherwise violating the TCPA), under the federal common law of agency, the Bank could be held responsible for its agent's unauthorized acts **if it knowingly ratified that behavior and accepted its benefits**. *See Kristensen,* 879 F.3d at 1014-15 (finding no liability under the TCPA for the defendant that did have an agency relationship with the actual caller, when there was no evidence of knowing acceptance of the TCPA violations committed by the vendor). Plaintiff can make no such showing here.

### B. Plaintiff cannot meet his burden of proving that an ATDS was used for the calls he received

As shown above in the Bank's Motion for Summary Judgment (Section IV(A)(1), Plaintiff lacks sufficient evidence to prove that the Bank's vendors used an ATDS.

Plaintiff relies on Defendant GC Service's legal counsel's (Shon Sherman or Ms. Sherman) deposition testimony regarding the details and workings of the Aspect dialing system

that Defendant GC Services allegedly used in placing 48 of the call attempts.  *See* Plaintiff's MSJ, Docket No. 50-1, 8:21-27; 9:1-6.  However, Ms. Sherman's testimony regarding GC Services' phone system lacks sufficient factual foundation because she admitted that she, herself, never actually used the phone system.  *See* Ex. 6 to Wade Decl., GC Services Deposition Transcript, 5:9-10.

Further, Ms. Sherman testified that the calls made by GC Services were made in either "predictive" or "preview" modes of the Aspect dialing system.  *See* Plaintiff's MSJ, Docket No. 50-1, 9:1-6.  However, calls made in "preview" are not consider calls made with an ATDS because calls made in "preview" mode require human intervention, i.e., the agent making the call must physically click on any telephone number he or she intends to call.  Calls made with this click-to-dial technology are not calls made with an ATDS since these calls were not made automatically; *see, e.g., ACA Int'l*, 885 F.3d at 703 ('[A]uto' in autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' 47 U.S.C. § 227(a)(1)—would seem to envision non-manual dialing of telephone numbers.").

Lastly, Plaintiff also relies on the Declaration of Don Hudecek, Senior Project Manager for Aspect Software, Inc., in support of Plaintiff's argument that the Bank's vendors used an ATDS.  *See* Plaintiff's MSJ, Docket No. 50-1, 10:7-26.  First, Mr. Hudecek's declaration lacks proper factual foundation and is improper hearsay from a third party declarant.  More importantly, Mr. Hudecek's declaration, as a whole, discusses the Aspect systems in general, but fails to discuss his personal knowledge of each of the Bank's vendors' particular phone system and how they were actually used in the calls about which he complains.  Mr. Hudecek's declaration admitted that he reviewed the management records for Defendant iEnergizer (not GC Services or First Contact), and simply confirmed the versions of the Aspect System that Defendant iEnergizer purchased. *See* Ex. 7 to Wade Decl., Declaration of Don Hudecek, ¶ 9. Mr. Hudecek's declaration does not discuss the particular modes, such as manual mode, used by the Bank's vendors, and is therefore insufficient evidence in support of Plaintiff's argument that the Bank's vendors used an ATDS in the call attempts placed to Plaintiff.

### C.      Plaintiff Is Not Entitled To Any TCPA Damages against Credit One, Including Treble Damages

#### 1.      Plaintiff not entitled to any TCPA damages against Credit One

As shown above in the Bank's Motion for Summary Judgment Section IV(A)1-4, Plaintiff has no TCPA claim against the Bank; therefore, he is not entitled to any damages, let alone treble damages.

#### 2.      Plaintiff is not entitled to treble damages because there was no willful conduct by Credit One or its vendors and the calls at issue were made in good faith

Plaintiff is not entitled to treble damages under the TCPA.  Treble damages are permitted only if the court finds that the Bank or its vendors willfully or knowingly violated the TCPA.  47 U.S.C. § 227 (b)(3).   The Bank and its vendors did not engage in any conduct that was outrageous, intentional and malicious or done with reckless disregard with respect to Plaintiff.  Further, the Bank and its vendors never engaged in any knowing, willful or fraudulent conduct with respect to Plaintiff.

