Charles R. Messer (SBN: 101094)
messerc@cmtlaw.com
David J. Kaminski (SBN 128509)
kaminskid@cmtlaw.com
Alex A. Wade (SBN 304022)
wadea@cmtlaw.com
**CARLSON & MESSER LLP**
5901 W. Century Boulevard, Suite 1200
Los Angeles, California 90045
(310) 242-2200 Telephone
(310) 242-2222 Facsimile

Attorneys for Defendant
CREDIT ONE BANK, N.A.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| N.L., an infant by his mother and natural guardian SANDRA LEMOS,<br><br>    Plaintiff,<br><br>vs.<br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC,<br><br>    Defendants. | CASE NO. 2:17-cv-01512-JAM-DB<br>Assigned to: Hon. John A. Mendez<br><br>**DECLARATION OF GARY HARWOOD IN SUPPORT OF CREDIT ONE BANK'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF CREDIT ONE BANK'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     November 6, 2018<br>Time:     1:30 p.m.<br>Place:    U.S. District Court<br>            501 I Street<br>            Sacramento, CA  95814<br>Courtroom:  6, 14th Floor |

///
///
///

## DECLARATION OF GARY HARWOOD

I, Gary Harwood, declare as follows:

1. I am Vice President of Portfolio Services at Credit One Bank, N.A. ("the Bank"). I have been employed by the Bank for more than twenty (20) years, and I am competent to make this declaration. I have personal knowledge of the matters set forth in this declaration, except as to those matters stated upon information and belief, and I believe those matters to be true.

2. For more than a decade, my job duties have included monitoring and overseeing management and collections of the Bank's accounts, which includes the account of cardholder D.V. (name redacted for privacy).

3. I am familiar with the Bank's books and records as they relate to the Bank's cardholder agreements, cardholder account records and vendor service agreements. I have reviewed and gained knowledge of the Bank's records related to the 916-308-9847 phone number ("the -9847 number') which, according to the Bank's records, was a telephone number for D.V. The Bank's business records attached to my Declaration are maintained in the ordinary course of business and are updated at or near the time of the acts, conditions, or events to which said records relate. The Bank relies upon these records in its business.

4. The Bank is a national, U.S. based bank specializing in credit cards and services for approximately nine million cardholders across the United States.

5. Obtaining payment from customers is an essential part of the Bank's business, as is communicating with cardholders when payments are late to make arrangements and to help customers establish and maintain good credit.

6. The Bank hires independently contracted vendors to make collection calls to the Bank's customers, only at telephone numbers which customers provide, to discuss issues related to their accounts, such as delinquent payments.

7. D.V. is a longtime and still current customer of the Bank who applied for, and was issued, a VISA credit card from the Bank. During the application process and again upon opting to use his VISA credit card, D.V. accepted the terms of the Bank's Cardholder Agreement. The

1 | Cardholder Agreement clearly authorized the Bank and its vendors to contact D.V. at any telephone numbers he provided via live operator, automatic telephone dialing system (auto-dialer), prerecorded message, text message or email.

8. On March 26, 2014, D.V. provided the -9847 number to the Bank during an inbound call regarding his account.

9. In October of 2014, D.V. fell behind on his payments so the Bank hired certain vendors to collect the outstanding balance owed by D.V. As a result of the calls made by the Bank's vendors, D.V. brought his account current in the same month of October of 2014, until he fell behind on his payments again in December of 2015. From December of 2015 to June of 2017, D.V. intermittently fell behind on his payments, causing the Bank's vendors to make calls to collect the outstanding balance.

10. Unbeknownst to the Bank, D.V.'s -9847 number was reassigned to Plaintiff N.L. on December 19, 2016.

11. The Bank's vendors, iEnergizer Holdings Ltd., GC Services LP, and First Contact LLC ("Vendors"), made 189 calls to the -9847 phone number after December 19, 2016 (between February 20, 2017 and June 13, 2017): 115 calls were made by iEnergizer Holdings Ltd. between February 20, 2017 and March 16, 2017; 48 calls were made by GC Services LP between March 18, 2017 and March 26, 2017; and 26 calls were made by First Contact LLC between April 8, 2017 and June 13, 2017. A true and correct copy of the Bank's call log is attached as Exhibit 1, and GC Services LP's call log is attached hereto as Exhibit 2.

