# "Exhibit 12"

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 2 of 32
Atkinson-Baker Court Reporters
www.depo.com

```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF CALIFORNIA

 3                       *   *   *   *   *

 4   N.L., AN INFANT BY HIS MOTHER)
     AND NATURAL GUARDIAN         )
 5   SANDRA LEMOS,                )
                                  )
 6                                )
            PLAINTIFF,            ) Case No.:
 7                                )2:17-CV-01512-JAM-DB
     VS.                          )
 8                                )
     CREDIT ONE BANK, N.A.,       )
 9   GC SERVICES LIMITED          )
     PARTNERSHIP, IENERGIZER      )
10   HOLDINGS, LIMITED, AND       )
     FIRST CONTACT, LLC. A/K/A    )
11   IQOR HOLDINGS, INC.,         )
                                  )
12          DEFENDANTS.           )

13                      CONFIDENTIAL

14    DEPOSITION OF 30(b)(6) JEFFREY MEEK FOR CREDIT ONE BANK

15               Taken at ViewPointe Executive Suites
                           10:23 a.m.
16               On Friday, June 15, 2018

17               8275 South Eastern Avenue
                         Suite 200
18               Las Vegas, Nevada

19


20   Job File No.: AC0484B


21

     ATKINSON-BAKER, INC.
22   COURT REPORTERS
     (800) 288-3376
23   www.depo.com


24

     REPORTED BY:  Julie M. Lever,
25               RPR, CCR No.: 582
```

Atkinson-Baker Court Reporters
www.depo.com

---

**Page 2**

A P P E A R A N C E S :

FOR PLAINTIFF:
MARCUS & ZELMAN, LLC.
BY: YITZCHAK ZELMAN, PHV (Via phone)
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
yzelman@marcuszelman.com
FOR THE DEFENDANT: (CREDIT ONE BANK)
CARLSON & MESSER, LLP.
BY: DAVID J. KAMINSKI, ESQ.
5901 West Century Boulevard
Suite 1200
Los Angeles, California   90045

FOR THE DEFENDANT:
BASSI EDLIN HUIE & BLUM
BY: FARHEENA A. HABIB, ESQ. (Via phone)
515 South Flower Street
Suite 1020
Los Angeles, California  90071
Fhabib@behblaw.com

---

**Page 3**

I N D E X

WITNESS:  JEFFREY MEEK

EXAMINATION                         PAGE

By Mr. Zelman                        4

EXHIBITS          DESCRIPTION          PAGE

Exhibit A:  Call Logs              17
Exhibit B:  Call Logs              19
Exhibit C:  Call Logs              19
Exhibit D:  Supplemental Responses to   63
            Second Set of Interrogatories

Exhibit E: Responses to Requests for    82
           Admissions, Set One

Exhibit F: Declaration of Don Hudecek    86

---

**Page 4**

                    JEFFREY MEEK,
       having been first duly sworn,
       testified as follows:
                    EXAMINATION
BY MR. ZELMAN:
       Q.   Good morning. Can you please state your
name for the record?
       A.   Jeffrey Meek.
       Q.   And are you testifying here today on
the behalf of Credit One?
       A.   I am.
       Q.   What is your role at Credit One?
       A.   Assistant vice-present portfolio
services.
       Q.   How long have you been in that role
for?
       A.   Almost five years.
       Q.   As the assistant vice-president?
       A.   Yes.
       Q.   Has your role -- well, let me back up
for a second.  What are your duties and
responsibilities in that role?
       A.   My duties and responsibilities are the
day-to-day operation of the vendors under my span
of control.

---

**Page 5**

       MR. KAMINSKI: Farheena, so sorry.  We
started with you on mute, but we only got to the
second question about Mr. Meek being the
assistant vice-president of portfolio services
for five years and he was talking about his
day-to-day operations.
       MS. HABIB: Can I get the witness' full
name, please?
       THE WITNESS: Jeffrey Meek.  M-E-E-K.
       MR. KAMINSKI: Okay.  And assistant
vice-president of portfolio, okay.
BY MR. ZELMAN:
       Q.   All right. You've been the assistant
vice-president for the past five years.  Has your
role changed in the past five years?
       A.   Only materially in the last six months.
       Q.   How so?
       A.   Because now I also support the legal
department and litigation services in appearing
as a witness.
       Q.   For six months before, you did not
appear as a witness?
       A.   Not for this bank, No.
       Q.   You mean not for Credit One Bank?
       A.   Not for Credit One Bank.

---

2 (Pages 2 to 5)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

1  Q.  So who would appear as a witness for
2  Credit One Bank?
3  A.  Prior to that?
4  Q.  Yes.
5  A.  Predominately, Gary Harwood.
6  Q.  Why did you guys switch?
7  A.  We didn't really switch.  It was more
8  of an add, not a subtract.
9  Q.  So you said that you managed it under
10  your span?  I believe that is the word you used.
11  A.  Yes, under my span of control.
12  Q.  And which vendors are that?
13  A.  That would be GC Services,
14  Convergent Outsourcing and part of Alorica.
15  Q.  And these are different vendors that
16  Credit One uses to make calls on its behalf?
17  A.  Yes.
18  Q.  How many vendors are there?
19  A.  Now I believe there are six.
20  Q.  You mentioned three that you oversee,
21  right?
22  A.  Yes.
23  Q.  Okay.
24  A.  Actually, I think there is seven.
25  Q.  All right.  Well, iEnergizer, right?

Page 6

1  question with iEnergizer, who would pose that to
2  iEnergizer?  Would that be you or Adele Burton?
3  A.  It would typically be Adele or somebody
4  that works for her.
5  Q.  Now, have you spoken with -- for
6  example, GC Services is a defendant in this
7  action.  Have you spoken with them about the
8  claims in this action?
9  A.  I have not.
10  Q.  Do you know if Adele has spoken to
11  iEnergizer about the claims in this action?
12  A.  Not to my knowledge.
13  Q.  Did you guys pull together information
14  once you received this lawsuit?
15  MR. KAMINSKI: Vague and ambiguous with
16  respect to "you guys."
17  BY MR. ZELMAN:
18  Q.  When I say you guys, I mean Credit One.
19  Did Credit One go to the vendors when
20  this lawsuit was brought and ask them for
21  information about these calls?
22  A.  I'm going to say "yes" in the sense
23  that I have seen call logs and material of that
24  nature that would have had to be provided by
25  them.

Page 8

1  A.  Right.
2  Q.  And there is First Contact, Iqor?
3  A.  Yes.
4  Q.  There is Sutherland?
5  A.  Sutherland.
6  Q.  Who is the seventh?
7  A.  I guess that is it.  That's it.
8  Q.  Okay.  So you said you manage GC,
9  Convergent, part of Alorica.  You do not manage
10  iEnergizer, one of the vendors in this case,
11  correct?
12  A.  Correct.
13  Q.  Is that because you only manage call
14  centers with operations in the U.S.?
15  A.  Call centers with operations in
16  North America.
17  Q.  Okay.  So if they are in North America,
18  you manage it.  If they are not in
19  North America, someone else manages it?
20  A.  Correct.
21  Q.  Who is that?
22  A.  That would be Adele Burton.
23  Q.  Does she still work with the company?
24  A.  Yes.
25  Q.  So if Credit One had an issue or a

Page 7

1  Q.  So the call logs and material, that
2  wouldn't normally be provided to Credit One if a
3  specific request was made for it?
4  A.  Call logs are generally provided as
5  part of the nightly download, but it's not
6  something that we use in any kind of day-to-day
7  operation.
8  Q.  So call logs and account notes produced
9  in this case.  Are you saying those came from the
10  vendors?
11  A.  They originally came from the vendors.
12  I don't know if they have some warehouse where
13  they keep that stuff or whether they just go back
14  and ask for it.  I think our support group just
15  goes back and asks for the relevant calls for
16  whatever period.
17  Q.  And you say "they ask."  Who are they
18  asking?
19  A.  Somebody at the vendor.
20  Q.  So in this case there was -- we allege
21  that calls were made to my client's phone number.
22  In response to our interrogatories, Credit One
23  identified that calls were made by First Contact,
24  iEnergizer, and GC Services.
25  How did you go about getting that

Page 9

3 (Pages 6 to 9)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 5 of 32
Atkinson-Baker Court Reporters
www.depo.com

1    answer?  That's what I'm trying to figure out.
2        A.  Oh, I see.  So they would start, of
3    course, with the account number.  So then they
4    would simply look at the account and see who the
5    account had been assigned to during whatever
6    period is under discussion and then request any
7    call log information that those vendors might
8    have for that period.
9        Q.  Well, do you believe that my client had
10   an account with Credit One Bank?
11       A.  If I understand the intricacies of this
12   case, I think she does but it's not the matter at
13   hand.
14       Q.  When you say "she," just to clarify,
15   there are two people listed as plaintiffs in the
16   complaint.  There is N.L. , who is, I think, an
17   infant by his mother and natural guardian,
18   Sandra Lemos.
19           Are you referring to Sandra Lemos?
20       A.  Sandra, I believe, is the one.
21       Q.  So you think Sandra has a Credit One
22   account?
23       A.  I think that she does.
24       Q.  You don't believe that N.L. has a
25   Credit One account, right?

Page 10

1        A.  No.
2        Q.  And are there phone numbers associated
3    with the Sandra Lemos' Credit One account?
4        A.  Are there phone numbers associated with
5    it?
6        Q.  Yes.
7        A.  I imagine that there are.  I don't know
8    what they are.
9        Q.  Do you believe that the phone number in
10   this case is associated with that account?
11          Do you believe that the phone number at
12   issue in this case is associated with that
13   account?
14          MR. KAMINSKI: Objection.  Calls for
15   speculation.
16          THE WITNESS:  Not to my knowledge.
17   BY MR. ZELMAN:
18       Q.  And when you say to your knowledge,
19   what are you basing that on?
20       A.  Well, I base it on I haven't looked at
21   her account, so I really don't know what is on
22   her account or what is associated with her
23   account.
24       Q.  Okay. So to answer that question, you
25   would have to look at the account notes

Page 11

1    associated with Sandra Lemos' account?
2        A.  I would.
3        Q.  Do you know if that's have been
4    produced in this action?
5        A.  Not to my knowledge.
6        Q.  Well, did you review the discovery
7    production, your discovery responses in this
8    case?
9        A.  I did.
10       Q.  When was that?
11       A.  Oh, well, probably over the course of
12   the last week.
13       Q.  So what did you review?
14       A.  So I reviewed all the call recordings,
15   at least the ones that I could get to play.  The
16   account notes, the call logs, the responses, the
17   notice.
18       Q.  All right.  So let's unpack that a
19   little bit.  You said you played all recordings
20   you can get to play?
21       A.  Yes.
22       Q.  I think I know what issue you're
23   referring to.  There has been about fifteen
24   recordings produced in this action by
25   Credit One Bank; is that your recollection?

Page 12

1        A.  That sounds about right.
2        Q.  Of those fifteen recordings, some of
3    them are in MP3 and some are in WAV format?
4        A.  I think that is right, yes.
5        Q.  I was able to play the MP3 files.  Were
6    you --
7        A.  I think those are the ones I was able
8    to play.
9        Q.  And the WAV files you were not able to
10   play?
11       A.  I got an error.
12       Q.  Me too.  Do you know why?
13       A.  I have no idea why.
14       Q.  Do you know why some are recorded in
15   MP3 and some are recorded in WAV?
16       A.  I don't know.  I don't know if it has
17   to do with the vendor that produced them or not
18   because I don't know which ones came from where.
19       Q.  Well, do you believe that vendors
20   switched how they record or do you think some
21   record in MP3 and some record in WAV?
22          MR. KAMINSKI: Objection.  Calls for
23   speculation.  Lacks foundation.
24          THE WITNESS: I really don't know the
25   answer to that.

Page 13

4 (Pages 10 to 13)

Atkinson-Baker Court Reporters
www.depo.com

BY MR. ZELMAN:

Q. I'm looking at the recordings produced in this action. You have two recordings on the exact same day, February 8, 2017. These are Bates stamped Credit One Bank 34 and Credit One Bank 35.

If we look at the new account notes that were produced this morning -- actually, not those accounts. I'm sorry. If we look at the call logs produced this morning -- well, no. I'm sorry.

If we look at the call logs produced in this action for particularly Bates stamped 25, it appears that those calls on February 8, 2017, were made by First Contact.

Is that the time period that First Contact was assigned to this account?

A. Most likely. I'm not as familiar with that most recent stuff, but.

Q. Okay. So it appears that First Contact made five calls on February -- on April 8, 2017, pursuant to Credit One Bank 25, and there are two recordings from that date.

A. Okay.

Q. One of the recordings is in MP3. One

Page 14

of those is in WAV. Do you have any idea why?

A. I have no idea why.

Q. Did you try to reach out to someone at First Contact and say, hey, I can't play theses recordings. Can you help us?

A. No --

MR. KAMINSKI: Objection. You can answer.

THE WITNESS: That would be someone at the legal department would do that.

BY MR. ZELMAN:

Q. Did you ask someone in the legal department to do it?

A. No.

Q. Did you say, hey, I can't listen to these recordings? Can you reach out to First Contact and get some clarification?

A. Well, they had the same problem that I do, so.

Q. Do you know if anyone from the legal department asked at First Contact?

MR. KAMINSKI: Objection to the extent it deals with any attorney-client privilege issues.

THE WITNESS: I don't know.

Page 15

BY MR. ZELMAN:

Q. If you want to listen to that recording and you can't listen to it at the moment, how would you go about trying to fix that?

A. Probably the first thing would be to contact the IT department.

Q. Who at the IT department would you contact?

A. Just the help desk.

Q. Would it be Mr. Vanderbeek?

A. About that?

Q. Yes.

A. Probably not.

Q. Mr. Vanderbeek is the vice-president of IT?

A. Is he? Okay. Then that must be what he is.

MR. KAMINSKI: Objection. Calls for speculation. Lacks foundation.

BY MR. ZELMAN:

Q. So, who would you speak to at the IT department? Just the regular help desk?

A. Just the help desk.

Q. And you haven't done that yet, right?

A. I have not.

Page 16

Q. The demand in discovery made to produce this recording in useable form, is that the way you would go about trying to obtain that?

A. That's how I do it, yes.

Q. Okay. Going back to what we were talking about earlier, which was what did you do to prepare for today's deposition? You said you reviewed account notes and call logs, correct?

A. Correct.

Q. There are several call logs in this case. Iqor produced a call log in this case. GC Services produced a call log in this case. Credit One Bank produced account notes and call logs in this case.

What did you review?

A. The Credit One account notes and call logs.

Q. Anything produced or provided by the vendors?

A. Not that I'm aware of.

MR. ZELMAN: So let's mark this as Exhibit A.

(Exhibit "A" was marked for identification.)

BY MR. ZELMAN:

Page 17

5 (Pages 14 to 17)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 7 of 32
Atkinson-Baker Court Reporters
www.depo.com

1   Q.  I am handing to the witness what is
2   marked as Exhibit A.  And this is
3   GC Services production and it is Bates stamped
4   one.
5       MS. HABIB: I'm sorry. Is that
6   GC Services' call log, Exhibit A?
7       MR. ZELMAN: Precisely.  One page.
8   BY MR. ZELMAN:
9   Q.  Let me know when you're ready.
10  A.  I am ready whenever you are.
11  Q.  Okay.  Have you seen this document
12  before?
13  A.  It does not look familiar.
14  Q.  This is the call log produced by
15  GC Services in this case reflecting the calls
16  that they made to my client's phone number.
17      You're saying you've never seen this
18  document before?
19  A.  I don't believe I've seen this document
20  before.
21  Q.  When you reviewed this case to prepare
22  for today's deposition, you reviewed the account
23  notes and call logs maintained by
24  Credit One, right?
25  A.  Correct.

Page 18

1       MR. ZELMAN: Credit One Bank, Bates
2   stamped 1 through 11, let's mark that as
3   Exhibit B.
4       Credit One Bank 12 through 26, that
5   will be Exhibit C.
6       (Exhibits "B and "C" were
7       marked for identification.)
8   BY MR. ZELMAN:
9   Q.  All right. Take a look at these
10  documents.  Let me know when you're ready.
11  A.  All right.
12  Q.  So are these the documents you reviewed
13  in preparation for today's deposition?
14  A.  Yes, these look familiar.
15  Q.  There are two sets of documents.  The
16  first one is Credit One Bank 1 through 11.  What
17  is this document?
18  A.  This appear to be the account notes.
19  Q.  Who maintains the account notes?
20  A.  Credit One.
21  Q.  Are these all the account notes
22  pertaining to this account?
23  A.  Are these the only account notes
24  pertaining --
25  Q.  Are these all the account notes that

Page 19

1   Credit One has related to this account?
2   A.  I think there are additional account
3   notes that were provided this morning, so.
4   Q.  Okay.  That's my question.  In
5   discovery, requests were made for account notes
6   and this is what was provided.  This morning
7   about six more pages of account notes were
8   produced.
9       Why would that be?
10      MR. KAMINSKI: Objection.
11  Attorney-client privilege.
12  BY MR. ZELMAN:
13  Q.  Okay. Well, when Credit One wants to
14  pull up account notes, how would they go about
15  doing that?
16  A.  They would go to the CAS system and the
17  account number and pull up the notes.
18  Q.  That's C-A-S?
19  A.  C-A-S.
20  Q.  All right. So would it then pull up all
21  of the notes on the account or only within a
22  specified date range?
23      MR. KAMINSKI: Objection.  Calls for
24  speculation.
25      THE WITNESS: In my experience it will

Page 20

1   give you all of the notes that we have on the
2   account.
3   BY MR. ZELMAN:
4   Q.  All right.  And so back in December of
5   2017, we received Credit One Bank 1 through 11.
6   So I assume that around that time someone pulled
7   up the account notes and said these are the
8   account notes for the account?
9   A.  Yes.  Somebody in support would have
10  done that.
11  Q.  And you have no idea why another six
12  pages of account notes were produced this
13  morning?
14      MR. KAMINSKI: Objection to the extent
15  it calls for any discussions that you had with
16  attorneys and I object on the grounds of the
17  attorney-client privilege.
18  BY MR. ZELMAN:
19  Q.  Sure.  When you answer this question,
20  you should not provide any information that you
21  spoke to with counsel.
22  A.  Umm --
23      MR. KAMINSKI: And he doesn't want you
24  to guess or speculate.
25      THE WITNESS: I don't know.

