Charles R. Messer (SBN 101094)
messerc@cmtlaw.com
David J. Kaminski (SBN 128509)
Kaminskid@cmtlaw.com
Alex A. Wade (SBN 304022)
wadea@cmtlaw.com
CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, CA 90045
Tel: (310) 242-2200
Fax: (310) 242-2200
Attorneys for Defendant
CREDIT ONE BANK, N.A.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| N.L., an infant by his mother and natural guardian SANDRA LEMOS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC.,<br>　　　　Defendants. | Case No: 2:17-cv-01512-JAM-DB<br><br>**CREDIT ONE BANK, N.A.'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS** |

　　　　Defendant CREDIT ONE BANK, N.A. ("Defendant" or "Credit One") submits the following response to Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment (Docket No. 50-2), pursuant to Eastern District Local Civil Rule 260(b):

///

| **Plaintiff's Undisputed Facts:** | **Response to Plaintiff's Undisputed Facts:** |
|---|---|
| 1.    From February 20, 2017 to June 13, 2017, a total of 189 calls were placed by Defendants First Contact, iEnergizer and GC Services to the phone number (916)308-9847. (See, Credit One Bank's Call Log, annexed hereto as Exhibit A, pages 19-26; GC Services' Call Log, annexed hereto as Exhibit B). | 1. Undisputed. |
| 2.    The Plaintiff is currently a twelve-year-old child, who was ten years old when these calls started, and who turned eleven in April of 2016, while these calls were being received. (See, Deposition of N.L., annexed as Exhibit "C", 11:21-23). | 2. Disputed and immaterial. Further, Plaintiff turning eleven in April of 2016 is irrelevant since the calls at issue began in February of 2017. *See* Harwood Decl. ¶ 11. |
| 3.    From December 19, 2016 through the present, the infant Plaintiff's cell phone number was (916)308-9847. (See, Deposition of Sandra Lemos, annexed hereto as Exhibit "D", 41:1-13; 51:8-18). | 3. Disputed. The term "infant" is vague and ambiguous.  Further, the phrase "Plaintiff's cell phone number was (916)308-9847" is also vague and ambiguous.  Plaintiff testified that he was the authorized user of the -9847 phone number as of December 19, 2016.  Plaintiff's mother was the subscriber of the -9847 number as of December 19, 2016. *See* Ex. 7 to Wade Decl., Plaintiff's Deposition, 25:16-25 and 26:1-14.  Lastly, it is not presently know whether Plaintiff is still the authorized user of the -9847 number. |

| | |
|---|---|
| 4. During this time period, Plaintiff was the only person who used this phone number. (Ex. C, 26:6 – 27:11). | 4. Disputed. Defendant cannot confirm that Plaintiff was the only one who used the -9847 number. For one, Plaintiff's mother testified that Plaintiff passed her the phone when Plaintiff got a call from a consumer attorney named Kevin Crick when the calls began. *See* Ex. 8 to Wade Decl., Plaintiff's Mother's Deposition, 52:20-25 and 53:1-8. |
| 5. Plaintiff has been receiving calls from individuals identifying themselves as Credit One Bank representatives. (Ex. C, 35:18 – 36:5; Ex. E, 80:4-23). | 5. Disputed. Vague and ambiguous. |
| 6. These calls were, in fact, placed by GC Services Limited Partnership, iEnergizer Holdings, Limited, and First Contact, LLC a/k/a iQOR Holdings, Inc. (See, Deposition Of Jeffrey Meek, annexed as Exhibit "E", 6:15-19; 22:2-20; 23:7-12; Defendant's Response to Plaintiff's Interrogatories, annexed hereto as Exhibit F, page 4; Ex. A). | 6. Undisputed. |
| 7. Defendant did not have the consent of the Plaintiff to call his cellular phone. (Ex. E, 84:4-17). | 7. Disputed. The Bank's customer, D.V., provided express contractual consent for the Bank or its vendors to contact him about his account by calling his -9847 number. The Bank's vendors called -9847 for the sole purpose of contacting D.V. (the intended recipient) regarding his past due Credit One |

