UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.L., an infant by his mother and natural guardian SANDRA LEMOS,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC.,<br><br>Defendants. | No. 2:17-cv-01512-JAM-DB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT CREDIT ONE'S MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION TO STRIKE** |

N.L. ("Plaintiff") sued Credit One Bank, N.A. ("Defendant" or "Credit One") under the Telephone Consumer Protection Act (TCPA), Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"), and common law. Compl., ECF No. 1. The parties have filed cross-motions for summary judgment, and Plaintiff filed an additional motion to strike. Pl.'s Mot., ECF No. 50; Def.'s Mot., ECF No. 55; Mot. to Strike, ECF No. 59. For the
///
///

1

reasons set forth below, the Court DENIES all three motions.[1]

I. FACTUAL AND PROCEDURAL BACKGROUND

A customer of Credit One, D.V., provided a phone number ending in -9847 ("the -9847 number") to the bank upon opening an account in March 2014. Def.'s Undisputed Facts #1-4. D.V. subsequently relinquished that phone number, which was reassigned to Plaintiff on December 19, 2016. Def.'s Undisputed Facts #5. In an approximately four-month period between February 20, 2017 and June 13, 2017, Credit One's vendors called the -9847 number 189 times after D.V. failed to make timely payments. Pl.'s Statement of Undisputed Facts #1. Of those calls, 115 calls were made by Defendant iEnergizer between February 20, 2017 and March 16, 2017; 48 calls were made by Defendant GC Services between March 18, 2017 and March 26, 2017; and 26 calls were made by Defendant First Contact between April 8, 2017 and June 13, 2017.[2] Def.'s Undisputed Facts #9.

At the time of the calls, Plaintiff was ten or eleven years old and had no relationship with Credit One. Pl.'s Statement of Undisputed Facts #2. Plaintiff testified in his deposition that he answered one of the calls on February 21, 2017 and told the caller that he was a child and that they should stop calling.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 6, 2018.

[2] GC Services and First Contact have already settled with Plaintiff. Def.'s Reply, ECF No. 64, p. 1 n.1 (settling with First Contact for $10,000—$430 per call—and GC Services for $19,000—$395 per call). iEnergizer, an Indian company, has only recently been served. ECF No. 63.

2

N.L. Dep., ECF No. 55-10, p. 44. The call notes substantiate that the vendor spoke with a third-party on February 22, 2017.[3] ECF No. 65-2, p. 2. Plaintiff stated that he answered the phone one or two more times when Credit One's vendors called, but hung up when he heard them say they were debt collectors. N.L. Dep. at 47. He further testified that he tried calling Credit One about the calls between one and three times, but it "just took [him] to the phone system" and he did not continue because "[he] was looking for the person that had directly called [him], not the system." Id. at 48.

Plaintiff reported the phone calls through the Metro PCS app on his phone. Id. at 52. Plaintiff's mother testified that an attorney, Kevin Crick, called her to consult on the calls around the second week of January 2017, Lemos Dep., ECF No. 55-11, p. 53; however, the undisputed facts indicate that the calls did not begin until February 2017. The calls stopped in June 2017 after D.V. made a payment that resolved the outstanding debt. Def.'s Mot. at 4 n.3.

## II. OPINION

Plaintiff's Complaint alleges three claims: (1) violations of the TCPA, (2) violations of the Rosenthal Act, and (3) Invasion of Privacy by Intrusion Upon Seclusion. Compl. at 7-12. Plaintiff has moved for partial summary judgment on his

---

[3] Prior to summary judgment, Credit One reported that there was a recording of a single answered call between Plaintiff and a vendor that took place on March 11, 2017. Credit One now argues that this recording is of the February 22, 2017 call and that it disproves Plaintiff's account of the conversation.

3

TCPA claim and seeks resolution of his two other claims at trial. Pl.'s Mot., ECF No. 50-1, p. 1. Credit One filed a cross-motion for summary judgment, seeking dismissal of all three of Plaintiff's claims. See Def.'s Mot.

A. TCPA Claim

The TCPA provides individuals with a private right of action for certain prohibited uses of automated telephone equipment. 47 U.S.C. § 227(b)(3). The relevant text of the TCPA reads:

> It shall be unlawful for any person within the United States ...
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. ...

47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that Credit One's vendors violated the TCPA by using a predictive dialer to automatically call him 189 times to collect on D.V.'s debt.

