Yitzchak Zelman (Admitted *Pro Hac Vice*)
New York Bar No. (5086509)
Email: yzelman@marcuszelman.com
**MARCUS & ZELMAN, LLC**
701 Cookman Avenue
Asbury Park, New Jersey 07712
Tel: (845)367-7146
Fax: (732)695-3282
Attorney for Plaintiff
N.L., an infant by his mother and natural guardian
SANDRA LEMOS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| N.L., an infant by his mother and natural guardian SANDRA LEMOS,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A., GC SERVICES LIMITED PARTNERSHIP, IENERGIZER HOLDINGS, LIMITED, and FIRST CONTACT, LLC a/k/a IQOR HOLDINGS, INC.,<br><br>Defendant. | **C.A. No. 2:17-cv-01512-JAM-DB**<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR TREBLED DAMAGES ON HIS TCPA CLAIM** |

## **TABLE OF CONTENTS**

**A. Preliminary Statement**..................................................................................1

**B. Trebled Damages Should Be Awarded In This Action**........................................1

**C. Conclusion**..................................................................................................14

**TABLE OF AUTHORITIES**

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011)..................................................................................1, 4

*Arbelaez v. Capital Advance Sols., LLC*,
   No. 15-23137-CIV, 2016 WL 2625020 (S.D. Fla. Jan. 20, 2016).....................12

*Baemmert v. Credit One Bank, N.A.*,
   271 F. Supp.3d 1043 (W.D. Wis. 2017)..............................................................10

*Bridgeview Health Care Ctr. Ltd. v. Clark*,
   2013 WL 1154206 (N.D.Ill. Mar. 19, 2013)..........................................................4

*Charvat v. Ryan*,
   116 Ohio St. 3d 394, 400, 879 N.E.2d 765, 771 (Ohio 2007).............................5

*Coniglio v. Bank of Am., N.A.*,
   2014 WL 5366248 (M.D. Fla. Oct. 21, 2014).....................................................11

*Cunningham v. Crosby Billing Servs., Corp.*,
   2018 WL 6424792 (E.D. Tex. Oct. 14, 2018).....................................................11

*Davis v. Diversified Consultants, Inc.*,
   2014 WL 2944864 (D. Mass. June 27, 2014)........................................................4

*Echevvaria v. Diversified Consultants, Inc.*,
   13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014)............5, 6

*Gambon v. R & F Enterprises, Inc.*,
   No. 6:14-CV-403-ORL-18, 2015 WL 64561 (M.D. Fla. Jan. 5, 2015)...............12

*Harris v. World Fin. Network Nat. Bank*,
   867 F.Supp.2d 888 (E.D.Mich.2012)...............................................................4, 13

*In re Dynasty Mtge., L.L.C.*
   22 F.C.C.R. 9453 (2007)..........................................................................................5

*j2 Global Communications Inc. v. Blue Jay Inc.*,
   No. C 08-4252 PJH, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009)....................11

*King v. Time Warner Cable*,
    113 F. Supp. 3d 718 (S.D.N.Y. 2015)..................................................................................7
*Moore v. Dish Network LLC*,
    57 F. Supp. 3d 639 (N.D.W. Va. Oct. 15, 2014)..................................................................13
*Roylance v. ALG Real Estate Servs., Inc.*,
    2015 WL 1522244 (N.D. Cal. Mar. 16, 2015)..................................................................4, 10
*Sengenberger v. Credit Control Servs., Inc.*,
    2010 WL 1791270 (N.D.Ill. May 5, 2010)............................................................................4
*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012)..................................................................................................4
*Tacoronte v. Tate & Kirlin Assocs.*,
    No. 6:13–cv–331, 2013 WL 5970720 (M.D.Fla. Nov. 8, 2013).........................................12
*Texas v. Am. Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001)................................................................................11
*Warman v. Law Office of Daniel M. Slane*,
    2017 WL 971196 (W.D.N.Y. Mar. 13, 2017)......................................................................12


Statutes And Other Sources

47 USC § 227 (b)(3)......................................................................................................................1
47 USC § 312(f)(1).........................................................................................................................4

**A. Preliminary Statement.**

There are the innocent, unknowing, non-egregious violations of the TCPA. For those innocent mistakes, the strict liability TCPA provides a mandatory award of $500.00 per call. When the violations of the TCPA are not nearly so innocent, or so unknowing, the TCPA gives the Court the ability to triple that award, up to $1,500.00 per call.

