

Jun 03, 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

N. L., an infant by his mother and natural guardian Sandra Lemos,
*Plaintiff-Appellee*,

v.

CREDIT ONE BANK, N.A.,
*Defendant-Appellant*,

and

GC SERVICES LIMITED PARTNERSHIP; IENERGIZER HOLDINGS, LIMITED; FIRST CONTACT, LLC, AKA Iqor Holdings, Inc.,
*Defendants*.

Nos. 19-15399
19-15938

D.C. No.
2:17-cv-01512-JAM-DB

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Submitted March 25, 2020*
San Francisco, California

Filed June 3, 2020

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: Ronald M. Gould, Morgan Christen, and Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[**]

### Telephone Consumer Protection Act

The panel affirmed the district court's judgment after a jury trial in favor of the plaintiff in an action under the Telephone Consumer Protection Act.

Defendant Credit One Bank's vendors made automated calls to an eleven-year-old boy's cell phone. Credit One was trying to collect past-due payments from a customer, but the customer's cell phone number had been reassigned to the boy's mother, who let her son use the phone as his own. The customer had given consent to be called, but the boy and his mother had not.

The TCPA exempts from liability automated calls made with the "prior express consent of the called party." Agreeing with other circuits, the panel held that the consent of the person it intended to call did not exempt Credit One from liability under the TCPA. Accordingly, the district court properly instructed the jury that consent from the intended recipient of the call was not sufficient.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel also held that, following *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the district court properly instructed the jury on the definition of an "automatic telephone dialing system," the use of which is prohibited under the TCPA. The panel noted a circuit split on the holding of *Marks* that the TCPA's definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator.

In a concurrently filed memorandum disposition, the panel addressed the district court's award of attorneys' fees.

---

## COUNSEL

Noah A. Levine, Alan E. Schoenfeld, and Stephanie Simon, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for Defendant-Appellant.

Yitzchak Zelman, Marcus & Zelman, Asbury Park, New Jersey, for Plaintiff-Appellee.

---

## OPINION

BRESS, Circuit Judge:

Over a period of four months, Credit One Bank's vendors made 189 automated calls to an eleven-year-old boy's cell phone. Credit One was trying to collect past-due payments from a customer, but, unbeknownst to the bank, the customer's cell phone number had been reassigned to Sandra Lemos, who in turn had let her son, N.L., use the phone as his own. N.L. sued Credit One for the torrent of

unwelcome calls. Among other things, he alleged that Credit One violated the Telephone Consumer Protection Act (TCPA), which makes it unlawful to call a cell phone "using any automatic telephone dialing system," or ATDS, without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A).

The principal question in this case is whether Credit One can escape liability under the TCPA because the party it intended to call (its customer) had given consent to be called, even though the party it actually called had not. Consistent with every circuit to have addressed this issue, we hold that this argument fails under the TCPA's text, most naturally read. Credit One is therefore liable under the TCPA for its calls to N.L. We affirm the district court in this and all respects.

I

Credit One is a national bank that provides credit card services. When its customers fall behind on payments, Credit One hires vendors to make collection calls to the delinquent cardholders. D.V. was a Credit One customer who, in 2014, gave the bank his consent to be called on a cell phone number ending in -9847 (the plaintiff here disputes that D.V. gave sufficient consent, but we will assume D.V. did so). About two years later, and without Credit One's knowledge, the phone number was reassigned to Sandra Lemos. Lemos then allowed her minor son N.L. to use the number.

When D.V. fell behind on his credit card payments, three of Credit One's vendors started calling the -9847 number to collect the outstanding amounts. The vendors ultimately called the number 189 times between February 20, 2017 and June 13, 2017. In one instance, N.L. received eight calls in

a single day, all before noon. On another occasion, Credit One vendors called N.L. six times; three calls were made in the same hour and two were made within a minute of each other. To place the calls, the vendors used dialing systems that call specific numbers from preset lists.

N.L., acting through his mother as guardian ad litem, sued Credit One and its vendors for the unwanted calls, bringing claims under the TCPA, California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.*, and California's common-law tort of invasion of privacy. Among other things, the TCPA creates a private right of action to "recover for actual monetary loss from [unlawful communications], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

N.L. settled with the vendors and his claims against Credit One were then tried before a jury. On the issue of consent to receive the calls, the jury heard evidence that D.V. had agreed to be contacted at the -9847 number and that Credit One's vendors had intended to reach D.V. when they called that number.

At the close of trial, the parties submitted proposed jury instructions. Credit One asked that the jury be instructed that it must find for Credit One under the TCPA if Credit One or its vendors had "a good-faith basis to believe that they had consent to call N.L.'s telephone number." Credit One also sought an instruction that would negate liability if the jury found "it was reasonable for Credit One Bank to rely on D.V.'s prior express consent to call the number -9847."