In fact, the Bank's vendors made the calls at issue in a good faith attempt to reach the Bank's customer, D.V., who provided express contractual consent for the Bank or its agents to contact him at the -9847 number about his account.   The Bank's vendors called the -9847 number for the sole purpose of contacting D.V. (the intended recipient) regarding his past due Credit One credit card account.   Unbeknownst to the Bank and its vendors, the phone number was subsequently reassigned to Plaintiff N.L. on December 19, 2016.   *See* Harwood Decl. ¶ 10. The Bank and its vendors had absolutely no reason to believe that the -9847 phone number was reassigned to Plaintiff.   Further, the recording of the Plaintiff's sole conversation on February 22, 2017[8], demonstrates that he did not tell anyone to stop calling or that he was a minor.   *See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording).   This recording was played for Plaintiff at his deposition, and even Plaintiff admitted that the voice in the recording sounded like his voice. *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 74:2-14.  This is the only

---

[8] Plaintiff mistakenly argues that there is no recording of his sole conversation with the Bank's vendor (iEnergizer) on February 22, 2017.  Due to an inadvertent human error in labeling the recordings, the February 22, 2017 iEnergizer recording was produced to Plaintiff and mistakenly labeled as March 11, 2017.  *See* Harwood Decl. ¶13.

conversation that took place during the time period in question. *See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording). Lastly, the Bank's Account Notes, which are kept in real-time and notated after each call, corroborate the February 22, 2017 recording, and reflect that the iEnergizer representative spoke to a third party and did not leave a message. *See* Ex. 4 to Harwood Decl. (the Bank's Account Notes). Due to the fact that the February 22, 2017 conversation was so brief, the iEnergizer representative could not verify the answering party, hence the third party designation, and could not leave a message since Plaintiff hung up. *See* Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording).

Plaintiff argues that "Credit One testified that it has no records of what occurred during the February 22nd conversation…." *See* Plaintiff's MSJ, Docket No. 50-1, 13:20-23. At the time of the Bank's deposition, this was partially true because the Bank did not realize that the recordings it produced to Plaintiff were incorrectly labeled. During the Bank's deposition, Plaintiff's counsel referred the Bank's witness to counsel's computer screen, which listed dates of recordings produced by the Bank. Based on this list, the Bank's witness testified that he did not see any recordings dated in February of 2017. *See* Ex. 8 to Wade Decl., 57:5-25 and 58:1-12 (Deposition of Jeffrey Meek). However, as previously stated, and due to an inadvertent human error in labeling the recordings, the February 22, 2017 iEnergizer recording was produced to Plaintiff and mistakenly labeled as March 11, 2017. *See* Harwood Decl. ¶13. Plaintiff cannot rely on a mistake now when discussing that earlier testimony.

The Bank now knows exactly what occurred during the February 22nd conversation, as its vendor provided the corresponding recording in its possession. *See* Harwood Decl. ¶13 and Ex. 3 to Harwood Decl. (transcription of the February 22, 2017 call recording). Although the Bank's witness did not realize that the recordings were incorrectly labeled at the time of the deposition, he did confirm that there was only one recording, and in that recording, there was not much of a conversation - someone answered the phone and "there was a question, who is this? or something to that effect. Then that was it." *See* Ex. 12 to Wade Decl., 52:1-10 (Deposition of Jeffrey Meek). Thus, the record evidence is undisputed that Plaintiff never asked for the calls to stop,

1  never advised the Bank's vendors that they were calling the wrong person, and never advised the

2  Bank's vendors that he was a minor.

3        Plaintiff's request for treble damages is based on his own self-serving and wavering

4  testimony, wherein Plaintiff states: "On February 22, 2018[9], the Plaintiff clearly told Credit One

5  to stop calling him, a kid who had no relationship with Credit One."  Plaintiff's MSJ, Docket No.