12. The Bank, itself, never called the -9847 phone number.

13. Out of the 189 calls made to the -9847 number by the Bank's Vendors after December 19, 2016, only one call was answered; that call was made by iEnergizer and was dated February 22, 2017. Due to an inadvertent human error, the February 22, 2017 iEnergizer recording was produced to Plaintiff and mistakenly labeled as March 11, 2017. A true and correct copy of a transcription of the February 22, 2017 recording is attached as Exhibit 3.

14. While during the time period in question, the Bank required that its Vendors keep

all recordings for at least ninety days, Vendors were also free to implement their own retention policies and could retain recordings for longer periods of time. In this matter, the Bank's Vendors retained all recordings of calls to the -9847 number which were answered.

15. The Bank's Vendors' calls to the -9847 number ceased on June 13, 2017, because there was a payment made on D.V.'s account that brought his account current. That payment is reflected in the Bank's account notes related to D.V.'s account (redacted versions attached as Exhibit 4).

16. The Bank's contracts with its Vendors require compliance by the Vendors with state and federal laws.

17. The Bank also has policies and procedures requirements for Vendors that any oral request by a cardholder for calls to stop must be annotated with a "DNC/Block" designation and enforced immediately as a courtesy to the requesting party, so that no further calls will be placed to that number.

18. The Bank never received any notification from any Vendor that Plaintiff, or anyone else, asked that calls to -9847 should cease.

19. The Bank never received notification from anyone that calls to -9847 should cease until the Plaintiff's attorneys served the Summons and Complaint in this case.

20. The Bank did not control any part of the collection calls made by the Vendors, and left the substance of those calls to the expertise of the Vendors.

21. The Bank had no control over its Vendors' day-to-day operations.

22. The Vendor agreements with the Bank all included an "Independent Contractor" provision, which specifically stated that the Vendors are independent contractors.

23. The calls made by the Vendors were not supervised by the Bank. The Bank would occasionally visit the Vendors' sites to audit and ensure compliance with their Vendor agreements.

24. Aside from allowing the Vendors to access the Bank's system to input notes made

during the calls, the Bank did not supply the Vendors any tools and instrumentalities. The Vendors supplied their own phone equipment, computers and office space.

25. The Bank's relationship with its Vendors was not permanent and all of the Bank's agreements with its Vendors included a termination provision, allowing the parties to terminate the agreement at any time.

26. The Vendors were either paid a flat fee per collection account assigned by the Bank or were paid a percentage based on the amount collected. The Bank did not pay its Vendors based on the time they spent collecting on the assigned accounts.

27. Although the Bank, itself, collects on past due accounts, collection is not the Bank's primary business. In fact, collections makes up a very small percentage of the Bank's business. The Bank is a federally-regulated bank, which specializes in credit cards.

28. At all times, it was the Bank's and the Vendors' intent that the Vendors would act as independent contractors and not as agents or employees of the Bank, which is why the "Independent Contractor" provisions was included in the Bank's service agreements with the Vendors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of October 2018, at Las Vegas, Nevada.

_____
Gary Harwood

# CERTIFICATE OF SERVICE

I, Charles R. Messer, hereby certify that on this 9th day of October, 2018, a true and accurate copy of the foregoing DECLARATION OF GARY HARWOOD IN SUPPORT OF CREDIT ONE BANK'S MOTION FOR SUMMARY JUDGMENT and EXHIBITS 1-4 were served via the District Court ECF System on the Following:

Email: ari@marcuszelman.com
jonathan.a.stieglitz@gmail.com
yzelman@marcuszelman.com
paul.grammatico@kattenlaw.com
fhabib@behblaw.com
cocarroll@behblaw.com
margie@rudnickifirm.com

/s/Charles R. Messer
Charles R. Messer
CARLSON & MESSER LLP