Page 21

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 8 of 32
Atkinson-Baker Court Reporters
www.depo.com

BY MR. ZELMAN:
    Q.   All right.  Well, let's back up for a
second.  Did Credit One directly call my client?
And just -- I can see where your attorney is
getting ready to object on that.  The phone
number that my client has is 916-308-9847.
        Do you know that's the phone number
that is at issue in this case?
    A.   I do.
    Q.   For the purposes of today's deposition,
I will call it the 9847 number; is that all
right?
    A.   That is fine.
    Q.   Great. Did Credit One directly call the
9847 number?
    A.   Yes.
        MR. KAMINSKI: Listen to his question
again.
        THE WITNESS: Our vendors called that
number.
BY MR. ZELMAN:
    Q.   Okay. Right.  So Credit One itself did
not directly use its own call center to call this
phone number?
    A.   Not to my knowledge, no.

Page 22

    Q.   Credit One does have its own call
center, right?
    A.   Yes.
    Q.   But they didn't make calls in this
specific case?
    A.   No.
    Q.   So the vendors hired by Credit One made
these calls?
        MR. KAMINSKI: Objection.  Vague and
ambiguous with regard to hire.  You can answer.
        THE WITNESS: Yes, our vendors made
these calls.
BY MR. ZELMAN:
    Q.   I know there was an objection as to
being vague and ambiguous.  When you answered the
question, did you find anything vague or
ambiguous about the question?
        MR. KAMINSKI: I want to --
        MR. ZELMAN: I'm clarifying so there is
no confusion.  That's all.
        MR. KAMINSKI: I think it was just vague
and ambiguous and possibly calls for a legal
conclusion with respect to the use of the word
"hire."
BY MR. ZELMAN:

Page 23

    Q.   Okay.  Did you guys hire vendors to
make calls to the 9847 number?
        MR. KAMINSKI: Objection.  Calls for a
legal conclusion.
        THE WITNESS: We have vendors who make
calls on our behalf.
BY MR. ZELMAN:
    Q.   Do they do that out of the goodness of
their hearts?
    A.   No.
    Q.   Do they get paid for their efforts?
    A.   They do.
    Q.   Who pays that?
    A.   Credit One Bank.
    Q.   Is there a contract between Credit One
Bank and these vendors?
    A.   Yes.
    Q.   Is that the master services agreement?
    A.   Yes.
    Q.   Each vendor has their own agreement?
    A.   Yes.
    Q.   So when calls are made by the vendor --
        I believe there was a fair number of
vendors identified in this action identified in
the call logs that only they were sued in this

Page 24

action because Credit One predated my client's
phone number.
        We're only going to talk about
First Contact, iEnergizer, and GC Services
because all the ones made to my client during
that time period.
        For example, when calls are made by
iEnergizer to the 9847 number, how did Credit One
get a record of those calls being made or what
transpired on those calls?
    A.   We would have asked those vendors to
search their records for the 9847 number and
produce call logs and recordings relevant to that
number.
    Q.   Are you saying that before that request
to the vendors were made, you have no record of
calls or activity on the account?
    A.   No, that's --
    Q.   My question was, how does Credit One
get advised or informed about, you know, calls
made on the account by the vendors or activity
that took place on the account by the vendors?
    A.   I'm trying to  -- activity on the
account that is substantive where something
happened on the account will be reflected in the

Page 25

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 9 of 32
Atkinson-Baker Court Reporters
www.depo.com

1   account notes.
2       Q.   Okay. So if a call was made by a vendor
3   and no answer received, for example, no message
4   is left, that would be reflected in the account
5   notes?
6       A.   It might be reflected in the account
7   notes.
8       Q.   And the account notes are separate from
9   the call logs, you're saying?
10      A.   Yes.
11      Q.   On a daily basis does Credit One get
12  account notes from the vendors?
13      A.   Well, the account notes are updated at
14  that time.  So whatever activity happens on the
15  account is updated either simultaneously or
16  immediately after that action happens.  The call
17  logs are simply updated when a call is made.
18      Q.   Okay.  But does Credit One get the call
19  logs and the account notes from the vendor on a
20  real time basis or are those two separate things?
21      A.   Well, they are two separate things.
22  The account notes are real time or near real
23  time.  The call logs, that would be uploaded
24  nightly in the nightly file.
25      Q.   So let's go back for a moment.  You

Page 26

1   said the account notes are maintained in real
2   time or almost real time.  How does that work?
3       A.   So the collection front end is CASH.
4       Q.   Spell that.
5       A.   C-A-S-H.
6       Q.   What does that mean the collection,
7   CASH?
8       A.   That's the collection system.  So that
9   is the system that a representative, that a
10  vendor would see.  The system of record is the
11  CAS system, C-A-S.  So the CASH system feeds the
12  CAS system.
13      Q.   You used a lot of words there.  I'm not
14  getting what you're trying to say.
15      A.   So --
16          MR. KAMINSKI:   Well, counsel, he
17  answered your question.  If you have a specific
18  question, ask him.
19  BY MR. ZELMAN:
20      Q.   Sure.  My summary what of you just said
21  is that CASH is the collection front end.  It's a
22  collection system.  That's what vendors would
23  see.  And the feed is a CAS system which is a
24  system of record?
25      A.   Yes.

Page 27

1           Q.   Elaborate.
2               MR. KAMINSKI:  Vague and ambiguous with
3   respect to the word "elaborate." Could you ask
4   him a specific question?
5   BY MR. ZELMAN:
6           Q.   Sure.  What does it mean that CASH is a
7   collection front end?
8           A.   Okay.  So the CASH system is where only
9   accounts that are in a delinquent status, they
10  can be viewed through that system by our
11  collection representatives.
12              The CAS system being the system record
13  is the system where all activity on the account
14  is maintained.
15              MR. KAMINSKI:  Excuse me for one
16  second.  I apologize.  I should have said this at
17  the outset.  I would like to have the entire
18  deposition marked confidential proprietary and
19  subject to the protective order.
20              MR. ZELMAN: Okay. We can address that
21  afterwards.
22              MR. KAMINSKI:  Sure.  Of course.
23  BY MR. ZELMAN:
24          Q.   Okay.  So when you say that accounts
25  that are in a delinquent status can be viewed

Page 28

1   through the system by collection representatives,
2   are you talking about Credit One representatives
3   or by the vendors?
4       A.   By anybody.
5       Q.   Okay.  So if an account is not in a
6   delinquent status, the vendor wouldn't be able to
7   see that account in the CASH system?
8       A.   Correct.
9       Q.   And would Credit One's own
10  representatives be able to see it in the CASH
11  system?
12      A.   No.
13      Q.   They would have to go to the CAS system
14  to see that, right?
15      A.   Correct.
16      Q.   Can the vendors see the CAS system?
17      A.   It depends on the vendor and it depends
18  on the project.
19      Q.   Can iEnergizer see the CAS system?
20          MR. KAMINSKI:  Objection.  Vague and
21  ambiguous as to time.
22          THE WITNESS: The collectors at
23  iEnergizer -- let me think about this for just a
24  second.
25          MR. KAMINSKI:  Don't guess.

Page 29

8 (Pages 26 to 29)

Case 2:17-cv-01512-JAM-DB  Document 55-15  Filed 10/09/18  Page 10 of 32
Atkinson-Baker Court Reporters
www.depo.com

1    THE WITNESS: Some collectors at
2  iEnergizer do have the capability to see the CAS
3  system.  You know, I'm not certain of that
4  answer.  So I don't know.  I know -- yeah, I don't
5  know.
6  BY MR. ZELMAN:
7    Q.  All right.  So you have got account
8  notes in front of you, right?
9    A.  Yes.
10    Q.  What do they say there on the first
11  page?
12    A.  One.
13    Q.  So it's one through eleven.  Those are
14  the account notes.  Is that a printout of the CAS
15  system?
16    A.  Yes.
17    Q.  Is there a separate printout of the
18  CASH system?
19    A.  No.
20    Q.  Why not?
21    A.  I don't know why other than they would
22  be the same.
23    Q.  Okay. So when a vendor makes a call to
24  a customer on behalf of Credit One Bank and then
25  they want to notate the result of that call, are

Page 30

1    MR. KAMINSKI:  I will just object on
2  the grounds of vague and ambiguous with respect
3  to collection activity.
4    THE WITNESS:  A collector can make a
5  free form note on an account that reflects
6  whatever material activity happened during that
7  particular call.
8  BY MR. ZELMAN:
9    Q.  Do they have the same access to CASH
10  system that Credit One's own collection agents
11  have?
12    MR. KAMINSKI:  Asked and answered.
13    THE WITNESS: In general, yes.
14  BY MR. ZELMAN:
15    Q.  So a Credit One customer service
16  representative, a vendor customer service
17  representative would just fill in the disposition
18  of a call directly into the CASH system at the
19  time the call is completed or being made?
20    A.  Customer service rep, or?
21    Q.  Collection.  I'm sorry.
22    A.  So, yes, they would, both, just they
23  would do it the same way.  As the call is either
24  transpiring or immediately after, they would
25  enter whatever note needed to be added to the

Page 32

1  they noting that in CASH or CAS?
2    A.  They would be notating that in CASH
3  which then updates CAS.
4    Q.  Do the vendors maintain records in
5  their own collection system and then transfer
6  that information over at a later time to CASH?
7    MR. KAMINSKI:  Objection.  Calls for
8  speculation.  Lacks foundation.
9    THE WITNESS: Not to my knowledge.
10  BY MR. ZELMAN:
11    Q.  So when a call, for example, at
12  iEnergizer is made to the 9847 number and a
13  message was left in the third party, that would
14  be reflected -- that would be maintained in the
15  CASH system?
16    MR. KAMINSKI:  Objection.  Vague and
17  ambiguous.
18    THE WITNESS: Could you restate that a
19  little more clearly?
20  BY MR. ZELMAN:
21    Q.  Sure.  Do you know how iEnergizer
22  customer service representatives go about
23  inputting account activity into the CASH system?
24    A.  Customer service or collections?
25    Q.  Collections.

Page 31

1  account.
2    Q.  So there shouldn't be a discrepancy
3  between the records the vendors have and the
4  records that Credit One has, right?
5    MR. KAMINSKI:  Objection.  Vague and
6  ambiguous.  Lacks foundation.  Calls for
7  speculation.
8    THE WITNESS: Well, I don't really know
9  how to answer that.  I'm not familiar with any
10  records that the vendors would have other than
11  what we have.
12  BY MR. ZELMAN:
13    Q.  To the best of your knowledge, the
14  information you have -- I'm sorry.  Strike that.
15    To the best of your knowledge, you have
16  all of the information that the vendors have,
17  right, as regards to the collection activity
18  being made on the account?
19    A.  Correct.  The status of the account
20  would be in our records.
21    Q.  So if they made a call and their
22  records reflect that, your records should reflect
23  that, too, right?
24    MR. KAMINSKI:  Objection.  Calls for
25  speculation.

Page 33

9 (Pages 30 to 33)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 11 of 32
Atkinson-Baker Court Reporters
www.depo.com

1   THE WITNESS: Well, if you're talking
2   about the call logs, then I would say, yes, they
3   should be the same.
4   BY MR. ZELMAN:
5   Q.   So if a vendor says we made 100 calls,
6   your call logs for that vendor should say 100
7   calls, right?
8   A.   Yes.
9   Q.   And if a vendor says spoke with a third
10  party on this and this date, your account records
11  should say the same thing, right?
12  A.   Yes.
13  Q.   If there was a conflict between the
14  call logs maintained by the vendors and the call
15  logs that you have in Credit One software, which
16  one would you believe?
17  MR. KAMINSKI: Wait. I'm sorry. Could
18  you hold that question a second? Could you give
19  me one second? Can we go off the record for one
20  second?
21  MR. ZELMAN: Sure.
22  MR. KAMINSKI: Thank you, so much.
23  (Off the record.)
24  MR. ZELMAN: Back on the record.
25  MR. KAMINSKI: Could I have the last

Page 34

1   question read back?
2   (Question read by the
3   court reporter.)
4   MR. KAMINSKI: Vague and ambiguous.
5   Calls for speculation. Incomplete hypothetical.
6   Did you mean to -- do you want to
7   clarify that with regard to CASH versus CAS?
8   BY MR. ZELMAN:
9   Q.   Do you understand the question as it's
10  asked right now?
11  A.   I think I do.
12  MR. KAMINSKI: But don't guess. If you
13  don't, he will clarify.
14  BY MR. ZELMAN:
15  Q.   Okay. If there is a discrepancy
16  between the call log maintained by the vendor and
17  the record maintained from the CASH system, which
18  would you believe?
19  MR. KAMINSKI: Objection. Vague and
20  ambiguous. Could you break it down when you talk
21  about with respect to a particular disposition
22  that a vendor would make on a particular account?
23  BY MR. ZELMAN:
24  Q.   If a vendors says we made 100 calls on
25  this account?

Page 35

1   A.   Right.
2   Q.   But when you look at the CASH system,
3   you only see 90 calls made by that vendor. Which
4   record would you believe?
5   A.   I think I understand now. The two
6   things don't necessarily link up. Call logs --
7   calls that are made by any vendor, not all of the
8   calls will necessarily show up in the account
9   notes. So they won't be in CASH or CAS because
10  if nothing material happened on a call, it is
11  unlikely for it to be there.
12  Now, there are instances where a call
13  will get transferred to an agent or an agent is
14  making a call directly and that will appear in
15  the notes because they are on the account.
16  They're physically looking at the account on the
17  screen. So if there is a discrepancy between the
18  call logs, then I would contact the vendor and
19  ask them why we only got what we got.
20  Q.   Let me ask you this. You also have in
21  front of you Exhibit C.
22  A.   I do.
23  Q.   Which is Bates stamped 12 through 26.
24  A.   Yes.
25  Q.   What is this call log? Where did it

Page 36

1   come from?
2   A.   Well, this would have come from
3   originally the vendors.
4   Q.   That entire thing came from the
5   vendors?
6   A.   Yes.
7   Q.   In that form?
8   A.   No, not in this format.
9   Q.   It looks like, almost like a printout
10  of an Excel spreadsheet with about five or six
11  rows.
12  A.   That I don't know. I don't know what
13  the original format of the document was, but it's
14  compiled from the various call logs.
15  Q.   Who compiled it?
16  A.   Somebody in litigation support.
17  Q.   At Credit One?
18  A.   Yes.
19  Q.   That's my point. In Exhibit A, we have
20  a call log from GC Services. That's their call
21  log?
22  A.   Yes.
23  Q.   And GC Services maintains a number of
24  calls but then there is a bunch of other vendors
25  as well, right?

Page 37

10 (Pages 34 to 37)

Atkinson-Baker Court Reporters
www.depo.com

1    A.  Yes.
2    Q.  This call log is a composite of all the
3 calls made by all the vendors on this account?
4    A.  As far as I know.
5    Q.  You don't know who created this call
6 log?
7    A.  I don't know who created it.  Somebody
8 in the legal department.
9    Q.  Does this call log look accurate?
10    MR. KAMINSKI:  Objection.  Calls for
11 speculation.
12    THE WITNESS: I believe there was an
13 additional set of calls that were sent over this
14 morning.
15 BY MR. ZELMAN:
16    Q.  No, those were account notes that were
17 sent over this morning.
18    A.  Oh, account notes. I'm sorry.
19    As far as I know, it's complete.
20    Q.  So as far as you know, this is an
21 accurate call log, right?
22    A.  Yes.
23    Q.  Does it accurately reflect all of the
24 calls made by Credit One on the 9847 number?
25    A.  Well, made by our vendors, yes.

Page 38

1    Q.  But, again, those calls were made by
2 Credit One, right?
3    A.  Correct.
4    Q.  So these calls -- all the calls made on
5 behalf of Credit One Bank to the 9847 number?
6    A.  Yes.
7    Q.  All right. So to clarify an earlier
8 question now, if there was a discrepancy between
9 this call log and the call logs maintained by the
10 vendors, which would you believe?
11    A.  Well, since the vendor is the source of
12 the call log, they're the source, so I would.
13    Q.  You would go with their version?
14    A.  I would go with their version.
15    Q.  Okay. And if there was a discrepancy
16 between the account notes, which you have in
17 front of you Bates stamped 1 through 11, and this
18 call log in terms of dispositions, which one
19 would you believe?
20    A.  The call notes -- the account notes.
21    Q.  Just to clarify. When I say
22 disposition, that's the result of the call,
23 right?
24    A.  Correct.
25    Q.  So if there was a result of a call and

Page 39

1 the account notes and different result on this
2 call log compiled by Credit One, you would go
3 with the account notes?
4    A.  I would go with the account notes.
5    Q.  Is there any reason why there would be
6 a discrepancy?
7    MR. KAMINSKI:  Objection.  Calls for
8 speculation.  Vague and ambiguous.  Lacks
9 foundation.
10 BY MR. ZELMAN:
11    Q.  The answer was no?
12    A.  Not to my knowledge.
13    Q.  Let's go through it. If you take a
14 moment and look at Exhibit A.  Exhibit A, again,
15 is a call log produced by GC Services in this
16 action.
17    A.  Okay.
18    Q.  It's one page.  So if you count to
19 fifty, then I would ask you to count the calls on
20 that page.
21    MR. KAMINSKI:  Counsel, why are we
22 having the witness do this?  The documents speak
23 for themselves.  It says how many calls there
24 are, so.
25 BY MR. ZELMAN:

Page 40

1    Q.  I will clarify in very short order.
2 This won't be a very long deposition.
3    A.  I counted forty-nine.
4    Q.  That's what I counted.  That's why
5 there was only requirement that you count to
6 fifty.
7    A.  Okay.
8    Q.  Do you know how many calls are
9 reflected in the Credit One Bank call log that
10 was compiled by Credit One Bank for GC Services?
11    A.  I do not.
12    Q.  Well, you have those calls in front of
13 you, right?
14    A.  I do.
15    Q.  There should only be forty-nine, right?
16    MR. KAMINSKI:  Calls for speculation.
17    THE WITNESS: Did you want me to count
18 them?
19 BY MR. ZELMAN:
20    Q.  Sure.  Well, I'm going to ask for you
21 to count the calls reflected in the Credit One
22 call log as it pertains to calls made by
23 GC Services.
24    A.  Fifty-two.
25    Q.  You counted fifty-two calls from

Page 41

11 (Pages 38 to 41)

Atkinson-Baker Court Reporters
www.depo.com

GC Services?