| | |
|---|---|
| | credit card account. Therefore, the Bank's vendors had consent to call the intended recipient. *See* Harwood Decl. ¶¶ 7 and 8. |
| 8.  These calls were all placed in an attempt to reach an individual named Derrick Vincent. (Ex. E, 44:12-15). | 8. Disputed for privacy reasons and because name spelled incorrectly. Undisputed that Defendant was trying to reach its customer, D.V., regarding his account. *See* Harwood Decl. ¶ 9. |
| 9.  Plaintiff does not personally know any individual named Derrick Vincent. (Ex. C, 71:4-21). | 9. Disputed. Defendant cannot say with certainty that Plaintiff does not know D.V. |
| 10.  Defendant Credit One Bank directly hired Defendants iEnergizer, First Contact and GC Services to call the Plaintiff's phone number in an attempt to collect a debt from this Derrick Vincent. (Ex. E, 69:16 – 70:10). | 10. Disputed as to the term "directly", which is vague and ambiguous. |
| 11.  On February 22, 2018 the Plaintiff answered a call from the Defendant and told them that he was a child and that they should stop calling him (Ex. C, 44:1 – 45:24). | 11. Disputed. Vague and ambiguous as to the term "Defendant".  Further, no calls were made to the -9847 number on February 22, 2018. Lastly, Plaintiff never told any Defendant that he was child and that they should stop calling him. *See* Harwood Decl. ¶¶ 11, 18 and 19. |
| 12.  Credit One Bank's representatives noted in Credit One Bank's account notes and system of record that they spoke with a third party on February 22, 2018. (Ex. E, 59:16 – 60:14). | 12. Disputed. Credit One Bank did not did not notate in its account notes that they spoke with a third party on February 22, 2018. *See* Ex. 4 to Harwood Decl. |

{00101495;1}

| | |
|---|---|
| 13. Although Credit One Bank retains the recordings of its calls with debtors for two years if a payment is made on that call, all other call recordings are only retained for ninety days. (Ex. E, 53:12-16). | 13. Disputed as immaterial and irrelevant. Credit One did not make any of the calls at issue so its recording retention policy is irrelevant. *See* Harwood Decl. ¶¶ 12 and 14. |
| 14. Credit One therefore does not know what was said during the February 22, 2017 call. (Ex. E, 92:6-13). | 14. Disputed. Credit One produced iEnergizer's February 22, 2017 recording (although it was originally produced and inadvertently mislabeled as March 11, 2017), and therefore, knows exactly what was said during the February 22, 2017 recording. *See* Harwood Decl. ¶ 13. |
| 15. If someone tells Credit One Bank that it has the wrong number and that Credit One is calling the wrong party, Credit One will only keep that recording for ninety days. (Ex. E, 54:11-24). | 15. Disputed. Immaterial and irrelevant. Credit One did not make any of the calls at issue therefore, their recording retention policy is irrelevant. *See* Harwood Decl. ¶¶ 12 and 14. |
| 16. From February 20, 2017 through March 16, 2017, iEnergizer placed 114 calls to the Plaintiff on behalf of Credit One Bank (Ex. A, pages 8-13). | 16. Disputed. Vague and ambiguous as to the phrase "on behalf of". Further, 115 calls were made by Defendant iEnergizer between February 20, 2017 and March 16, 2017. *See* Harwood Decl. ¶ 11. |
| 17. Each of these 114 calls were placed through version 7.3 of the Unified IP Aspect dialing system. (Ex. F, page 4). | 17. Disputed. 115 calls were place by iEnergizer. To the best of Credit One's knowledge, these calls were placed using Aspect Unified IP 7.3. *See* Harwood Decl. ¶ 11. |

| | |
|---|---|
| 18. From March 18, 2017 – March 26, 2017, GC Services placed forty-eight (48) calls to the Plaintiff on behalf of Credit One Bank. (Deposition of Shon Sherman, annexed hereto as Exhibit G, 9:8-22; 11:24 – 12:2). | 18. Disputed. Vague and ambiguous as to the phrase "on behalf of". |
| 19. Each of these 48 calls were placed through versions 6.7 and 7.3 of the Unified IP Aspect dialing system. (Ex. F, page 4; Ex. G, 28:15-22). | 19. Undisputed. |
| 20. The Aspect Unified IP dialing system used by iEnergizer and GC Services has the ability to automatically dial customer-provided telephone numbers, and can attempt to place the correct number of automatic calls in order to correspond to the number of contact center agents who are or will become available to speak with end users. (See, Declaration of Don Hudacek, annexed hereto as Exhibit H, ¶5) | 20. Disputed. Plaintiff relies on the declaration of Don Hudecek, which lacks proper factual foundation. Further, Plaintiff states an improper legal conclusion. |
| 21. Versions 6.7 and 7.3 of the Aspect dialing system – the versions used by iEnergizer and GC Services - each have predictive dialer capabilities and the ability to automatically dial customer-provided telephone numbers. (Ex. H, at ¶9). | 21. Disputed. Plaintiff relies on the declaration of Don Hudecek, which lacks proper factual foundation. Further, Plaintiff states an improper legal conclusion. |