1. Whether Defendants Used an Automatic Telephone Dialing System

Credit One first disputes whether Plaintiff has provided sufficient evidence upon which a reasonable trier of fact could conclude he was called using an Automatic Telephone Dialing System ("ATDS"). Def.'s Mot. at 5-11. Plaintiff argues that Defendants' use of a predictive dialer to automatically place calls to Plaintiff qualifies as use of an ATDS. Pl.'s Mot. at 5-12. Plaintiff also relies on an expert, who testified that the

4

dialing system used by Credit One's vendors, Aspect Unified IP, stores phone numbers and automatically dials them. See id.

The definition of an ATDS has been in flux over the past year. In March 2018, the D.C. Circuit overturned the FCC's definition of an ATDS, finding it was an "unreasonably expansive interpretation of the statute." ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687, 692 (D.C. Cir. 2018). The Ninth Circuit recently interpreted the TCPA's language to define a ATDS as "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1052 (9th Cir. 2018). Under this authority, a device that has the capacity to store phone numbers and dial them automatically would qualify as an ATDS, even if it did not create or develop the numbers dialed on its own. Id. at 1053.

Credit One argues that "[t]he Arbitrator should ignore Marks, and follow the D.C. Circuit, Second Circuit and Third Circuits' correct interpretation and application of the statutory definition of an ATDS." Def.'s Mot., ECF No. 55-1, p. 8 n.5. This argument ignores the fact that this Court is bound by Ninth Circuit precedent. Credit One goes on to challenge the admissibility of Plaintiff's expert's testimony, as the expert did not examine the specific system used by Credit One's vendors. Id. at 9-11. This evidentiary dispute can not be resolved within a summary judgment motion.

Based on the evidence provided, the Court finds that an issue of material fact exists as to whether Credit One's vendors

used an ATDS to call Plaintiff.

### 2. Whether Credit One Can Be Held Liable for the Acts of Its Vendors

Credit One next steers the Court to recent rulings on vicarious liability for telemarketers. Def.'s Mot. at 12. In the context of telemarketing calls, "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 674 (2016), as revised (Feb. 9, 2016) (citing In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013)).

Here, the calls were made to collect on a debt, rather than market a product or service. The FCC's order regarding debt collection calls states that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 565 (2008). "Calls placed by a third-party collector on behalf of that creditor are treated as if the creditor itself placed the call." Id. This does not mean that a creditor alone is liable. Rather, the FCC noted that "[a] third-party collector may also be liable for a violation of the Commission's rules." Id. at n.38. This language allows multiple parties to be held collectively responsible for debt collection calls for up to $500 per TCPA violation, or up to $1,500 per knowing or willful TCPA

violation. See 47 U.S.C. § 227(b)(3).[4]

Review of recent cases reveals no evidence that the FCC's 2008 ruling on creditor liability for third-party debt collection calls has been reversed or explicitly modified. Baemmert v. Credit One Bank, N.A., 271 F. Supp. 3d 1043, 1049 (W.D. Wis. 2017) (holding that the plaintiff's "failure to plead an agency theory or vicarious liability in his complaint is no basis for summary judgment," based on the 2008 FCC rule). Credit One attempts to distinguish the 2008 FCC order by noting that the cases citing to it did not mention contracts between the creditors and third-party collectors. Def.'s Reply, ECF No. 64, p. 5. This argument is unpersuasive. Presumably, third-party vendors do not volunteer to collect creditors' debt out of non-contractual generosity. There is a business relationship, likely governed by a contract, that leads a third-party to collect creditors' debts based on information provided by the creditor, such as the debt amount and debtor's name and phone number.

Credit One goes on to assert that it cannot be held liable for its vendors' TCPA violations because its contracts require vendors to comply with state and federal law. Def.'s Reply at 5. Credit One has not provided any argument as to why it could not seek to recover damages it might have to pay a debtor for TCPA violations by pursing its vendors for breach of the parties' contract.