<u>This is one of those cases.</u>

**B. Trebled Damages Should Be Awarded In This Action.**

The TCPA provides a basic statutory award of $500.00 for each call placed in violation of the statute: "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State ... (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *See,* 47 USCA § 227(b)(3)(B). The statute also contains a provision allowing for trebled damages, if the court finds that "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection…." 47 USCA § 227 (b)(3). "The TCPA is essentially a strict liability statute" and as such, calling parties are liable even for innocent violations of the Act. *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.), <u>cert. denied</u>, 132 S.Ct. 553, 181 L.Ed.2d 397 (2011). While the $500.00 per

call is warranted for innocent mistakes of the law, the trebled damages available under the TCPA are appropriate when the violation is somewhat more egregious.

This is a case that warrants trebled damages. At trial, the Plaintiff testified that he told Credit One on February 22, 2017 that (1) he was just a kid, that (2) they had the wrong number, and that (3) they should stop calling him.[1] While the Plaintiff's Call Log (Plaintiff's Exhibit 5) created some confusion – because it noted that this call took place on February 21, 2017 at 11:04 a.m. - the Plaintiff testified that this date could not possibly be right. This is because Plaintiff was in school at that time, and that the call took place around 2:30 p.m., right after he left school for the day.[2] Indeed, the Defendant's own account notes reflect that Credit One's representatives spoke with an unidentified 'third party' on February 22, 2017 (<u>the very next day</u>) at 2:29 p.m.[3] So, while there was some initial confusion about whether Defendant and Plaintiff spoke on February 21 or February 22, 2017, the trial record was clear that there was a conversation between the Plaintiff and Defendant on February 22, 2017 at 2:29 p.m.

At trial, Credit One offered zero admissible evidence to dispute Plaintiff's testimony as to what he told Credit One Bank's representative on the February 22nd call. Throughout this litigation, Credit One has maintained that it had no recording of that

---

[1] *See,* Trial Transcript from Day 2, Afternoon, annexed hereto as Exhibit A, 29:3-6 ("It was after school, and I picked up my phone. I said, hello. Is this D. V.? I told them I don't owe debt. I don't know who you are. I don't know anything. This is the wrong number. Might have also said that I was a minor and hung up").
[2] *See,* Exhibit A, 29:7-19.
[3] *See,* Plaintiff's Trial Exhibit 1, at COB 2, at the very last line ("SPKW [spoke with] 3rd").

2

conversation.  In October of 2018, months after the close of fact discovery, Credit One claimed that it had 'discovered' a mistake, and that a previously innocuous recording was now the February 22, 2017 recording.  At trial, this Court ultimately found that this recording could not possibly be authenticated and was therefore inadmissible.

At trial, Credit One then tried to obfuscate the issue, and claimed that their own February 22, 2017 notation of 'Spoke with third party' *could* potentially mean that Credit One simply reached someone whose identity could not be verified.[4]  Ultimately, however, Credit One conceded that the notation 'Spoke with third party' is *also* used when Credit One reaches someone who tells Credit One that they are not Credit One's customer.[5]   Other than its own guesses as to all the possible scenarios that the 'Spoke with third party' notation could encompass, Credit One was unable to offer any real evidence or testimony at trial as to what actually happened on this February 22nd call.  As such, the only admissible evidence in this action about that call is (1) the Plaintiff's sworn testimony as to what happened during that conversation, and (2) Defendant's corresponding notation of 'Spoke with Third Party'.