The district court rejected both proposals. Instead, the court instructed the jury that "[t]he law requires the consent of the current subscriber of the called phone, in this case

Sandra Lemos, or the consent of the nonsubscriber, customary user of the called phone, in this case, [N.L.]. Consent from the intended recipient of the call, that is, D.V., is not sufficient."

After a three-day trial, the jury returned a verdict for N.L. on his TCPA claim, resulting in $500 in statutory damages for each of the 189 unwanted calls, for a total of $94,500. *See* 47 U.S.C. § 227(b)(3)(B). The jury also found for N.L. on his Rosenthal Act claim, awarding him $1,000 in statutory damages but no actual damages. The jury found for Credit One on N.L.'s invasion of privacy claim. Credit One timely appealed the judgment.

The district court subsequently denied N.L.'s post-trial motion for treble damages under the TCPA but granted his request for attorneys' fees and costs under the Rosenthal Act. Credit One timely appealed the fee award, and we consolidated the appeals.

II

When a caller who is otherwise subject to the TCPA phones someone who has not consented to its calls, can the caller avoid liability under the TCPA's ATDS prohibitions if the person it *intended* to call had consented to the calls? We have never answered this question. But the Seventh and Eleventh Circuits have, and they both rejected Credit One's same "intended recipient" interpretation. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251–52 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639–43 (7th Cir. 2012). The D.C. and Third Circuits have also voiced support for the Seventh and Eleventh Circuits' positions. *See ACA Int'l v. FCC*, 885 F.3d 687, 706 (D.C. Cir. 2018); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 & n.13 (3d Cir. 2015). Reviewing the district court's

jury instructions de novo for legal error, *Navellier v. Sletten*, 262 F.3d 923, 944 (9th Cir. 2001), we agree with our sister circuits.  Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.

This follows from the language of the TCPA itself.  We interpret the statute in accordance with its ordinary and natural meaning, considering the key statutory terms in the context in which they are used.  *E.g.*, *Hall v. United States*, 566 U.S. 506, 511 (2012); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810, 812 (9th Cir. 2016).  In this case, Credit One's argument founders on the more probable meaning of the TCPA's term "called party," and the statutory context that inescapably amplifies what Congress meant (and did not mean) when it used that term.

The TCPA exempts from liability those ATDS-generated calls made with the "prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  In context, the provision reads as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > (A) to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice—

. . .

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service *for which the called party is charged for the call* . . . .

*Id.* § 227(b)(1) (emphasis added).

One notices that this provision nowhere references an "intended" recipient of the calls. *Soppet*, 679 F.3d at 640 ("The phrase 'intended recipient' does not appear anywhere in § 227 . . . ."). Credit One's argument thus starts off in the backseat, for there is no obvious statutory text on which to ground an "intended recipient" interpretation. And as we now walk through how the undefined term "called party" is used in the statute, Credit One's interpretation becomes more and more untenable as every statutory reference to "called party" is considered.

Start first with the core "consent" provision in § 227(b)(1), which prohibits using an ATDS to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)." Under the statute, the "call" that is "made" is the call that is *received*, for it is this received call that provides the basis for the private cause of action and thus civil liability. *See generally* 47 U.S.C. § 227(b). When the statute then goes on to create an exemption for calls made "with the prior express consent of the called party," it would be odd if "called party" referred to some third person external to the potentially actionable communication, *i.e.*, someone whom the caller had *not* in fact called, but who had previously given consent

to be called.  A "called party"—in the past tense—is at the very least one to whom a call was made.  As the Seventh Circuit reasoned, "[s]uppose Smith, trying to reach Jones, dials the number with a typo and reaches Perkins, who says 'you have the wrong number.'  No colloquial user of English would [describe] Jones rather than Perkins [as] the 'called party.'"  *Soppet*, 679 F.3d at 641.

As we work further through the TCPA, Credit One's "intended recipient" theory meets only more resistance.  Staying within § 227(b)(1), and after the "called party" consent exception we have just discussed, is a list of telecommunication services to which the TCPA's prohibitions on automatic telephone dialing systems apply.  *Id.* § 227(b)(1)(A)(iii).  This clause (iii) extends these prohibitions to various services (cell phones are among them) and goes on to say that it applies to "any service for which the *called party is charged for the call*."  *Id.* (emphasis added).