6  50-1, 14:24-26.  But this testimony is contradicted by the February 22, 2017 recording.  Not to

7  mention, Plaintiff is now changing his original story regarding the date he claims he told the

8  Bank's vendors to stop calling.   Plaintiff originally stated in his pleading that he told the Bank to

9  stop calling on February 21, 2017.  *See* Plaintiff's Amended Complaint, Docket No. 24, ¶¶ 29

10  and 30.  Plaintiff also stated in his verified Interrogatories that he told the Bank to stop calling on

11  February 21, 2017. *See* Ex. 6 to Wade Decl. (Plaintiff's Interrogatory Responses).   Further,

12  Plaintiff even produced a call log, which included the following entry dated February 21st at

13  11:04am: "Noah spoke with a male agent and told him to stop calling he had the wrong number

14  and said he was a kid." *See* Ex. 5 to Wade Decl. (Plaintiff's "call log").  *See also* Ex. 7 to Wade

15  Decl. (Plaintiff's Deposition).

16        Plaintiff is now trying to restate his allegations to fit comfortably and conveniently in line

17  with the Bank's records.  After the Bank's production, it was readily apparent that the Bank's

18  vendors did not make any calls on February 21, 2017, therefore, Plaintiff could not have possibly

19  told the Bank's vendors to stop calling on that date.  As a result thereof, Plaintiff now attempts to

20  change his story that he revoked consent on February 22, 2017.  In fact, Plaintiff's wavering

21  testimony supports the Bank' position because Plaintiff now freely admits to speaking with the

22  Bank on February 22, 2017 (and also admits he only had one conversation with the Bank or its

23  vendors).   This corroborates the Bank's records.   As previously stated, it is clear from the

24  February 22, 2017 recording that Plaintiff never told the Bank's vendors to stop calling. *See* Ex.

25  3 to Harwood Decl. (transcription of the February 22, 2017 call recording).  So his claims of

26  "willful" or "knowing" calls lack any evidentiary support.

27

28  _____

[9] Plaintiff incorrectly states 2018 as the year he allegedly asked the Bank to stop calling. At any rate, Plaintiff never told the Bank to stop calling, neither in 2017 or 2018.

Surprisingly, Plaintiff attempts to argue and imply bad faith by stating that the Bank deleted the February 22, 2017 recording before the lawsuit because "Credit One does not retain calls after ninety days". *See* Plaintiff's MSJ, Docket No. 50-1, 13:23-28.  Plaintiff tries to mislead the court by making this argument.  Plaintiff focuses on the Bank's own call retention policy, which is **irrelevant** because the Bank, itself, did not make any of the calls at issue and therefore, would not have any recordings.  The Bank's **vendors** made the calls and they implement their own retention policies.  In this matter, the Bank's Vendors retained all recordings of calls to the -9847 number which were answered; those were produced, and provided the February 22, 2017 call.  *See* Harwood Decl. ¶14.

Plaintiff goes on to discuss a string of out-of-circuit cases in support of his argument that he should be entitled to treble damages for the 181 calls made after he allegedly told the Bank's vendors to stop calling on February 22, 2017. *See* Plaintiff's MSJ, Docket No. 50-1, pgs. 15-18. These cases cited by Plaintiff are ALL inapposite.  In each of those cases, the plaintiffs actually called into the calling party and asked for the calls to stop; it was undisputed that these plaintiffs told the calling party to stop calling.  In our case, Plaintiff never told the Bank or its vendors to stop calling.  The Bank's vendors made the calls at issue in a good faith attempt to reach the Bank's customer, D.V., and had no reason to believe that D.V.'s phone number was subsequently reassigned to Plaintiff.

Based on the foregoing, Plaintiff is not entitled to trebled damages.

## IV.    CONCLUSION

Plaintiff has failed to meet his burden to demonstrate that there is no issue of material fact, and his Motion should be denied in its entirety.

DATED:  October 9, 2018                **CARLSON & MESSER LLP**

By:       /s/ Charles R. Messer
          Charles R. Messer
          David J. Kaminski
          Alex A. Wade
          Attorneys for Defendant
          CREDIT ONE BANK, N.A.

## <u>CERTIFICATE OF SERVICE</u>

I, Charles R. Messer, hereby certify that on this 9th day of October, 2018, a true and accurate copy of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CREDIT ONE BANK, N.A.'S CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT were served via the District Court ECF System on the Following:

Email: ari@marcuszelman.com
jonathan.a.stieglitz@gmail.com
yzelman@marcuszelman.com
paul.grammatico@kattenlaw.com
fhabib@behblaw.com
cocarroll@behblaw.com
margie@rudnickifirm.com

/s/Charles R. Messer
Charles R. Messer
CARLSON & MESSER LLP

CERTIFICATE OF SERVICE