A.  I believe so.

Q.  Can you double check that?  I counted forty-two.

A.  Forty-two.

Q.  Okay. That's the number I got.  Is there any reason why the Credit One call log would be missing roughly fifteen percent of the calls made by GC Services?

MR. KAMINSKI:  Objection.  Calls for speculation.  Lacks foundation.

THE WITNESS: I don't know why.

BY MR. ZELMAN:

Q.  Okay. Have you ever seen before a discrepancy between the call logs maintained by the vendor and the call logs provided by Credit One?

A.  Not that I can --

MR. KAMINSKI: Wait. Objection. Calls for speculation.  Lacks foundation.  Incomplete hypothetical.  Vague and ambiguous.

THE WITNESS: Not that I can recall.

BY MR. ZELMAN:

Q.  Such a situation doesn't sound familiar to you?

Page 42

A.  It's not something that comes up normally, no.

Q.  Okay.  I have seen this in every single one of my Credit One cases, which is why I'm asking.  You are telling me you have never seen a number of call logs by Credit One not matching up to the number of calls by the vendors?

A.  I don't recall that coming up, which is not to say that it never has.  I just don't remember it.

Q.  So we don't know who created this, which actual person created this call log?

A.  I have no idea.

MR. KAMINSKI:  Are you referring to the GC?

MR. ZELMAN: No. I'm referring to the Credit One call log.

MR. KAMINSKI:  Okay.

BY MR. ZELMAN:

Q.  You have no idea who prepared it?

A.  Somebody in the legal department.

Q.  Do you have any idea what they looked at when they put this together?

MR. KAMINSKI:  Objection.  Calls for speculation.  Lacks foundation.

Page 43

THE WITNESS: Actually, I don't.

BY MR. ZELMAN:

Q.  Do you know if anyone checks over that person's work?

MR. KAMINSKI:  Objection. Calls for speculation.  Lacks foundation.  He already testified that he didn't know who it was, so he would have no idea who is checking over whose work.

THE WITNESS: I don't know.

BY MR. ZELMAN:

Q.  All right. Do you know who you were trying to reach when you were calling this phone number?

A.  I believe it was Derrick Vincent.

Q.  Did you ever make contact with Derrick Vincent at this phone number?

A.  I think on one call that was him, but other than that I don't remember any other.

Q.  Do you know who that was?

A.  I do not.  I think -- no, I don't want to say because I'm just guessing.

Q.  Well, you have the account notes in front of you, right?

A.  Yes.

Page 44

Q.  We're hoping that they are accurate, right?

A.  We are.

Q.  Would it be somewhere in there?

A.  It should be. It looks like he got a new card at one point, called in a lost and stolen.

Q.  What are you looking at?

A.  The account notes.

Q.  What page, Bates stamp?

A.  I'm sorry.  Ten.

Q.  Okay.  I see what you're referring to. It looks like back in July of 2014?

A.  Yes.

Q.  Do you know if that involved the 9847 number, that call?

A.  I cannot tell based on this.

Q.  So, again, based on this, do you see last time contact made with Derrick Vincent at the 9847 number?

MR. KAMINSKI:  Could you repeat the question?

BY MR. ZELMAN:

Q.  Based on the information in front of you, is there anything that looks like the last

Page 45

12 (Pages 42 to 45)

Atkinson-Baker Court Reporters
www.depo.com

1  day you made contact with Derrick Vincent at the
2  9847 number?
3      A.  Yes.  I'm looking through it now to see
4  if there is anything else.
5      Q.  Sure.
6          MR. KAMINSKI:  Take your time.
7          THE WITNESS: It looks like the last
8  contact was January of 2017.
9  BY MR. ZELMAN:
10     Q.  What page are you looking at?
11     A.  Bates 3.
12     Q.  All right.  What date did you say?
13     A.  January 12, 2017.
14     Q.  You're looking -- I see the entries for
15  January 12.  What tells you that Derrick Vincent
16  was reached it the 9847 number at that date?
17     A.  The designation that it was an inbound
18  from the home number, customer called in and
19  spoke with primary, promised to pay direct check,
20  1/12/17.
21     Q.  So you are assuming that the inbound
22  home number was the 9847 number?
23     A.  I am making that conclusion because on
24  February 20, we show an outbound call to the home
25  number and the 9847 is listed as the phone number

                                        Page 46

1  and there is no indication of any phone number
2  change prior to that date.
3      Q.  Well, how did you get a hold of his
4  phone number?
5      A.  The card member, I believe, called in
6  at some point on this number.
7      Q.  Do you know when?
8      A.  I believe it was back in 2014.
9      Q.  All right.  Do you see anything in the
10  account number in spite of that?
11     A.  Well, let's see.
12         MR. KAMINSKI:  I apologize.  Could I
13  have that last question read back?
14             (Question read by the
15              court reporter.)
16  BY MR. ZELMAN:
17     Q.  Do you see anything in the account
18  notes that would tell you when you got a hold of
19  his phone number or how you got a hold of this
20  phone number?
21         MR. KAMINSKI:  A hold of the person's
22  actual phone number?
23  BY MR. ZELMAN:
24     Q.  No. How did you get this phone number?
25     A.  I don't see that reflected in these

                                        Page 47

1  notes.
2      Q.  In response to Interrogatory No. 5
3  served in this action, we asked:
4      "State how the did -- obtained or was
5  provided a phone number (916) 308-9847, and
6  identify whether that number was obtained by a
7  skip trace, by a caller ID capture, or some other
8  method."
9          The answer was:  "The defendant
10  obtained the 9847 phone number when it was used
11  to call defendant on March 26, 2014."
12         Does that date sound familiar to you?
13     A.  It does.
14     Q.  So do you see an entry here on
15  March 26, 2014?
16     A.  I do not.
17     Q.  Should something like that be reflected
18  in this?
19     A.  Are you talking about the adding of the
20  phone number?
21     Q.  Yes.
22     A.  I would think so.
23     Q.  But you don't see it, right?
24     A.  I do not.
25     Q.  In fact, I don't see any account

                                        Page 48

1  activity on March 26, 2014, do you?
2      A.  I do not.
3      Q.  Do you have any idea why that would be?
4      A.  I do not know.
5      Q.  Not looking through your records, is
6  there?
7          MR. KAMINSKI:  Objection.  Harassing the
8  witness.  Argumentative.
9  BY MR. ZELMAN:
10     Q.  Okay.   Well, in discovery response,
11  someone on behalf of Credit One Bank said that
12  this phone number was obtained when it was used
13  to call in to Credit One Bank on March 26, 2014.
14         So with that answer, do you take it
15  that that phone number was provided by the
16  cardholder or was it captured by Credit One Bank?
17         MR. KAMINSKI:  Objection.  Vague and
18  ambiguous.  Lacks foundation.
19         THE WITNESS: Well, pursuant to our
20  terms and conditions, if they contacted us on
21  that number, then we have consent.  So I'm sure
22  we captured that number and --
23  BY MR. ZELMAN:
24     Q.  So the number was called in on that
25  date -- I'm sorry.  If someone called in to

                                        Page 49

13 (Pages 46 to 49)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

1    Credit One Bank from that phone number, and
2    according to your discovery response you would
3    assume that the number was captured out of the
4    system?
5        A.  Yes.
6        Q.  Okay.  And then when the account was
7    delinquent, calls were made to that phone number,
8    correct?
9        A.  Correct.
10       Q.  Were calls made to that phone number
11   via like manual calling methods or were they made
12   by a dialing system?
13       A.  I don't know.  I can't tell from these.
14       Q.  Do you know what dialing systems were
15   used to make the calls in this case?
16       A.  I believe that over this period there
17   were several, and they're detailed in the
18   responses.
19       Q.  Certainly.  And it's relevant here,
20   we're talking about GC Services and iEnergizer
21   because First Contact is not a part of the case
22   anymore.  And both of those vendors were
23   identified as having used the Aspect dialing
24   system.
25       A.  That sounds right.

Page 50

1        Q.  So to the best of your knowledge, after
2    this phone number was captured in March of 2014
3    and the account went delinquent, calls were then
4    made on behalf of Credit One Bank by the Aspect
5    dialing system?
6        A.  It would seem so, yes.
7        Q.  Do you know if you ever made contact
8    with my client at the 9847 number?
9        MR. KAMINSKI:  Objection.  Vague and
10   ambiguous as to my "client."
11   BY MR. ZELMAN:
12       Q.  My client in this case, I referred to
13   in the caption, is N.L., which is the initials of
14   the minor plaintiff represented by his mother,
15   Sandra Lemos. So that's who I refer to by my
16   client.
17           Do you know if Credit One Bank made
18   contact with either N.L. or Sandra Lemos at that
19   home?
20       A.  I think at some point I did hear a
21   recording that I think was contact with your
22   client.
23       Q.  Do you know what Bates stamp that
24   recording was?
25       A.  I don't remember.

Page 51

1        Q.  Do you know what happened on that
2    conversation?
3        A.  If it's the one I'm thinking of, there
4    wasn't much of a conversation.  We identified
5    ourselves, or the vendor identified themselves as
6    Credit One Bank, and there was a question, Who is
7    this? or something to that effect.  Then that was
8    it.
9        Q.  And that's it?  Nothing else?
10       A.  Not that I recall, no.
11       Q.  And you're basing this off of the
12   recordings?
13       A.  Yes.
14       Q.  Let me ask you about that.  Do you know
15   how many calls were made to the 9847 number?
16       A.  How many calls in total?
17       Q.  Yes.
18       A.  I want to say just under 200.
19       Q.  Do you know how many recordings were
20   produced in this action?
21       A.  Ten or twelve.
22       Q.  I believe it was fifteen.
23       A.  Okay.  Fifteen.
24       Q.  So why do we only have fifteen
25   recordings for close to 200 calls?

Page 52

1        A.  Well, I can think of several reasons.
2    Number one, if there is no payment on the call,
3    the retention policy that we have is only ninety
4    days.  So that would be certainly one reason.
5           The other reason is perhaps nothing
6    material happened on the call.  It was just an
7    answering machine and there were several calls
8    where they were just answering machines.
9        Q.  So let's talk about that retention
10   period for a second.
11       A.  Okay.
12       Q.  What is the retention period for
13   recordings of calls?
14       A.  If the call results in a payment, the
15   retention period is two years.  All other calls
16   are ninety days.
17       Q.  Has that policy been changed recently?
18       A.  It is in the process of being changed.
19       Q.  What is it being changed to?
20       A.  Two years for all calls.
21       Q.  Has it been changed yet?
22       A.  No.  It's in the process of.
23       Q.  I'm just clarifying that.  Do you know
24   if the vendors are already doing that or they are
25   not doing that yet?

Page 53

14 (Pages 50 to 53)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 16 of 32
Atkinson-Baker Court Reporters
www.depo.com

1       A.   Some of them may be doing it.  We are
2  in the process of drafting new contractual
3  language, and I know that not all of the vendors
4  have received that.  Now, they may be voluntarily
5  doing that.  I don't know.
6       Q.   Do you know if iEnergizer is doing it?
7            MR. KAMINSKI:  Objection.  Calls for
8  speculation.
9            THE WITNESS: I don't know.
10 BY MR. ZELMAN:
11      Q.   Okay. So if a call does not result in a
12 payment or a promise to pay, you're not going to
13 save that call for more than ninety days, that
14 recording?
15      A.   Correct.
16      Q.   If contact is made by someone and they
17 saying you're calling the wrong person and
18 obviously because it's the wrong person they
19 don't promise to pay or make a payment, you're
20 not going to save that recording for more than
21 ninety days, right?
22           MR. KAMINSKI:  Objection.  Calls for
23 speculation.
24           THE WITNESS: Correct.
25 BY MR. ZELMAN:

Page 54

1       Q.   So other than that one recording you
2  referred to where you said there was a question,
3  Who is this? and then no more contact, do you
4  know if any other contact was made with my
5  client?
6       A.   Not to my knowledge.
7       Q.   What are you basing that off of?
8       A.   The call recordings and the account
9  notes.
10      Q.   Which account notes?
11      A.   The only account notes I'm aware of
12 which are Credit One's account notes.
13      Q.   Okay. Have you reviewed plaintiff's
14 discovery responses in this action?
15      A.   Not in detail.
16           MR. KAMINSKI:  Do you know what you --
17 could you rephrase the question?
18 BY MR. ZELMAN:
19      Q.   Sure.  Have you reviewed plaintiff's
20 discovery responses in this action including
21 plaintiff's response to defendant's
22 interrogatories?
23           MR. KAMINSKI:  He's talking about
24 plaintiff's responses to discovery served by
25 Credit One Bank.

Page 55

1            THE WITNESS: No, I don't think so.
2  BY MR. ZELMAN:
3       Q.   Do you know if any contact was made
4  with my client in February of 2017?
5       A.   Unless that's the date of that
6  recording, I don't know of any other.
7       Q.   What recording?
8       A.   What we just discussed.
9       Q.   Now, let me ask you this.  Do you have
10 the recording produced by Credit One in this
11 action?
12      A.   Say again.  I'm sorry.
13      Q.   Here with you right now, do you have
14 the recordings produced by Credit One in this
15 action?
16      A.   I don't.
17      Q.   I'm going to show you what is on my
18 screen which has the recordings produced by
19 Credit One in this action.
20      A.   Okay.
21      Q.   Let me know if these look familiar to
22 you.
23      A.   Yes, those do look familiar.
24      Q.   There are titles next to each of the
25 recordings, right?

Page 56

1       A.   There are.
2       Q.   The first one, look at the Bates stamp
3  COB and then there are sequential numbers.
4       A.   Yes.
5       Q.   Just for purposes of this record, the
6  recordings are Bates stamped COB-NL-027 all the
7  way down to 041.
8            Do you see that?
9       A.   Yes.
10      Q.   After the Bates stamp numbers of each
11 one, there is a series of numbers.  Do you see
12 those?
13      A.   I do.
14      Q.   What are those numbers?
15      A.   They look like dates.
16      Q.   Those appear to be dates and the day?
17      A.   Yes.
18      Q.   Do you see any recordings in that list,
19 which I will represent are all of the recordings
20 produced by Credit One in this action in
21 February of 2017?
22      A.   No, I do not.
23      Q.   Okay.
24           MR. KAMINSKI:  When you say February,
25 could you say that date again?  February what?

Page 57

15 (Pages 54 to 57)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 17 of 32
Atkinson-Baker Court Reporters
www.depo.com

1    MR. ZELMAN: February 2017.
2    MR. KAMINSKI: Do you have a specific
3  day?
4    MR. ZELMAN: Anything in February 2017.
5    MR. KAMINSKI: Okay.
6    MR. ZELMAN: I don't see anything. I
7  wanted to clarify that I'm not misreading this.
8  BY MR. ZELMAN:
9    Q.  So to the best of your knowledge,
10  Credit One did not make contact with my client in
11  February of 2017?
12    A.  To the best of my knowledge.
13    Q.  Now, in response to interrogatories, my
14  client responded that about February 21, 2017, he
15  spoke with Credit One's representatives and
16  advised them they had the wrong phone number and
17  to stop calling them.
18    Did you review that response to
19  defendant's interrogatories?
20    A.  I do think like I saw that, yes.
21    Q.  So that's my client's recollection of
22  what happened in February of 2017.  Now, there
23  are no recordings of that call, correct?
24    A.  Not that I know of, no.
25    Q.  Do you know if one ever existed but it

Page 58

1  was just not retained?
2    A.  Not that I know of.
3    Q.  You wouldn't know because if it was not
4  retained, it's gone, right?
5    A.  It could be.
6    Q.  Well, is that yes or no?
7    A.  I don't know.
8    Q.  After the ninety days, does someone
9  still keep the recording somewhere?
10    MR. KAMINSKI:  Objection.  Calls for
11  speculation.
12    THE WITNESS: I don't know.
13  BY MR. ZELMAN:
14    Q.  Credit One doesn't keep them, right?
15    A.  No.
16    Q.  What if you go to your account notes
17  for February 21, 2017, do you see anything
18  related to this cause of action with my client?
19    A.  No.
20    Q.  How about February 22, 2017?
21    A.  I see an entry here, spoke with third
22  party. No message left.
23    Q.  Okay.  So it looks like calls were made
24  to the third party, and to the best of your
25  knowledge that would mean a party other than

Page 59

1  Derrick Vincent, right?
2    A.  Correct.
3    Q.  And it says no message left. On what
4  page are you on in the Bates stamp?
5    A.  Two.
6    Q.  One moment. I'm there.  And you're
7  looking at the very last line on this page?
8    A.  Yes.
9    Q.  All right. Credit One account notes
10  reflect that a conversation was held by a third
11  party on February 22, 2017, at 2:30 p.m. where it
12  says, spoke with third party, no message left,
13  correct?
14    A.  Correct.
15    Q.  What about on the call log maintained
16  by Credit One, the other Bates stamped document
17  you have in front of you?  Do you see anything
18  there for that date?
19    MR. KAMINSKI:  On which date are you
20  referring to?
21    MR. ZELMAN: The date we just referred
22  to, February 22, 2017. It's about 2:30 in the
23  afternoon.
24    THE WITNESS: All right.  I'm sorry.
25  What was your question?