| | |
|---|---|
| 22. Once the customer-provided phone numbers have been input into the Aspect Unified IP dialer, the product can then automatically dial the numbers according to the customer-defined and configured dialing rules. (Ex. H, at ¶4). | 22. Disputed. Plaintiff relies on the declaration of Don Hudecek, which lacks proper factual foundation. Further, Plaintiff states an improper legal conclusion. |
| 23. When using the Aspect dialing system, the dialer manager receives a file of accounts from Credit One with accounts that will be collected on that day. (Ex. G, 19:16-19; 44:23-25). | 23. Disputed. Vague and ambiguous and lacks foundation. |
| 24. The dialer manager then sets parameters for the accounts and phone numbers to be called that day, for example, deciding to call all accounts that are thirty days delinquent and to call home and cell phones. (Ex. G, 45:4-11). | 24. Disputed. Vague and ambiguous and lacks foundation. |
| 25. The Aspect system will then generate a list of phone numbers to be called, using the parameters set by the dialer manager. (Ex. G, 45:11-13; 46:8-19; 47:23-25; 53:1-3). | 25. Disputed. Vague and ambiguous and lacks foundation. |
| 26. The Aspect system will then place calls to those phone numbers, which are stored in the Aspect system during that time. (Ex. G, 52:1-5; 58:17 – 59:3). | 26. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |

| | |
|---|---|
| 27. There are no agents actually on the phone when a call is made in the predictive mode of the Aspect dialing system. (Ex. G, 61:14-18). | 27. Disputed. Vague and ambiguous and lacks foundation. |
| 28. Instead, the Aspect system launches the calls automatically, working off the list created that morning. (Ex. G, 62:19-23). | 28. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |
| 29. If the Aspect dialing system places too many calls, and there are more answered calls than available customer service representatives, the debtor who was called would then be placed on hold until an agent becomes available to talk to those called debtors. (Ex. G, 67:25 – 68:1-4). | 29. Disputed. Vague and ambiguous, immaterial and lacks foundation. |
| 30. A customer service representative using the predictive mode of the Aspect dialing system does not physically input a phone number or select a specific account to call before the system calls that number. (Ex. G, 70:16-23). | 30. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |
| 31. The Aspect Unified IP automatic dialing system is equipment that stores telephone numbers to be called and dials such numbers. (See, Declaration of Randall Snyder, annexed hereto as Exhibit I, at ¶38). | 31. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |

| | |
|---|---|
| 32. In addition, the Aspect UIP automatic dialing system is equipment that dials telephone numbers from a stored list of numbers without human intervention (Ex. I, at ¶38). | 32. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |
| 33. The Aspect UIP automatic dialing system can import lists call records to be stored for particular dialing campaigns. These call records contain one or more phone numbers to be automatically called by the dialing system. (Ex. I, at ¶36). | 33. Disputed. Vague and ambiguous, lacks foundation and states an improper legal conclusion. |
| 34. Credit One Banks's vendors are contracted and operate as Credit One Bank employees, and are contractually required by Credit One to solely identify themselves as Credit One Bank representatives when calling Credit One Bank cardholders. (Ex. E, 80:4 – 82:17; Ex. G, 20:19 – 22:10). | 34. Disputed. Vague and ambiguous as to the phrase "Credit One Bank's vendors". The vendors that made the calls at issue – iEnergizer, First Contact and GC Services - are independent contractors. *See* Harwood Decl. ¶¶ 22 and 28. |
| 35. Credit One Bank's vendors advise Credit One Bank of the dialing systems they use to contact Credit One Bank customers at the beginning of their business relationship, and then update Credit One Bank whenever any changes were made to that dialing system. (Ex. E, 71:10 – 72:19). | 35. Disputed. Speculative and vague and ambiguous as to the phrase "Credit One Bank's vendors". Further, states facts that are immaterial. |

///

///

|   |   |
|---|---|
|   | CARLSON & MESSER LLP |
| Dated: October 9, 2018 | By: <u>Charles R. Messer</u><br>Charles R. Messer<br>David J. Kaminski<br>Alex A. Wade<br>Attorneys for Defendant,<br>CREDIT ONE BANK, N.A. |

# CERTIFICATE OF SERVICE

I, Charles R. Messer, hereby certify that on this 9th day of October, 2018, a true and accurate copy of the foregoing CREDIT ONE BANK, N.A.'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS were served via the District Court ECF System on the Following:

Email: ari@marcuszelman.com
jonathan.a.stieglitz@gmail.com
yzelman@marcuszelman.com
paul.grammatico@kattenlaw.com
fhabib@behblaw.com
cocarroll@behblaw.com
margie@rudnickifirm.com

/s/Charles R. Messer
Charles R. Messer
CARLSON & MESSER LLP