Even if Plaintiff had to show that Credit One was the

---

[4] Plaintiff does not dispute that he cannot double-recover for each violation and is limited to $500 or $1,500 in damages per violation. See Pl.'s Reply at 20 n.22.

| | |
|---|---|
| 1 | principal of its third-party vendors under the common law theory |
| 2 | of agency, issues of material fact would remain.  The extent of |
| 3 | control exercised by the principal is the essential ingredient in |
| 4 | determining whether vicarious liability may be imposed.  Jones v. |
| 5 | Royal Admin. Servs., Inc., 887 F.3d 443, 450-51 (9th Cir. 2018). |
| 6 | In examining the authority a principal has over an agent, the |
| 7 | Ninth Circuit reviews a non-exhaustive list of ten factors: |

> (1) the control exerted by the employer, (2) whether the one employed is engaged in a distinct occupation, (3) whether the work is normally done under the supervision of an employer, (4) the skill required, (5) whether the employer supplies tools and instrumentalities [and the place of work], (6) the length of time employed, (7) whether payment is by time or by the job, (8) whether the work is in the regular business of the employer, (9) the subjective intent of the parties, and (10) whether the employer is or is not in business.

Id.  The Ninth Circuit also recognizes apparent agency as a ground for TCPA vicarious liability.  Thomas v. Taco Bell Corp., 582 F. App'x 678, 679-80 (9th Cir. 2014).  The evidence submitted could allow a reasonable jury to find Credit One was vicariously liable for its vendors' TCPA violations, where the vendors were hired by Credit One to collect debts and represented themselves as Credit One.  See C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc., 213 F.3d 474, 479-80 (9th Cir. 2000) ("the extent of an agent's authority is a question of fact and should not be decided on summary judgment").

Based on the facts submitted, even if the Court did not find the 2008 FCC order imposed liability on Credit One, a genuine issue of material fact would remain as to whether Credit One was vicariously liable for its vendors.

///

3. <u>Whether Plaintiff Has Standing Under the TCPA</u>

Credit One next argues that Plaintiff lacks standing to bring claims because he has not suffered any "injury in fact," citing <u>Spokeo, Inc. v. Robins</u>, 136 S.Ct. 1540, 1547 (2016). Def.'s Mot. at 28-29. Credit One asserts that the calls did not cause Plaintiff any actual harm and that he allowed the calls to continue after consulting with legal counsel. <u>Id.</u> This theory misstates the injury required to bring a TCPA claim and assumes a failure to mitigate statutory damages where no such duty existed. <u>See</u> <u>Ahmed v. HSBC Bank USA, Nat'l Ass'n</u>, No. EDCV152057FMOSPX, 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (collecting cases addressing the issue of whether there is a duty to mitigate damages under the TCPA).

"A plaintiff establishes injury in fact, if he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." <u>Van Patten v. Vertical Fitness Grp., LLC</u>, 847 F.3d 1037, 1042 (9th Cir. 2017) (internal quotation marks omitted) (disagreeing with defendants' claim that the plaintiff did not establish a concrete injury-in-fact necessary to pursue his TCPA claim in light of <u>Spokeo</u>). "The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." <u>Id.</u> <u>Van Patten</u> held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," a harm Congress identified when drafting the TCPA. <u>Id.</u> at 1043. The parties do not dispute that Credit One's vendors called Plaintiff, a child and

9

noncustomer, more than 150 times over a period of four months to collect on another person's debt. Plaintiff has standing to bring his TCPA claim, but disputes of material fact prevent the Court from granting summary judgment to either party on this claim.

### B. Rosenthal Act Claims

The Rosenthal Act prohibits a debt collector from attempting to collect a consumer debt by "(d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or (e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Civ. Code § 1788.11(d), (e). The Rosenthal Act is California's version of the Fair Debt Collection Practices Act, as it "mimics or incorporates by reference the FDCPA's requirements." Riggs v. Prober & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012) ("California has adopted a state version of the FDCPA, called the Rosenthal Act.").

Credit One argues that Plaintiff cannot maintain a claim under § 1788.11(e) because he did not "communicate" with the debt collectors. See Krapf v. Nationwide Credit Inc., 2010 WL 2025323, at *4 (C.D. Cal. 2010) (finding that § 1788.11(e) entails "actual contact between the debt collector and the debtor, rather than just '[c]ausing a telephone to ring.'"). This is a dispute of fact, however, as Plaintiff alleged he communicated with a vendor and requested the calls stop because he was a child and a noncustomer.