The undisputed evidence at trial therefore showed that - on February 22, 2017 - Credit One was told that it was not reaching its debtor, that it was calling the wrong person, and that the person being called desired for the calls to stop.  Credit One simply did not care, and continued to call the infant plaintiff another 183 times using automated

---

[4] *See,* Exhibit A, 69:24 – 70:23.
[5] *See,* Exhibit A, 70:24 – 71:2.

3

dialers that "lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012).

The Defendant's intentional conduct in using these automated dialing systems to blast the infant Plaintiff's cellular phone with hundreds of calls was clearly in violation of the TCPA, and was further 'willful', warranting enhanced damages of $1,500.00 per call. "Most courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware that it was violating the statute." *Davis v. Diversified Consultants, Inc.*, 2014 WL 2944864, at *6 (D. Mass. June 27, 2014), *citing, Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (holding that the TCPA requires mere "knowing" conduct); *Harris v. World Fin. Network Nat. Bank*, 867 F.Supp.2d 888, 896–97 (E.D.Mich.2012); *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270 (N.D.Ill. May 5, 2010); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206 (N.D.Ill. Mar. 19, 2013).

This interpretation is supported by the statutory framework as well. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." *See, Roylance v. ALG Real Estate Servs., Inc.,* 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015), <u>citing</u> to Section 312(f)(1), Title 47, U.S.Code; *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, at

4

*6 (same). Moreover, the FCC "examined the TCPA and determined that a willful violation means that the 'violator knew that he was doing the act in question and that the violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.'" *Charvat v. Ryan*, 116 Ohio St. 3d 394, 400, 879 N.E.2d 765, 771, <u>citing</u> *In re Dynasty Mtge., L.L.C.* (2007), 22 F.C.C.R. 9453, at 9470, fn. 86.

As established at trial, on February 22, 2018, the Plaintiff clearly told Credit One to stop calling him, a kid who had no relationship with Credit One. Credit One is therefore liable in strict liability for the six calls made up to, and including the 2:29 p.m. call on February 22, 2018, and the Plaintiff should be awarded $500.00 for each of these calls. The remaining 183 calls made to the infant Plaintiff after that 2:29 call were all made after Credit One was specifically told that it was calling the wrong number. Credit One apparently shrugged its collective shoulder and proceeded to act as if that conversation had never occurred, by immediately resuming the campaign of 4-8 calls per day, every day, for another four months. Furthermore, Credit One knew that its vendors were using these automated dialers to call its customers.[6] Under such facts, there can be no question that treble damages are warranted in this action.

This **exact** fact pattern warranted treble damages in *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014). After receiving a

---

[6] *See,* Trial Transcript From Day 1, Afternoon, annexed as Exhibit B, 101:3-25.

5

collection call for another individual, the *Echevvaria* plaintiff called the collection agency, advised that she was not that individual, and asked for the calls to stop. *See id.,* at *1. The collection agency nevertheless persisted in calling the *Echevvaria* plaintiff another 26 times. *See id.* The collection agency further denied that it had <u>ever</u> spoken with the *Echevvaria* plaintiff. *See id.*

The *Echevvaria* court found that treble damages were warranted for the 26 calls that were placed after the alleged conversation: "the Court finds that Diversified's conduct was willful because Diversified knew or should have known that (1) it was using LiveVox, that was (or at least might be held to be) an ATDS and (2) it was calling the wrong person despite being notified of the error on February 1, 2013. No reasonable juror could conclude otherwise." *Id.,* at *11. The *Echevvaria* plaintiff was awarded $500.00 for the first call, because "prior to Echevarria notifying Diversified that she was not Magda Molano, Diversified could not have known that it was calling Echevarria without consent." *Id.* She was then awarded $1,500.00 per call for the remaining calls, because "the remaining twenty-six calls were made after Echevarria informed Diversified on February 1, 2013 that she was not Magda Molano." *Id.*

The *Echevvaria* court further rejected the notion that the collection agency could simply use its self-serving denial to counter the plaintiff's sworn testimony as to what actually occurred during her conversation with the collection agency. Specifically, and

6

just as in this case, the collection agency's account notes showed that the call had connected. *See id.,* at *10. The *Echevarria* court concluded that

> This is especially significant given Diversified's conclusory position that it never spoke with Echevarria, and because every other phone call made by Diversified to Echevarria's number resulted in a dropped call, a no answer, or a hang-up. Thus, Echevarria has substantiated her claim with both sworn testimony and supporting documentary evidence, while Diversified has offered nothing beyond a misconstrued portion of Echevarria's deposition transcript and a conclusory statement in a Diversified employee's affidavit that is undercut by Diversified's own records. **There may be a dispute, but it is not a genuine dispute**.

*Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV. 4980 LAK AJP, 2014 WL 929275, at *10 (S.D.N.Y. Feb. 28, 2014), report and recommendation adopted, No. 13 CIV. 4980 (LAK), 2014 WL 12783200 (S.D.N.Y. Apr. 22, 2014).

These are the exact facts the Court has before it here. The Plaintiff has testified under oath that he told Credit One they were calling the wrong person. Credit One denies ever speaking with Plaintiff, but its account records show the notation 'Spoke with Third Person' on the date and time in question. Other than guessing what that notation could have meant, Credit One could not otherwise say what happened on that call. As in *Echevarria,* "there may be a dispute, but it is not a genuine dispute" as to what therefore happened on that call.

Treble damages were also awarded under closely similar circumstances in *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 726–27 (S.D.N.Y. 2015). In that action, the plaintiff signed up for cable services with TWC and in doing so, agreed to the following terms of service: "We may call any number you provide to us (or that we

issue to you) for any purpose, including marketing of our Services.... However, if you ask to have your number placed on our 'do not call' list, we will not call you at that number for marketing purposes....We may use automated dialing systems or artificial or recorded voices to call you." *Id.,* at 722. TWC then placed calls to the *King* plaintiff, mistakenly attempting to reach a different TWC customer named Luis Perez. In October of 2013, the *King* plaintiff called TWC and told them to stop calling her cellular phone. However, TWC continued to place these calls.

In finding that treble damages were properly awarded for each of the calls following the October 2013 phone conversation, the *King* court found that "After October 3, 2013, TWC had knowledge through its agent that King did not consent to further robo-calls. Therefore, Defendant's subsequent calls were knowing violations and treble damages are appropriate." *Id.,* at 727. TWC argued against the imposition of trouble damages, claiming that "it is an unwitting victim of an unpredictable statute which was not intended to turn 'what most people think of as an innocuous call to a wrong number' into large damages awards. TWC argues that damages would deter legitimate businesses from reaching out with useful information to customers that wish to be contacted." *Id.* The *King* court rejected this argument finding that "the statute is not unpredictable; companies like TWC are on clear notice that autodialing phones is prohibited by default." *Id.* The district court pointed out that TWC could have still contacted its customer without fear of violating the statute, if it so wished: "**A responsible business in TWC's position might have dispatched a live agent to reach**

8

**out to Luiz Perez after the IVR failed to reach him the first several times**…..**The responsible company will reduce its exposure dramatically by taking proactive steps to mitigate damages, while its competitor, who unthinkingly robo-dials the same person hundreds of time over many months without pausing to wonder why it cannot reach him, cannot complain about much higher liability**." *Id.*

As in *King,* Credit One has tried to play the innocent card, and to argue that its incessant 8 calls a day are actually desired by its customers. But what we learned at trial is that (1) D.V. never actually gave his phone number to Credit One, who instead 'captured' that phone number when its customer ('D.V.') called from that number in 2014[7], and that (2) of the 412 calls placed by Credit One to that phone number over the years, *not a single one* was ever answered by D.V[8]. Moreover, before calling the first call to the Plaintiff on February 20, 2017, Credit One had not placed calls to that phone number since June 9, 2016, 8 ½ months earlier[9]. However, even after that large gap in time, Credit One did <u>nothing</u> to make sure that the phone number was still a good contact number for its client before ramping up its dialing machine in February of 2017.[10]

Given these facts, Credit One cannot possibly hide behind the guise of innocence in making these hundreds of calls to the Plaintiff. Instead, treble damages should be

---

[7] *See,* Exhibit B, 57:5 – 58:1.
[8] *See,* Trial Transcript from Day 2, Morning, annexed hereto as Exhibit C, 40:8 – 41:2.
[9] *See,* Exhibit C, 42:19 – 43:15.
[10] *See id.*

9

awarded so that Credit One is more proactive in the future in (1) verifying the phone numbers it calls, before blasting those numbers with 8 calls per day, and (2) being more effective in honoring Do-Not-Call requests. As one California court held "Awarding treble damages would serve to deter defendants from making calls that violate TCPA in the future and thereby promote the purpose of the TCPA." *Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *11 (N.D. Cal. Mar. 16, 2015).

This deterrence is key, because courts have *already* found that Credit One's violations of the TCPA are willful. *See, Baemmert v. Credit One Bank, N.A.,* 271 F. Supp.3d 1043, 1052 (W.D. Wis. 2017). In that action, Credit One's vendors (the same vendors used here, First Contact and iEnergizer) called the *Baemmert* plaintiff 60 times in 12 days, even after he repeatedly asked for these calls to stop. *See id.,* at 1045. The *Baemmert* court found at summary judgment that Credit One's conduct was willful, finding that "Credit One was aware of its obligations under the TCPA, as it has been sued over a dozen times in the past for TCPA violations. The initial calls might have been made in error, but Baemmert repeatedly informed the collectors to stop calling, and yet the calls continued. Because the violations were willful and knowing, the court has the discretion to increase the damages up to $1,500 per call. The court will exercise its discretion and set a damages amount after trial." *Id.,* at 1052.

10

This is hardly the first time that Credit One disregarded the requests of called parties for the calls to stop.[11] *See also, Cunningham v. Crosby Billing Servs., Corp.*, 2018 WL 6424792, at *10 (E.D. Tex. Oct. 14, 2018)(finding willfulness when the defendants "had a reason to know, or should have known, that their conduct would violate the TCPA, or that their conduct was 'more than negligent.' "); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) (finding that defendants' TCPA violations were willful and knowing as defendants knew that their conduct reasonably could be in violation of the TCPA based on a court order and defendants continued violative actions thereafter); *j2 Global Communications Inc. v. Blue Jay Inc.*, No. C 08-4252 PJH, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (finding defendant's TCPA violations were willful and knowing as defendant had been sued under the TCPA several times before).

As in *Echevarria, King* and *Baemmert,* the district court in *Coniglio v. Bank of Am., N.A.*, 2014 WL 5366248 (M.D. Fla. Oct. 21, 2014) was similarly faced with a borrower who instructed his bank to stop calling him. Citing *Echevarria,* the *Coniglio* court awarded the plaintiff $1,051,000.00, calculated at $1,500.00 per call for each call placed following the request to the caller to cease calling the plaintiff's cell phone. *See*

---

[11] *See,* Exhibit B, 81:12-25 ("Q. Have you ever encountered this type of scenario before where you were calling the wrong person when you were trying to reach your subscriber or your customer? A. Yes. Q. Okay. Is it common for a number to be reassigned from one person to the next and for you not to know about it? A. Yes. We rely on our customers to – or the new subscriber to let us know if we call") and Exhibit B, 85:21 – 86:2 (Q. Okay. Have you ever come across cases where the plaintiff has told -- has maintained that they told Credit One to stop calling, but Credit One says it has no record of such a request? A. Yes. Q. So that's happened to you before, right? A. Yes.").

11

*id.,* at *5.[12] The district court in *Arbelaez v. Capital Advance Sols., LLC*, 2016 WL 2625020 (S.D. Fla. Jan. 20, 2016) agreed with *Coniglio*, finding that "Plaintiff has established that Defendant knowingly and willfully violated the TCPA and that Plaintiff is entitled to treble damages for all calls received, excluding the first initial call" where the calls continued even after the defendant was specifically told to stop calling on that first call. *See id.,* at *1-2. *See also, Tacoronte v. Tate & Kirlin Assocs.*, 2013 WL 5970720, at *8 (M.D.Fla. Nov. 8, 2013) (awarding treble damages for all calls after the consumer told collection agency that they had the wrong number): *Gambon v. R & F Enterprises, Inc.*, 2015 WL 64561, at *5 (M.D. Fla. Jan. 5, 2015)(awarding $1,500.00 per call for each call placed after the *Gambon* plaintiff requested that he be removed from Defendant's dialing system); *Warman v. Law Office of Daniel M. Slane*, 2017 WL 971196, at *6 (W.D.N.Y. Mar. 13, 2017)(awarding trebled damages and finding that "before awarding treble damages for any willful or knowing violations of the TCPA, a court should have evidence that a defendant was aware or should have been aware that it called an individual after he or she asked that the calls stop or that the defendant knew it was violating the TCPA but kept calling anyway").

---

[12] The *Coniglio* judgment was entered on default. After the district court subsequently denied Bank of America's motion to vacate the default judgment, the Bank appealed to the Eleventh Circuit which reversed the denial of that motion. *See, Coniglio v. Bank of Am., NA*, 638 F. App'x 972, 973 (11th Cir. 2016). However, the Eleventh Circuit did not disturb or otherwise call into question the willfulness analysis of the district court.

The same facts were presented in *Moore v. Dish Network L.L.C.*, 2014 WL 5305960 (N.D.W. Va. Oct. 15, 2014). The *Moore* plaintiff called Dish Network and requested that the calls cease. Dish Network continued to call, using a predictive dialer. The *Moore* court accordingly found that the calls following the call containing the cease and desist request were placed in willful violation of the statute, and accordingly awarded treble damages ($1,500 per call) for those calls. The same result was reached in *Harris v World Fin. Network Nat. Bank*, 867 F Supp 2d 888, 891 (ED Mich 2012). The *Harris* plaintiff had called back the debt collection agency, and requested that the calls to her cell phone cease. The *Harris* court accordingly found that the calls made to the *Harris* plaintiff following the aforementioned telephone conversation to be made in 'willful' contravention of the statute. *Id.* at 896.

The same factors raised in each of the above holdings are present in the instant action. The record is clear that Credit One started calling the infant Plaintiff, trying to reach an unrelated third party who was the prior subscriber of the Plaintiff's cellular phone. On February 22, 2018, the Plaintiff told Credit One that it had the wrong number. Credit One's insistence on continuing its calls in light of that uncontroverted testimony is exactly the type of conduct that courts have found willful, and as such, this is a case that warrants trebled damages under the statute.

**C. Conclusion.**

At trial, the jury agreed that each and every one of the 189 calls in this case were placed in violation of the TCPA. But this is not a case where Credit One simply and innocently placed 189 calls to a number its customer willingly gave it. This is a case where Credit One (1) captured a phone that was used to call it once in 2014, (2) placed 412 calls to that phone number, at a rate of 8 calls per day, even though its customer never answered a single one of those calls, and (3) kept calling that number even after the uncontroverted evidence reflects that it was told it had the wrong number on February 22, 2017.

If $500 a call is warranted for innocent, unknowing, violations of the TCPA, then the $1,500 per call allowed by the TCPA should be awarded when the facts are somewhat more egregious. It is respectfully submitted that this is clearly such a case.

Dated: February 13, 2019

By: /s/ Yitzchak Zelman
Yitzchak Zelman (YZ5857)
Marcus & Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (845)367-7146
Fax: (732) 298-6256
Email: yzelman@MarcusZelman.com

*Attorney for Plaintiff N.L., an infant by his mother and natural guardian SANDRA LEMOS*