A "called party" that is "charged for the call" cannot be the "intended" but never-called person who had previously given consent.  Instead, this "second use of 'called party' must mean [the] [c]ell [n]umber's current subscriber, because only the current subscriber pays."  *Soppet*, 679 F.3d at 639.  That this subsection (iii) treats "called party" as the current subscriber sheds light on what "called party" should mean in the ATDS "consent" provision of which subsection (iii) is a part.  47 U.S.C. § 227(b)(1)(A).  We generally presume "that a statute uses a single phrase consistently, at least over so short a span."  *Soppet*, 679 F.3d at 639; *Ass'n des Éleveurs de Canards et d'Oies du Que. v. Becerra*, 870 F.3d 1140, 1148 (9th Cir. 2017).  One would not expect to find different definitions of "called party" operating so closely together in the same overall provision—especially

absent any indication that a divergent interpretation was intended.

As we burrow deeper into the TCPA, we find several more references to "called party" that only further confirm that Credit One's interpretation is not the best one. Section 227(b)(1)(B) prohibits certain calls "using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." This subsection parallels the § 227(b)(1)(A) "consent" provision for calls using "any automatic telephone dialing system," the provision at issue here. The same point we made in the context of § 227(b)(1)(A) applies to § 227(b)(1)(B): why would the "consent" that could eliminate liability be given by some third person who is alien to the telecommunication that triggered the statute? Even if it were a possible interpretation, it is not the most likely.

Other references to "called party" in the statute likewise indicate that the term does not refer to the intended recipient of the call. Like § 227(b)(1)(A)(iii), § 227(b)(2)(C) treats the "called party" as the subscriber of the phone line, for it authorizes the Federal Communications Commission (FCC) to exempt from liability certain calls "that are not *charged to* the called party." (Emphasis added); *see also Soppet*, 679 F.3d at 640. Another provision, § 227(b)(2)(I)(iii), provides that when the FCC is enacting these exemptions, it must ensure that the exemptions contain requirements for "the number of such calls that a calling party may make to a particular called party." This statutory text was enacted only recently and after the events giving rise to this case. *See* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, § 8(a)(3), 133 Stat. 3274, 3283 (2019). But it too undermines Credit One's theory. This new provision cross-

references § 227(b)(2)(C), which treats "called party" as the subscriber. *See* 47 U.S.C. § 227(b)(2)(I). It would be atypical, to say the least, if the FCC were required to issue regulations on the "number" of calls that can be made to a "particular called party" if the subject of the regulation were persons whom the caller had merely intended to call, but did not in fact ring.

The remainder of the references to "called party" are found in § 227(d)(3)(B), and they also point against Credit One. Section 227(d)(3)(B) requires the FCC to prescribe rules for systems that transmit artificial or prerecorded messages, so that "any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls." The first and third references to "called party" in this provision more probably refer to the subscriber of the line; the second reference quite clearly refers to the person who answers, because only that person can "hang up." *Soppet*, 679 F.3d at 640. But all these references to "called party" share a common characteristic: they would make no sense if "called party" referred to an intended but uncalled recipient.[1]

[1] The district court's jury instructions shielded Credit One from liability if it had received the consent of either the "subscriber" or the "nonsubscriber, customary user of the phone," as opposed to the "intended recipient of the call." In this case, neither the subscriber (Lemos) nor the customary user (N.L.) gave consent to the calls, which is sufficient to show that the required consent was not given. We do not decide what the result would be if one, but not the other, had consented. Credit One had requested only an "intended recipient" instruction, and we reject its challenge on appeal by concluding that such an instruction is incompatible with the TCPA.

Perhaps because the statutory text stands in opposition to its argument, Credit One focuses more intently on perceived statutory purpose and the policy implications of the district court's instruction.  But even if these considerations could overcome the most natural construction of the TCPA's language, N.L. still has the better of the argument.  In its findings supporting the TCPA, Congress aimed to strike a "balance[]" between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech . . . in a way that protects the privacy of individuals and permits legitimate telemarketing practices."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(9), 105 Stat. 2394, 2394 (1991).  Credit One insists that imposing liability on a caller that unknowingly dials a reassigned number would undermine the TCPA's intended balance, placing companies in "constant risk of staggering statutory damages for calls to reassigned numbers, with no way to know whether any particular number has been reassigned."

But Credit One's interpretation conflicts with the very congressional findings upon which it relies, in which "Congress appears to equate the 'called party' with the 'receiving party.'"  *Leyse*, 804 F.3d at 325 n.13.  In enacting the TCPA, Congress found that "[b]anning such automated or prerecorded telephone calls to the home, *except when the receiving party consents to receiving the call* . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."  Pub. L. No. 102-243, § 2(12), 105 Stat. at 2394 (emphasis added).

Credit One also attempts to draw support from certain orders of the FCC, which has authority to promulgate regulations implementing the TCPA. 47 U.S.C. § 227(b)(2).  In 2015, the FCC issued an order creating a one-call safe

harbor for callers who unknowingly dial reassigned numbers if they had obtained consent from the previous subscriber. *See* Declaratory Ruling & Order, In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7999–8000 (2015) (2015 FCC Order). The D.C. Circuit later vacated the 2015 Order's safe harbor as arbitrary and capricious. *See ACA Int'l*, 885 F.3d at 708–09. The FCC then issued a new order in 2018 approving the creation of a comprehensive reassigned number database and adopting a safe harbor for callers who rely on it. *See* Second Report & Order, *In re* Advanced Methods to Target & Eliminate Unlawful Robocalls, 33 FCC Rcd. 12024, 12043–45 (2018) (2018 FCC Order). In Credit One's view, these safe harbors weigh against interpreting "called party" in a way that creates strict liability for callers that dial reassigned numbers.

If anything, the FCC's orders weigh against Credit One. If a caller's intent could defeat liability, the safe harbors would be unnecessary. Moreover, and in reasoning that the D.C. Circuit did not reject and if anything supported, *ACA Int'l*, 885 F.3d at 706, the 2015 FCC Order expressly "clarif[ied] that the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone)." 2015 FCC Order, 30 FCC Rcd. at 7999 (footnote omitted). The FCC also "reject[ed]" proposals to "interpret 'called party' to be the 'intended recipient' or 'intended called party,'" relying on the reasoning of the Seventh and Eleventh Circuits in *Soppet* and *Osorio*. *Id.* at 8002 & n.278. While Credit One relies most heavily on one dissenting FCC Commissioner's views, *see id.* at 8077–78 (Pai, dissenting), the TCPA is best read in the way we have set forth above, under which Credit One's preferred interpretation must fail.

Finally, contrary to Credit One's suggestion, callers are not helpless absent its "intended recipient" construction. Here, Credit One's vendors called an eleven-year-old boy nearly 200 times before determining that he was not the delinquent cardholder they were pursuing. In all events, the FCC in its 2015 order itself recognized that "caller best practices can facilitate detection of reassignments before calls," that "there are solutions in the marketplace to better inform callers of reassigned wireless numbers," and "that businesses should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability." 2015 FCC Order, 30 FCC Rcd. 7999–8000. The Seventh Circuit in *Soppet* offered some work-arounds as well, noting (for example) that callers can avoid TCPA liability by "hav[ing] a person make the first call" to confirm a number has not been reassigned or by using "a reverse lookup to identify the current subscriber." 679 F.3d at 642. And this is to say nothing of any further implementation of the FCC's safe harbors, which may provide other protections. *See* 2018 FCC Order, 33 FCC Rcd. at 12043–45.

In all events, whether Credit One's "intended recipient" rule reflects the better balancing of competing interests is not for us to decide. What matters here is the balance that the text of the TCPA most naturally reflects. And given the "called party" language that Congress used in the TCPA, we hold that the district court's instruction complied with the statute.

III

Credit One raises one additional argument under the TCPA that it acknowledges is foreclosed under our circuit's precedent, but which Credit One wishes to preserve for further review. This argument concerns the definition of

"automatic telephone dialing system," or ATDS. The TCPA prohibits the use of an ATDS, except in certain circumstances (consent of the "called party" being one of them). 47 U.S.C. § 227(b)(1). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

The district court instructed the jury: "The term [a]utomatic telephone dialing system means equipment which has the capacity, one, to store numbers to be called; *or* two, to produce numbers to be called using a random or sequential number generator and to dial such numbers." (Emphasis added). Accordingly, under the challenged instruction, a device qualifies as an ATDS if it can store numbers and dial them—even if it cannot produce numbers using a random or sequential number generator.

Credit One maintains that this instruction misstates the TCPA's requirements because, in its view, a device must be able to generate random or sequential telephone numbers to qualify as an ATDS. And Credit One contends that the district court's jury instruction was prejudicial because there was no evidence that its systems could produce and dial random or sequential numbers. As Credit One acknowledges, however, the district court followed our decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), which held that the TCPA's "definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Id.* at 1043.

There is an acknowledged circuit split on this issue. Our decision in *Marks* parted ways with the Third Circuit's decision in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d

Cir. 2018). *See Marks*, 904 F.3d at 1052 n.8. Subsequently, the Seventh and Eleventh Circuits issued forceful decisions disagreeing with *Marks*. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466–67 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306–13 (11th Cir. 2020). Most recently, the Second Circuit weighed in on the side of *Marks*. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 n.5 (2d Cir. 2020).

The ATDS definitional issue is a difficult one, but the issue before us is not: as a three-judge panel, we are bound by *Marks*, as Credit One agrees. *See, e.g.*, *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 n.2 (9th Cir. 2015). Because the jury instruction on the definition of ATDS is consistent with *Marks*, Credit One's challenge to that definition fails.[2]

**AFFIRMED.**

[2] In a separate memorandum disposition filed concurrently with this opinion, we reject Credit One's challenge to the district court's award of attorneys' fees.