Page 60

1  BY MR. ZELMAN:
2    Q.  Do you see anything in these call logs
3  about that date on that call?
4    A.  I see a call at 2:29.
5    Q.  Okay. And the one on the account notes
6  says 2:30, right?
7    A.  Yes.
8    Q.  Can we assume it's the same one?
9    A.  We can.
10    Q.  What is the disposition of this call,
11  in the call log?
12    A.  In the call log it says left message,
13  machine, answering machine, detect ID.
14    Q.  Here it says left message, machine,
15  AMDID. Does that meaning that that answering
16  message was active?
17    A.  Yes.
18    Q.  Did you assume that a voicemail was
19  reached on this date?
20    A.  Yes.
21    Q.  And it says Allied machine.  So you
22  left a message on the machine?
23    A.  That is what it says.
24    Q.  Here it says, left message on an
25  answering machine.  And in the account notes it

Page 61

16 (Pages 58 to 61)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 18 of 32
Atkinson-Baker Court Reporters
www.depo.com

1    says spoke with a third party, correct?
2      A.  Correct.
3      Q.  Can you explain that?
4      A.  Oh, absolutely not.
5      Q.  Me neither. Just to clarify, you don't
6    have a recording of this call?
7      A.  Not that I'm aware of, no.
8      Q.  Between the two, the call log compiled
9    based from someone in the legal department or the
10   account note, which one would you go with?
11      A.  The account notes are the official
12  record of what happened on the call.  I have no
13  idea what these messages over here.
14      Q.  When you say these messages over here,
15  what are you talking about?
16      A.  On the call log.
17      Q.  So between the Bates stamp 19 and
18  Bates stamp 2, you would go with Bate stamp 19?
19      MR. KAMINSKI:  Objection. Vague and
20  ambiguous when you keep on saying go with.  So
21  could you just be clear?
22  BY MR. ZELMAN:
23      Q.  If you are trying to form an accurate
24  comprehension of what occurred on February 22,
25  2017, would you go with what was reflected on

Page 62

1    Bates stamp 19 or would you go with what was
2    reflected in Bates stamp 2?
3      A.  What is reflected in the call notes,
4  Bates stamp 2.
5      Q.  The call --
6      A.  The account notes, I'm sorry.
7      MR. ZELMAN: Okay. If it is all right
8  with everyone, I would like to just take a really
9  short break. We have been going over an hour.
10      (Off the record.)
11      MR. ZELMAN: Back on the record.
12  BY MR. ZELMAN:
13      Q.  Did you speak to Adele Burton to
14  prepare for today's deposition?
15      A.  I did not.
16      Q.  Do you know if she ever spoke to
17  iEnergizer about being a part of this case?
18      A.  Not to my knowledge.
19      MR. ZELMAN: This is going to be marked
20  as Exhibit D, Credit One's supplemental responses
21  to the second set of interrogatories.
22      (Exhibit "D" was
23      marked for identification.)
24  BY MR. ZELMAN:
25      Q.  Have you seen this document before?

Page 63

1      A.  I've seen it briefly.
2      Q.  And in that document we basically are
3  asking, we want to know the name, make, and model
4  and particularly the mode in which the calls were
5  made on behalf of Credit One Bank.
6      Do you see that?
7      MR. KAMINSKI:  Which question are you
8  referring to?
9  BY MR. ZELMAN:
10      Q.  The one interrogatory in the document.
11  Take your time.
12      A.  So what is your question?
13      Q.  My question is, there is no mode
14  identified in response to this interrogatory,
15  simply the name of the dialing system and that's
16  it.  So I'm asking, do you know why not, why
17  there is no mode in this call?
18      MR. KAMINSKI:  Objection. Vague and
19  ambiguous as to time.
20      THE WITNESS: I don't know why.
21  BY MR. ZELMAN:
22      Q.  Well, you don't handle the relationship
23  of iEnergizer, right?
24      A.  Correct.
25      Q.  But you handle it, for example, with

Page 64

1    GC Services, correct?
2      A.  Correct.
3      Q.  So if I wanted to know the mode that
4  GC Services used to make these calls -- do you
5  understand when I say the word "mode"?
6      A.  I know that the dialers have various
7  modes.
8      Q.  Do you know what modes the Aspect
9  system has?
10      A.  I have no idea.
11      Q.  I believe it has something called
12  blaster, something called predictive, something
13  called manual.  Do these sound familiar?
14      A.  They do.
15      Q.  So if you want to know what mode
16  GC Services was using to make calls on behalf of
17  Credit One Bank, how would you go about finding
18  that out?
19      A.  I would call our accounting there and I
20  guess they would contact their dialer people.
21      Q.  You would call your accounting at
22  GC Services?
23      A.  Yes.
24      Q.  You would call the vendor and ask them
25  this information?

Page 65

17 (Pages 62 to 65)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

1      A.  Yes.
2      Q.  And you would hope that they would be
3  able to provide it to you?
4      A.  Yes.
5      Q.  If they had that information, would you
6  expect them to give it to you?
7      A.  Yes.
8      Q.  And as to Credit One Bank, do you feel
9  like Credit One Bank is entitled to that
10 information if they request it?
11         MR. KAMINSKI:  Objection.  Calls for
12 speculation.  Lacks foundation.  Argumentative.
13         THE WITNESS: As far as I know, yes.
14 BY MR. ZELMAN:
15     Q.  I don't want to argue. My question is,
16 is Credit One entitled to receive this type of
17 information from its vendor?
18         MR. KAMINSKI:  Objection.  Vague and
19 ambiguous with respect to entitled.
20         THE WITNESS: I believe so.
21 BY MR. ZELMAN:
22     Q.  And you don't know if such a request
23 was made by Adele Burton?
24     A.  I do not.
25     Q.  Adele Burton would?

Page 66

1         MR. KAMINSKI:  Objection. Calls for
2  speculation. Lacks foundation.
3         THE WITNESS: I doubt it.
4  BY MR. ZELMAN:
5      Q.  Why do you doubt it?
6      A.  Because I think that these questions
7  would have gone through our legal department.
8      Q.  Well, that's what I'm asking. Does the
9  legal department pose those questions to the
10 vendors or would either you or Adele do it?
11         MR. KAMINSKI: Objection. Calls for
12 speculation.
13         THE WITNESS: Typically, I have not been
14 asked and I don't believe Adele has been asked to
15 provide information of this type.
16 BY MR. ZELMAN:
17     Q.  If you were asked, if this
18 interrogatory would have been the exact same
19 interrogatory but instead of asking about
20 iEnergizer it would have asked about
21 GC Services, do you believe that question would
22 come to your office or do you think it would
23 never come through your office at all or it would
24 go to the legal department and then to the
25 vendor?

Page 67

1         MR. KAMINSKI: Objection.  Vague and
2  ambiguous.  Lacks foundation and incomplete
3  hypothetical.
4         THE WITNESS:  I don't know about in the
5  future.  I just know in the past, they would
6  handle it.  I wouldn't even be aware of it,
7  necessarily.
8  BY MR. ZELMAN:
9      Q.  Did you speak to anyone in the legal
10 department about this case before coming here
11 today?
12         MR. KAMINSKI:  Objection to the extent
13 that constitutes discussions that are
14 attorney-client privileged.  I object to the
15 question.
16         THE WITNESS: Yes.
17 BY MR. ZELMAN:
18     Q.  Okay.  Who did you speak with?
19         MR. KAMINSKI:  Objection.  Calls for
20 attorney-client privilege.
21 BY MR. ZELMAN:
22     Q.  Do you have the identity of the person
23 you spoke to?
24     A.  Narine Yenovkian.
25     Q.  Can you spell that?

Page 68

1      A.  N-A-R-I-N-E -- Y-E-N-O-V-K-I-A-N.
2      Q.  What is her role?
3      A.  She's an associate counsel.
4      Q.  She's an attorney?
5      A.  Yes.
6      Q.  All right. Let's talk quickly about
7  the relationship between Credit One Bank and its
8  vendors.  What is the relationship between
9  Credit One Bank and its vendors?  How is it
10 structured?
11         MR. KAMINSKI:  Objection.  Vague and
12 ambiguous.  Lacks foundation.  Calls for
13 speculation.  Please restate your question and
14 make it more specific.
15 BY MR. ZELMAN:
16     Q.  Sure.  Credit One Bank works with, I
17 believe, you identified six different vendors?
18     A.  Yes.
19     Q.  To contact its customers?
20     A.  Yes.
21     Q.  And is there a separate contractor
22 agreement with each vendor?
23     A.  Yes.
24     Q.  Does Credit One Bank hire these vendors
25 directly?

Page 69

18 (Pages 66 to 69)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

Page 70

```
 1          MR. KAMINSKI:  Objection.  To the use
 2   of the word "hire."  Calls for a legal conclusion.
 3          THE WITNESS:  What do you mean by
 4   directly?
 5   BY MR. ZELMAN:
 6      Q.  Meaning is there a middle man hired by
 7   Credit One Bank who then goes out and hires
 8   different vendors to complete jobs or does
 9   Credit One hire these vendors directly?
10      A.  In that context we hire them directly.
11      Q.  Okay.  So let's talk about the vendor,
12   for example, in this case, iEnergizer.
13          Do you know when Credit One first
14   started working with iEnergizer?
15      A.  I think it was about ten years ago, but
16   I'm not certain of the exact dates.
17      Q.  You're the manager for GC Services,
18   right?
19      A.  Yes.
20      Q.  So about how long did you start working
21   with them?
22      A.  Sixteen years ago, something like that,
23   fifteen.
24      Q.  Ten to fifteen years for each of those
25   vendors for iEnergizer and GC Services?
```

Page 71

```
 1      A.  Yes, somewhere in that range.
 2      Q.  And when it comes to assign to a vendor
 3   such as iEnergizer to GC Services, is anybody
 4   else collecting on that account during that time?
 5      A.  No.
 6      Q.  Is Credit One itself attempting
 7   collection on an account during the times it's
 8   assigned a specific vendor?
 9      A.  No.
10      Q.  Does the vendor tell Credit One Bank
11   which dialing equipment they're going to use to
12   make calls on behalf of Credit One Bank?
13      A.  No.
14      Q.  They never tell Credit One Bank what
15   dialing equipment they're going to use?
16      A.  You mean the vendor tell us?
17      Q.  Yes.
18      A.  The vendor tell the bank?
19      Q.  Yes.
20      A.  The vendor does tell us.  I thought you
21   meant does the bank tell the vendor.
22      Q.  The bank does not tell the vendor which
23   equipment to use?
24      A.  They do not.
25      Q.  The vendor tells Credit One Bank which
```

Page 72

```
 1   equipment they're going to use, right?
 2      A.  Yes.
 3      Q.  And when do they tell them that?
 4          MR. KAMINSKI:  Objection.  Vague and
 5   ambiguous.  Calls for speculation.
 6          THE WITNESS:  Typically, when they're
 7   brought onboard, they are onboard.
 8   BY MR. ZELMAN:
 9      Q.  They are onboard and they say, all
10   right.  We're going to use this specific
11   iteration, for example, of the Aspect system?
12          MR. KAMINSKI:  Objection.  Calls for
13   speculation.
14          THE WITNESS:  They follow something
15   like, yes, we use the Aspect system.
16   BY MR. ZELMAN:
17      Q.  Will they tell you which version they
18   use?
19      A.  If we ask.
20      Q.  Do you ask?  Is it that something
21   Credit One Bank typically wants to know?
22      A.  Not particularly, no.
23      Q.  If the vendor is upgrading from one
24   version of the Aspect system to another, do they
25   tell Credit One Bank that?
```

Page 73

```
 1          MR. KAMINSKI:  Objection.  Calls for
 2   speculation.
 3          THE WITNESS:  They might tell us if they
 4   are doing a system upgrade.
 5   BY MR. ZELMAN:
 6      Q.  If there are certain dialers, they will
 7   tell you that?
 8      A.  They will tell us that, yes.
 9      Q.  Do they have to tell you that?
10      A.  I don't know if it is specifically
11   spelled out in the contract or not, but they do
12   tell us.
13      Q.  And they would tell you at or about the
14   time that they switched the systems over?
15          MR. KAMINSKI:  Objection.  Calls for
16   speculation.
17          THE WITNESS:  Generally, yes.
18   BY MR. ZELMAN:
19      Q.  And as far as like if they were
20   upgrading from one version of the system like the
21   Aspect system to another version of the Aspect
22   system, they would tell you that when they are
23   upgrading?
24          MR. KAMINSKI:  Objection.  Calls for
25   speculation.
```

19 (Pages 70 to 73)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 21 of 32
Atkinson-Baker Court Reporters
www.depo.com

1      THE WITNESS: They might tell somebody
2  that. It's not something we particularly care
3  about.
4  BY MR. ZELMAN:
5      **Q.   Okay. GC Services in this case, they**
6  **testified that during the time period that these**
7  **calls were made, which was only about a month**
8  **period, that for GC Services they used two**
9  **different versions of the Aspect system. They**
10 **upgraded during that one-month period.**
11     **Did they ever tell you that they're**
12 **changing versions?**
13     A.  Not that I recall but they probably
14 did.
15     MR. KAMINSKI:  Don't guess.
16 BY MR. ZELMAN:
17     **Q.  When you say they probably did, is that**
18 **something they typically do?**
19     A.  They will typically send us a note. By
20 the note, I mean the bank and the IT people and
21 whatnot.
22     **Q.  That we are going to change from one**
23 **version to another?**
24     A.  That we're doing a system upgrade.
25     **Q.  Do you know if you have a copy of that**

Page 74

1  note?
2      MR. KAMINSKI:  Objection. Vague and
3  ambiguous.
4      THE WITNESS: I have no idea.
5      MR. KAMINSKI:  Calls for speculation.
6  BY MR. ZELMAN:
7      **Q.  How would you go about getting that?**
8      A.  Getting what?
9      **Q.  Whatever you were referring to, the**
10 **note, the email, whatever it is.**
11     MR. KAMINSKI:  Objection. Misstates
12 the witness's testimony. He said that it could
13 happen in that regard. He didn't say that it
14 did.
15     THE WITNESS: I don't know if I have it.
16 BY MR. ZELMAN:
17     **Q.  But you said it is something they**
18 **typically do, right?**
19     A.  Typically.
20     **Q.  So if that's something they typically**
21 **do and you wanted to find out, do you have any**
22 **record of that actually happening? How would you**
23 **go about doing that?**
24     A.  I guess I would search my email.
25     **Q.  What would you search for?**

Page 75

1      A.  I don't know. I have to think about it
2  for a minute. I guess system upgrade or system
3  maintenance.
4      **Q.  Anyone else that you know or just**
5  **yours?**
6      A.  Oh, it goes to numerous people. I
7  don't know who all gets it.
8      **Q.  But if you are the vendor manager for**
9  **that vendor, it would go to you as well, right?**
10     A.  I'm typically included on things like
11 that, yes.
12     **Q.  So for GC Services, you would be**
13 **included?**
14     MR. KAMINSKI:  Objection. Calls for
15 speculation.
16     THE WITNESS: Generally, I would be
17 included.
18 BY MR. ZELMAN:
19     **Q.  For iEnergizer, you generally would not**
20 **be included?**
21     A.  No.
22     **Q.  For example, the calls made by**
23 **GC Services, do you know where those calls were**
24 **made out of?**
25     A.  I would be able to tell -- I don't know

Page 76

1  if I can tell from this or not. I'm not certain
2  which of the sites that it came from.
3      **Q.  Okay. Do you know how many sites they**
4  **use?**
5      A.  We have two sites.
6      **Q.  One in Tennessee and one in Houston?**
7      A.  One in Tennessee and one in Texas.
8      **Q.  One in Texas and one in Tennessee?**
9      A.  Correct.
10     **Q.  And have you been out to those sites?**
11     A.  I have.
12     **Q.  How often do you go there?**
13     A.  Typically, twice a year.
14     **Q.  Is it something that you're doing**
15 **pursuant to agreement between Credit One Bank and**
16 **GC Services?**
17     A.  Uh --
18     MR. KAMINSKI:  You can answer.
19     THE WITNESS: Are you saying I am doing
20 that because it's in the contract?
21 BY MR. ZELMAN:
22     **Q.  Yes.**
23     A.  Actually, I don't remember if it's in
24 the contract or not, but we do that anyway.
25     **Q.  It's in the contract. The question is,**

Page 77

20 (Pages 74 to 77)

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 22 of 32
Atkinson-Baker Court Reporters
www.depo.com

1  why are you doing it?
2       MR. KAMINSKI:  Objection.  Wait a
3  second.  The line of questioning is confusing.
4  Start again.
5  BY MR. ZELMAN:
6       Q.  Sure.  Why are you doing those site
7  visits?
8       MR. KAMINSKI:  What is the purpose of
9  the site visits?
10  BY MR. ZELMAN:
11       Q.  Yes, what is the purpose?  Sure.
12       A.  Multiple purposes.  One is to meet with
13  onsite management.  We meet with collectors.  We
14  observe coaching and development processes.  And
15  we will also do at least once a year a physical
16  audit.
17       Q.  What does that entail as a physical
18  audit?
19       A.  It entails, do they have a generator,
20  do they have locks on the doors, you know.  Do
21  employees have badges that restrict access to
22  sensitive areas, thing like that.
23       Q.  You said you meet with collectors and
24  onsite managers?
25       A.  We do.

Page 78

1       Q.  To make sure that collection work on
2  behalf of Credit One Bank is being done in a
3  certain way?
4       A.  Yes, you could describe it that way.
5       Q.  When you do these site visits, do you
6  have the opportunity to walk the floor or see how
7  calls are being handled by GC Services'
8  employees?
9       MR. KAMINSKI:  Calls on behalf of whom?
10  BY MR. ZELMAN:
11       Q.  Credit One Bank, obviously.
12       A.  Do we have the opportunity to do that?
13       Q.  Yes.
14       A.  Yes.
15       Q.  Do you do it?
16       A.  We do walk the floor.  We typically
17  don't do a lot of observation in terms of sitting
18  down with an employee and watch them do their
19  work.
20       Q.  But you can?
21       A.  We can.
22       Q.  If you saw something you didn't like,
23  you can point that out to management?
24       MR. KAMINSKI:  Objection.  Vague and
25  ambiguous as to saw something you didn't like.

Page 79

1  Calls for speculation.  Lacks foundation.
2       THE WITNESS: We could.
3  BY MR. ZELMAN:
4       Q.  When the vendors call Credit One
5  customers on behalf of Credit One Bank, how are
6  they identifying themselves in the call?
7       MR. KAMINSKI:  Objection.  Calls for
8  speculation.  Lacks foundation.
9       THE WITNESS: How do the collectors
10  identify themselves?
11  BY MR. ZELMAN:
12       Q.  Meaning do they identify themselves as
13  representatives of, for example, GC Services or
14  as a representative of Credit One Bank?
15       A.  Credit One Bank.
16       Q.  So when someone answers the phone for
17  all intents and purposes, they think they're
18  calling to Credit One Bank?
19       MR. KAMINSKI:  Objection.  Vague and
20  ambiguous. Calls for speculation as to what
21  someone else would be thinking.
22       THE WITNESS:  We would represent that
23  they were calling from Credit One Bank.
24  BY MR. ZELMAN:
25       Q.  Okay.  And is there any indication on

Page 80

1  the phone that the call is not from Credit One
2  Bank directly but that it's GC Services, for
3  example?
4       MR. KAMINSKI:  Objection.  Calls for
5  speculation.  Lacks foundation.
6       THE WITNESS: In terms of their
7  talk-off?
8  BY MR. ZELMAN:
9       Q.  In terms of what they are saying to --
10       A.  No.
11       Q.  So they wouldn't -- the customer -- I'm
12  sorry.  The collection agent wouldn't, for
13  example, say, "Hi, I'm calling from GC Services
14  on behalf of Credit One Bank," right?
15       A.  No.
16       Q.  They would just say, "Hi, I'm calling
17  from Credit One Bank?
18       A.  Yes.
19       Q.  Someone would call back having missed a
20  call, would they be talking to a GC Services'
21  employee or would they be talking to a Credit One
22  Bank employee?
23       A.  They would be talking to a GC Services'
24  employee.
25       Q.  When a GC Services' employee would

Page 81

21 (Pages 78 to 81)

Atkinson-Baker Court Reporters
www.depo.com

| | |
|---|---|
| 1  answer the phone or when they would call that<br>2  number, would they hear GC Services be identified<br>3  or Credit One Bank being identified?<br>4      MR. KAMINSKI:  Objection.  Calls for<br>5  speculation.<br>6      THE WITNESS: They should hear<br>7  Credit One Bank.<br>8  BY MR. ZELMAN:<br>9    Q.  Why is that?<br>10    A.  Because they are collecting in the<br>11  bank's name.<br>12    Q.  Is that something that -- that<br>13  identification, is that something that the<br>14  vendors choose to do or is that something that is<br>15  required of them by Credit One Bank?<br>16    A.  That, I believe, is a contractual<br>17  requirement.<br>18    Q.  Let me hand you Defendant's Response to<br>19  our Request for Admissions.  We will mark that as<br>20  Exhibit E.<br>21      (Exhibit "E" was<br>22      marked for identification.)<br>23  BY MR. ZELMAN:<br>24    Q.  Tell me when you're ready.<br>25    A.  All right.<br><br>Page 82 | 1  legal conclusion which is beyond the scope of the<br>2  deposition of a 30(b)6 witness.<br>3  BY MR. ZELMAN:<br>4    Q.  Sure.  The question I have for you<br>5  today is, do you believe that Credit One Bank had<br>6  the consent to call the 9847 number?<br>7      MR. KAMINSKI:  Objection.  Same<br>8  objection.<br>9      THE WITNESS: Well, I believe that they<br>10  had consent to call that number.<br>11  BY MR. ZELMAN:<br>12    Q.  Not from the plaintiff, correct?  Very<br>13  specific, the plaintiff's consent?<br>14    A.  No.<br>15    Q.  Did not have the plaintiff's consent,<br>16  correct?<br>17    A.  Right.<br>18      MR. KAMINSKI: Same objection.<br>19  BY MR. ZELMAN:<br>20    Q.  Request number five:  "Admit that those<br>21  outside vendors used a "predictive dialer" to<br>22  dial the phone number "(916) 308-9847" on behalf<br>23  of the Defendant, during the time period July 18,<br>24  2013, to the present."<br>25      Same answer and objections.<br><br>Page 84 |
| 1    Q.  Question number three, it's on page<br>2  three.  It asks, "Admit that the calls placed by<br>3  Defendant or its dialing vendors to the phone<br>4  number "(916) 308-9847" during the time period of<br>5  July 18, 2013, to the present, were an attempt to<br>6  reach a person other than the Plaintiff."<br>7      There are some objections.  And it<br>8  Says: "Defendant responds as follows:<br>9      The information Defendant currently<br>10  knows is insufficient to enable it to admit or<br>11  deny this Request at this time. Discovery is<br>12  continuing."<br>13      Sitting here today, do you believe that<br>14  the calls placed to the 9847 number were an<br>15  attempt to reach a person other than the<br>16  plaintiff?<br>17    A.  Yes.<br>18    Q.  Question number four asks:<br>19      "Admit the Defendant never had the<br>20  Plaintiff's consent to call his cellular phone<br>21  via any dialing system or via prerecorded voice<br>22  messages."<br>23      Same response as an objection as to the<br>24  last request.<br>25      MR. KAMINSKI:  Objection.  Calls for<br><br>Page 83 | 1      Sitting here today, do you believe that<br>2  iEnergizer and GC Services used predictive<br>3  dialers to call the 9847 number?<br>4      MR. KAMINSKI:  Objection.  Calls for<br>5  speculation.  Lacks foundation.  The question<br>6  concerns issues within the scope of expert<br>7  testimony.  Question exceeds the scope of a<br>8  30(b)6 deposition.  The witness is not designated<br>9  as an expert here, so the question is, therefore,<br>10  irrelevant and I instruct him not to answer.<br>11      MR. ZELMAN: I'm sorry.  My<br>12  understanding of the only time you can instruct<br>13  the witness not to answer is either under<br>14  privilege or if you're meaning to limit or<br>15  terminate the deposition, which you have very<br>16  little grounds to do so.<br>17      Are you moving to limit or terminate<br>18  the deposition at this time?<br>19      MR. KAMINSKI:  Not at this time. I will<br>20  let the witness answer to the extent he knows.<br>21      THE WITNESS: I don't know.<br>22  BY MR. ZELMAN:<br>23    Q.  Well, you do know what GC Services was<br>24  using to call plaintiff? What dialing system?<br>25    A.  Yes.<br><br>Page 85 |

22 (Pages 82 to 85)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 24 of 32
Atkinson-Baker Court Reporters
www.depo.com

1   Q.  And that was the Aspect, I believe,
2   6.7, and then another version of the Aspect
3   system, correct?
4       A.  Correct.
5       Q.  Do you believe those systems are
6   predictive dialers?
7           MR. KAMINSKI:  I will lodge the
8   previous objection, that long objection that I
9   previously articulated, let's call that my
10  running objection until I change that as
11  otherwise.  Let me assert the running objection
12  and add to that already asked and answered.
13          THE WITNESS: I don't know.
14  BY MR. ZELMAN:
15      Q.  Okay. Let me hand you what we will mark
16  as Plaintiff's Exhibit F.
17          (Exhibit "F" was
18          marked for identification.)
19          MR. KAMINSKI: Farheena, this is a
20  Declaration of Don Hudecek.  It came from Aspect
21  in this matter.
22          MS. HABIB: Thank you.
23  BY MR. ZELMAN:
24      Q.  Have you seen this document before?
25      A.  I don't recall seeing it.

Page 86

1       Q.  Take a moment to review it and let me
2   know when you're done.
3       A.  Okay.
4       Q.  Ready?
5       A.  Yes.
6       Q.  Have you seen this document before?
7       A.  This doesn't look familiar, no, but I
8   have read it now.
9       Q.  This is a declaration from an officer
10  over at Aspect talking about the Aspect dialing
11  system. In paragraph nine, the Aspect
12  representative refers to the unit, the
13  Aspect system 6.6, 6.7, and 7.3.
14          Do you see that?
15      A.  I do.
16      Q.  Then he writes, "These systems each
17  have predictive dialer capabilities and the
18  ability to automatically dial customer-provided
19  telephone numbers."
20          Do you see that?
21      A.  I do.
22      Q.  So sitting here today, does that tell
23  you whether or not GC Services used a predictive
24  dialer to call my client?
25          MR. KAMINSKI:  Objection. Calls for

Page 87

1   speculation.  Lacks foundation.  Same running
2   objection that I said before with respect to
3   expertise, beyond the scope of this deposition,
4   et cetera.  And the document speaks what it says,
5   not whether it is accurate, but merely what is
6   stated.
7           THE WITNESS: I know that this applies
8   to iEnergizer.  I don't know how this applies to
9   GC Services.
10  BY MR. ZELMAN:
11      Q.  Sure. So we know that iEnergizer was
12  using the same dialing systems at the same time
13  period, right?
14          MR. KAMINSKI: Farheena, can you hear?
15          MS. HABIB: Yes, I can.
16  BY MR. ZELMAN:
17      Q.  In response to Interrogatory No. 4,
18  Defendant identified that GC Services used the
19  6.7 system and that iEnergizer used a 6.7 system.
20          So my question is, you do now know that
21  they were using the exact same system, and that
22  is identified in the Hudecek declaration as
23  having predictive dialing capabilities.
24          Does that tell you whether or not a
25  predictive dialer was used to make these calls?

Page 88

1           MR. KAMINSKI:  Same running objections
2   including the most recently stated objection.
3           THE WITNESS: Based on this, I don't
4   know.  I guess.
5           MR. KAMINSKI: He doesn't want you to
6   guess.  If you don't know, just say so.
7           THE WITNESS: Well, he asked -- he said
8   that it was a 6.7 and exactly the same. I don't
9   know that it's exactly the same or not.
10  BY MR. ZELMAN:
11      Q.  Right. So at least as to our
12  iEnergizer, which this is directly referring to,
13  you're saying that you believe iEnergizer did use
14  a predictive dialer to make the calls to my
15  client?
16          MR. KAMINSKI:  Objection, and further
17  objection to my most recent two or three running
18  objections.  Also, calls for speculation.  Lacks
19  foundation.  It's not accounting for how the
20  particular vendors at issue may have reconfigured
21  or used these systems in any regard.
22          THE WITNESS: All can I say is that's
23  what this document says.
24  BY MR. ZELMAN:
25      Q.  So the answer would be "yes" based on

Page 89

23 (Pages 86 to 89)

**Page 90**

1   the document?

2       MR. KAMINSKI:  No, that's not what he

3   testified to.

4       THE WITNESS:  I'm saying that is what

5   it says in this document.

6   BY MR. ZELMAN:

7      **Q.   And based on this document, would you**

8   **answer that you believe iEnergizer did use a**

9   **predictive dialer to call the 9847 number?**

10     A.   Based on this --

11      MR. KAMINSKI:  Objection.  Again, the

12   witness doesn't know how iEnergizer, how

13   GC Services, et cetera, may have reconfigured the

14   Aspect systems in any regard regardless of quote

15   "what versions" they may be or how they were

16   using it in what mode, in what manner, et cetera.

17      So the witness couldn't possibly

18   respond to this question.

19      MR. ZELMAN: I understand that would be

20   a speaking objection.  If that's what the witness

21   wants to say, let him say it. You should not be

22   answering the question after any objection.

23      THE WITNESS: All I can say is that's

24   what this document says and that's all I know.

25   BY MR. ZELMAN:

**Page 91**

1      **Q.   If you go to Request for**

2   **Admissions number twelve which states -- it's on**

3   **page six.**

4     A.   Page six of?

5      **Q.   Of the Request for Admissions.**

6     A.   I'm there.

7      **Q.   "Admit that Plaintiff advised the**

8   **Defendant that it was calling the wrong number."**

9   And there is an objection, and then:

10      **"Not withstanding the objections, the**

11   **Defendant responds as follows: denied."**

12      **Do you see that?**

13     A.  I see that.

14      **Q.   Do you know what this denial was based**

15   **on?**

16     A.  I understand that this is saying that

17   your client advised us that we were calling the

18   wrong number.

19      MR. KAMINSKI:  When you say "us"?

20      THE WITNESS: Advised the

21   representatives of the bank.

22   BY MR. ZELMAN:

23      **Q.   Right. Do you know why that would be**

24   **denied?**

25     A.  Because I have seen nothing that says

**Page 92**

1   we were calling the wrong number.

2      **Q.   To answer this, you would have referred**

3   **to the call log compiled by Credit One Bank?**

4     A.   The call log would more appropriately,

5   than the account notes.

6      **Q.   But the account notes do reflect that**

7   **on February, 2017, in which Credit One Bank spoke**

8   **with a third party, correct?**

9     A.   That's what the account notes said,

10   yes.

11      **Q.   Do you know what was said on that**

12   **report or that conversation?**

13     A.   I do not.

14      **Q.   It's possible that on that date and**

15   **time, the plaintiff advised the defendant that it**

16   **was calling the wrong number?**

17      MR. KAMINSKI:  Objection.  Calls for

18   speculation.  Lacks foundation.  Misstates the

19   testimony of the witness.

20      THE WITNESS: That would be a complete

21   guess.  I have no idea what.

22      MR. ZELMAN:  It's not a guess.  Is it

23   possible or not?

24      MR. KAMINSKI:  Objection.  He's not

25   here to speculate. He already answered the

**Page 93**

1   question.  He said he didn't know.

2      MR. ZELMAN: All right.  Give me five

3   minutes just to wrap up.  I want make sure I

4   haven't forgot anything.

5      (Off the record.)

6      MR. ZELMAN: Back on the record.

7      Do you have any questions?

8      MR. KAMINSKI: No.  Farheena, do you

9   have any questions?

10      MS. HABIB: No questions.

11      MR. ZELMAN: We're done.

12      MR. KAMINSKI: I propose that according

13   to plaintiff's counsel that the deposition has

14   concluded; that the parties agree to relieve the

15   court reporter of her duties under the code; that

16   the original transcript of the deposition will be

17   sent to my office, David Kaminski, for review and

18   signature by the witness and that we will have

19   thirty days upon receipt from that transcript in

20   order to review the deposition transcript and

21   make any appropriate changes and notify all

22   parties hereto that if for some reason the

23   original deposition transcript is lost or

24   destroyed, then a certified copy may be used for

25   any and all proper purposes.

Atkinson-Baker Court Reporters
www.depo.com

| | |
|---|---|
| 1 So stipulated, counsel? | 1 CERTIFICATE OF REPORTER |
| 2 MR. ZELMAN: So stipulated. | 2 |
| 3 MS. HABIB: So stipulated. | 3 I, the undersigned, a Certified Court |
| 4 MR. ZELMAN: Thank you for your time. | 4 Reporter, of the State of Nevada, do hereby |
| 5 (Whereupon, the deposition was | 5 certify: |
| 6 concluded at 12:45 p.m.) | 6 That the foregoing proceedings were |
| 7 -oOo- | 7 taken before me at the time and place herein set |
| 8 | 8 forth; that any witnesses in the foregoing |
| 9 | 9 proceedings prior to testifying were duly sworn; |
| 10 | 10 that a record of the proceedings was made by me |
| 11 | 11 using machine shorthand which was thereafter |
| 12 | 12 transcribed under my direction; that the |
| 13 | 13 foregoing transcript is a true record of the |
| 14 | 14 testimony given. |
| 15 | 15 Further, before completion of the |
| 16 | 16 proceedings, review of the transcript {x } was |
| 17 | 17 { } was not requested. |
| 18 | 18 I further certify I am neither |
| 19 | 19 financially interested in the action nor a |
| 20 | 20 relative or employee of any attorney or party to |
| 21 | 21 this action. |
| 22 | 22 IN WITNESS WHEREOF, I have this date |
| 23 | subscribed my name. |
| 24 | 23 |
| 25 | DATED: July 5, 2018. |
| | 24 |
| | 25 JULIE M. LEVER, RPR, CCR No.: 582 |
| Page 94 | Page 96 |

| |
|---|
| 1 STATE OF NEVADA ) |
| 2 COUNTY OF CLARK ) |
| 3 |
| 4 |
| 5 |
| 6 I, the undersigned, declare under |
| 7 penalty of perjury that I have read the foregoing |
| 8 transcript, and I have made any corrections, |
| 9 additions of deletions that I was desirous of |
| 10 making; that the foregoing is a true and correct |
| 11 transcript of my testimony contained therein. |
| 12 |
| 13 |
| 14 EXECUTED this day of |
| 15 at , . |
| 16 (City) (State) |
| 17 |
| 18 |
| 19 JEFFREY MEEK |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| Page 95 |

25 (Pages 94 to 96)

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018

Atkinson-Baker Court Reporters
www.depo.com

Page 1

---

**A**

**a.m** 1:15
**A/K/A** 1:10
**ability** 87:18
**able** 13:5,7,9 29:6,10
66:3 76:25
**absolutely** 62:4
**AC0484B** 1:20
**access** 32:9 78:21
**account** 9:8 10:3,4,5,10
10:22,25 11:3,10,13,21
11:22,23,25 12:1,16
14:7,17 17:8,13,16
18:22 19:18,19,21,22
19:23,25 20:1,2,5,7,14
20:17,21 21:2,7,8,8,12
25:17,21,22,24,25 26:1
26:4,6,8,12,13,15,19
26:22 27:1 28:13 29:5
29:7 30:7,14 31:23
32:5 33:1,18,19 34:10
35:22,25 36:8,15,16
38:3,16,18 39:16,20
40:1,3,4 44:23 45:9
47:10,17 48:25 50:6
51:3 55:8,10,11,12
59:16 60:9 61:5,25
62:10,11 63:6 71:4,7
92:5,6,9
**accounting** 65:19,21
89:19
**accounts** 14:9 28:9,24
**accurate** 38:9,21 45:1
62:23 88:5
**accurately** 38:23
**action** 8:7,8,11 12:4,24
14:3,13 24:24 25:1
26:16 40:16 48:3 52:20
55:14,20 56:11,15,19
57:20 59:18 96:19,21
**active** 61:16
**activity** 25:17,21,23
26:14 28:13 31:23 32:3
32:6 33:17 49:1
**actual** 43:12 47:22
**add** 6:8 86:12
**added** 32:25
**adding** 48:19
**additional** 20:2 38:13
**additions** 95:9
**address** 28:20
**Adele** 7:22 8:2,3,10
63:13 66:23,25 67:10
67:14
**Admissions** 3:15 82:19
91:2,5
**admit** 83:2,10,19 84:20
91:7
**advised** 25:20 58:16
91:7,17,20 92:15
**afternoon** 60:23
**agent** 36:13,13 81:12
**agents** 32:10
**ago** 70:15,22
**agree** 93:14
**agreement** 24:18,20
69:22 77:15
**allege** 9:20

**Allied** 61:21
**Alorica** 6:14 7:9
**ambiguous** 8:15 23:10
23:15,17,22 28:2 29:21
31:17 32:2 33:6 35:4
35:20 40:8 42:21 49:18
51:10 62:20 64:19
66:19 68:2 69:12 72:5
75:3 79:25 80:20
**AMDID** 61:15
**America** 7:16,17,19
**Angeles** 2:9,13
**answer** 10:1 11:24 13:25
15:8 21:19 23:10 26:3
30:4 33:9 40:11 48:9
49:14 77:18 82:1 84:25
85:10,13,20 89:25 90:8
92:2
**answered** 23:15 27:17
32:12 86:12 92:25
**answering** 53:7,8 61:13
61:15,25 90:22
**answers** 80:16
**anybody** 29:4 71:3
**anymore** 50:22
**anyway** 77:24
**apologize** 28:16 47:12
**appear** 5:22 6:1 19:18
36:14 57:16
**appearing** 5:19
**appears** 14:14,20
**applies** 88:7,8
**appropriate** 93:21
**appropriately** 92:4
**April** 14:21
**areas** 78:22
**argue** 66:15
**Argumentative** 49:8
66:12
**articulated** 86:9
**Asbury** 2:5
**asked** 15:21 25:11 32:12
35:10 48:3 67:14,14,17
67:20 86:12 89:7
**asking** 9:18 43:5 64:3,16
67:8,19
**asks** 9:15 83:2,18
**Aspect** 32:23 51:4 65:8
72:11,15,24 73:21,21
74:9 86:1,2,20 87:10
87:10,11,13 90:14
**assert** 86:11
**assign** 71:2
**assigned** 10:5 14:17
71:8
**assistant** 4:13,18 5:4,10
5:13
**associate** 69:3
**associated** 11:2,4,10,12
11:22 12:1
**assume** 21:6 50:3 61:8
61:18
**assuming** 46:21
**ATKINSON-BAKER** 1:21
**attempt** 83:5,15
**attempting** 71:6
**attorney** 22:4 69:4 96:20
**attorney-client** 15:23
20:11 21:17 68:14,20

**attorneys** 21:16
**audit** 78:16,18
**automatically** 87:18
**Avenue** 1:17 2:5
**aware** 17:20 55:11 62:7
68:6

---

**B**

**B** 3:9 19:3,6
**back** 4:20 9:13,15 17:5
21:4 22:2 26:25 34:24
35:1 45:13 47:8,13
63:11 81:19 93:6
**badges** 78:21
**bank** 1:8,14 2:7 5:23,24
5:25 6:2 10:10 12:25
14:5,6,22 17:13 19:1,4
19:16 21:5 24:14,16
30:24 39:5 41:9,10
49:11,13,16 50:1 51:4
51:17 52:6 55:25 64:5
65:17 66:8,9 69:7,9,16
69:24 70:7 71:10,12,14
71:18,21,22,25 72:21
72:25 74:20 77:15 79:2
79:11 80:5,14,15,18,23
81:2,14,17,22 82:3,7
82:15 84:5 91:21 92:3
92:7
**bank's** 82:11
**base** 11:20
**based** 45:17,18,24 62:9
89:3,25 90:7,10 91:14
94:21 14:21
**basically** 64:2
**basing** 11:19 52:11 55:7
**basis** 26:11,20
**BASSI** 2:11
**Bate** 62:18
**Bates** 14:5,13 18:3 19:1
36:23 39:17 45:10
40:11 51:23 57:2,6,10
60:4,16 62:17,18 63:1
63:2,4
**behalf** 4:10 6:16 24:6
30:24 39:5 49:11 51:4
64:5 65:16 71:12 79:2
79:9 80:5 81:14 84:22
**believe** 6:10,19 10:9,20
10:24 11:9,11 13:19
18:19 24:23 34:16
35:18 36:4 38:12 39:10
39:19 42:2 44:15 47:5
47:8 50:16 52:22 65:11
66:20 67:14,21 69:17
82:16 83:13 84:5,9
85:1 86:1,5 89:13 90:8
**best** 33:13,15 51:1 58:9
58:12 59:24
**beyond** 84:1 88:3
**bit** 12:19
**blaster** 65:12
**BLUM** 2:11
**Boulevard** 2:8
**break** 35:20 63:9
**briefly** 64:1
**brought** 8:20 72:7
**bunch** 37:24
**Burton** 7:22 8:2 63:13

---

66:23,25

---

**C**

**C** 2:2 3:10 19:5,6 36:21
**C-A-S** 20:18,19 27:11
**C-A-S-H** 27:5
**California** 1:2 2:9,13
**call** 3:8,9,10 7:13,15 8:23
9:1,4,8 10:7 12:14,16
14:10,12 17:8,10,11,12
17:13,16 18:6,14,23
22:3,11,14,23,23 23:1
24:25 25:13 26:2,9,16
26:17,18,23 30:23,25
31:11 32:7,18,19,23
33:21 34:2,6,14,14
35:16 36:6,10,12,14,18
36:25 37:14,20,20 38:2
38:5,9,21 39:9,9,12,18
39:20,22,25 40:2,15
41:9,22 42:7,15,16
43:6,12,17 44:18 45:16
46:24 48:11 49:13 53:2
53:6,14 54:11,13 55:8
58:23 60:15 61:2,3,4
61:10,11,12 62:6,8,12
62:16 63:3,5 64:17
65:19,21,24 80:4,6
81:1,19,20 82:1 83:20
84:6,10 85:3,24 86:9
87:24 90:9 92:3,4
**called** 22:19 45:6 46:18
47:5 49:24,25 65:11,12
65:13
**caller** 48:7
**calling** 44:13 50:11
54:17 58:17 80:18,23
81:13,16 91:8,17 92:1
92:16
**calls** 6:18 8:21 9:15,21
9:23 11:14 13:22 14:14
14:21 16:18 18:15
20:23 21:15 23:4,8,12
23:22 24:2,3,6,22 25:7
25:9,10,17,20 31:7
33:6,24 34:5,7 35:5,24
36:3,7,8 37:24 38:3,10
38:13,24 39:1,4,4 40:7
40:19,23 41:6,12,16,21
41:22,25 42:9,10,19
43:7,24 44:5 50:15,16
50:15 51:3 52:15,16,25
53:7,13,15,20 54:7,22
59:10,23 64:4 65:4,16
66:11 67:1,11 68:19
69:12 70:2 71:12 72:5
72:12 73:1,15,24 74:7
75:5 76:14,22,23 79:7
79:9 80:1,7,20 81:4
82:4 83:2,14,25 85:4
87:25 88:25 89:14,18
92:17
**capabilities** 87:17 88:23
**capability** 30:2
**caption** 51:13
**capture** 48:7
**captured** 49:16,22 50:3
51:2

---

**card** 45:6 47:5
**cardholder** 49:16
**care** 74:2
**CARLSON** 2:7
**CAS** 20:16 27:11,12,23
28:12 29:13,16,19 30:2
30:14 31:1,3 35:7 36:9
**case** 1:6 7:10 9:9,20
10:12 11:10,12 12:8
17:11,11,12,14 18:15
18:21 22:8 23:5 50:15
50:21 51:12 63:17
68:10 70:12 74:5
**cases** 43:4
**CASH** 27:3,7,11,21 28:6
28:8 29:7,10 30:18
31:1,2,6,15,23 32:9,18
35:7,17 36:2,9
**cause** 59:18
**CCR** 1:25 96:25
**cellular** 83:20
**center** 22:23 23:2
**centers** 7:14,15
**Century** 2:8
**certain** 30:3 70:16 73:6
77:1 79:3
**certainly** 50:19 53:4
**CERTIFICATE** 96:1
**certified** 93:24 96:3
**certify** 96:5,18
**cetera** 88:4 90:13,16
**change** 47:2 74:22 86:10
53:19,21
**changed** 5:15 53:17,18
53:19,21
**changes** 93:21
**changing** 74:12
**check** 42:3 46:19
**checking** 44:8
**checks** 44:3
**choose** 82:14
**City** 95:16
**claims** 8:8,11
**clarification** 15:17
**clarify** 10:14 35:7,13
39:7,21 41:1 58:7 62:5
**clarifying** 23:19 53:23
**CLARK** 95:2
**clear** 62:21
**clearly** 31:19
**client** 10:9 22:3,6 25:5
51:8,10,12,16,22 55:5
56:4 58:10,14 59:18
87:24 89:15 91:17
**client's** 9:21 18:16 25:1
58:21
**close** 52:25
**coaching** 78:14
**COB** 57:3
**COB-NL-027** 57:6
**code** 93:15
**collecting** 71:4 82:10
**collection** 27:3,6,8,21,22
28:7,11 29:1 31:5 32:3
32:10,21 33:17 71:7
79:1 81:12
**collections** 31:24,25
**collector** 32:4
**collectors** 29:22 30:1
78:13,23 80:9

---

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 28 of 32
Atkinson-Baker Court Reporters
www.depo.com

Page 2

**come** 37:1,2 67:22,23
**comes** 43:1 71:2
**coming** 43:8 68:10
**company** 7:23
**compiled** 37:14,15 40:2
   62:8 92:3
**complaint** 10:16
**complete** 38:19 70:8
   92:20
**completed** 32:19
**completion** 96:15
**complied** 41:10
**composite** 38:2
**comprehension** 62:24
**concerns** 85:6
**concluded** 93:14 94:6
**conclusion** 23:23 24:4
   46:23 70:2 84:1
**conditions** 49:20
**confidential** 1:13 28:18
**conflict** 34:13
**confusing** 78:3
**confusion** 23:20
**consent** 49:21 83:20
   84:6,10,13,15
**constitutes** 68:13
**contact** 1:10 7:2 9:23
   14:15,17,20 15:4,17,21
   16:6,8 25:4 36:18
   44:16 45:19 46:1,8
   50:21 51:7,18,21 54:16
   55:3,4 56:3 58:10
   65:20 69:19
**contacted** 49:20
**contained** 95:11
**context** 70:10
**continuing** 83:12
**contract** 24:15 73:11
   77:20,24,25
**contractor** 69:21
**contractual** 54:2 82:16
**control** 4:25 6:11
**Convergent** 6:14 7:9
**conversation** 52:2,4
   60:10 92:12
**Cookman** 2:5
**copy** 74:25 93:24
**correct** 7:11,12,20 17:8,9
   18:25 29:8,15 33:19
   39:3,24 50:8,9 54:15
   54:24 58:23 60:2,13,14
   62:1,2 64:24 65:1,2
   77:9 84:12,16 86:3,4
   92:8 95:10
**corrections** 95:8
**counsel** 21:21 27:16
   40:21 69:3 93:13 94:1
**count** 40:18,19 41:5,17
   41:21
**counted** 41:3,4,25 42:3
**COUNTY** 95:2
**course** 10:3 12:11 28:22
**court** 1:1,22 35:3 47:15
   93:15 96:3
**created** 38:5,7 43:11,12
**Credit** 1:8,14 2:7 4:10,12
   5:24,25 6:2,16 7:25
   8:18,19 9:22,22 10:10
   10:21,25 11:3 12:25

14:5,6,22 17:13,16
   18:24 19:1,4,16,20
   20:1,13 21:5 22:3,14
   22:22 23:1,7 24:14,15
   25:1,8,19 26:11,18
   29:2,9 30:24 32:10,15
   33:4 34:15 37:17 38:24
   39:2,5 40:2 41:9,10,21
   42:7,17 43:4,6,17
   49:11,13,16 50:1 51:4
   51:17 52:6 55:12,25
   56:10,14,19 57:20
   58:10,15 59:14 60:9,16
   63:20 64:5 65:17 66:8
   66:9,16 69:7,9,16,24
   70:7,9,13 71:6,10,12
   71:14,25 72:21,25
   77:15 79:2,11 80:4,5
   80:14,15,18,23 81:1,14
   81:17,21 82:3,7,15
   84:5 92:3,7
**currently** 83:9
**customer** 30:24 31:22,24
   32:15,16,20 46:18
   81:11
**customer-provided**
   87:18
**customers** 69:19 80:5

---

### D

**D** 3:1,11 63:20,22
**daily** 26:11
**date** 14:23 20:22 34:10
   46:12,16 47:2 48:12
   49:25 56:5 57:25 60:18
   60:19,21 61:3,19 92:14
   96:22
**DATED** 96:23
**dates** 57:15,16 70:16
**David** 2:8 93:17
**day** 14:4 46:1 57:16 58:3
   95:14
**day-to-day** 4:24 5:6 9:6
**days** 53:4,16 54:13,21
   59:8 93:19
**deals** 15:23
**December** 21:4
**declaration** 3:17 86:20
   87:9 88:22
**declare** 95:6
**defendant** 2:7,11 8:6
   48:9,11 83:3,8,9,19
   84:23 88:18 91:8,11
   92:15
**defendant's** 55:21 58:19
   82:18
**DEFENDANTS** 1:12
**deletions** 95:9
**delinquent** 28:9,25 29:6
   50:7 51:3
**demand** 17:1
**denial** 91:14
**denied** 91:11,24
**deny** 83:11
**department** 5:19 15:10
   15:13,21 16:6,7,22
   38:8 43:21 62:9 67:7,9
   67:24 68:10

**depends** 29:17,17
**deposition** 1:14 17:7
   18:22 19:13 22:10
   28:18 41:2 63:14 84:2
   85:8,15,18 88:3 93:13
   93:16,20,23 94:5
**Derrick** 44:15,17 45:19
   46:1,15 60:1
**describe** 79:4
**DESCRIPTION** 3:6
**designated** 85:8
**designation** 46:17
**desirous** 95:9
**desk** 16:9,22,23
**destroyed** 93:24
**detail** 55:15
**detailed** 50:17
**detect** 61:13
**development** 78:14
**dial** 84:22 87:18
**dialer** 65:20 84:21 87:17
   87:24 88:25 89:14 90:9
**dialers** 65:6 73:6 85:3
   86:6
**dialing** 50:12,14,23 51:5
   64:15 71:11,15 83:3,21
   85:24 87:10 88:12,23
**different** 6:15 40:1 69:17
   70:8 74:9
**direct** 46:19
**direction** 96:12
**directly** 22:3,14,23 32:18
   36:14 69:25 70:4,9,10
   81:2 89:12
**discovery** 12:6,7 17:1
   20:5 49:10 50:2 55:14
   55:20,24 83:11
**discrepancy** 33:2 35:15
   36:17 39:8,15 40:6
   42:15
**discussed** 56:8
**discussion** 10:6
**discussions** 21:15 68:13
**disposition** 32:17 35:21
   39:22 61:10
**dispositions** 39:18
**DISTRICT** 1:1,2
**document** 18:11,18,19
   19:17 37:13 60:16
   63:25 64:2,10 86:24
   87:6 88:4 89:23 90:1,5
   90:7,24
**documents** 10:10,12,15
   40:22
**doing** 20:15 53:24,25
   54:1,5,6 73:4 74:24
   75:23 77:14,19 78:1,6
**Don** 3:17 86:20
**doors** 78:20
**double** 42:3
**doubt** 67:3,5
**download** 9:5
**drafting** 54:2
**duly** 4:2 96:9
**duties** 4:21,23 93:15

---

### E

**E** 2:2,2 3:1,14 82:20,21

**earlier** 17:6 39:7
**Eastern** 1:2,17
**EDLIN** 2:11
**effect** 52:7
**efforts** 24:11
**either** 26:15 32:23 51:18
   67:10 85:13
**elaborate** 28:1,3
**eleven** 30:13
**email** 75:10,24
**employee** 79:18 81:21
   81:22,24,25 96:20
**employees** 78:21 79:8
**enable** 83:10
**entail** 78:17
**entails** 78:19
**enter** 32:25
**entire** 28:17 37:4
**entitled** 66:16,19
**entries** 46:14
**entry** 48:14 59:21
**equipment** 71:11,15,23
   72:1
**error** 13:11
**ESQ** 2:8,12
**et** 88:4 90:13,16
**exact** 14:4 67:18 70:16
   88:21
**exactly** 89:8,9
**EXAMINATION** 3:3 4:4
**example** 6:8 25:7 26:3
   31:11 64:25 70:12
   72:11 76:22 80:13 81:3
   81:13
**exceeds** 85:7
**Excel** 37:10
**Excuse** 28:15
**EXECUTED** 95:14
**Executive** 1:15
**Exhibit** 3:8,9,10,11,14,17
   17:22,23 18:2,6 19:3,5
   36:21 37:19 40:14,14
   63:20,22 82:20,21
   86:16,17
**Exhibits** 3:6 19:6
**existed** 58:25
**expect** 66:6
**experience** 20:25
**expert** 85:6,9
**expertise** 88:3
**explain** 62:3
**extent** 15:22 21:14 68:12
   85:20

---

### F

**F** 3:17 86:16,17
**fact** 48:25
**fair** 24:23
**familiar** 14:18 18:13
   19:14 33:9 42:24 48:12
   56:21,23 65:13 87:7
**far** 38:4,19,20 66:13
   73:19
**Farheena** 2:12 5:1 86:19
   88:14 93:8
**February** 14:4,14,21
   46:24 56:4 57:21,24,25
   58:1,4,11,14,22 59:17

59:20 60:11,22 62:24
   92:7
**feed** 27:23
**feeds** 27:11
**feel** 66:8
**Fhabib@behblaw.com**
   2:14
**fifteen** 12:23 13:2 42:8
   52:22,23,24 70:23,24
**fifty** 40:19 41:6
**fifty-two** 41:24,25
**figure** 10:1
**file** 1:20 26:24
**files** 13:5,9
**fill** 32:17
**financially** 96:19
**find** 23:16 75:21
**finding** 65:17
**fine** 22:13
**first** 1:10 4:2 7:2 9:23
   14:15,17,20 15:4,17,21
   16:5 19:16 25:4 30:10
   50:21 57:2 70:13
**five** 4:17 5:5,14,15 14:21
   37:10 84:20 93:2
**fix** 16:4
**floor** 79:6,16
**Flower** 2:12
**follow** 72:14
**follows** 4:3 83:8 91:11
**foregoing** 95:7,10 96:6,8
   96:13
**forgot** 93:4
**form** 17:2 32:5 37:7
   62:23
**format** 13:3 37:8,13
**forth** 96:8
**forty-nine** 41:3,15
**forty-two** 42:4,5
**foundation** 13:23 16:19
   31:8 33:6 40:9 42:11
   42:20 43:25 44:6 49:18
   66:12 67:2 68:2 69:12
   80:1,8 81:5 85:5 88:1
   89:19 92:18
**four** 83:18
**free** 32:5
**Friday** 1:16
**front** 27:3,21 28:7 30:8
   36:21 39:17 41:12
   44:24 45:24 60:17
**full** 5:7
**further** 89:16 96:15,18
**future** 68:5

---

### G

**Gary** 6:5
**GC** 1:9 6:13 7:8 8:6 9:24
   17:12 18:3,6,15 25:4
   37:20,23 40:15 41:10
   41:23 42:1,9 43:15
   50:20 65:1,4,16,22
   67:21 70:17,25 71:3
   74:5,8 76:12,23 77:16
   79:7 80:13 81:2,13,20
   81:23,25 82:2 85:2,23
   87:23 88:9,18 90:13
**general** 32:13

Case 2:17-cv-01512-JAM-DB   Document 55-15   Filed 10/09/18   Page 29 of 32
Atkinson-Baker Court Reporters
www.depo.com

Page 3

generally 9:4 73:17
76:16,19
generator 78:19
getting 9:25 22:5 27:14
75:7,8
give 21:1 34:18 66:6 93:2
given 96:14
go 8:19 9:13,25 16:4
17:3 20:14,16 26:25
29:13 31:22 34:19
39:13,14 40:2,4,13
59:16 62:10,18,20,25
63:1 65:17 67:24 75:7
75:23 76:9 77:12 91:1
goes 9:15 70:7 76:6
going 8:22 17:5 25:3
41:20 54:12,20 56:17
63:9,19 71:11,15 72:1
72:10 74:22
Good 4:6
goodness 24:8
Great 22:14
grounds 21:16 32:2
85:16
group 9:14
guardian 1:4 10:17
guess 7:7 21:24 29:25
35:12 65:20 74:15
75:24 76:2 89:4,6
92:21,22
guessing 44:22
guys 6:6 8:13,16,18 24:1

**H**

HABIB 2:12 5:7 18:5
86:22 88:15 93:10 94:3
hand 10:13 82:18 86:15
handing 18:1
handle 64:22,25 68:6
handled 79:7
happen 75:13
happened 25:25 32:6
36:10 52:1 53:6 58:22
62:12
happening 75:22
happens 26:14,16
Harassing 49:7
Harwood 6:5
hear 51:20 82:2,6 88:14
hearts 24:9
held 60:10
help 15:5 16:9,22,23
hereto 93:22
hey 15:4,15
Hi 81:13,16
hire 23:10,24 24:1 69:24
70:2,9,10
hired 23:7 70:6
hires 70:7
hold 34:18 47:3,18,19,21
HOLDINGS 1:10,11
home 46:18,22,24 51:19
hope 66:2
hoping 45:1
hour 63:9
Houston 77:6
Hudecek 3:17 86:20
88:22

HUIE 2:11
hypothetical 35:5 42:21
68:3

**I**

ID 48:7 61:13
idea 13:13 15:1,2 21:11
43:13,20,22 44:8 49:3
62:13 65:10 75:4 92:21
identification 17:24 19:7
63:23 82:13,22 86:18
identified 9:23 24:24,24
50:23 52:4,5 64:14
69:17 82:2,3 88:18,22
identify 48:6 80:10,12
identifying 80:6
identity 68:22
iEnergizer 1:9 6:25 7:10
8:1,2,11 9:24 25:4,8
29:19,23 30:2 31:12,21
50:20 54:6 63:17 64:23
67:20 70:12,14,25 71:3
76:19 85:2 88:8,11,19
89:12,13 90:8,12
imagine 11:7
immediately 26:16 32:24
inbound 46:17,21
included 76:10,13,17,20
including 55:20 89:2
incomplete 35:5 42:20
68:2
indication 47:1 80:25
infant 1:4 10:17
information 8:13,21 10:7
21:20 31:6 33:14,16
45:24 65:25 66:5,10,17
67:15 83:9
informed 25:20
initials 51:13
inputting 31:23
instances 36:12
instruct 85:10,12
insufficient 83:10
intents 80:17
interested 96:19
interrogatories 3:12
9:22 55:22 58:13,19
63:21
interrogatory 48:2 64:10
64:14 67:18,19 88:17
intricacies 10:11
involved 45:15
Iqor 1:11 7:2 17:11
irrelevant 85:10
issue 7:25 11:12 12:22
22:8 89:20
issues 15:24 85:6
iteration 72:11

**J**

J 2:8
January 46:8,13,15
Jeffrey 1:14 3:2 4:1,8 5:9
95:19
Jersey 2:5
Job 1:20
jobs 70:8
Julie 1:24 96:25

July 45:13 83:5 84:23
96:23
June 1:16

**K**

Kaminski 2:8 5:1,10 8:15
11:14 13:22 15:7,22
16:18 20:10,23 21:14
21:23 22:17 23:9,18,21
24:3 27:16 28:2,15,22
29:20,25 31:7,16 32:1
32:12 33:5,24 34:17,22
34:25 35:4,12,19 38:10
40:7,21 41:16 42:10,19
43:14,18,24 44:5 45:21
46:6 47:12,21 49:7,17
51:9 54:7,22 55:16,23
57:24 58:2,5 59:10
60:19 62:19 64:7,18
66:11,18 67:1,11 68:1
68:12,19 69:11 70:1
72:4,12 73:1,15,24
74:15 75:2,5,11 76:14
77:18 78:2,8 79:9,24
80:7,19 81:4 82:4
83:25 84:7,18 85:4,19
86:7 87:25 88:14 89:1
89:5,16 90:2,11 91:19
92:17,24 93:8,12,17
keep 9:13 59:9,14 62:20
kind 9:6
know 8:10 9:12 11:7,21
12:3,22 13:12,14,16,16
13:18,24 15:20,25 18:9
19:10 21:25 22:7 23:14
25:20 30:3,4,4,5,21
31:21 33:8 37:12,12
38:4,5,7,19,20 41:8
42:12 43:11 44:3,7,10
44:12,20 45:15 47:7
49:4 50:13,14 51:7,17
51:23 52:1,14,19 53:23
54:3,5,6,9 55:4,16 56:3
56:6,21 58:24,25 59:2
59:3,7,12 63:16 64:3
64:16,20 65:3,6,8,15
66:13,22 68:4,5 70:13
72:21 73:10 74:25
75:15 76:1,4,7,23,25
77:3 78:20 85:21,23
86:13 87:2 88:7,8,11
88:20 89:4,6,9 90:12
90:24 91:14,23 92:11
93:1
knowledge 8:12 11:16
11:18 12:5 22:25 31:9
33:13,15 40:12 51:1
55:6 58:9,12 59:25
63:18
knows 83:10 85:20

**L**

Lacks 13:23 16:19 31:8
33:6 40:8 42:11,20
43:25 44:6 49:18 66:12
67:2 68:22 69:20 81:1,8
81:5 85:5 88:1 89:18
92:18

language 54:3
Las 1:18
lawsuit 8:14,20
left 26:4 31:13 59:22
60:3,12 61:12,14,22,24
legal 5:18 15:10,12,20
23:22 24:4 38:8 43:21
62:9 67:7,9,24 68:9
70:2 84:1
Lemos 1:5 10:18,19
51:15,18
Lemos' 11:3 12:1
let's 12:18 17:21 19:2
22:2 26:25 40:13 47:11
53:9 69:6 70:11 86:9
Lever 1:24 96:25
limit 85:14,17
LIMITED 1:9,10
line 60:7 78:3
link 36:6
list 57:18
listed 10:15 46:25
listen 15:15 16:2,3 22:17
litigation 5:19 37:16
little 12:19 31:19 85:16
LLC 1:10 2:4
LLP 2:7
locks 78:20
lodge 86:7
log 10:7 17:11,12 18:6
18:14 35:16 36:25
37:20,21 38:2,6,9,21
39:9,12,18 40:2,5,15
41:9,22 42:7 43:12,17
60:15 61:11,12 62:8,16
92:3,4
logs 3:8,9,10 8:23 9:1,4
9:8 12:16 14:10,12
17:8,10,14,17 18:23
24:25 25:13 26:9,17,19
26:23 34:2,6,14,15
36:6,18 37:14 39:9
42:15,16 43:6 61:2
long 4:15 41:2 70:20
86:8
look 10:4 11:25 14:7,9
14:12 18:13 19:9,14
36:2 38:9 40:14 56:21
56:23 57:2,15 87:7
looked 11:20 43:22
looking 14:2 36:16 45:8
46:3,10,14 49:5 60:7
looks 37:9 45:5,13,25
46:7 59:23
Los 2:9,13
lost 45:6 93:23
lot 27:13 79:17

**M**

M 1:24 96:25
M-E-E-K 5:9
machine 53:7 61:13,13
61:14,21,22,25 96:11
machines 53:8
maintain 31:4
maintained 18:23 27:1
28:14 31:14 34:14
35:16,17 39:9 42:15

60:15
maintains 19:19 37:23
maintenance 76:3
making 36:14 46:23
95:10
man 70:6
manage 7:8,9,13,18
managed 6:9
management 78:13
79:23
manager 70:17 76:8
managers 78:24
manages 7:19
manner 90:16
manual 50:11 65:13
March 48:11,15 49:1,13
51:2
MARCUS 2:4
mark 17:21 19:2 82:19
86:15
marked 17:24 18:2 19:7
28:18 63:19,23 82:22
86:18
master 24:18
matching 43:6
material 8:23 9:1 32:6
36:10 53:6
materially 5:16
matter 10:12 86:21
mean 5:24 8:18 27:6
28:6 35:6 59:25 70:3
71:16 74:20
meaning 61:15 70:6
80:12 85:14
meant 71:21
Meek 1:14 3:2 4:1,8 5:3,9
95:19
meet 78:12,13,23
member 47:5
mentioned 6:20
merely 88:5
message 26:3 31:13
59:22 60:3,12 61:12,14
61:16,22,24
messages 62:13,14
83:22
MESSER 2:7
method 48:8
methods 50:11
middle 70:6
minor 51:14
minute 76:2
minutes 93:3
misreading 58:7
missed 81:19
missing 42:8
Misstates 75:11 92:18
mode 64:4,13,17 65:3,5
65:15 90:16
model 64:3
modes 65:7,8
moment 16:3 26:25
40:14 60:6 87:1
month 74:7
months 5:16,21
morning 4:6 14:8,10
20:3,6 21:13 38:14,17
mother 1:4 10:17 51:14

Atkinson-Baker Court Reporters
www.depo.com

Page 4

moving 85:17
MP3 13:3,5,15,21 14:25
Multiple 78:12
mute 5:2

**N**

N 2:2 3:1
N-A-R-I-N-E 69:1
N.A 1:8
N.L 1:4 10:16,24 51:13 51:18
name 4:7 5:8 64:3,15 82:11 96:22
Narine 68:24
natural 1:4 10:17
nature 8:24
near 26:22
necessarily 36:6,8 68:7
needed 32:25
neither 62:5 96:18
Nevada 1:18 95:1 96:4
never 18:17 43:5,9 67:23 71:14 83:19
new 2:5 14:7 45:6 54:2
nightly 9:5 26:24,24
nine 87:11
ninety 53:3,16 54:13,21 59:8
normally 9:2 43:2
North 7:16,17,19
notate 30:25
notating 31:2
note 32:5,25 62:10 74:19 74:20 75:1,10
notes 9:8 11:25 12:16 14:7 17:8,13,16 18:23 19:18,19,21,23,25 20:3 20:5,7,14,17,21 21:1,7 21:8,12 26:1,5,7,8,12 26:13,19,22 27:1 30:8 30:14 36:9,15 38:16,18 39:16,20,20 40:1,3,4 44:23 45:9 47:18 48:1 55:9,10,11,12 59:16 60:9 61:5,25 62:11 63:3,6 92:5,6,9
notice 12:17
notify 93:21
noting 31:1
number 9:21 10:3 11:9 11:11 18:16 20:17 22:6 22:7,11,15,20,24 24:2 24:23 25:2,8,12,14 31:12 37:23 38:24 39:5 42:6 43:6,7 44:14,17 45:16,20 46:2,16,18,22 46:22,25,25 47:1,4,6 47:10,19,20,22,24 48:5 48:6,10,20 49:12,15,21 49:22,24 50:1,3,7,10 51:2,8 52:15 53:2 58:16 82:2 83:1,4,14 83:18 84:6,10,20,22 85:3 90:9 91:2,8,18 92:1,16
numbers 11:2,4 57:3,10 57:11,14 87:19
numerous 76:6

**O**

object 21:16 22:5 32:1 68:14
objection 11:14 13:22 15:7,22 16:18 20:10,23 21:14 23:9,14 24:3 29:20 31:7,16 33:5,24 35:19 38:10 40:7 42:10 42:19 43:24 44:5 49:7 49:17 51:9 54:7,22 59:10 62:19 64:18 66:11,18 67:1,11 68:1 68:12,19 69:11 70:1 72:4,12 73:1,15,24 75:2,11 76:14 78:2 79:24 80:7,19 81:4 82:4 83:23,25 84:7,8 84:18 85:4 86:8,8,10 86:11 87:25 88:2 89:2 89:16,17 90:11,20,22 91:9 92:17,24
objections 83:7 84:25 89:1,18 91:10
observation 79:17
observe 78:14
obtain 17:3
obtained 48:4,6,10 49:12
obviously 54:18 79:11
occurred 62:24
office 67:22,23 93:17
officer 87:9
official 62:11
Oh 10:2 12:11 38:18 62:4 76:6
okay 5:10,11 6:23 7:8,17 11:24 14:20,24 16:16 17:5 18:11 20:4,13 22:22 24:1 26:2,18 28:8,20,24 29:5 30:23 35:15 39:15 40:17 41:7 42:6,14 43:3,18 45:12 49:10 50:6 52:23 51:11 54:11 55:13 56:20 57:23 58:5 59:23 61:5 63:7 68:18 70:11 74:5 77:3 80:25 86:15 87:3
onboard 72:7,7,9
once 8:14 78:15
One's 29:9 32:10 55:12 58:15 63:20
one-month 74:10
ones 12:15 13:7,18 25:5
onsite 78:13,24
oOo- 94:7
operation 4:24 9:7
operations 5:6 7:14,15
opportunity 79:6,12
order 28:19 41:1 93:20
original 37:13 93:16,23
originally 9:11 37:3
outbound 46:24
outset 28:17
outside 84:21
Outsourcing 6:14
oversee 6:20

**P**

P 2:2,2

p.m 60:11 94:6
page 3:3,6 18:7 30:11 40:18,20 45:10 46:10 60:4,7 83:1 91:3,4
pages 20:7 21:12
paid 24:11
paragraph 87:11
Park 2:5
part 6:14 7:9 9:5 50:21 63:17
particular 32:7 35:21,22 89:20
particularly 14:13 64:4 72:22 74:2
parties 93:14,22
PARTNERSHIP 1:9
party 31:13 34:10 59:22 59:24,25 60:11,12 62:1 92:8 96:20
pay 46:19 54:12,19
payment 53:2,14 54:12
pays 24:13
penalty 95:7
people 10:15 65:20 74:20 76:6
percent 42:8
period 9:16 10:6,8 14:16 25:6 50:16 53:10,12,15 74:6,8,10 83:4 84:23 88:13
perjury 95:7
person 43:12 54:17,18 68:22 83:6,15
person's 44:4 47:21
pertaining 19:22,24
pertains 41:22
phone 2:4,12 9:21 11:2,4 11:9,11 18:16 22:5,7 22:24 25:2 44:13,17 46:25 47:1,4,19,20,22 47:24 48:5,10,20 49:12 49:15 50:1,7,10 51:2 58:16 80:16 81:1 82:1 83:3,20 84:22
PHV 2:4
physical 78:15,17
physically 36:16
place 25:22 96:7
placed 83:2,14
plaintiff 1:6 2:3 51:14 83:6,16 84:12 85:24 91:7 92:15
plaintiff's 55:13,19,21,24 83:20 84:13,15 86:16 93:13
plaintiffs 10:15
play 12:15,20 13:5,8,10 15:4
played 12:19
please 4:6 5:8 69:13
point 37:19 45:6 47:6 51:20 79:23
policy 53:3,17
portfolio 4:13 5:4,11
pose 8:1 67:9
possible 92:14,23
possibly 23:22 90:17

Precisely 18:7
predated 25:1
predictive 65:12 84:21 85:2 86:6 87:17,23 88:23,25 89:14 90:9
Predominantly 6:5
preparation 19:13
prepare 17:7 18:21 63:14
prepared 43:20
prerecorded 83:21
present 83:5 84:24
previous 86:8
previously 86:9
primary 46:19
printout 30:14,17 37:9
prior 6:3 47:2 96:9
privilege 15:23 20:11 21:17 68:20 85:14
privileged 68:14
probably 12:11 16:5,13 74:13,17
problem 15:18
proceedings 96:6,9,10 96:16
process 53:18,22 54:2
processes 78:14
produce 17:1 25:13
produced 9:8 12:4,24 13:17 14:2,8,10,12 17:11,12,13,18 18:14 20:8 21:12 40:15 52:20 56:10,14,18 57:20
production 12:7 18:3
project 29:18
promise 54:12,19
promised 46:19
proper 93:25
propose 93:12
proprietary 28:18
protective 28:19
provide 21:20 66:3 67:15
provided 8:24 9:2,4 17:18 20:3,6 42:16 48:5 49:15
pull 8:13 20:14,17,20
pulled 21:6
purpose 78:8,11
purposes 22:10 57:5 78:12 80:17 93:25
pursuant 14:22 49:19 77:15
put 43:23

**Q**

question 5:3 8:1 11:24 20:4 21:19 22:17 23:16 23:17 25:19 27:17,18 28:4 34:18 35:1,2,9 39:8 45:22 47:13,14 52:6 55:2,17 60:25 64:7,12,13 66:15 67:21 68:15 69:13 77:25 83:1 83:18 84:4 85:5,7,9 88:20 90:18,22 93:1
questioning 78:3
questions 67:6,9 93:7,9 93:10
quickly 69:6

quote 90:14

**R**

R 2:2
range 20:22 71:1
reach 15:3,16 44:13 83:6 83:15
reached 46:16 61:19
read 35:1,2 47:13,14 87:8 95:7
ready 18:9,10 19:10 22:5 82:24 87:4
real 26:20,22,22 27:1,2
really 6:7 11:21 13:24 33:8 63:8
reason 40:5 42:7 53:4,5 93:22
reasons 53:1
recall 42:22 43:8 52:10 74:13 86:25
receipt 93:19
receive 66:16
received 8:14 21:5 26:3 54:4
recollection 12:25 58:21
reconfigured 89:20 90:13
record 4:7 13:20,21,21 25:9,16 27:10,24 28:12 34:19,23,24 35:17 36:4 57:5 62:12 63:10,11 75:22 93:5,6 96:10,13
recorded 13:14,15
recording 16:2 17:2 51:21,24 54:14,20 55:1 56:6,7,10 59:9 62:6
recordings 12:14,19,24 13:2 14:2,3,23,25 15:5 15:16 25:13 52:12,19 52:25 53:13 55:8 56:14 56:18,25 57:6,18,19 58:23
records 25:12 31:4 33:3 33:4,10,20,22,22 34:10 49:5
refer 51:15
referred 51:12 55:2 60:21 92:2
referring 10:19 12:23 43:14,16 45:12 60:20 64:8 75:9 89:12
refers 87:12
reflect 33:22,22 38:23 60:10 92:6
reflected 25:25 26:4,6 31:14 41:9,21 47:25 48:17 62:25 63:2,3
reflecting 18:15
reflects 32:5
regard 23:10 35:7 75:13 89:21 90:14
regardless 90:14
regards 33:17
regular 16:22
related 20:1 59:18
relationship 64:22 69:7 69:8
relative 96:20

Atkinson-Baker Court Reporters
www.depo.com

relevant 9:15 25:13
50:19
relieve 93:14
remember 43:10 44:19
51:25 77:23
rep 32:20
repeat 45:21
rephrase 55:17
report 92:12
REPORTED 1:24
reporter 35:3 47:15
93:15 96:1,4
REPORTERS 1:22
represent 57:19 80:22
representative 27:9
32:16,17 80:14 87:12
representatives 28:11
29:1,2,10 31:22 58:15
80:13 91:21
represented 51:14
request 9:3 10:6 25:15
66:10,22 82:19 83:11
83:24 84:20 91:1,5
requested 96:17
requests 3:14 20:5
required 82:15
requirement 41:5 82:17
respect 8:16 23:23 28:3
32:2 35:21 66:19 88:2
respond 90:18
responded 58:14
responds 83:8 91:11
response 9:22 48:2
49:10 50:2 55:21 58:13
58:18 64:14 82:18
83:23 88:17
responses 3:11,14 12:7
12:16 50:18 55:14,20
55:24 63:20
responsibilities 4:22,23
restate 31:18 69:13
restrict 78:21
result 30:25 39:22,25
40:1 54:11
results 53:14
retained 59:1,4
retention 53:3,9,12,15
review 12:6,13 17:15
58:18 87:1 93:17,20
96:16
reviewed 12:14 17:8
18:21,22 19:12 55:13
55:19
right 5:13 6:21,25,25 7:1
10:25 12:18 13:1,4
16:24 18:24 19:9,11
20:20 21:4 22:2,12,22
23:2 29:14 30:7,8 33:4
33:17,23 34:7,11 35:10
36:1 37:25 38:21 39:2
39:7,23 41:13,15 44:12
44:24 45:2 46:12 47:9
48:23 50:25 54:21
56:13,25 59:4,14 60:1
60:9,24 61:6 63:7
64:23 69:6 70:18 72:1
72:10 75:18 76:9 81:14
82:25 84:17 88:13
89:11 91:23 93:2

role 4:12,15,20,22 5:15
69:2
roughly 42:8
rows 37:11
RPR 1:25 96:25
running 86:10,11 88:1
89:1,17

**S**

S 2:2
Sandra 1:5 10:18,19,20
10:21 11:3 12:1 51:15
51:18
save 54:13,20
saw 58:20 79:22,25
saying 9:9 18:17 25:15
26:9 54:17 62:20 77:19
81:9 89:13 90:4 91:16
says 34:5,9 35:24 40:23
60:3,12 61:6,12,14,21
61:23,24 62:1 83:8
88:4 89:23 90:5,24
91:25
scope 84:1 85:6,7 88:3
screen 36:17 56:18
search 25:12 75:24,25
second 3:12 4:21 5:3
22:3 28:16 29:24 34:18
34:19,20 53:10 63:21
78:3
see 10:2,4 22:4 27:10,23
29:7,10,14,16,19 30:2
36:3 45:12,18 46:3,14
47:9,11,17,25 48:14,23
48:25 57:8,11,18 58:6
59:17,21 60:17 61:2,4
64:6 79:6 87:14,20
91:12,13
seeing 86:25
seen 8:23 18:11,17,19
42:14 43:3,5 63:25
64:1 86:24 87:6 91:25
send 74:19
sense 8:22
sensitive 78:22
sent 38:13,17 93:17
separate 26:8,20,21
30:17 69:21
sequential 57:3
series 57:11
served 48:3 55:24
service 31:22,24 32:15
32:16,20
services 1:9 4:14 5:4,19
6:13 8:6 9:24 17:12
18:3,15 24:18 25:4
37:20,23 40:15 41:10
41:23 42:1,9 50:20
65:1,4,16,22 67:21
70:17,25 71:3 74:5,8
76:12,23 77:16 80:13
81:2,13 82:2 85:2,23
87:23 88:9,18 90:13
Services' 18:6 79:7
81:20,23,25
set 3:12,15 38:13 63:21
96:7
sets 19:15

seven 6:24
seventh 7:6
short 41:1 63:9
shorthand 96:11
show 36:8 46:24 56:17
signature 93:18
simply 10:4 26:17 64:15
simultaneously 26:15
single 43:3
site 78:6,9 79:5
sites 77:2,3,5,10
sitting 79:17 83:13 85:1
87:22
situation 42:24
six 5:16,21 6:19 20:7
21:11 37:10 69:17 91:3
91:4
Sixteen 70:22
skip 48:7
software 34:15
somebody 8:3 9:19 21:9
37:16 38:7 43:21 74:1
sorry 5:1 14:9,11 18:5
32:21 33:14 34:17
38:18 45:11 49:25
56:12 60:24 63:6 81:12
85:11
sound 42:24 48:12 65:13
sounds 13:1 50:25
source 39:11,12
South 1:17 2:12
span 4:24 6:10,11
speak 16:21 40:22 63:13
68:9,18
speaking 90:20
speaks 88:4
specific 9:3 23:5 27:17
28:4 58:2 69:14 71:8
72:10 84:13
specifically 73:10
specified 20:22
speculate 21:24 92:25
speculation 11:15 13:23
16:19 20:24 31:8 33:7
33:25 35:5 38:11 40:8
41:16 42:11,20 43:25
44:6 54:8,23 59:11
66:12 67:2,12 69:13
72:5,13 73:2,16,25
75:5 76:15 80:1,8,20
81:5 82:5 85:5 88:1
89:18 92:18
spell 27:4 68:25
spelled 73:11
spite 47:10
spoke 21:21 34:9 46:19
58:15 59:21 60:12 62:1
63:16 68:23 92:7
spoken 8:5,7,10
spreadsheet 37:10
stamp 45:10 51:23 57:2
57:10 60:4 62:17,18,18
63:1,2,4
stamped 14:5,13 18:3
19:2 36:23 39:17 57:6
60:16
start 10:2 70:20 78:4
started 5:2 70:14

state 4:6 48:4 95:1,16
96:4
stated 88:6 89:2
states 1:1 91:2
status 28:9,25 29:6
33:19
stipulated 94:1,2,3
stolen 45:7
stop 58:17
Street 2:12
Strike 33:14
structured 69:10
stuff 9:13 14:19
subject 28:19
subscribed 96:22
substantive 25:24
subtract 6:8
sued 24:25
Suite 1:17 2:5,9,13
Suites 1:15
summary 27:20
supplemental 3:11 63:20
support 5:18 9:14 21:9
37:16
sure 21:19 27:20 28:6,22
31:21 34:21 41:20 46:5
49:21 55:19 69:16 78:6
78:11 79:1 84:4 88:11
93:3
Sutherland 7:4,5
switch 66:9
switched 13:20 73:14
sworn 4:2 96:9
system 20:16 27:8,9,10
27:11,11,12,22,23,24
28:8,10,12,12,13 29:1
29:7,11,13,16,19 30:3
30:15,18 31:5,15,23
32:10,18 35:17 36:2
50:4,12,24 51:5 64:15
65:9 72:11,15,24 73:4
73:20,21,22 74:9,24
76:2,2 83:21 85:24
86:3 87:11,13 88:19,19
88:21
systems 50:14 73:14
86:5 87:16 88:12 89:21
90:14

**T**

take 19:9 40:13 46:6
49:14 63:8 64:11 87:1
taken 1:15 96:7
talk 25:3 35:20 53:9 69:6
70:11
talk-off 81:7
talking 5:5 17:6 29:2
34:1 48:19 50:20 55:23
62:15 81:20,21,23
87:10
telephone 87:19
tell 45:17 47:18 50:13
71:10,14,16,18,20,21
71:22 72:3,17,25 73:3
73:7,8,9,12,13,22 74:1
74:11 76:25 77:1 82:24
87:22 88:24
telling 43:5

tells 46:15 71:25
ten 45:11 52:21 70:15,24
Tennessee 77:6,7,8
terminate 85:15,17
terms 39:18 49:20 79:17
81:6,9
testified 4:3 44:7 74:6
90:3
testifying 4:9 96:9
testimony 75:12 85:7
92:19 95:11 96:14
Texas 77:7,8
Thank 34:22 86:22 94:4
theses 15:4
thing 16:5 34:11 37:4
78:22
things 26:20,21 36:6
76:10
think 6:24 9:14 10:12,16
10:21,23 12:22 13:4,7
13:20 20:2 23:21 29:23
35:11 36:5 44:18,21
48:22 51:20,21 53:1
56:1 58:20 67:6,22
70:15 76:1 80:17
thinking 52:3 80:21
third 31:13 34:9 59:21,24
60:10,12 62:1 92:8
thirty 93:19
thought 71:20
three 6:20 83:1,2 89:17
time 14:16 21:6 25:6
26:14,20,22,23 27:2,2
29:21 31:6 32:19 45:19
46:6 64:11,19 71:4
73:14 74:6 83:4,11
84:23 85:12,18,19
88:12 92:15 94:4 96:7
times 71:7
titles 56:24
today 4:9 68:11 83:13
84:5 85:1 87:22
today's 17:7 18:22 19:13
22:10 63:14
total 52:16
trace 48:7
transcribed 96:12
transcript 93:16,19,20
93:23 95:8,11 96:13,16
transfer 31:5
transferred 36:13
transpired 25:10
transpiring 32:24
true 95:10 96:13
try 15:3
trying 10:1 16:4 17:3
25:23 27:14 44:13
62:23
twelve 52:21 91:2
twice 77:13
two 10:15 14:3,22 19:15
26:20,21 36:5 53:15,20
60:5 62:8 74:8 77:5
89:17
type 66:16 67:15
typically 8:3 67:13 72:6
72:21 74:18,19 75:18
75:19,20 76:10 77:13
79:16

Atkinson-Baker Court Reporters
www.depo.com

**U**

U.S 7:14
Uh 77:17
Umm 21:22
undersigned 95:6 96:3
understand 10:11 35:9
  36:5 65:5 90:19 91:16
understanding 85:12
unit 87:12
UNITED 1:1
unpack 12:18
updated 26:13,15,17
updates 31:3
upgrade 73:4 74:24 76:2
upgraded 74:10
upgrading 72:23 73:20
  73:23
uploaded 26:23
use 9:6 22:23 23:23 70:1
  71:11,15,23 72:1,10,15
  72:18 77:4 89:13 90:8
useable 17:2
uses 6:16

**V**

vague 8:15 23:9,15,16
  23:21 28:2 29:20 31:16
  32:2 33:5 35:4,19 40:8
  42:21 49:17 51:9 62:19
  64:18 66:18 68:1 69:11
  72:4 75:2 79:24 80:19
Vanderbeek 16:10,14
various 37:14 65:6
Vegas 1:18
vendor 9:19 13:17 24:20
  24:22 26:2,19 27:10
  29:6,17 30:23 32:16
  34:5,6,9 35:16,22 36:3
  36:7,18 39:11 42:16
  52:5 65:24 66:17 67:25
  69:22 70:11 71:2,8,10
  71:16,18,20,21,22,25
  72:23 76:8,9
vendors 4:24 6:12,15,18
  7:10 8:19 9:10,11 10:7
  13:19 17:19 22:19 23:7
  23:11 24:1,5,16,24
  25:11,16,21,22 26:12
  27:22 29:3,16 31:4
  33:3,10,16 34:14 35:24
  37:3,5,24 38:3,25
  39:10 43:7 50:22 53:24
  54:3 67:10 69:8,9,17
  69:24 70:8,9,25 80:4
  82:14 83:3 84:21 89:20
version 39:13,14 72:17
  72:24 73:20,21 74:23
  86:2
versions 74:9,12 90:15
versus 35:7
vice-present 4:13
vice-president 4:18 5:4
  5:11,14 16:14
viewed 28:10,25
ViewPointe 1:15
Vincent 44:15,17 45:19
  46:1,15 60:1
visits 78:7,9 79:5

voice 83:21
voicemail 61:18
voluntarily 54:4
VS 1:7

**W**

Wait 34:17 42:19 78:2
walk 79:6,16
want 16:2 21:23 23:18
  30:25 35:6 41:17 44:21
  52:18 64:3 65:15 66:15
  89:5 93:3
wanted 58:7 65:3 75:21
wants 20:13 72:21 90:21
warehouse 9:12
wasn't 52:4
watch 79:18
WAV 13:3,9,15,21 15:1
way 17:2 32:23 57:7 79:3
  79:4
we're 25:3 45:1 50:20
  72:10 74:24 93:11
week 12:12
went 51:3
West 2:8
whatnot 74:21
WHEREOF 96:22
withstanding 91:10
witness 3:2 5:9,20,22 6:1
  11:16 13:24 15:9,25
  18:1 20:25 21:25 22:19
  23:11 24:5 29:22 30:1
  31:9,18 32:4,13 33:8
  34:1 38:12 40:22 41:17
  42:12,22 44:1,10 46:7
  49:8,19 54:9,24 56:1
  59:12 60:24 64:20
  66:13,20 67:3,13 68:4
  68:16 70:3 72:6,14
  73:3,17 74:1 75:4,15
  76:16 77:19 80:2,9,22
  81:6 82:6 84:2,9 85:8
  85:13,20,21 86:13 88:7
  89:3,7,22 90:4,12,17
  90:20,23 91:20 92:19
  92:20 93:18 96:22
witness' 5:7
witness's 75:12
witnesses 96:8
word 6:10 23:23 28:3
  65:5 70:2
words 27:13
work 7:23 27:2 44:4,9
  79:1,19
working 70:14,20
works 8:4 69:16
wouldn't 9:2 29:6 59:3
  68:6 81:11,12
wrap 93:3
writes 87:16
wrong 54:17,18 58:16
  91:8,18 92:1,16
www.depo.com 1:23

**X**

x 3:1 96:16

**Y**

Y-E-N-O-V-K-I-A-N 69:1
yeah 30:4
year 77:13 78:15
years 4:17 5:5,14,15
  53:15,20 70:15,22,24
Yenovkian 68:24
YITZCHAK 2:4
yzelman@marcuszel...
  2:6

**Z**

Zelman 2:4,4 3:4 4:5
  5:12 8:17 11:17 14:1
  15:11 16:1,20 17:21,25
  18:7,8 19:1,8 20:12
  21:3,18 22:1,21 23:13
  23:19,25 24:7 27:19
  28:5,20,23 30:6 31:10
  31:20 32:8,14 33:12
  34:4,21,24 35:8,14,23
  38:15 40:10,25 41:19
  42:13,23 43:16,19 44:2
  44:11 45:23 46:9 47:16
  47:23 49:9,23 51:11
  54:10,25 55:18 56:2
  58:1,4,6,8 59:13 60:21
  61:1 62:22 63:7,11,12
  63:19,24 64:9,21 66:14
  66:21 67:4,16 68:8,17
  68:21 69:15 70:5 72:8
  72:16 73:5,18 74:4,16
  75:6,16 76:18 77:21
  78:5,10 79:10 80:3,11
  80:24 81:8 82:8,23
  84:3,11,19 85:11,22
  86:14,19,23 88:10,16
  89:10,24 90:6,19,25
  91:22 92:22 93:2,6,11
  94:2,4

**0**

041 57:7
07712 2:5

**1**

1 19:2,16 21:5 39:17
1/12/17 46:20
10:23 1:15
100 34:5,6 35:24
1020 2:13
11 19:2,16 21:5 39:17
12 19:4 36:23 46:13,15
12:45 94:6
1200 2:9
15 1:16
17 3:8
18 83:5 84:23
19 3:9,10 62:17,18 63:1

**2**

2 62:18 63:2,4
2:17-CV-01512-JAM-DB
  1:7
2:29 61:4
2:30 60:11,22 61:6
20 46:24
200 1:17 52:18,25

2013 83:5 84:24
2014 45:13 47:8 48:11,15
  49:1,13 51:2
2017 14:4,14,21 21:5
  46:8,13 56:4 57:21
  58:1,4,11,14,22 59:17
  59:20 60:11,22 62:25
  92:7
2018 1:16 96:23
21 58:14 59:17
22 59:20 60:11,22 62:24
25 14:13,22
26 19:4 36:23 48:11,15
  49:1,13
288-3376 1:22

**3**

3 46:11
30(b)(6) 1:14
30(b)6 84:2 85:8
300 2:5
308-9847 48:5 83:4
  84:22
34 14:5
35 14:6

**4**

4 3:4 88:17

**5**

5 48:2 96:23
515 2:12
582 1:25 96:25
5901 2:8

**6**

6.6 87:13
6.7 86:2 87:13 88:19,19
  89:8
63 3:11

**7**

7.3 87:13
701 2:5

**8**

8 14:4,14,21
800 1:22
82 3:14
8275 1:17
86 3:17

**9**

90 36:3
90045 2:9
90071 2:13
916 48:5 83:4 84:22
916-308-9847 22:6
9847 22:11,15 24:2 25:8
  25:12 31:12 38:24 39:5
  45:12,20 46:2,16,22,25
  48:10 51:8 52:15 83:14
  84:6 85:3 90:9

30(b)(6)Jeffrey Meek - Confidential
June 15, 2018