The Court also rejects Credit One's contention that the

calls to Plaintiff were not annoying or harassing because they went largely unanswered. Section 1788.11(d) prohibits "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called." Answering the phone and communicating with the debt collector is not a requirement of this subsection, nor is it a requirement for continuous and repeated calls to be an annoyance. "A creditor's voluminous calls, even if unanswered, can also warrant civil penalties, suggesting that the California legislature and other reasonable people could consider such conduct highly offensive." Romero v. Dep't Stores Nat'l Bank, 725 F. App'x 537, 540 (9th Cir. 2018); see also Meadows v. Franklin Collection Serv., Inc., 414 F. App'x 230, 234 (11th Cir. 2011) ("[A] ringing telephone, even if screened and unanswered, can be harassing, especially if it rings on a consistent basis over a prolonged period of time and concerns debts that one does not owe.") (considering a claim under the analogous provision of the FDCPA). Credit One cannot seek to hold a ten-year-old child responsible for not stopping its vendors' conduct.

Under the evidence presented by Plaintiff, Credit One's vendors called him over 85 times in a single month, at a rate of six or more calls per day, to collect an unrelated individual's debt. A reasonable jury could conclude that calling a child up to nine times per day over four months to collect on a debt he did not owe constitutes "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called." Cal. Civ. Code § 1788.11(d). Should a jury believe Plaintiff's testimony regarding the request to stop calling, they may also find that this constituted a communication and that the vendors' subsequent

11

conduct was harassing. Accordingly, the Court denies Credit One summary judgment on Plaintiff's Rosenthal Act claim.

   C.   Invasion of Privacy Claim

A claim for invasion of privacy under California common law requires Plaintiff to demonstrate "(1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." Safari Club Int'l v. Rudolph, 862 F.3d 1113, 1127 (9th Cir. 2017). "While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." Deteresa v. Am. Broad. Companies, Inc., 121 F.3d 460, 465–66 (9th Cir. 1997). In determining the degree of offensiveness, courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Id. (quoting Hill v. National Collegiate Athletic Ass'n, 865 P.2d 633 (Cal. 1994)).

Other district courts have found an intrusion upon seclusion claim may arise out of repeated and continuous debt collection calls. See, e.g., Masuda v. Citibank, N.A., 38 F. Supp. 3d 1130, 1135 (N.D. Cal. 2014) (denying a motion to dismiss where a bank called a noncustomer more than 300 times over seven months, up to six calls per day); Fausto v. Credigy Servs. Corp., 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (denying summary judgment on intrusion upon seclusion claim where defendants called plaintiffs

over 90 times, the content of those calls was harassing, defendants failed to identify themselves, and called back immediately after plaintiffs hung up).

Masuda is most analogous because it involved debt collectors calling a noncustomer over a hundred times in a relatively short period, including multiple calls per day. Masuda found that even though there was no evidence that the content of the calls was offensive, "the context of the constant calls viewed in light of the multiple requests that the calls stop (and confirmation from [the bank] that they would stop) and the fact that the calls were to a person confirmed to not be [the bank's] debtor, could be found by a reasonable jury to be highly offensive." 38 F. Supp. 3d at 1135.

Here, there is a dispute of fact as to whether Plaintiff requested the calls stop; however, there is no dispute that he was not a Credit One customer and that Credit One's vendors called him numerous times over several months. The fact that Plaintiff is a young child could potentially make this even more offensive in the eyes of a reasonable jury. Thus, issues of fact prevent the Court from granting summary judgment on Plaintiff's invasion of privacy claim at this juncture.

D. Motion to Strike

On October 23, 2018, Plaintiff filed a Motion to Strike seeking to bar Credit One from referencing or representing an audio recording as having transpired on February 22, 2017. Mot. to Strike at 1. Up until October 5, 2018, after Plaintiff had filed his motion for summary judgment, Credit One maintained that the recorded conversation occurred on March 11, 2017. Id. at 3.

Credit One believes its belated alteration of the recording's date is a harmless mistake. See Def.'s Opp'n to Mot. to Strike, ECF No. 65. Furthermore, Credit One argues that Plaintiff also changed his story regarding when the conversation occurred from February 21, 2017 to February 22, 2017. Id. at 6. As both parties have modified their allegations regarding when Plaintiff's conversation with Credit One's vendor took place, each will have to deal with the consequences. Plaintiff's motion to strike is denied.

III. ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment, Credit One's Motion for Summary Judgment, and Plaintiff's Motion to Strike.

IT IS SO ORDERED.

Dated: November 8, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE